```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF ILLINOIS



CITY OF GREENVILLE,        )
ILLINOIS et. al...,        )
Individually and on        )
behalf of all others       )
similarly situated,        ) No:  10-188-JPG-PMF
                           )
        Plaintiffs,        )
                           )
        vs.                )
                           )
SYNGENTA CROP              )
PROTECTION, INC., and      )
SYNGENTA AG,               )
                           )
        Defendants.        )
```

**DISCOVERY DISPUTE CONFERENCE**
**BEFORE THE HONORABLE PHILIP M. FRAZIER**

A conference call on the discovery dispute of the above mentioned cause was held on September 16, 2010 at 10:30 a.m. at the Benton Federal Courthouse, Benton, Illinois, before Michelle Zimmerman, Notary Public and Certified Shorthand Reporter, CSR No. 084-004339, for the State of Illinois, pursuant to notice.

A P P E A R A N C E S
(By phone)

Christie R. Deaton
Stephen M. Tillery
Korein Tillery
Attorney (s) at Law
1 US Bank Plaza
505 N. Seventh Street
Suite 3600
St. Louis, Missouri, 63101-1625

In behalf of the Plaintiffs;

Ms. Patricia  Murphy
Murphy Law Office
P.O. Box 220
Energy, Illinois 62933

In behalf of the Plaintiffs;

Mark C. Surprenant
Adams and Reese
Attorney (s) at Law
One Shell Square
701 Poydras Street
Suite 4500
New Orleans, Louisanna 70139

In behalf of the Defendants;

Christopher MacNeil Murphy
Peter Sheffield
Michael A. Pope
McDermott, Will & Emery
Attorney (s) at Law
227 W. Monroe Street
Chicago, Illinois 60606-5096

In behalf of the Defendants.

1          THE COURT:  All right.  Now, redo the

2     role call for the plaintiffs, please.

3          MR. TILLERY:  Yeah, for the

4     plaintiffs, Your Honor, it's Steve Tillery from

5     Korein, Tillery, I'll be doing most of the

6     talking, I think.

7          THE COURT:  All right.

8          MS. MURPHY:  Patricia Murphy.

9          THE COURT:  All right.

10          MS. MURPHY:  Counsel for plaintiff.

11          THE COURT:  And for the defendant?

12          MR. POPE:  For the defendant, Your

13     Honor?

14          THE COURT:  Yes.

15          MR. POPE:  Michael Pope, McDermott,

16     Will, along with Christopher Murphy and Peter

17     Sheffield and also I have co-counsel from New

18     Orleans Mark Surprenant on the line as well.

19          THE COURT:  Very well.  And if you

20     could identify yourself on the record for the

21     record, I guess, when you speak and obviously

22     because we're doing this by phone we can't have

23     anybody talking over anybody else.  So it will

24     probably go a lot smoother if you just wait

25     until I recognize you or just your side then one

1    person speak for each side, please.  And

2    hopefully -- I have this little mountain of

3    information that was submitted to me, but I'm

4    thinking we might be able to cut through this

5    without a lot of difficulty.  If it gets to be

6    -- if we're going to have to start handling a

7    lot of different documents and things like that,

8    then I regret I'm going to have to drag

9    everybody here to Benton, which is something

10   that everybody will want to avoid.  So in any

11   event, who --

12            MR. POPE:  Your Honor --

13            THE COURT:  Steve Tillery --

14            MR. POPE:  -- I initiated this

15   request, I'd be happy to go first if it would

16   please the Court.

17            THE COURT:  All right.  And this is

18   Steve Tillery, correct?

19            MR. POPE:  Mike Pope speaking now.

20            THE COURT:  Okay.  Mike, I'm sorry.

21   Mike Pope speaking up.  All right.

22            MR. POPE:  Let me just remind the

23   Court of how we got to where we are.  The

24   plaintiffs filed a motion with you asking for

25   limited targeted jurisdiction discovery in June.

```
1    I don't think you necessarily had to give them

2    that, but in June you granted that and in that

3    order you used the word limited twice in

4    discussing the kind of discovery that you were

5    permitting.  It was my position that when they

6    sent -- filed their discovery shortly thereafter

7    they greatly overreached with a lot of broad

8    requests.  We had -- we had some 62 reports for

9    admission, we had 17 document requests, we had

10   121 interrogatories if you count the subparts,

11   and they asked for nine depositions.

12            THE COURT:  Well, let me interrupt you

13   for a second.

14            MR. POPE:  If you recall --

15            THE COURT:  Let me interrupt a second

16   Mike, excuse me.

17            MR. POPE:  Okay.

18            THE COURT:  Excuse me, Mike.  The

19   discovery requests were not directed to the

20   let's call it the Swiss Syngenta, there's -- I

21   mean, that's what all this is about right now is

22   the attempts to bring Syngenta AG into this.

23   Syngenta Crop Protection is already before the

24   Court, correct?

25            MR. POPE:  That's correct, Your Honor.
```

```
 1    The original discovery was issued to both

 2    parties and that was part of a motion that we

 3    filed asking you when you had the hearing on

 4    July 27th.  And as you recall the order you

 5    issued on July 27th, the very first sentence

 6    says, discovery served by the plaintiffs far

 7    exceeds the narrow slope authorized by the

 8    order.  And instead of those nine depositions

 9    you ordered that we produce two people, two

10    Swiss executives in Europe, and that Crop

11    Protection should answer the written discovery

12    at that time.  We complied and we're still

13    having the discussions with the plaintiffs on

14    some of this stuff, but we basically went

15    through a whole bunch of work to comply with the

16    written discovery and we have the depositions of

17    the two Swiss executives scheduled for October

18    in Brussels.  About two weeks later, however,

19    the plaintiffs then sent out another whole

20    avalanche of documents, stuff of which was sent

21    to you.  Again, instead of narrowing their scope

22    they sent real broad discovery requests and they

23    are back to asking for the whole nine

24    depositions again, sometimes with riders

25    attached to those notices of deposition that go
```

 1   15 pages.  I believe that the Court made it

 2   clear in its order that we are trying to keep

 3   this thing limited because let me remind

 4   everybody this is a sidetrack, none of this goes

 5   to the merits of the case, we're all just kind

 6   of -- what's supposed to be limited discovery

 7   over jurisdiction and the requests the

 8   plaintiffs have filed far exceed I think what

 9   the Court intended by its orders.  Now, we've

10   had several discussions, Steve and I, trying to

11   work this thing out in some kind of a

12   compromised fashion and we were unable to do

13   that and that's why we had to come back to you

14   again to get clarity on what you meant in the

15   order you issued on July 27th.  So I ask the

16   Court to reiterate that the depositions should

17   be the two people in Brussels and if after that

18   there's need for further discovery we come back

19   to you, but that this wholesale additional

20   document request and request for admissions and

21   all these other things should be quashed and

22   let's go forward with the discovery that's

23   already been agreed to and ordered by you on

24   July 27th.

25             THE COURT:  Let me ask you this, I'm

1    --

2         MR. POPE:  -- in terms of the merits

3    of the case and not spend all our time on

4    jurisdiction --

5         THE COURT:  Let me ask you this, Mike,

6    I'm looking at the order that was entered at

7    Document 65 and it says all -- the words

8    limited, et cetera were used with regard to

9    Syngenta AG, then in a separate paragraph it

10   says also plaintiffs may initiate discovery with

11   Syngenta Crop Protection, Inc. to explore the

12   nature and extent of any agency relationship

13   between the defendants.  The discovery may focus

14   on acts by Syngenta AG to manage, control,

15   direct, or supervise the business operations of

16   Syngenta Crop Protection, Inc.  Now, the nine

17   depositions, are these -- are these -- Steve

18   Tillery, are these Crop Protection people?

19        MR. TILLERY:  Yes, sir, every one of

20   them.

21        THE COURT:  And the written discovery

22   --

23        MR. TILLERY:  We have one person, who

24   was I think Mr. Meili, who had been noticed who

25   was a decelerant in support of their motion for

1    -- to dismiss based upon lack of jurisdiction,

2    other than that the other eight people that are

3    noticed in Greensboro, North Carolina are all

4    Crop Protection employees, and I think there's

5    six of them, judge --

6              THE COURT:  Mike --

7              THE WITNESS:  -- not eight or nine.

8              THE COURT:  And, Mike, I'm sure you've

9    read the copy of the letter that was submitted

10   by plaintiffs regarding this discovery dispute

11   where several parts of the transcript of that

12   July 27 conference we had were referenced and

13   while my actual recollection of what happened on

14   that day -- I mean, I generally recall exactly

15   what was going on, but not specifically, but

16   it does appear that we were anticipating more

17   vigorous discovery concerning Crop Protection.

18              MR. POPE:  Well, Your Honor, I do have

19   your -- I did -- I did read the transcript, I

20   did read Stephen's letter, I also read your

21   order of July 27th and in there you said two

22   things, the depositions of Atkin and Maeder in

23   Europe and then you said plaintiff may also

24   target documents in the possession of Syngenta

25   Crop Protection in an effort to show pervasive

1    control of Syngenta AG.

2            THE COURT:  And it says, also

3    plaintiffs my initiate discovery with Syngenta

4    Crop Protection, Inc. to explore the nature and

5    extent of any agency relationship between the

6    defendants.  I don't see too much limiting

7    there, it says initiate discovery.

8            MR. POPE:  You're talking about the

9    June order, Your Honor.

10           THE COURT:  Is that the June order?

11   I'm looking at Document 65.  All right.  You're

12   right, it is the June order.  I'm sorry.  I'm

13   sorry.

14           MR. POPE:  Document 77 --

15           THE COURT:  Okay.

16           MR. POPE:  -- July 27th.

17           THE COURT:  That was the minute entry.

18           MR. POPE:  That was the order you

19   issued following our last hearing.

20           THE COURT:  All right.  Hang on.

21   Well, the minute order probably has to be read

22   in conjunction with the other things that are

23   going on here and I don't think it was my

24   intention to really put a halt to the discovery

25   with Crop Protection.  I mean, the case is going

1    to go on whether Syngenta AG is -- Steve, am I

2    right or wrong on this, even if -- let's just

3    say that circumstances do not permit Syngenta AG

4    to eventually become a defendant in this

5    lawsuit, is it your intention to proceed against

6    Crop Protection?

7            MR. TILLERY:  Yes, it is, Your Honor.

8            THE COURT:  Well, then that was my

9    thought as well.  And I see what you're talking

10   about there, Mike, but I don't really intend to

11   limit the discovery with Crop Protection.  You

12   guys just need --

13           MR. POPE:  Your Honor, I don't have

14   any problem if they're talking about going

15   forward with the merits with Crop Protection

16   witnesses.  I don't have --

17           THE COURT:  Yeah, go ahead and let it

18   rip on that one.

19           MR. POPE:  I thought this was related

20   to the jurisdiction issue.

21           THE COURT:  Well, and it will be, but

22   with regard to the -- I mean, I don't really

23   want to restrict the discovery concerning Crop

24   Protection with regard to the Syngenta AG

25   jurisdictional issue and -- so if there was a

1    misunderstanding I -- that resulted from our

2    last meeting, then hopefully this will clear it

3    up, that I think with regard to Crop Protection,

4    which is properly before the Court, then any

5    discovery at all, including that regarding the

6    Syngenta AG's relationship is fair game.

7              MR. POPE:  So, Your Honor, these

8    depositions will be one time, though, they won't

9    be able to come back a second time and take the

10   same witnesses again, will they?

11             THE COURT:  Well, I don't know they're

12   -- I don't know.  Rule 26 doesn't say or -- and

13   32 doesn't say you just get one shot, I mean, we

14   have people redeposed for lots of reasons all

15   the time.  You know, we will just keep our

16   options open on that, but obviously if it gets

17   to be harassing or oppressive -- but, you know,

18   harassing and oppressive is what you guys do in

19   discovery, isn't it?

20             MR. POPE:  I just want to make sure I

21   know what the scope of the depositions will be

22   if they're going to go forward.  That's all,

23   Judge, I was just --

24             THE COURT:  No, I mean, I -- you know,

25   usually when it gets out of hand it's pretty

```
 1    obvious.  And we've got a couple of things going
 2    on in this case, you know, we've got the
 3    jurisdictional battle, and that's going to focus
 4    on things that don't have much to do with the
 5    primary allegations in the complaint.  So while
 6    it is my intention to be as efficient as
 7    possible in this and not to subject any
 8    witnesses to undue burdens, it is -- sometimes
 9    it happens and so we'll be as efficient as we
10    can.  But I understand we do have two separate
11    plots going on here.  As far as Mr. Meili's
12    deposition, as far Mr. Meili was not one of the
13    ones -- where does he live?
14              MR. POPE:  Switzerland, Your Honor.
15              THE COURT:  Yeah, we're probably going
16    to have to -- did Meili submit an affidavit then
17    in support of the jurisdictional motion?
18              MR. TILLERY:  Yes, he did.
19              MR. POPE:  Yes, he did.
20              THE COURT:  Yeah, we will have to
21    expand the -- expand the deposition list to
22    include him as well then, either that or we will
23    strike his affidavit.  I'll leave that up to --
24              MR. POPE:  We will make him available,
25    Your Honor.
```

```
 1            THE COURT:  And, yeah --
 2            MR. POPE:  We'll work out a convenient
 3    place with Steve on that one.
 4            THE COURT:  Yeah, and let's get that
 5    done --
 6            MR. POPE:  His will be five hours as
 7    well, I assume?
 8            THE COURT:  That's correct.  You might
 9    as well get that done when guys are in Belgium.
10    When are you guys going?
11            MR. POPE:  Well, if we can't do
12    that -- we may bring him over here for the
13    accommodation of the Court and for his lawyers.
14    We'll work it out with Steve.
15            THE COURT:  He probably comes over
16    here to the United States.  But let's not wait
17    on that because obviously the Court's going to
18    want to get him deposed within 60 days.
19            MR. POPE:  Yes, sir.
20            THE COURT:  And because we can't
21    really do too much on the jurisdictional issue
22    without his deposition and that's -- what is the
23    spelling on Meili's for the court reporter?
24            MR. POPE:  M-E-I-L-I.
25            THE COURT:  M-E-I-L-I.  And his first
```

```
 1  name?
 2             MR. POPE:  Copias.  C-O-P-I-A-S.
 3             THE COURT:  Okay.  And does that take
 4  care of our primary issues today?
 5             MR. POPE:  The only other thing,
 6  Judge, is that I would ask you to give me 30
 7  days to respond to that written discovery that
 8  is sitting there on your desk.
 9             THE COURT:  I will give you 30 days to
10  do that and let me ask you to do something too,
11  because I read through these things and what is
12  the purpose of making the usual boilerplate
13  objections and then saying subject to the
14  foregoing the answer is blah, blah, blah?
15  There's really nothing achieved by doing that.
16  You're not preserving an objection and we really
17  don't need to know about it.
18             MR. POPE:  We were just trying to --
19  some situations where the question -- the
20  wording of the question was confusing and we
21  were just trying to highlight that and going
22  ahead and answering it as best we could with the
23  understanding of what we had of what the terms
24  meant.
25             THE COURT:  Well, and probably the
```

1   better way to do that --

2            MR. POPE:  -- boilerplate objections,

3   we were trying to avoid those.

4            THE COURT:  Yeah, boilerplate

5   objections --

6            MR. POPE:  -- plaintiffs lawyers to

7   conduct a discussion on that and clarify that so

8   there's no further confusion.

9            THE COURT:  Boilerplate objections are

10  never a good idea.  And we can start with the

11  proposition that all discovery is burdensome,

12  rarely unduly burdensome.

13           MR. POPE:  I thought that's why they

14  served it, Judge.

15           THE COURT:  That's -- that's what you

16  guys -- that's what you guys do and, you know,

17  big firms like McDermott, Will, and Emery,

18  unduly burdensome discovery is what pays you

19  guys' bills so -- yeah, that's the -- having

20  these discovery wars is what keeps big firms

21  alive so --

22           MR. POPE:  I don't normally practice

23  that way, Judge, so we will take another look at

24  that and see if we can avoid that in the future.

25               THE COURT:  All right.  Very good.  So

```
1    30 days -- today's the 20 -- oh, I'm sorry, the

2    16th so 30 days from today will be the 16th of

3    October.

4              MR. TILLERY:  The problem, Your Honor,

5    if we go down there we're going to have to

6    reschedule the deps then because -- in Europe

7    because that would put his clients after our

8    deposition.

9              THE COURT:  Oh, I'm sorry.  Well --

10             MR. POPE:  Your Honor, just a second

11   here.  I don't know that every single one of

12   these things needs to be done before we go to

13   these depositions.  There's been -- is there --

14   we will have done a bunch of compliance before

15   then and I don't think we should -- it took a

16   long time for me to schedule these depositions

17   with these executives, I would hope we don't --

18             THE COURT:  Steve, can you target some

19   of these that will be the ones you really want

20   before the depositions?

21             MR. TILLERY:  Yes.  For example, Your

22   Honor, if I could just take a second, I don't

23   want to interrupt with Mike's discussion so if I

24   can proceed now?

25             THE COURT:  Go right ahead.
```

1          MR. TILLERY:  All right.  A couple of

2     things.  For example, in the last hearing that

3     we had you discussed e-mails and you said that

4     communications back and forth with Crop

5     Protection and AG are going to be fair game in

6     terms of getting those from Crop Protection and

7     not AG.

8          THE COURT:  Right.

9          MR. TILLERY:  You limited it to Crop

10    Protection.

11          THE COURT:  Right.

12          MR. TILLERY:  And we vouched for that

13    and the answer has been basically, look at the

14    documents that were provided in the Illinois

15    case that -- of course, where AG is not even

16    sued and where jurisdictional issues have not

17    even been raised by any of the entities and we

18    need those and here they just objected both

19    times to producing them.  In addition to that

20    the documents that have been referenced here, to

21    give you an example, and I don't want to -- I

22    know you don't want to probably go through these

23    by line and verse, but there's a couple of

24    items.  There are in their interrogatory answers

25    on 12 through 16, they reference bate numbers of

```
 1    specific pages, for example, 12 I think has 31

 2    pages referenced; 13 has 140 pages; and in some

 3    of the others 31; 21.  Well, here's what

 4    happened, the very last document that we

 5    attached as an exhibit to our letter and to you

 6    is a letter from Mr. Reeg.  In that letter he

 7    identified that he gave these documents and put

 8    them in and bundled them with a compliance of

 9    over 40,000 pages of Holiday Shores documents.

10    Unfortunately, they didn't tell us where they

11    were so, in other words, you have to go through

12    all 45 or 46,000 pages of Holiday Shores

13    documents to find these two or 300 pages.  No

14    reference point.  And this is the -- I know --

15    you know, I'm not -- I'm not -- and I'm sorry,

16    and I misspoke, it was -- Ms. Deaton corrected

17    me, she said it's 40,000 documents, 300,000

18    pages of documents were given to us.  So in

19    other words, to find these 300 or 400 you have

20    to open 300,000 pages of Holiday Shores

21    documents individually to find the ones that

22    he's referenced in these interrogatories.  Now,

23    truthfully I don't want to get verbose here, but

24    that's just not playing fair.  And the fact is

25    is that we need -- we need real documents, real
```

```
1    discovery, and real e-mails in order to put this

2    on and to make a good case for you on this

3    jurisdiction and that's all we're trying to do.

4    So I think we need documents, and I'm willing to

5    do anything with Mike that he wants in terms

6    that it's reasonable.  If he wants to take these

7    deps at that time, fine, we'll do them, but I

8    need the -- I need the stuff to look at before I

9    depose them.  If we're going to -- if he needs

10   more time to take them, then we need the

11   documents first and then let him produce the

12   people a little later.  But this should be based

13   on fundamental fairness and what's been

14   happening has not been fair.

15            THE COURT:  Mike, what can you do here

16   to help?

17            MR. POPE:  In terms of fundamental

18   fairness, I only got Steve's objection 48 hours

19   ago so we're still in the process of giving him

20   a response.  Many of these things I think are

21   very much answerable and if, in fact, the focus

22   of our discovery is the day-to-day control that

23   AG had over Crop Protection in the area of

24   Atrazine being sold or manufactured and sold in

25   Illinois we have some limited ways to go about
```

```
1    gathering stuff.  It's only when you say give us
2    every single e-mail between two companies that
3    takes over a six year period, that becomes what
4    is so difficult to do.  What we have done, just
5    so you know, Your Honor, in connection with the
6    state court case, which has been going on for
7    several years now, we have engaged in a rolling
8    document production in that case.  The issues
9    are almost identical except that AG is not
10   involved in that case true enough.  But
11   nonetheless we have been producing virtually
12   millions of pages of documents on a rolling
13   basis so we're trying not to start from scratch
14   on this discovery with requests that are broad
15   and having to do with Atrazine itself.  So I'm
16   working with Steve right now, I didn't -- I say
17   I don't think we should be talking about his
18   letter of September 13th, that was just two days
19   ago, we're still working on trying to help with
20   the responses.  Maybe we can withdraw some
21   objections and clarify some of the language that
22   was a little loose and unclear in his discovery
23   request so that we can get this thing to him.
24   As to the new stuff they filed two weeks ago --
25   and I don't know how much of that really relates
```

```
 1    to the deposition of Mr. Atkin and Mr. Maeder,

 2    but I'm just hoping to find a way to work this

 3    out so those depositions don't get continued

 4    because that's a logistic effort to try to get

 5    -- to fly to Switzerland and to Brussels.

 6            MR. TILLERY:  If I may respond just

 7    for a second, Judge, just so you know the

 8    documents that he referenced and he said two

 9    weeks ago were actually overdue.  The responses

10    were due on those last Friday, there was never

11    any objection about any discovery, but that

12    stuff is actually stale with no response at all.

13    But the bottom line is that really truthfully

14    we're willing to do this any way that the Court

15    wishes except that we don't think that when we

16    go take depositions without anything to look at

17    in advance and then get the document a week or

18    two after the depositions are taken that that's

19    fair.  And, I mean, we should be able to read

20    their files, look at the e-mails, see the

21    documents before the depositions take place to

22    do this fairly.  And if -- I think that it's up

23    to Mike if we wants to -- if we wants to keep

24    the depositions scheduled, then give us the

25    documents now.  If he wants to give the
```

1  documents to us in 30 days, then switch the

2  depositions.  But one way or the other we should

3  have those before the depositions.

4          MR. POPE:  Well, just to respond to

5  Steve there, Judge, we have in connection with

6  the original set of document requests we have

7  some 80,000 documents we're prepared to release

8  to the plaintiffs as soon as this protective

9  order we are discussing gets entered.  We are

10 almost there, we were just a few words apart.

11 There are some trade secrets and some other

12 confidential information that our competitiors

13 would be happy to have and so we're just working

14 on that language.  Once that's done, we should

15 have these in his hands by tomorrow.  I was just

16 referring to the new series of discovery that

17 they filed -- or they served on us a couple

18 weeks ago.  I need to go through that a little

19 more detailed to see if we can get enough stuff

20 so that he can feel comfortable taking the

21 deposition.  It's not my intention to sandbag

22 anybody in this case, to produce documents right

23 after the deposition, that's not it at all.

24 It's more a matter of the efficiency and the

25 logistics of trying to arrange these depositions

1    in times when all the lawyers and the witnesses

2    and everybody else can be present for the

3    deposition in Brussels.

4         THE COURT:  Yeah, you know, when I --

5    when I hear that millions of documents or even

6    hundreds of thousands of documents are produced

7    in response to a discovery request, I start to

8    suspect one of two things or maybe even a little

9    of both are in play, I mean, it's just -- it's

10   astounding to me that there could possibly be

11   that many documents that would matter.  And so

12   what I think then is that we've either got

13   discovery requests that are a little loose in

14   requesting -- you know, casting too broad a net

15   or we've got what I've seen in several

16   situations before where defendants just dump

17   trailer loads of documents on people in hopes

18   that it will just be confounding and -- you

19   know, I mean, there's -- it seems to be very

20   unlikely that millions of documents would be

21   properly responsive to properly made discovery

22   requests.  And --

23        MR. POPE:  Let me be clear, Judge,

24   maybe I misspoke or maybe I was misunderstood.

25   What I was referring to in terms of millions of

1    documents is the state court case in that it was

2    seeking documents regarding all the scientific

3    studies regarding Atrazine, all the

4    communications with EPA, the state agency,

5    things like that.  That's a much bigger package

6    that we're talking about.  I have the limited

7    amount -- it's still extensive, but limited

8    amount of documents that's responsive to Steve's

9    first series of requests to us and we will get

10   those things as soon as we have this protective

11   order issue resolved.  And it's not millions at

12   all, it's 75 or 80,000 documents.  It's the kind

13   of thing he just talked about in his hands, I've

14   got them, just need to have the protection

15   order, which we have been discussing now for a

16   couple of weeks, have that entered in the next

17   day or two and we will have those things in his

18   hands.

19              THE COURT:  Why don't we just wait and

20   see what is produced with that, Steve, and if

21   there's still a problem you call me and we will

22   set up another --

23              MR. TILLERY:  All right.

24              THE COURT:  -- all right.

25              MR. TILLERY:  I will, Judge, I will do

```
 1    that and we will just wait and see.
 2              THE COURT:  Yeah.
 3              MR. TILLERY:  But one step in the
 4    process is the protective order and here's what
 5    I would propose to the Court.  If this seems
 6    reasonable we are -- Mr. Murphy and I are at
 7    loggerheads over a definition and I don't know
 8    that -- this wasn't scheduled for hearing and I
 9    don't mean to advance it.  Chris Murphy is on
10    the phone call and I don't want to advance it if
11    they don't want to argue it, but here's my
12    proposal so that we can get this going.  If we
13    don't resolve this dispute about a particular
14    definition of what is or isn't confidential
15    within the next day, then I suppose we can ship
16    you a proposed of protective orders.  They are
17    all -- they are virtually identical with the
18    exception of I think one paragraph and a page or
19    two pages as to why we think ours should be done
20    and then you can enter your order.  And rather
21    than us continue -- this process has been going
22    on for weeks and I think we should just send it
23    to you and let you make the call, and give you a
24    letter, a two-page letter saying why we think
25    ours is the right answer.
```

1        MR. POPE:  That will be fine with us,

2    Your Honor.  We'll try within the next 24 hours

3    to see if we can reach an agreement, if we can't

4    then Friday we will send off a no more than

5    two-page letter with our proposal as well, is

6    that fair enough?

7        MR. TILLERY:  I think that's fine.

8        THE COURT:  And I'll have something

9    for you pretty quickly.  I mean, you know,

10   there's a lot of days guys where I've come to

11   the conclusion that the -- one of the primary

12   things that our system is in place to do is to

13   provide employment for people in the legal

14   profession and not much else.  This is one of --

15   this is an example that would -- you know, these

16   things get over lawyered dramatically and so,

17   you know, let's just kind of use our heads on

18   it.  And I understand you guys have to try to

19   agree on a lot of different things and then we

20   start getting -- we get tired egos involved in

21   these things that are just tired of -- tired of

22   compromising and this and that, but my guess is

23   is -- you know, this may be something vital and

24   crucial to the continued viability of the

25   company or whatever, but I kind of doubt it.

```
 1   So, you know, use your heads, let's work
 2   something out and get moving on it, otherwise,
 3   I'll make a quick decision.
 4           MR. TILLERY:  All right.  Judge one
 5   other -- one final thing before -- rather than
 6   -- I sent you some materials today for the
 7   hearing as well and rather than going through
 8   this, which would take considerable time because
 9   we dispute a lot of things which you saw in our
10   letter, I think probably we should take the next
11   day or two or maybe even early next week to try
12   to work out these differences before we burden
13   the Court with our problems.
14           THE COURT:  Yeah, because, guys, I'm
15   going to tell you, I'm going to blast through
16   this stuff and when I start doing it you're
17   probably neither one are going to like the
18   results.
19           MR. TILLERY:  All right.
20           THE COURT:  And my strong preference
21   with regard to discovery is -- to borrow, you
22   know, a little phrase from our friends at Nike,
23   just do it.  And these things are rarely as
24   important as everybody makes them out to be and
25   we spend more time arguing about it than it
```

1        would take just to do it.  So I'm telling you if

2        -- sometimes the devil you know is better than

3        the devil you don't know and the devil you don't

4        know in this case is what I'm going to order on

5        these things so just give it your best shot.

6                MR. TILLERY:  Thank you, Judge.

7                MR. POPE:  Your Honor, one final

8        issue.  In one of your preliminary orders you

9        strongly encouraged the parties to cross notice

10       the deposition if we're taking them in the same

11       case of the same witnesses as in the federal

12       case, I take it that's still your view as to the

13       efficiency of proceeding on depositions of, for

14       example, Syngenta Crop Protection people if they

15       are being deposed in both cases that should be a

16       process situation, shouldn't it?

17               MR. TILLERY:  I'd like to be heard on

18       it, Judge, before you --

19               THE COURT:  Well, I'm not going to

20       restrict.  I mean, you know, yeah, my

21       encouragement to everybody in every case whether

22       it's this case or, you know, a slip and fall at

23       Kroger is be efficient.  And that doesn't mean

24       that, you know, I don't have the authority to

25       suspend Rule 32 or any of the -- or 26 or any of

```
 1   the other federal rules of civil procedure

 2   regarding discovery.  And, you know, I suppose

 3   if somebody wants to be inefficient, then that's

 4   what's going to happen, but my encouragement

 5   will be to do that certainly.

 6             MR. POPE:  Okay.  We will talk it over

 7   with Steve then.

 8             THE COURT:  I mean, if you can you can

 9   and if you can't I understand that, you know,

10   there may be some follow up or tune up.  And it

11   wouldn't be the first time that people would be

12   wanting to, you know, prepare for somebody's

13   deposition by taking their deposition, you know.

14             MR. TILLERY:  One other reasons -- and

15   I won't argue it now, we will try to work it out

16   -- but one of the reasons for this, of course,

17   is the fact that there is no jurisdictional

18   argument at all, even pending in the state

19   cases, none of that's ever even been raised.

20             THE COURT:  Right.  So there would

21   probably be some objections to it as beyond any

22   permissible scope and what have you.

23             MR. TILLERY:  Exactly.  Exactly.

24   Exactly.  And that's the purpose, I don't want

25   to muddy one up when you're focussed on
```

1    something, to muddy it up.  And that's part of

2    the reason.  Strategically it makes no sense at

3    all to cross notice some of these and then some

4    others -- I mean, the plaintiffs aren't

5    interested in incurring more time and expense if

6    we don't need to and some others where we have

7    some adequate time to cover everything then it

8    would make sense to do it.  But we wouldn't want

9    to be bound to do it every time.

10            THE COURT:  No.  And, you know, down

11   the -- well, I -- and that's why I say, just --

12   it's just kind of a general encouragement, just

13   be efficient where you can.  And, you know, a

14   lot of these class actions in particular

15   because, well, the way that they almost all

16   lined up, I mean, a lot of times in these cases

17   people are doing discovery about discovery and,

18   you know, the discovery itself becomes the

19   entire -- becomes the show and so, you know,

20   let's just be efficient and --

21            MR. TILLERY:  All right, Judge.

22            THE COURT:  And anything else?

23            MR. POPE:  No, Your Honor.

24            THE COURT:  All right guys, good luck.

25            MR. TILLERY:  Thank you.

1    STATE OF ILLINOIS.          )
                                 )      SS.
2    COUNTY OF PERRY             )

3

               I, Michelle Zimmerman, a Notary Public
4    in and for the County of Perry, State of
     Illinois, do hereby certify:
5              That the said proceeding was taken
     before me as a Notary Public at the said time
6    and place and was taken down in shorthand
     writing by me;
7              That I am a Certified Shorthand
     Reporter of the State of Illinois, that the said
8    proceeding was thereafter under my direction
     transcribed into computer-assisted
9    transcription, and that the foregoing transcript
     constitutes a full, true, and correct report of
10   the proceedings which then and there took place;
               IN WITNESS WHEREOF, I have hereunto
11   subscribed my hand and affixed my official seal
     this 16th day of September, 2010.

12

13

14            /s/MICHELLE ZIMMERMAN
           Michelle Zimmerman, CSR#084-004339
15         Notary Public in and for the County
                of Perry, State of Illinois

16

17

18

19

20

21

22

23

24

25