IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CITY OF GREENVILLE, ILLINOIS, et al., | ) <br> ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Case No. 3:10-cv-188-JPG <br> ) |
| SYNGENTA CROP PROTECTION, INC., and SYNGENTA AG, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Syngenta Crop Protection, Inc.'s ("Syngenta"), Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 22). Because parts of the motion request dismissal for lack of subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(1) is also relevant. The plaintiffs have responded to the motion (Doc. 68). In addition, Syngenta has submitted supplemental authority (Doc. 102), and the plaintiffs have responded to that authority (Doc. 104).

**I.      Background**

The plaintiffs, who are all providers of water to the public, are obligated under the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.*, and the regulations promulgated thereunder, to test the finished water – that is, the water after the plaintiffs have processed it from their raw water – they provide to the public to ensure it does not contain contaminants in concentrations that exceed maximum contaminant levels ("MCLs") deemed acceptable by the United States Environmental Protection Agency ("EPA"). One of the contaminants that can be found in raw water is atrazine, an herbicide used by farmers. The MCL for atrazine is 3 parts per billion

("pbb") on an average annualized basis. *See* 40 C.F.R. § 141.50(b). The best available technology to remove atrazine from raw water is a granular activated carbon ("GAC") filtration system. *See* 40 C.F.R. § 142.62.

The plaintiffs filed this lawsuit alleging that Syngenta manufactured atrazine and sold it to farmers knowing it had great potential to run off of crop land and into bodies of water, including the bodies of water from which water providers like the plaintiffs draw their raw water. The plaintiffs seek to hold Syngenta and its parent company, Syngenta AG, liable for the costs they have incurred to test and monitor levels of atrazine and to remove it from their raw water. They also seek to recover the costs that will be required for each plaintiff to construct, install, operate and maintain a GAC filtration system, or its equivalent, to filter atrazine from its raw water in the future, and to collect punitive damages. They assert state law causes of action for trespass onto their rights to possess the raw water (Count 1), public nuisance by unreasonably interfering with their use and enjoyment of their raw water sources (Count II), strict liability for manufacturing, marketing and selling an unreasonably dangerous product (Count III) and negligence for breaching various duties to the plaintiffs to avoid contaminating their raw water sources (Count IV). The plaintiffs plead their complaint as a class action.

Syngenta asks the Court to dismiss the plaintiffs' claims against it on the grounds that the plaintiffs do not have standing to bring this action because they have suffered no injury from Syngenta's actions. It also seeks to chip away at individual claims because they are have no merit under certain states' laws and to dismiss claims for damages based on future events or based on events that occurred more than five years before the plaintiffs filed this lawsuit.

The plaintiffs counter all Syngenta's arguments except one – that Indiana law, which would apply to the claims of plaintiffs City of Jasper, Indiana, and Indiana-American Water

Company, does not provide a cause of action for strict products liability for design defects.

The Court addresses each argument in turn, beginning, of course, with the issue of standing.

**II.     Analysis**

    A.     <u>Standing</u>

The doctrine of Article III standing is a component of the Constitution's restriction of federal courts' jurisdiction to actual cases or controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see* U.S. Const. art. III, § 2. Standing contains three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical. . . . Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. . . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (internal citations, quotations and footnotes omitted). The party asserting federal jurisdiction bears the burden of establishing it "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883-89 (1990)). Thus, at the pleading stage, the plaintiffs must sufficiently allege facts to support their standing to sue. Syngenta's standing challenge centers on the plaintiffs' pleading of the first element – injury in fact.

The Court considers Syngenta's standing argument under Federal Rule of Civil Procedure 12(b)(1) because it challenges the Court's subject matter jurisdiction. When considering a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff."

*Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). It may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.*

Syngenta argues that the plaintiffs have not adequately alleged an injury in fact because they have not alleged that their raw water sources or the finished water they provide to the public contain atrazine above the MCL. As a consequence, Syngenta argues, the plaintiffs have suffered no injury from its conduct because they have not been impaired in their ability to provide potable water to the public and have not demonstrated a likelihood they will be so impaired in the future. Syngenta cites in support of its position *Iberville Parish Waterworks District No. 3 v. Novartis Crop Protection, Inc.*, 45 F. Supp. 2d 934, 938 (S.D. Ala.), *aff'd*, 204 F.3d 1122 (11th Cir. 1999), as well as a number of cases in which courts have found no injury in fact where contamination of the plaintiff's property has not exceeded, or even approached, the MCL or other acceptable levels as determined by an administrative agency. *See, e.g., Koronthaly v. L'Oreal USA, Inc.*, No. 08-4625, 2010 WL 1169958, *2 (3d Cir. March 26, 2010) (purchasers of lipstick had no standing to sue lipstick manufacturer where lipstick lead content did not exceed safe levels as determined by Food and Drug Administration); *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 623 (Ky. App. 2003) (landowners had no standing to sue for damage to land contaminated by insignificant amounts of polychlorinated biphenyls, also known as PCBs); *City of Moses Lake v. United States*, 430 F. Supp. 2d 1164, 1184 (E.D. Wash. 2006) (without addressing the standing issue, court held municipal water supplier suffered no injury where there was no danger of contaminants in excess of the MCL during the relevant time period).

The plaintiffs, on the other hand, argue that the mere presence of atrazine in their raw

4

water sources causes injury because they must monitor and remediate the contamination to ensure atrazine levels in their finished water do not exceed the MCL.  Whether the levels exceed the MCL is not a bright-line test for injury, they claim.  In support of their position, the plaintiffs rely on *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 458 F. Supp. 2d 149 (S.D.N.Y. 2006).

In *Iberville Parish*, the primary case on which Syngenta relies, two local water systems sued an atrazine producer for the increased water processing costs they had incurred, or would be forced to incur, to remove atrazine from their raw water as well as costs for testing their raw water for the presence of atrazine.  *Iberville Parish*, 45 F. Supp. 2d at 936.  Although the atrazine concentration in its finished water had never exceeded the MCL, the first plaintiff had taken certain (unsatisfactory) measures to reduce the threat of high atrazine levels by removing it from its raw water and hoped to install a GAC filter system to remove all atrazine from its raw water.  *Id.* at 938-39.  The second plaintiff, whose finished water had also never exceeded the MCL, had installed a pilot GAC filter system and intended to install a full-scale GAC system in a general effort to improve its water treatment but not specifically in response to an atrazine threat.  *Id.* at 940.  The court concluded that neither party had suffered an injury in fact.  *Id.* at 941.  It assumed without discussion that there could be no injury from atrazine contamination unless a water provider's finished water exceeded the MCL.  *Id.* at 941-42.  There had been no such injury and there was no imminent danger of one, so the court concluded the plaintiffs did not have standing to sue to recover costs of atrazine removal.  *Id.* at 942.  As for the plaintiffs' claims to recover the cost of testing their raw water for atrazine, the court likewise held the plaintiffs had no standing because the first plaintiff did no testing and the second plaintiff tested its raw water voluntarily for other purposes.  *Id.* at 943.

5

*In re: MTBE* came to a different conclusion in an analogous situation. There, the court considered the consolidated cases of municipal water providers and regulators against MTBE manufacturers for MTBE contamination of raw water sources. *In re: MTBE*, 458 F. Supp. 2d at 151. The Court explicitly addressed the question of "the extent to which an MCL defines what constitutes a legally cognizable harm." *Id.* at 154. After a review of cases addressing the relationship between MCL and injury, including *Iberville Parish*, the court held that while MCL levels *can* define injury to owners of contaminated property, they do not *necessarily* define injury if the property owner uses the property to satisfy a further duty to others to keep the property free from a certain level of contamination. *Id.* at 155-56. Specifically, the court contrasted two cases, *Adams v. A.J. Ballard, Jr. Tire & Oil Co.*, No. 01-Civ-1271, 2006 WL 1875965 (N.C. Super. June 30, 2006), and *Brooks v. E.I. Du Pont De Nemours & Co.*, 944 F. Supp. 448 (E.D.N.C. 1996), where plaintiffs sued for damages to their private water supplies from sub-MCL MTBE contamination and were found not to have standing, with the MTBE consolidated litigation, where the public water suppliers had "a duty to take action – be it testing, monitoring, or treating contaminated wells – *before* that contamination reaches the applicable MCL." *Id.* at 155. The court concluded that the plaintiffs could be injured when contamination affects raw water quality even if it does not exceed the MCL. *Id.* at 155-56.

The *In re: MTBE* court distinguished *Iberville Parish* on the grounds that, there, little of the remediation expense the plaintiffs sought to recover was due to the atrazine contamination and some of the expenses claimed had not yet been incurred. *Id.* at 156. In contrast, in the *In re: MTBE* case, the plaintiffs had already incurred costs to monitor, test and treat contaminated raw water. *Id.*

The Court finds *In re: MTBE* more persuasive. Clearly, if a contaminant manufacturer

6

creates a need (not just a desire) to monitor or remediate raw water for the particular contaminant that it would not otherwise monitor or remediate in order to satisfy its duty to the public, it has made more difficult and more costly the job of the water supplier to use the water to meet its statutory obligation to provide clean water. Thus, the public water provider has suffered a specific and concrete injury to its protected interests because of the manufacturer's actions. It is illogical to state that because a public water supplier successfully removes a contaminant from raw water and delivers potable water to the public, the supplier's excess costs – no matter how large – caused by a product manufacturer's indiscriminate disregard for the impact of its product on raw water sources cannot be an injury in fact. While this was not the exact situation in *Iberville Parish*, the rule applied in that case would yield such a result. Furthermore, it seems an extremely bad rule to require a public water supplier to provide overly contaminated water to the public before it can seek redress from one responsible for the contamination. Thus, the Court agrees with the *In re: MTBE* court that a water provider may demonstrate an injury in fact even if its finished water does not exceed an MCL if its use of the water to meet its statutory obligations to the public becomes more costly because of a defendant's conduct.

      Here, the plaintiffs allege that their raw water sources have been damaged by contamination by atrazine manufactured by Syngenta. They also allege that the presence of Syngenta's atrazine in their raw water sources has required or will require them to perform additional testing and monitoring beyond their routine testing and monitoring and to install and operate special systems to filter atrazine from the raw water. Additionally, they seek recovery of past costs for installing and operating the special filtration systems. The allegations that the presence of Syngenta's atrazine in their water sources has forced them to incur additional

7

expenses in order to provide potable water to the public is sufficient to establish an injury in fact and to demonstrate – at the motion to dismiss stage, at least – that they have standing to sue. Whether the plaintiffs' past costs were actually caused by Syngenta or by some other concern or atrazine manufacturer is a matter to be fleshed out at later stages of this litigation. For now, the plaintiffs have sufficiently alleged standing to sue.[1]

The alternative nature of the plaintiffs' pleading does give the Court pause; they allege Syngenta's actions "required and/or will require" additional costs to their water processing operations. Although the Court has found this sufficient at the pleading stage, it notes that, in order to establish standing at the summary judgment stage and at trial, the plaintiffs will be required to show that any costs they seek to recover, past or future, must have been or will be necessary in order to satisfy their statutory obligation to provide potable water, not simply to serve a lesser, though laudable, goal. For example, the plaintiffs can demonstrate standing if they can show that levels of atrazine in their raw water sources so exceed the MCL that a CAG filtration system is required for them to provide potable water to the public. Similarly, if the atrazine in the plaintiffs' raw water sources is at a level that credibly threatens to push the atrazine level in the plaintiffs' finished water above the MCL, testing might be required. However, if, as in *Iberville Parish*, a plaintiff installs a CAG filter simply to improve water quality outside a specific, imminent threat of atrazine in excess of the MCL, establishing standing will be difficult, if not impossible. *See, e.g., Emerald Coast Utils. v. 3M Co.*, No.

---

[1] For the same reasons the Court finds the plaintiffs have alleged an injury in fact, it finds they have alleged that their claims are ripe for adjudication. "[R]ipeness is peculiarly a question of timing" rather than a limit on subject-matter jurisdiction. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974); *see Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 537-39 (7th Cir. 2006). Here, the plaintiffs' allegations that they have been required to pay additional costs for water processing plead a claim that is ripe for adjudication.

3:09cv361/MCR/MD, 2010 WL 3835131, * 10- * 12 (N.D. Fla. Sept. 29, 2010) (granting summary judgment where no evidence of raw water contamination above safe levels, of water testing obligation as a result of lower level contamination, of impact on filter change rate or of public image harm).[2]

In so holding, the Court makes no judgment as to whether Syngenta is actually responsible for atrazine in the plaintiffs' raw water sources or for any necessary costs of monitoring or remediating water from those sources, or as to whether atrazine is in fact a defective product. At this stage of the litigation, it is enough that the plaintiffs allege it is so. They have done this, and as a consequence, the Court finds they have established at this stage of the litigation that they have standing to bring this case.

B.      Failure to State a Claim

The Court considers the remainder of Syngenta's motion under Federal Rule of Civil Procedure 12(b)(6). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that

---

[2] *Emerald City* is one of the cases Syngenta cited in its supplemental authority submitted to the Court after briefing was complete. The other cases in that submission, *North Carolina ex rel Cooper v. Tennessee Valley Authority*, 615 F.3d 291 (4th Cir. 2010), and *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127 (10th Cir. 2010), have nothing to do with standing, the economic loss doctrine or any other arguments Syngenta made in its motion to dismiss.

the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl.*, 550 U.S. at 556).

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atlantic*, 550 U.S. at 561–63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is

10

subject to dismissal. *Airborne Beepers*, 499 F.3d at 667.

All parties agree that the law of the jurisdiction of which each plaintiff is a citizen provides the rule of law for that plaintiff's claim. The Court will now analyze each argument for dismissal under Rule 12(b)(6) using the appropriate state's law.

1. Strict Liability Under Indiana Law

Syngenta asks the Court to dismiss the claims of Indiana plaintiffs City of Jasper, Indiana, and Indiana-American Water Company under Count III on the grounds that Indiana law does not recognize a cause of action for strict liability for a design defect. It is true that under Indiana law design defect claims are governed by negligence principles, and strict liability is reserved only for manufacturing defect cases. *See* Ind. Code §34-20-2-2; *Schultz v. Ford Motor Co.*, 822 N.E.2d 645, 649 (Ind. App. 2005) (noting that under the Indiana Product Liability Act, recovery for strict liability is available only in manufacturing defect cases and that recovery for design defects required proof of negligence). The plaintiffs do not dispute this legal principle or the inevitable conclusion that flows from it: The Court must dismiss the claims in Count III of Indiana plaintiffs City of Jasper, Indiana, and Indiana-American Water Company.

2. Economic Loss Under Ohio, Iowa, Kansas, Missouri and Indiana Law

Syngenta asks the Court to dismiss the plaintiffs' claims because they seek only to recover for economic loss – the costs to upgrade their filtration systems as a normal business cost – and not for damage to their property. They argue that under Ohio, Iowa, Kansas, Missouri and Indiana law, the plaintiffs cannot recover for purely economic damages. On the other side, the plaintiffs argue that the economic loss rules do not apply because this is not a case of disappointed commercial expectations and the plaintiffs have indeed suffered damage to their property rights in their raw water sources.

The economic loss rule prevents a party from recovering purely economic losses in a tort action. 1 J.D. Lee & Barry Lindahl, Modern Tort Law: Liability and Litigation § 2:5 (2d ed.); *see Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153-54 (Ind. 2005); *Northwest Ark. Masonry, Inc. v. Summit Specialty Prod., Inc.*, 31 P.3d 982, 987 (Kan. Ct. App. 2001); *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (Ohio 1989); *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 128 (Iowa 1984); *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988); *Sharp Bros. Contracting Co. v. American Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. 1986). Thus, where a tortfeasor does not cause injury to any person or property in which the defendant has a property interest (other than a defective product itself the manufacture or design of which constitutes the tort), generally the plaintiff cannot recover in tort from the tortfeasor for any monetary losses it suffered, for example, lost profits, rental expenses and the value of lost time.

This principle generally manifests itself in two situations: (1) where a plaintiff suffers purely economic loss attributable to a tortfeasor's damage to property in which the plaintiff has no property interest, *see, e.g., Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 128 (Iowa 1984) (nearby businesses cannot recover for tortfeasor's defective product used to manufacture bridge that ultimately impeded customer access to businesses because businesses had no property interest in bridge), and (2) where a plaintiff suffers economic loss and property damage but only to the defective product that is the subject of the suit, *see, e.g., Chemtrol*, 537 N.E.2d at 630-31 (commercial buyer of dryer system cannot recover against dryer manufacturer for economic losses where only property damage was to dryer system itself). The plaintiff may, however, recover when the there is damage to property in which the plaintiff has a property interest other than the defective product itself. *See* 1 J.D. Lee & Barry Lindahl,

Modern Tort Law: Liability and Litigation §§ 27.58, 27:98, 27.99 (2d ed.). The economic loss rule maintains a distinction between tort law, which is designed to redress losses from a breach of duty imposed by law to protect society, and contract law, where parties are free to agree how to govern their relations. *Chemtrol*, 537 N.E.2d at 627-28.

The economic loss rule simply does not apply in this case because the plaintiffs have alleged that the defendants are responsible for damages to their property rights in their raw water sources by causing those sources to be contaminated by atrazine. This alleged property damage takes their claims out of the territory barred by the economic loss rule. Another case in the MTBE multidistrict litigation supports this position: *In re MTBE*, 457 F. Supp. 2d 455 (S.D.N.Y. 2006). In that case, the court found that state law had granted the plaintiff water district a usufructory interest in its water sources, that is, a possessory property right to use the water for some beneficial use. *Id.* at 460-61. The plaintiff's allegation that the defendants had contaminated the water sources in which it had such a possessory right and that it had, as a consequence, been caused to expend resources to test and remediate the water from the contaminated sources, established that the alleged harm was not purely economic. *Id.* at 462.

This case is consistent with *Queen City Terminals, Inc. v. General American Transportation Corp.*, 653 N.E.2d 661, 664 (Ohio 1995), a case decided by the Ohio Supreme Court. In that case, Queen City Terminals, a shipping terminal owner, had invested in improvements to property it leased to allow it to store and ship benzene, a hazardous chemical. *Id.* at 664. Because the manufacturer of a train car designed to transport the benzene negligently constructed the train car, benzene leaked on property leased by Queen City Terminals, its permit to store and ship benzene was revoked, and its improvements to the property were rendered essentially worthless. *Id.* at 665-55. The Ohio Supreme Court noted that such damages were

indirect economic damages but that they were recoverable in tort because they arose from "tangible property damage" caused by the spill. *Id.* at 667-68.

Like the plaintiff in *In re MTBE*, 457 F. Supp. 2d 455 (S.D.N.Y. 2006), the plaintiffs in this case have rights to possess water from their raw water sources in order to use the raw water to provide finished, potable water to the public. In some situations, they may also have riparian rights granted to those owning property abutting a raw water source or other state-granted rights. As in *In re MTBE* and in *Queen City Terminals*, the alleged contamination by a hazardous chemical amounted to tangible property damage to a possessory right. The plaintiffs believe this damage led or will lead directly to increased costs of their operations. These allegations are sufficient to prevent the economic loss rule from barring the plaintiffs' suit.

*Ashtabula River Corp. Group II v. Conrail, Inc.*, 549 F. Supp. 2d 981, 986-87 (N.D. Ohio 2008), does not convince the Court to hold otherwise. First, *Ashtabula*'s discussion of the economic loss doctrine is *dicta*; the tort claims in that case were dismissed as preempted by the Comprehensive Environmental Response, Compensation, and Liability Act, so any pronouncements as to the economic loss rule are not necessary to the decision. *Id.* at 986. Second, *Ashtabula* is distinguishable from the case at bar because in that case the plaintiffs had no damaged property interest. There, the plaintiffs were a group of entities undertaking to clean up hazardous substances but had no property rights in any damaged property. Thus, they suffered purely economic losses, not property damage. *Id.* at 986-88.

       3.    <u>Future Damages</u>

Syngenta asks the Court to dismiss the plaintiffs' claims for future damages because they have insufficiently pled that the future damages are reasonably certain and that the alleged nuisance is permanent. It is true that whether the future damages claimed are too speculative and

whether the nuisance is temporary may limit the plaintiffs' recovery should they prevail. *See Diaz v. Legat Architects, Inc.*, 920 N.E.2d 582, 608-09 (Ill. App. Ct. 2009) ("Possible future damages are not recoverable by the plaintiff unless they are reasonably certain to follow."); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1138 (Ill. 2004) ("An award of damages in an action for nuisance is 'retroactive, applying to past conduct,' . . . ."; citing Restatement (Second) of Torts § 821B). However, neither of these issues is dispositive of the plaintiffs' claims under Rule 12(b)(6) as long as they have adequately pled some damages, which they have. The question of how much the plaintiffs can legally recover is a matter to be decided at a later stage of this case. *See, e.g.,* Fed. R. Civ. P. 56(d)(1).

    4.  Statute of Limitations

 Syngenta asks the Court to dismiss the plaintiffs' claims for damages for conduct that occurred more than five years prior to March 24, 2010, when they filed the complaint in this case. It believes the plaintiffs have pled too much by alleging facts showing that they discovered or should have discovered some of their injuries, and that those injuries were wrongfully caused, more than five years before filing this suit, so they can recover, at the most, for injuries that occurred within the five years before this suit. Syngenta also argues that under the facts pled, the continuing wrong doctrine cannot apply.

  The plaintiffs note that the statute of limitations is an affirmative defense that the plaintiffs do not have to anticipate and overcome in their complaint. They further argue that the statute of limitations was tolled because Syngenta's conduct amounted to a continuing violation and that the municipal plaintiffs are not subject to statutes of limitation.

  All parties appear to agree that the Illinois five-year statute of limitations applies in this case, *see* 735 ILCS 5/13-205, and the Court will not second-guess that assumption. However, as

with Syngenta's future damages arguments, its statute of limitations argument is not appropriate for resolution under Rule 12(b)(6). The plaintiffs have pled some injury that falls within the statute of limitations, so their claims are not subject to dismissal on limitations grounds. Whether their recovery, if any, is limited by the statute of limitations is an issue for later in the case. *See, e.g.,* Fed. R. Civ. P. 56(d)(1).

**III. Conclusion**

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Syngenta's motion to dismiss (Doc. 22). The Court **GRANTS** the motion to dismiss to the extent it seeks to dismiss the claims in Count III brought by plaintiffs City of Jasper, Indiana, and Indiana-American Water Company, **DISMISSES** those claims **with prejudice**, and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case. The Court **DENIES** the motion in all other respects.

One further housekeeping note is in order. The parties have made valiant efforts to confine themselves to the page limits set by the applicable Local Rules. They have done this, however, by using fonts of less than 12 points and by nesting their numerous citations in footnotes written in exceedingly small font, making it very difficult for the Court to read. The briefing contains numerous arguments, each deserving of full – and readable – treatment. When this is the case, the parties should not hesitate to ask the Court for reasonable extensions of the page limits to allow them to prepare their documents entirely in 12-point font and to set forth their citations in the body of the document following the propositions they support.

**SO ORDERED.**
**DATED: November 18, 2010.**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT, District Judge**