# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CITY OF GREENVILLE, et al., individ-<br>ually, and on behalf of all others similarly<br>situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>SYNGENTA CROP PROTECTION,<br>INC., and SYNGENTA AG,<br><br>       Defendants. | Case No.: 3:10-cv-00188-JPG-PMF |

---

## SETTLEMENT AGREEMENT

---

This Settlement Agreement is made and entered into, subject to Final Approval of the Court , as of May 24, 2012, by and between Plaintiffs and Syngenta Crop Protection, LLC, and Syngenta AG (hereinafter "Defendants").

## 1. RECITALS

**1.1.** WHEREAS, the Settlement (as hereinafter defined) has been reached, subject to the Final Approval of the Court as provided herein, after extensive, arm's-length negotiations between Plaintiffs' and Defendants' Counsel extending for many months; and

**1.2.** WHEREAS, the Plaintiffs and their Counsel have concluded, after a thorough investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted, the legal and factual defenses thereto, and the applicable law, the burdens, risks, uncertainties, and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the claims, that it would be in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Settlement Class, and further, that Plaintiffs and their Counsel consider the Settlement set forth herein to be fair, reasonable, and adequate and in the best interests of the Settlement Class; and

**1.3.** WHEREAS, Defendants, while continuing to deny any violation, wrongdoing, or liability with respect to any and all claims asserted in the Litigation, either on their part or on the part of any of the Released Parties, have nevertheless concluded that they will enter

into this Settlement Agreement in order, among other things, to avoid the expense, inconvenience, and distraction of further litigation.

**1.4.** NOW, THEREFORE, the undersigned agree, on behalf of Defendants and Plaintiffs, that subject to the Final Approval of the Court, the Litigation be settled, compromised and dismissed with prejudice in accordance with the terms of this Settlement Agreement, and without costs against the Settlement Class or Defendants (except as provided below), on the following terms and conditions:

**2. DEFINITIONS –** As used in this Agreement and its Exhibits, the following capitalized terms shall have the respective meanings set forth below.

**2.1. Agreement -** The term "Agreement" or "Settlement Agreement" shall mean and refer to this document evidencing a mutual settlement and release of disputed claims, and it shall also incorporate those other documents exhibited to, contemplated by and/or identified in this Agreement including, but not limited to, the Notice and the Claim Form.

**2.2. Atrazine** – "Atrazine" shall mean atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine), and to the extent they were, or were derived from, either constituents, or metabolites or degradates of a constituent, of a product that contained atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient, all Atrazine Related Compounds, Atrazine Degradant Chemicals, and Atrazine Combination Chemicals. "Atrazine Degradant Chemical" means any of the chemicals into which atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) breaks down via microbial action, hydrolysis, dealkylation, dehalogenation, deamination, and photodegradation. Atrazine Degradant Chemicals include, but are not limited to chlorotriazine and hydroxyl triazine degradates. Chlorotriazine degradates include, but are not limited to deethylatrazine, deisopropylatrazine, and diaminochloroatrazine. Hydroxyl triazine degradates include, but are not limited to ammeline, ammelide, cyanuric acid, n-ethylammelide, n-isopropylammelide, hydroxyatrazine, hydroxydeisopropylatrazine, and hydroxideethylatrazine. "Combination Chemical" means any of the chemicals that are formed by the reaction and/or combination of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine), Atrazine Related Compounds or Atrazine Degradant Chemicals with other chemicals (including nitrates) commonly found in water supplies or in the environment in which atrazine is used. "Atrazine Related Compound" means any of the compounds, including but not limited to simazine, which are identified collectively as "related compounds" in the list of active ingredients on the label for, or packaging of, any product containing atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient.

**2.3. Business Day –** Shall mean any day other than a Saturday, Sunday or legal holiday in the United States of America as defined by Fed. R. Civ. P. 6(a)(6), or a statutory holiday in Switzerland.

**2.4. Claim Form –** "Claim Form" shall mean and refer to the document or online form that Class Members are required to use in order to receive a payment under this Agreement as specified in Paragraph 8.3.

2

**2.5. Class Counsel –** "Class Counsel" shall mean and refer to Stephen M. Tillery and the law firm of Korein Tillery LLC, 505 North 7th Street, Suite 3600, St. Louis, Missouri, 63101, United States of America (hereinafter "Korein Tillery"), and Scott Summy and the law firm of Baron & Budd, 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas, 75219-3605, United States of America.

**2.6. Class Member -** The term "Class Member" shall mean and refer to an individual member of the Settlement Class.

**2.7. Class Period –** The period ending on the date ninety (90) calendar days after the date on which the Court grants Preliminary Approval of the Settlement.

**2.8. Claims Administrator -** "Claims Administrator" or "Settlement Administrator" or "Settlement Claims Administrator" means the person selected as provided in Paragraph 6.1 of this Agreement.

**2.9. Community Water System -** "Community Water System" shall have the same meaning as it is given in 42 U.S.C. § 300f(15) (2006): "a public water system that— (A) serves at least 15 service connections used by year-round residents of the area served by the system; or (B) regularly serves at least 25 year-round residents."

**2.10.     Court -** The term "Court" shall mean and refer to any Judge for the United States District Court for the Southern District of Illinois, or of any other court, who presides over this action or this Agreement.

**2.11.     Defendants –** "Defendants" shall mean and refer to Syngenta Crop Protection LLC, sued in the Litigation under its former name Syngenta Crop Protection, Inc, a corporation incorporated in the State of Delaware, United States of America, whose principal place of business is at 410 Swing Road, Greensboro, North Carolina, NC-27419-8300, United States of America, and Syngenta AG, a Swiss corporation whose principal place of business is at Schwarzwaldallee 215, CH-4058 Basel, Switzerland.

**2.12.     Defendants' Counsel -** "Defendants' Counsel" shall mean and refer to Michael A. Pope and the law firm of McDermott Will & Emery LLP, 227 West Monroe Street. Chicago, Illinois, 60606-5096, United States of America.

**2.13.     Effective Date -** "Effective Date" shall mean and refer to the date which occurs thirty (30) calendar days after the date of Final Judgment.

**2.14.     Escrow Agent –** "Escrow Agent" shall have the meaning ascribed to that term by Paragraph 5.1.1.1 of this Agreement.

**2.15.     Final Approval –** "Final Approval" shall mean the entry by the Court of the Order Granting Final Approval.

**2.16.     Final Fairness Hearing -** The "Final Fairness Hearing" will be a hearing set by the Court where, among other things, the Court, in its discretion, will provide an opportunity for any Class Member who wishes to object to the fairness, reasonableness or ad-

equacy of the Settlement an opportunity to be heard, provided that the Class Member complies with the requirements for objecting to the Settlement as set out in Paragraph 7.3. The date of the Final Fairness Hearing shall be set by the Court and communicated to the Settlement Class in a Court-approved Settlement Notice under Federal Rule of Civil Procedure 23(c)(2).

2.17.    **Final Judgment** – The judgment in this case shall become final on the earliest date on which all of the following events shall have occurred: The Settlement is approved in all respects by the Court in this case as required by Fed R. Civ. P. 23(e); the Court enters a Judgment that terminates this action and satisfies the requirements of Fed. R. Civ. P. 58; and the time for appeal of the Court's approval of this Settlement and entry of the Final Order and Judgment under Fed. R. App. P. 4 has expired or, if appealed, approval of this Settlement has been affirmed by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further review (Fed. R. App. P. 40) or appeal (U.S. Sup. Ct. R. 13) or the appeal is voluntarily dismissed. (Fed. R. App. P. 42).

2.18.    **Litigation** –The Litigation means collectively *City of Greenville, et al. v. Syngenta Crop Protection, Inc. and Syngenta AG*, 3:10-cv-00188 (S.D. Ill.); *Holiday Shores Sanitary District, et al. v. Sipcam Agro USA, Inc. and Growmark, Inc.*, 04-L-708 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Drexel Chemical Co. and Growmark, Inc.*, 04-L-709 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Syngenta Crop Protection Inc. and Growmark, Inc.*, 04-L-710 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. United Agri Products and Growmark, Inc.*, 04-L-711 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Makhteshim-Agan of North America, Inc. and Growmark, Inc.*, 04-L-712 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Dow Agrosciences LLC and Growmark, Inc.*, 04-L-713 (Ill. Cir. Ct.)).

2.19.    **Measurable Concentration** – a concentration equal to or greater than the limit of quantitation of the analytical method used.

2.20.    **Notice** – "Notice" shall mean any form through which Class Members are notified of their rights with respect to this Agreement in accordance with Paragraph 7.2 of this Agreement.

2.21.    **Notice Plan** – "Notice Plan" shall mean the plan for distribution of the Notice, including direct mail and publication, as appropriate, which is subject to the approval of the Court as provided in Paragraph 7.1 of this Agreement.

2.22.    **Objection** – "Objection" shall have the meaning ascribed to that term by Paragraph 7.3 of this Agreement.

2.23.    **Order Granting Final Approval -** The "Order Granting Final Approval" shall mean and refer to the order entered by the Court approving, among other things, the terms and conditions of this Agreement, including the manner and timing of providing Notice, and certifying a Settlement Class.

2.24.    **Order Granting Preliminary Approval** – "Order Granting Preliminary Approval" shall mean and refer to the order entered by the Court conditionally approving the terms and conditions of this Agreement, including among other things, the conditional certification of the proposed class, the manner and timing of providing Notice, the time period for opting out and filing objections, and the date of the Final Fairness Hearing. The Parties will submit to the Court a proposed Order Granting Preliminary Approval in the form attached hereto as Exhibit 1.

2.25.    **Parties** – "Parties" shall mean and refer to Defendants, Plaintiffs and the Settlement Class, as defined herein, and to the extent that the Defendants, Plaintiffs and the Settlement Class discharge any of their obligations under this Agreement through agents, the actions of those agents shall be considered the actions of the Parties.

2.26.    **Preliminary Approval** – "Preliminary Approval" shall mean and refer to the entry by the Court of the Order Granting Preliminary Approval.

2.27.    **Qualifying Test Result** – The result of analytical testing of the Class Member's Water performed during the Class Period using any state or federal agency-approved analytical method.

2.28.    **Released Claims** – shall mean all claims of the Releasing Parties arising out of, or relating to, the presence of Atrazine in the Releasing Parties' Water as a result of the development, manufacture, formulation, distribution, transportation, storage, loading, mixing, application, or use of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) or products that contain atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient that any Releasing Party asserted or could have asserted in the Litigation. Released Claims shall not include any claim for indemnity, contribution among joint tortfeasors or apportionment of liability or fault, with respect to any claim against a Releasing Party, arising from the consumption of the Releasing Parties' Water, that is not a claim for property damage or economic loss.

2.29.    **Released Parties** – shall mean Defendants and all other manufacturers, contract manufacturers, research collaborators with Defendants or with such other manufacturers, formulators , distributors, retailers, purchasers, applicators, and users of Atrazine, including the defendants (in addition to the Defendants) in the Litigation, which are Sipcam Agro USA, Inc., Growmark, Inc., Drexel Chemical Co., United Agri Products, Makhteshim-Agan of North America, Inc. and Dow Agrosciences LLC, and their present and former parents, subsidiaries, divisions, affiliates, stockholders, benefit plans, officers, directors, employees, attorneys, insurers, agents and any of their legal representatives, and the predecessors, heirs, executors, administrators, successors and assigns of each of them.

2.30.    **Releasing Parties** – Shall mean the Plaintiffs, on behalf of themselves and all Class Members, and their respective successors, heirs and assigns, and anyone acting on their behalf, including in a representative or derivative capacity.

**2.31.**      **Settlement** – "Settlement" shall mean the settlement of the Litigation which is provided for by this Agreement.

**2.32.**      **Settlement Class** – "Settlement Class" shall mean and refer to every Community Water System in the United States of America for which any Qualifying Test Result shows any Measurable Concentration of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine).

**2.33.**      **Settlement Fund** – "Settlement Fund" shall mean the fund in the total amount of One Hundred and Five Million United States Dollars (U.S. $105,000,000.00) which is provided for by Paragraph 5.1.1. of this Agreement.

**2.34.**      **Taxes** – "Taxes" shall have the meaning ascribed to that term by Paragraph 5.1.1.2.3 of this Agreement.

**2.35.**      **Tax Expenses** - "Tax Expenses" shall have the meaning ascribed to that term by Paragraph 5.1.1.2.3 of this Agreement.

**2.36.**      **Water** – the term "Water" shall mean and refer to water in which a Class Member possesses a legal or equitable right, title or interest, and that is drawn from a lake, reservoir, river, stream, creek, well or other source of water used by the Class Member to provide drinking water, including such drinking water.

## 3.   REPRESENTATIONS and WARRANTIES

**3.1.** Class Counsel represent and warrant that neither they nor Plaintiffs nor any person acting on behalf of any of them have commissioned nor are any of them aware of any new scientific studies relating to Atrazine not already in the public domain.  Class Counsel have been duly authorized by Plaintiffs to make the representation and warranty in this paragraph.

**3.2.** Plaintiffs and Defendants represent that they have all requisite corporate power and authority to execute, themselves or respectively by Class Counsel or Defendants' Counsel, deliver and perform this Agreement and to consummate the transactions contemplated herein, that the execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action, and that this Agreement has been duly and validly executed as aforesaid and delivered by Plaintiffs and Defendants and constitutes their legal, valid and binding obligation.

## 4.   CERTIFICATION FOR SETTLEMENT PURPOSES

**4.1. Settlement Class.**  For the sole purpose of effectuating this Settlement, Plaintiffs and Defendants agree jointly to request that the Court certify a Settlement Class consisting of:

    **4.1.1.**   Every Community Water System in the United States of America for which any Qualifying Test Result shows any Measurable Concentration of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine).

## 5.  CONSIDERATION

**5.1.** Under the terms of this Agreement, Defendants agree to provide the following relief to the Settlement Class:

### 5.1.1.  The Settlement Fund

5.1.1.1.    Within fourteen (14) calendar days following the date of Preliminary Approval of the Settlement Agreement, Syngenta Crop Protection, LLC will pay the sum of Five Million United States dollars (US$5,000,000.00) into an interest-bearing account at a federally-insured financial institution with a party mutually agreed upon in writing by the Parties serving as escrow agent (the "Escrow Agent") for the account whose fees and expenses shall be paid from the Settlement Fund and considered a cost of administration of the Settlement Fund. The balance of One Hundred Million United States dollars (US$100,000,000.00) will be paid by Syngenta Crop Protection, LLC into the account within fourteen (14) calendar days following the date of Final Approval.  If Syngenta Crop Protection, LLC fails to fulfill any of its payment obligations in this Paragraph, then Syngenta AG shall be responsible for the balance of any unpaid funds.

#### 5.1.1.2.    Tax Treatment of Settlement Fund.

**5.1.1.2.1.**    The Settlement Fund shall be treated as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 5.1.1.2, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1), back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the sole responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

**5.1.1.2.2.**    For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" as defined in that Section shall be the Escrow Agent.  The Escrow Agent shall file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in Paragraph 5.1.1.2.1 herein) shall be consistent with this Paragraph 5.1.1.2 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 5.1.1.2.3 hereof.

**5.1.1.2.3.**    All: (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, includ-

ing any Taxes or tax detriments that may be imposed upon the Defendants, their insurers or Defendants' counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (the "Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Paragraph 5.1.1.2 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 5.1.1.2 (the "Tax Expenses"), shall be paid out of the Settlement Fund; in all events neither the Defendants, the Plaintiffs, Defendants' insurers, nor Defendants' counsel shall have any liability or responsibility for the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall (notwithstanding anything herein to the contrary) withhold from distribution out of the  Settlement Fund any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither the Defendants, the Plaintiff, their insurers nor their counsel are responsible nor shall they have any liability therefor.

**5.1.1.2.4.** Class Counsel shall enter into an Escrow Agreement with the Escrow Agent which shall be consistent with, and shall give effect to the obligations of the Escrow Agent provided for by, this Agreement.  The Parties agree to cooperate with the Escrow Agent, each other, and their respective tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement.

## 6. ADMINISTRATION

**6.1. Selection of Settlement Administrator** - Within thirty (30) calendar days following execution of this Settlement Agreement, Plaintiffs will retain, subject to prior written approval by Defendants, a settlement claims administrator to administer the proposed settlement including creation and distribution of the Notice specified in Paragraph 7.2 and payment of all claims. Upon application by the Settlement Administrator to the Escrow Agent, all fees and expenses of administration of the Settlement shall be paid out of the Settlement Fund within thirty (30) calendar days of receipt by the Escrow Agent of such application together with such supporting documentation of such fees and expenses as shall reasonably be required by the Escrow Agent.  Defendants and Defendants' Counsel shall have no liability whatsoever for any acts or omissions of the Settlement Administrator, Escrow Agent or Class Counsel or the administration of the Settlement.

## 7. APPROVAL AND NOTICE

**7.1. Preliminary Approval** – Within seven (7) calendar days after the date of this Agreement, Plaintiffs shall submit to the Court a joint motion in the form of Exhibit 2 to this Agreement seeking certification, for settlement purposes only, of the Settlement Class as defined in Paragraph 4.1.1; Preliminary Approval of the Settlement; approval of the form of Notice (attached as Exhibit 3 to this Agreement) and the Notice Plan (attached as Exhibit 4 to this Agreement) and appointment of Class Counsel.

**7.2. Notice –** Notice of the Settlement shall be given as soon as practicable after entry of the Order Granting Preliminary Approval, provided however that the notice process shall commence no later than fourteen (14) calendar days following the entry of such Order. Summary notice shall be provided by the Settlement Administrator to the Settlement Class by first-class U.S. mail where available and by publication elsewhere, to meet the requirements of Rule 23, incorporate the elements suggested by the Federal Judicial Center and describe the aggregate amount of the Settlement Fund and the plan for allocation as specified in Exhibit 5 to this Agreement.  Defendants shall take all necessary steps to comply with 28 U.S.C. § 1715.  Plaintiffs and Defendants will agree in writing on the form and content of the Notices and Claim Forms.

**7.3. Objections to Settlement -** Any Class Member who wishes to object to the Settlement or an award of fees or expenses to Class Counsel must file with the Clerk of the Court, with service on all Parties in accordance with Fed. R. Civ. P. 5 and S.D. Ill. L.R. 5.1, a written and signed statement, designated "Objection."  Service on the Court and all Parties must be completed by the date designated in the Notice.

    **7.3.1.**   All Objections must certify in accordance with 28 U.S.C. § 1746, under penalty of perjury, that the filer has been legally authorized to object on behalf of the Class Member and provide an affidavit or other proof of the Class Member's standing; must provide the name, address, telephone and facsimile number and email address (if available) of the filer and the Class Member; the name, address, telephone and facsimile number and email address (if available) of  any counsel representing the Class Member; must state all objections asserted by the Class Member and the specific reason(s) for each objection, and include all legal support and evidence the Class Member wishes to bring to the Court's attention; must indicate if the Class Member wishes to appear at the Final Fairness Hearing; and, identify all witnesses the Class Member may call to testify.

    **7.3.2.**   Class Members may object either on their own or through any attorney hired at their own expense. If a Class Member is represented by counsel, the attorney must: file a notice of appearance with the Clerk of Court no later than the date ordered by the Court for the filing of Objections and serve all Parties in accordance with Fed. R. Civ. P. 5 and S.D. Ill. L.R. 5.1 within the same time period.

    **7.3.3.**   Any Class Member who fully complies with the provisions of paragraphs 7.3 through 7.3.2 may, in the Court's discretion, appear at the Final Fairness Hearing to object to the Settlement or the award of fees and costs to Class Counsel. Any Class Member who fails to comply with the provisions of paragraphs 7.3 through 7.3.2 shall waive and forfeit any and all rights and objections the Class Member may have

asserted in this action, and shall be bound by all the terms of the Agreement and by all proceedings, orders and judgments with respect to the Settlement .

**7.4. Opt-outs.** Any Class Member who wishes to opt out of the Settlement must file with the Settlement Administrator, with service on all Parties in accordance with Fed. R. Civ. P. 5 and S.D. Ill. L.R. 5.1, a written and signed statement, entitled "Request for Exclusion." Service on the Settlement Administrator and all Parties must be completed by the date designated for that purpose in the Notice.

**7.4.1.** The Request for Exclusion must certify in accordance with 28 U.S.C. § 1746, under penalty of perjury, that the filer has been legally authorized to exclude the Class Member from the Settlement and provide an affidavit or other proof of the Class Member's standing; must provide the filer's name, address, telephone and facsimile number and email address (if available); include the Class Member's name, address, telephone number, and e-mail address (if available) and be received by the Court no later than the date designated for such purpose in the Notice.

**7.5. Termination -** Defendants may terminate this Agreement prior to Final Approval if, based upon application of the Parties' agreed allocation formula as specified in Exhibit 5 to this Agreement, Class Members with claims arising within the ten years preceding the date of this Agreement and with claims together constituting more than 10% by value of the Settlement Fund opt out of the Settlement Class. Defendants' right of termination is waived unless Defendants execute this termination right by notice in writing to the Plaintiffs served within 14 Business Days of the date on which Defendants and Defendants' Counsel are notified in writing by the Settlement Administrator that the termination conditions have been met, or the Parties mutually agree to extend this time.  The Escrow Agent shall, within seven (7) calendar days of receiving written notice of Defendants exercising of their termination right, repay to Syngenta Crop Protection, LLC the Settlement Fund (including interest accrued thereon) less the sum of the notice, administrative, and any other Court-approved costs actually paid or due and payable from the Settlement Fund as of the date on which notice is received (the "Termination Refund") and this Agreement shall thereupon terminate. In the event of such a termination, no class will be deemed certified as a result of this Agreement, and the Litigation for all purposes will revert to its status as of March 30, 2012. In such event, Defendants will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case. Likewise, the participation in the Settlement by any Plaintiff or Class Member cannot be raised as a defense to their claims.

7.6. **Entry of Order of Final Approval -** At the time the Court considers the Order Granting Preliminary Approval, the Parties will request that the Court set the Final Fairness Hearing to take place approximately one hundred and fifty (150) calendar days after Notice is mailed pursuant to paragraph 7.2 above. At the Final Fairness Hearing, the Parties will request that the Court, among other things: (a) enter an Order Granting Final Approval in accordance with this Agreement; (b) conclusively certify the Settlement Class; (c) approve the Settlement Agreement as final, fair, reasonable, adequate and binding on all Class Members; and (d) permanently enjoin any Class Member who has not opted out

from bringing any proceeding in any court. In addition, prior to the Final Fairness Hearing, Class Counsel shall petition the Court for an award of attorneys' fees in an amount not to exceed 33 ⅓ % of the gross amount awarded to the Settlement Class plus costs and expenses.

7.7. **Effect of Failure of Approval -** In the event the Court fails to enter an Order Granting Final Approval in accordance with the terms of this Agreement, the Parties shall proceed as follows:

7.7.1.   If the Court declines to enter the Order Granting Final Approval as provided for in this Agreement, the Litigation will resume unless within thirty (30) calendar days the Parties mutually agree in writing to: seek reconsideration or appellate review of the decision denying entry of the Order Granting Final Approval; or attempt to re-negotiate the Settlement and seek Court approval of the renegotiated settlement.

7.7.2.   In the event the Litigation resumes or the Parties seek reconsideration and/or appellate review of the decision denying entry of the Order Granting Final Approval and such reconsideration and/or appellate review is denied, the Escrow Agent shall, within seven (7) calendar days of receiving written notice of the resumption of the Litigation or the denial of reconsideration or appellate review, repay to Syngenta Crop Protection, LLC the Termination Refund and this Agreement shall thereupon terminate.

7.7.3.   If, for any reason, the Settlement  is not approved by the Court or does not become subject to Final Approval, then no class will be deemed certified as a result of this Agreement, and the Litigation for all purposes will revert to its status as of March 30, 2012. In such event, Defendants will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case. Likewise, if the Settlement is not approved by the Court or does not become subject to Final Approval, then the participation in the Settlement by any Plaintiff or Class Member cannot be raised as a defense to their claims.

7.7.4.   It shall not be deemed a failure to enter the Order Granting Final Approval for the Court to deny, all or in part, the attorneys' fees and cost award requested by Class Counsel. In such case, this Agreement shall be deemed valid and enforceable, notwithstanding the Court's order awarding less than the requested amount of attorneys' fees and costs. However, Class Counsel shall retain all rights of appellate review to such an order without affecting the finality of any award to the Settlement Class.

7.8. **Effect of Failure of Order Granting Final Approval to Become a Final Judgment -** In the event the Order Granting Final Approval does not become a Final Judgment because an appeal is taken of the Order Granting Final Approval, the Parties shall proceed as follows:

11

7.8.1.   In the event the Order Granting Final Approval does not become a Final Judgment because an appeal is taken of the Order Granting Final Approval and the Order Granting Final Approval is reversed by the appellate court, the Litigation will resume unless within thirty (30) calendar days of the appellate court ruling the Parties mutually agree in writing to: seek further reconsideration or appellate review of the appellate decision reversing the Order Granting Final Approval; or attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement.

7.8.2.   In the event the Litigation resumes or the Parties seek further reconsideration and/or appellate review of the appellate decision reversing the Order Granting Final Approval and such further reconsideration and/or appellate review is denied, the Escrow Agent shall, within seven (7) calendar days of receiving written notice of the resumption of the Litigation or the denial of further reconsideration or appellate review, repay to Syngenta Crop Protection, LLC the Termination Refund, and this Agreement shall thereupon terminate.

7.8.3.   If, for any reason, the Settlement does not become subject to Final Judgment, then no class will be deemed certified as a result of this Agreement, and the Litigation for all purposes will revert to its status as of March 30, 2012. In such event, Defendants will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case. Likewise, if the Settlement  does not become subject to Final Judgment, then the participation in the Settlement by any Plaintiff or Class Member cannot be raised as a defense to their claims.

## 8.  DISTRIBUTIONS

**8.1. Notice and Administration** - All costs of notice and administration of the Settlement shall be paid from the Settlement Fund subject to and in accordance with the provisions of Paragraph 6.1.

**8.2. Attorneys' Fees and Costs**

8.2.1.   Any award of attorneys' fees, expenses, costs or incentive awards, under the Order Granting Final Approval or such other order of the Court, shall be paid from the Settlement Fund by the Escrow Agent to Class Counsel, upon production to the Escrow Agent of a copy of the Order, fourteen (14) calendar days after the Effective Date.

**8.3. Claims Procedure and Claims Period.** To make a claim against the Settlement Fund, Class Members will be required to submit a completed Claim Form to the Settlement Administrator that provides that the person submitting the Claim Form is authorized to submit a claim on behalf of a Class Member, provides the Class Member's name, address, telephone and facsimile number and email address (if available); and provides, fully and completely, all other information required by the Notice. Class Members will be allowed to submit Claim Forms up to the date specified for such purpose in the No-

tice. Class Counsel will, in its sole discretion, confirm the validity of each Claim Form and confirm that it provides the required information.

### 8.4. Submission and Payment of Claims

8.4.1.   Fourteen (14) calendar days after the Effective Date, the Escrow Agent shall release all funds remaining in the Settlement Fund to Class Counsel for the benefit of the Settlement Class.

8.4.2.   Within thirty (30) calendar days of the Effective Date, Class Counsel will cause the Settlement Administrator to distribute all of the res remaining in the Settlement Fund to Class Members who have submitted valid claims in accordance with the provisions of Paragraph 8.3 and have not exercised the right to opt out through application of a single allocation formula as specified in Exhibit 5 to this Agreement that allocates a single payment to each Class Member.

### 9.   RELEASE AND COVENANT NOT TO SUE

9.1.   Upon entry of the Final Judgment, the Releasing Parties shall (i) release the Released Parties from all Released Claims, and (ii) covenant not to sue the Released Parties based on any Released Claims.  In addition, upon entry of the Final Judgment, the Releasing Parties shall be deemed to have granted the Released Parties an irrevocable, non-exclusive, transferrable license for a period of ten (10) years commencing with the date that is the earlier of Final Judgment or July 1, 2014, holding them harmless for all Released Claims or claims which, had they accrued prior to Final Judgment, would have been Released Claims.  *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978 (7th Cir. 2002).  Provided however, that this license shall not apply to any claim arising from point-source contamination, as defined in Section 502(14) of the Clean Water Act, resulting from the Released Parties' development, manufacture, formulation, distribution, transportation, storage, loading, mixing application, or use of  atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) or products that contain atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient or to any claim against any applicator or user of any product that contains atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient arising from the presence of Atrazine in the Releasing Parties' Water as a result of any use of such product not in accordance with the precautionary statements and instructions for use on the label of such product.  It is not the intent of the Parties to create terms that interfere in any way with the acts or jurisdiction of any state or federal agency.  Defendants shall have exclusive control over any negotiations with or recovery from the other defendants in the Litigation  with regard to any contributions by such defendants to the Settlement Fund (which shall in all cases be paid to Syngenta Crop Protection LLC) in exchange for the foregoing releases.

9.2. In accordance with the foregoing release and covenant not to sue, all pending litigation brought by or on behalf of a Class Member involving Released Claims, including the Litigation, shall be dismissed with prejudice, with each party bearing their own costs, within 30 days of the Effective Date.

## 10. MISCELLANEOUS PROVISIONS

10.1.     **Continuing Jurisdiction.** The U.S. District Court for the Southern District of Illinois shall have and retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of the Agreement.

10.2.     **Cooperation Between the Parties.** The Parties shall cooperate fully with each other and shall use all reasonable efforts to obtain Court approval of the Settlement and all of its terms. The Defendants shall provide all information reasonably necessary to assist Plaintiffs in the filing of any brief supporting approval of the Settlement.  Plaintiffs, Class Counsel, Defendants and Defendants' Counsel agree to recommend approval of and to support this Settlement Agreement to the Court and to use all reasonable efforts to give force and effect to its terms and conditions. Defendants shall have no obligation to affirmatively support an award of attorneys' fees, but shall not oppose any request for attorneys' fees up to one-third of the amount of the Settlement Fund plus reimbursement for costs and expenses.  Neither Plaintiffs, Class Counsel, Defendants, Defendants' agents nor Defendants' Counsel shall in any way encourage any objections to the Settlement (or any of its terms or provisions) or encourage any Class Member to elect to opt out.

10.3.     **Entire Agreement**. No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and covenants contained in this Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties, including the Memorandum of Understanding dated March 29, 2012, shall be deemed merged into this Agreement.

10.4.     **Modification of Agreement.** No waiver, modification or amendment of the terms of this Agreement, made before or after Final Approval, shall be valid or binding unless in writing, signed by Class Counsel and by duly authorized signatories of Defendants, and then only to the extent set forth in such written waiver, modification or amendment, and subject to any required Court approval.

10.5.     **Construction of Agreement**. The Parties acknowledge as part of the execution hereof that this Agreement was reviewed and negotiated by their respective counsel and agree that the language of this Agreement shall not be presumptively construed against any of the Parties hereto. This Agreement shall be construed as having been drafted by all the Parties to it, so that any rule of construction by which ambiguities are interpreted against the drafter shall have no force and effect.

10.6.     **Number and Gender** – Any reference in this Agreement to the singular includes the plural where appropriate and any reference in this Agreement to the masculine gender includes the feminine and neuter genders where appropriate.

10.7.     **Arm's Length Transaction.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length.

10.8.     **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties, the Settlement Class and their respective heirs, successors and assigns. The individual signing this Agreement on behalf of Defendants hereby represents and warrants that he has the power and authority to enter into this Agreement on behalf of Defendants, on whose behalf he has executed this Agreement, as well as the power and authority to bind Defendants to this Agreement. Likewise, Class Counsel executing this Agreement represents and warrants that he has the authority to enter into this Agreement on behalf of Plaintiffs and the Settlement Class, and to bind Plaintiffs and the Settlement Class.

10.9.     **Waiver.** Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions of this Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

10.10.     **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution by Defendants and Class Counsel. The Parties may execute this Agreement in counterparts and execution in one or more counterparts shall have the same force and effect as if all Parties had signed the same instrument.

10.11.     **Captions**. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

10.12.     **Electronic Signatures**. Any Party may execute this Agreement by having their respective duly authorized signatory sign their name on the designated signature block below, and transmitting that signature page electronically to counsel for all of the Parties. Any signature made and transmitted electronically for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement, and shall be binding upon the Party transmitting their signature electronically.

10.13.     **Confidentiality** - The Parties shall keep confidential the content of the negotiations, points of discussion, documents, communications, and supporting data utilized or prepared in connection with the negotiations and settlement discussions taking place in this case, except as otherwise required by law.  This Paragraph, however, shall not prevent Defendants from disclosing such information to their insurers if demanded by those insurers in the context of any coverage dispute.  In accordance with the protective order governing the Litigation, within 120 days of the Effective Date, all documents and materials containing confidential information produced in the Litigation (other than those documents filed with the court or used as deposition exhibits)  shall be returned to the Designating Party or shall be destroyed, except to the extent such documents or materials are being used by the parties in the insurance coverage litigation entitled *Syngenta*

15

*Crop Protection, Inc. v. Insurance Company of North America, et al.*, No. UNN-L-3230-08 (N.J. Super. Ct. Law Div. Union Cnty.) for the purposes of that litigation only.

10.14.     **Public comment** – Defendants will issue a joint press release to be published by Defendants in the form of Exhibit 6 on the date the motion seeking Preliminary Approval is filed in accordance with Paragraph 7.1.

10.15.     **Exhibits.** Any exhibits hereto are incorporated herein by reference as if set forth herein verbatim, and the terms of any exhibits are expressly made a part of this Agreement.

10.16.     **Notices to Parties.**  Any notice or other communication which is required or permitted to be provided by this Agreement shall be delivered in writing by certified mail and email effective upon mailing, as follows:

To:  Syngenta Crop Protection LLC

     Alan B. Nadel
     alan.nadel@syngenta.com
     Lead Counsel Litigation NA
     Syngenta Crop Protection, LLC
     Post Office Box 18300
     Greensboro, NC 27419-8300
     USA

     With copies to:

     Michael A. Pope
     mpope@mwe.com
     McDermott Will & Emery LLP
     227 W. Monroe Street
     Chicago, Illinois  60606-5096
     USA

To:  Syngenta AG

     Group General Counsel
     christoph.maeder@syngenta.com
     Syngenta AG
     Schwarzwaldallee 215
     CH-4058 Basel, Switzerland

     With copies to:

     Michael A. Pope
     mpope@mwe.com
     McDermott Will & Emery LLP

227 W. Monroe Street
Chicago, Illinois  60606-5096
USA


To:  Plaintiffs, Class Counsel or the Settlement Class:

Stephen M. Tillery
stillery@koreintillery.com
azigler@koreintillery.com
Korein Tillery LLC
505 North 7th Street, Suite 3600
St. Louis, Missouri  63101-1625
USA


10.17.    **Governing Law** - This and all related agreements between the Parties and all ac-
tions arising out of them shall be governed by and construed in accordance with the laws
of the State of Illinois, United States of America, without regard to conflicts of law.

Agreed to:

On _____, 2012

By: _____
Stephen M. Tillery
Korein Tillery, LLC
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
*Attorneys for Plaintiffs*

18

On __T̶æ̂Ẍ̶Ẍ̶Ẍ̶Ḡ̶H__, 2012

**Syngenta Crop Protection, LLC**

By: _____
    X^¦} ÁPæ̧ \ã̧ • ÊÁ̃Ȗ¦^•ã̃a^} c

On _____, 2012

**Syngenta AG**

By: _____

By: _____

DM_US 35084063-1.086764.0011

On \_\_\_ \_\_ \_\_, 2012

**Syngenta Crop Protection, LLC**

By: _____

On **May 23**, 2012

**Syngenta AG**

By: _____
CHRISTOPH MAEDER

By: _____
JONATHAN D SULLIVAN

DM_US 35084063-1.086764.0011

19

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CITY OF GREENVILLE, et al., individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>SYNGENTA CROP PROTECTION, INC., and SYNGENTA AG,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No.: 3:10-cv-00188-JPG-PMF** |

## [PROPOSED] ORDER

This matter comes before the Court on the Joint Motion for Preliminary Approval of Class Action Settlement filed by the parties.  Having considered the matter, and being duly advised, the Court makes the following findings, grants the Joint Motion, and Orders as follows.

1.      Plaintiffs are Community Water Systems from six different states. As Community Water Systems ("CWS"), each of the Plaintiffs owns property and facilities designed to acquire, filter, and dispense water for public use. Compl. at ¶¶ 4-27. Community Water Systems are required under the Safe Drinking Water Act ("SDWA") to test their finished drinking water for contaminants, 40 C.F.R. 141.24(h)(2), to ensure they do not exceed any Maximum Contaminant Level ("MCL").

2.      In their complaint, Plaintiffs allege that atrazine has continuously entered their water supplies allegedly injuring their property rights. Compl. at ¶¶ 35, 51, 54-56, 59, 62-63, 74. Plaintiffs allege that they have had to test and monitor their water supplies for atrazine, as well as to install, operate, and maintain systems to filter atrazine from their water supplies. *Id*. at ¶¶ 4-27,

56(b), 56(d), 57, 65(b), 65(d), 75(b), 75(d). Plaintiffs also allege that in addition to these past expenses, the continued presence of atrazine in their water supplies will cause them to incur future expense. *Id*. at ¶¶ 4-27, 56(b), 56(d), 57, 65(b), 65(d), 75(b), 75(d). Plaintiffs ask for all future damages likely to be incurred in removing atrazine from their water supplies, including costs associated with the purchase and operation of appropriate filtration systems. *Id*., Prayer for Relief (d).

3.     Since 1991 the EPA has set an MCL of 3 parts per billion (ppb) for atrazine on an average annualized basis. 56 Fed. Reg. 3526-01 (Jan. 30, 1991); § 40 CFR 141.50(b). The EPA considers MCLs to be "safe levels that are protective of public health." 52 Fed. Reg. 25690, 25693-94 (July 8, 1987). Defendants have argued that Plaintiffs' only legally protected interest is the right to provide water that complies with the MCL for atrazine. Thus, for those Plaintiffs which have not experienced a violation of the EPA's Maximum Contaminant Level, Defendants maintain that they have not suffered a legally cognizable injury. In addition, the best available technology for removing atrazine from drinking water is commonly used to address drinking water issues other than herbicide removal. Thus, Defendants challenged Plaintiffs' ability to demonstrate legal causation.

4.     Plaintiffs seek to represent the approximately 2,000 Community Water Systems in the United States that have detected atrazine in their water and sought to resolve whether atrazine has an inherent design defect that causes it to run into drinking water sources when used as intended;  whether that design renders it unreasonably dangerous to public water providers; whether Syngenta was aware that atrazine had this design defect; and whether Syngenta sold atrazine knowing it would run into drinking water sources.

5.     In accordance with the parties' joint motion, the Court certifies the following class for settlement purposes only:

All Community Water Systems in the United States of America for which any Qualifying Test Result shows any Measurable Concentration of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine).

The definitions of the terms used in this class description and Order can be found in the parties' proposed Settlement Agreement, which is attached as Exhibit A to their Joint Motion for Preliminary Approval of Settlement.

6.     City of Greenville, Illinois; Village of Coulterville, Illinois; Village of Evansville, Illinois; Village of Farina, Illinois; City of Gillespie, Illinois; City of Cameron, Missouri; City of Concordia, Missouri; City of Carbondale, Kansas; City of Marion, Kansas; Miami County Rural Water District No. 2; City of Oswego, Kansas; City of Jasper, Indiana; Village of Monroeville, Ohio; City of Upper Sandusky Ohio; Creston Municipal Utilities; Illinois- American Water Company; Missouri- American Water Company; Indiana- American Water Company Inc.; Iowa-American Water Company; Ohio-American Water Company; Chariton Municipal Waterworks; and Village of Ottawa, Ohio are designated as class representatives.

7.     Pursuant to Rule 23(g), The Court finds that Stephen M. Tillery and the law firm of Korein Tillery and Scott Summy and the law firm of Baron & Budd will fairly and adequately represent the interest of the class and are designated as class counsel.

8.     This litigation and other related litigation pending in Illinois state court on behalf of Illinois Community Water Systems has been extremely hard-fought, burdensome and expensive. In the course of the litigation, the parties collected, reviewed, and produced more than 10,000,000 pages of discovery. The parties also were subject to significant disruption of their

business as with the depositions of dozens of employees. In addition, the Parties incurred sub-stantial costs through the retention of numerous expert consultants and the preparation of expert reports.

9.     The proposed settlement would put an end to the expense, inconvenience and dis-traction of further litigation while providing significant monetary relief to the proposed class in the form of $105,000,000.00, in exchange for a release that resolves the Plaintiffs' claims related to the presence of atrazine in their water, without interfering with the jurisdiction of any regula-tory agency, and preserving any claims arising from a point-source contamination and for in-demnity, contribution among joint tortfeasors or apportionment of liability or fault, with respect to any claim against a Releasing Party, arising from the consumption of the Releasing Parties' Water, that is not a claim for property damage or economic loss.

10.     The procedure for review of a proposed class action settlement is a well-established three-step process. First, the district court must issue a "preliminary approval" order following a pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *In re Gen. Motors Corp. Engine Interchange Litig*., 594 F.2d 1006, 1124 (7th Cir. 1979).  Second, notice of the proposed settlement must be sent to all class mem-bers.  Third, the district court must issue a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the hearing is held.  Manual for Complex Litigation (Fourth), § 21.632 (2004).

11.     At this preliminary stage, the Court need only determine whether the settlement is "'within the range of possible approval.'" *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is "fair, reasonable, and adequate." *Armstrong v. Bd. of Sch. Dirs.*

*Of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). Rather, that determination is made only at the final approval stage, after notice of the settlement has been provided to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *Id.*

12.     Here, the Settlement Agreement is certainly "within the range of possible approval" and is a good compromised result for the Parties following years of hard-fought litigation. The Settlement Agreement was reached after serious, arms-length negotiations between experienced and informed counsel and reflects a compromise that provides a substantial monetary benefit to the class, while taking into account the risk that further protracted and contested litigation may lead to no recovery or a smaller recovery for Plaintiffs.

13.     The Settlement Agreement also fairly allocates the settlement proceeds without favoring any individual member over the class. The parties' proposed allocation plan provides that the Settlement Fund, minus any attorneys' fees, expenses, and costs, will be allocated to Class Members on a pro rata basis based on evidence of the significance of the Class Member's history of atrazine detection, its size and the age of its claim. This allocation of benefits is appropriately tailored to the facts and law at issue in this case, and is fair, reasonable, and adequate.

14.     Accordingly, the Court preliminarily approves the Settlement Agreement as being fair, reasonable and adequate and in the best interest of the Class as a whole.

15.     The next step in the process requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Accordingly,

"notice should be mailed to the last known addresses of those who can be identified and publication used to notify others." *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001).

16.     Here, the proposed Notice Plan directs a summary notice to be mailed to each known Class Member and provides for publication notice that targets all Community Water Systems that may potentially meet the qualifications to become Class Members. These notices also direct potential Class Members to a website which displays a long-form Notice which sets forth the details of the Settlement Agreement.  Additionally, the proposed notices provide potential class members with the information reasonably necessary for them to make a decision whether to object to the settlement.

17.     "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *In re AT & T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 351 (N.D. Ill. 2010). The proposed notices inform class members of all of these facts.

18.     As required by Fed. R. Civ. P. 23(c)(2)(B)(i), (ii) and (iii), the Notice describes the nature of the action, the class definition and the common issues. Notice at §§ 1, 2, 6 and 7. As required by Rule 23(c)(2)(B)(iv), the Notice informs class members that they may appear through an attorney. Notice at § 18. The Notice satisfies Rule 23(c)(2)(B)(v) and (vi) by stating that Class Members may exclude themselves from the class and providing a description of the manner and deadline in which to do so. Notice § 20-22.  As required by Rule 23(c)(2)(B)(vii), the Notice informs Class Members that any Class Member who fails to opt-out will be prohibited from bringing a lawsuit against defendants based on or related to any of the claims asserted by the Plaintiffs. Notice § 21.

19.      The Notice also conveys all information necessary for a class member to make an informed decision to participate, opt out or object. It identifies the lawsuit by docket number and case caption, describes the litigation, and gives a summary of the available benefit.  Notice at § 1-5. The Notice also discloses the maximum amount of attorneys' fees that will be sought by Class Counsel.  Notice at § 19. The Notice also describes the procedures for allocating and distributing the Settlement Fund, including a thorough description of how to obtain those benefits. Notice at §§ 10-11. Finally, the Notice displays the name and address of Class Counsel and informs Class Members of the procedure for making inquiries of Class Counsel. Notice at §§ 17, 24, 30.  Accordingly, the Notice goes far and above the requirements imposed by Fed. R. Civ. P. 23(c)(2) and 23(e), and constitutes the "best notice practicable under the circumstances" of this lawsuit.

20.      Not later than Monday, June 11, 2012 (the "Notice Date"), the Settlement Administrator shall begin implementation of the proposed notice plan, including causing a copy of the Summary Notice to be mailed to all known Class Members.

21.      Any Class Member who wishes to object to the Settlement or an award of fees or expenses to Class Counsel must file with the Clerk of the Court, with service on all Parties in accordance with Fed. R. Civ. P. 5 and S.D. Ill. L.R. 5.1, a written and signed statement, designated "Objection."  Service on the Court and all Parties must be completed Monday, August 27, 2012.

22.      All Objections must certify in accordance with 28 U.S.C. § 1746, under penalty of perjury, that the filer has been legally authorized to object on behalf of the Class Member and provide an affidavit or other proof of the Class Member's standing; must provide the name, address, telephone and facsimile number and email address (if available) of the filer and the Class

Member; the name, address, telephone and facsimile number and email address (if available) of any counsel representing the Class Member; must state all objections asserted by the Class Member and the specific reason(s) for each objection, and include all legal support and evidence the Class Member wishes to bring to the Court's attention; must indicate if the Class Member wishes to appear at the Final Fairness Hearing; and, identify all witnesses the Class Member may call to testify.

23.     Any Class Member who wishes to opt out of the Settlement must file with the Settlement Administrator, with service on all Parties in accordance with Fed. R. Civ. P. 5 and S.D. Ill. L.R. 5.1, a written and signed statement, entitled "Request for Exclusion." Service on the Settlement Administrator and all Parties must be completed Monday, August 27, 2012.

24.     The Request for Exclusion must certify in accordance with 28 U.S.C. § 1746, under penalty of perjury, that the filer has been legally authorized to exclude the Class Member from the Settlement and provide an affidavit or other proof of the Class Member's standing; must provide the filer's name, address, telephone and facsimile number and email address (if available); include the Class Member's name, address, telephone number, and e-mail address (if available) and be received by the Court no later than Monday, August 27, 2012.

25.     A hearing (the "Final Fairness Hearing") shall be held on Monday, October 22, 2012, at the United States District Court, Southern District of Illinois, 301 W. Main Street, Benton, Illinois  62812, to determine whether the proposed settlement of the Litigation on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Class and should be approved by the court; whether the proposed Plan of Allocation should be approved and to consider counsel's application for an award of attorneys' fees and expenses.

26.     All reasonable expenses in notifying Class Members, as well as administering the Settlement Fund, shall be paid as set forth in the Settlement Agreement.

27.     Neither the settlement nor the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, constitutes or shall be construed as an admission or concession by any Party or by any of the Released Parties of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind, and Defendant vigorously disputes any such allegation.

28.     In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of March 30, 2012, subject to reasonable accommodation to the Parties and their counsel due to the passage of time.  In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceedings for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

29.     Pending final determination of whether the Settlement Agreement should be approved, none of the Plaintiffs or Class Members or anyone who acts or purports to act on their behalf shall institute, commence, or prosecute any action that asserts any Released Claims against any Released Party.

30.     The Court reserves the right to adjourn the date of the Final Fairness Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications as necessary to implement the proposed settlement.

_____

The Honorable J. Phil Gilbert

Dated:_____

DM_US 35088062-1.086764.0011

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CITY OF GREENVILLE, et al.,** ) | |
| **individually, and on behalf of all others** ) | |
| **similarly situated,** ) | |
| ) | **Case No.: 3:10-cv-00188-JPG-PMF** |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **SYNGENTA CROP PROTECTION,** ) | |
| **INC., and SYNGENTA AG,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

After years of litigation and months of negotiation, the parties have agreed to resolve Plaintiffs' claims concerning the presence of atrazine in their water.  Under the terms of the settlement, any U.S. Community Water System that submits a valid claim form and has detected any measurable concentration of atrazine in its raw or finished water, or has such a detect within 90 days after entry of an order preliminarily approving the settlement, will receive a portion of the $105,000,000.00 settlement fund.  This settlement will conclusively resolve the disputed claims of an estimated 2,000 U.S. Community Water Systems that may be within the proposed settlement class, and put an end to at least seven expensive and time-consuming lawsuits in which Defendants have expressly denied any liability.  Pursuant to Fed. R. Civ. P. 23(e), the parties jointly move the Court to grant preliminary approval of the parties' proposed Settlement Agreement, attached as Exhibit A.

## FACTUAL BACKGROUND

Atrazine is an herbicide used to control broadleaf and grassy weeds in a variety of crops, but is applied primarily to corn fields. A Syngenta legacy company discovered and synthesized atrazine in the early 1950s, and brought it to the U.S. market in 1959. Since then, atrazine has been one of the most widely used herbicides in the U.S.  Syngenta is the largest manufacturer and distributor of atrazine and atrazine-containing products in the U.S.

Plaintiffs are Community Water Systems from six states that own property and facilities designed to acquire, treat, and dispense water for public use. Compl. at ¶¶ 4-27. Under the Safe Drinking Water Act ("SDWA"), Community Water Systems are required to test their finished drinking water for contaminants to ensure they do not exceed any Maximum Contaminant Level ("MCL"). 40 C.F.R. 141.24(h)(2).

Plaintiffs have alleged that atrazine has continuously entered their water supplies, thereby injuring their property rights. Compl. at ¶¶ 35, 51, 54-56, 59, 62-63, 74. Plaintiffs have alleged that they have had to test and monitor their water supplies for atrazine, as well as to install, operate, and maintain systems to filter atrazine from their water supplies. *Id*. at ¶¶ 4-27, 56(b), 56(d), 57, 65(b), 65(d), 75(b), 75(d). Plaintiffs also have alleged that, in addition to these past expenses, the continued presence of atrazine in their water supplies will cause them to incur future expenses. *Id*. at ¶¶ 4-27, 56(b), 56(d), 57, 65(b), 65(d), 75(b), 75(d). Plaintiffs have asked for all future damages likely to be incurred in removing atrazine from their water supplies, including costs associated with the purchase and operation of appropriate filtration systems. *Id*., Prayer for Relief (d).

Defendants have argued that Plaintiffs' only legally protected interest is the right to provide water that complies with the MCL for atrazine. Since 1991, the U.S. Environmental Protection

Agency ("EPA") has set an MCL of 3 parts per billion (ppb) for atrazine on an average annualized basis. 56 Fed. Reg. 3526-01 (Jan. 30, 1991); § 40 CFR 141.50(b). The EPA considers MCLs to be "safe levels that are protective of public health." 52 Fed. Reg. 25690, 25693-94 (July 8, 1987). Thus, Defendants have maintained that Plaintiffs who have not experienced a violation of the MCL have not suffered a legally cognizable injury. In addition, Defendants claim that the best available technology for removing atrazine from drinking water is commonly used to address drinking water issues other than herbicide removal. Thus, Defendants have challenged Plaintiffs' ability to demonstrate legal causation.

This litigation and other related litigation pending in Illinois state court on behalf of Illinois Community Water Systems entitled *Holiday Shores Sanitary District, et al. v. Sipcam Agro USA, Inc. and Growmark, Inc.*, 04-L-708 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Drexel Chemical Co. and Growmark, Inc.*, 04-L-709 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Syngenta Crop Protection Inc. and Growmark, Inc.*, 04-L-710 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. United Agri Products and Growmark, Inc.*, 04-L-711 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Makhteshim-Agan of North America, Inc. and Growmark, Inc.*, 04-L-712 (Ill. Cir. Ct.); *Holiday Shores Sanitary District, et al. v. Dow Agrosciences LLC and Growmark, Inc.*, 04-L-713 (Ill. Cir. Ct.)) (collectively, the "Litigation") has been extremely hard-fought, burdensome and expensive. In the course of the Litigation, the parties collected, reviewed, and produced more than 10,000,000 pages of discovery. The parties also were subject to significant disruption of their business, including the depositions of dozens of employees. In addition, the parties incurred substantial costs through the retention of numerous expert consultants and the preparation of expert reports.

The proposed settlement would put an end to the expense, inconvenience and distraction of

further litigation while providing significant monetary relief to the proposed class in the form of $105,000,000.00, in exchange for a release resolving Plaintiffs' claims related to the presence of atrazine in their water.  The settlement does not interfere with the jurisdiction of any regulatory agency, and it preserves any claims arising from future point-source contamination or off-label use and claims that otherwise could not have been brought in this litigation. Defendants expressly deny any liability, and Plaintiffs and their counsel have acknowledged that they are not aware of any new scientific studies relating to atrazine not already in the public domain.  The proposed settlement also takes care to ensure effective notice to the proposed class and a claims process that should ensure full participation in the settlement.  Accordingly, the proposed settlement is facially fair and within the range of possible approval. It should be preliminarily approved.

## ARGUMENT

### I.       The Court Should Preliminarily Approve the Settlement.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). *See also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds sub nom. Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). However, the district court must give "careful scrutiny" to proposed class action settlements and must consider whether a given settlement is "fair, adequate, and reasonable, and not the product of collusion." *Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002)).

The review of a proposed class action settlement involves a well-established three-step process. First, the district court must issue a "preliminary approval" order following a pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."  *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1006, 1124 (7th Cir. 1979).  Second, notice of the proposed settlement must be given to all class members. Third, the district court must issue a "final approval" order after notifying the class of the settlement and holding a hearing to consider the fairness of settlement.  Manual for Complex Litigation (Fourth), § 21.632 (2004).

At this preliminary stage, the Court need only determine whether the settlement is "'within the range of possible approval.'" *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is "fair, reasonable, and adequate."  *Armstrong*, 616 F.2d at 314. Rather, that determination is made only at the final approval stage, after class members have been notified and given an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *Id.*

Here, the Settlement Agreement is certainly "within the range of possible approval" and is a fair result for the parties following years of hard-fought litigation.  The Settlement Agreement is the product of serious, arm's-length negotiations between experienced and informed counsel and reflects a compromise that provides a substantial monetary benefit to the class, while avoiding the risk that further protracted and contested litigation provides.

The Settlement Agreement also fairly allocates the settlement proceeds without favoring any individual member over the class. A district court's "principal obligation" in approving a plan of allocation "is simply to ensure that the fund distribution is fair and reasonable as to all

participants in the fund." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (en banc) (quoting *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983)). *See also EEOC v. Hiram Walker & Sons*, 768 F.2d 884, 891 (7th Cir. 1985) (considering reasonableness of settlement disbursement). Courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable." *Sullivan*, 667 F.3d at 328 (quoting *In re Corel Corp. Inc., Sec. Litig.*, 293 F. Supp. 2d 484, 493 (E.D. Pa. 2003))*; In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.").

The parties' proposed allocation plan provides that the Settlement Fund, minus any Court-approved attorneys' fees, expenses, and costs, will be paid to Class Members who submit a valid claim through a fixed payment and then allocates the remainder on a pro-rata basis based on evidence of the significance of the Class Member's history of atrazine detection, its size, and the age of its claim. This allocation plan is fair because it ensures that every Class Member who submits a valid claim will receive a portion of the settlement fund, while providing a proportionally larger share to those who are most affected by the presence of atrazine. "[W]hen real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set that was more likely to succeed." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 589 (N.D. Ill. 2011).

Counsel for the Plaintiffs have carefully considered and evaluated the relevant legal authorities and evidence to support the claims and defenses, the likelihood of prevailing on the claims or defenses, the risk, expense and duration of continued litigation and the likely appeals,

and have concluded that the settlement is a favorable resolution of the Litigation for all parties. The Settlement Agreement removes the potential for continuing trial and appellate proceedings on the merits, which may take several years to complete and be extremely costly and the outcome of which is uncertain.

## II.      The Court Should Approve the Notice Plan.

The next step in the process requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Accordingly, "notice should be mailed to the last known addresses of those who can be identified and publication used to notify others." *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001).

Here, the parties have agreed upon a comprehensive Notice Plan after consulting with a nationally-recognized class action administrator. See Declaration of Richard W. Simmons Regarding Dissemination of Class Notice, attached as Exhibit B. As set forth in more detail in the Simmons Declaration, the Notice Plan consists of three components: 1) direct mail notice; 2) publication notice; and 3) a case website and toll-free number. The direct mail notice is a summary notice that will be mailed to approximately 2,000 U.S. Community Water Systems that Class Counsel have identified as having experienced a measurable concentration of atrazine in their raw or finished water. Simmons Decl. at ¶ 17. A copy of the summary notice is attached as Exhibit C. To supplement the direct mail notice, Class Counsel will publish a summary notice in three leading publications whose readership includes potentially-affected Community Water Systems. Simmons Decl. at 18. A copy of the publication notice is attached as Exhibit D. Class

Counsel will also establish a website and a toll-free number to notify Class Members of the settlement, address common questions about the settlement, and provide updates on the settlement process. Simmons Decl. at ¶¶ 23-24. A more detailed Notice providing additional information about the settlement, attached as Exhibit E, will be available on the website.  Under the circumstances, the Notice Plan is the best notice practicable.

Consistent with Rule 23, the Notices provide potential class members with the information reasonably necessary for them to decide whether to object to the settlement in easily understood terms. Fed. R. Civ. P. 23(c)(2)(B)(i), (ii) and (iii); *see also In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010) ("The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing."). The Notices inform class members of all of these facts.

For example, the Notices describe the nature of the action, the class definition and the common issues. Notice at §§ 1, 2, 6 and 7.  As required by Rule 23(c)(2)(B)(iv), the Notice informs class members that they may appear through an attorney. Notice at § 18. The Notice satisfies Rule 23(c)(2)(B)(v) and (vi) by stating that Class Members may exclude themselves from the class and providing a description of the manner and deadline in which to do so. Notice § 20-22.  As required by Rule 23(c)(2)(B)(vii), the Notice informs Class Members that any Class Member who fails to opt out will be prohibited from bringing a lawsuit against the released parties based on the released claims. Notice § 21.  Aside from these requirements, a notice satisfies Fed. R. Civ. P. 23(c)(2)(B); 23(e), due process, and binds all members of the class if it:

     1.     Describes the essential terms of the settlement;

2.      Discloses any special benefits or incentives to the class representatives;

3.      Provides information regarding attorneys' fees;

4.      Indicates the time and place of the hearing to consider approval of the settlement, and the method for objection to and/or opting out of the settlement;

5.      Explains the procedures for allocating and distributing settlement funds; and

6.      Prominently displays the address of class counsel and the procedure for making inquiries.

Federal Judicial Center, Manual For Complex Litigation § 21.312 (4th ed. 2005); *see, e.g.*, *Air Lines Stewards & Stewardesses Ass'n Local 550 v. Am. Airlines*, 455 F.2d 101, 108 (7th Cir. 1972) (notice that provided summary of proceedings to date, notified of significance of judicial approval of settlement and informed of opportunity to object at the hearing satisfied due process).

The proposed Notice meets all of these requirements.  It identifies the lawsuit by docket number and case caption, describes the Litigation, and gives a summary of the terms of the settlement and the available benefits.  Notice at § 1-5. It discloses the maximum amount of attorneys' fees that will be sought by Class Counsel.  Notice at § 19. It describes the procedures for allocating and distributing the Settlement Fund, including a thorough description of how to obtain those benefits. Notice at §§ 10-11. Finally, it displays the name and address of Class Counsel and informs Class Members of the procedure for making inquiries of Class Counsel. Notice at §§ 17, 24, 30.  Accordingly, the Notice goes beyond the requirements imposed by Fed. R. Civ. P. 23(c)(2) and 23(e), and constitutes the "best notice practicable under the circumstances" of this lawsuit.

Further, the parties' use of a settlement website and toll-free number in the claims process is designed to promote awareness of the settlement and encourage the filing of claims. *Schulte v.*

*Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. 2011). Class Members can submit a claim

online through the settlement website without the need to pay for a stamp. *Id.*

**III.      The Parties' Settlement Schedule Should be Approved.**

In connection with the preliminary approval of the settlement, the Court must set dates for: 1)

mailing the Notice; 2) the deadlines for objecting to or opting out of the settlement; 3) the filing

of papers in support of the settlement; and 4) the final fairness hearing.  The parties propose the

following schedule:

| Event | Date |
|-------|------|
| Mailing of the Notice | Monday, June 11, 2012 |
| Publication of the Notice | Monday, June 25, 2012 |
| Deadline for objecting to or opting-out of the settlement | Monday, August 27, 2012 |
| Deadline for filing papers in support of the settlement | Monday, October 8, 2012 |
| Final Fairness Hearing | Monday, October 22, 2012 |

**CONCLUSION**

The parties respectfully request that the Court: (1) preliminarily approve the Settlement

Agreement, attached as Exhibit A, as within the range of possible fairness, reasonableness and

adequacy; (2) approve the Notice Plan, attached as Exhibit B, and the Notices, attached as

Exhibits C, D and E; (3) set a deadline for objecting to or opting out of the settlement; (4) set a

deadline for filing papers in support of the settlement; (5) set a date and time for the Final

Fairness Hearing; and (6) stay all proceedings in this action until the Court has ruled on a final

approval of the Settlement Agreement and entered a final judgment.

By: s/ Stephen M. Tillery (w/ consent)
Stephen M. Tillery
Korein Tillery, LLC
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
**Attorneys for Plaintiffs**

By:    s/ Christopher M. Murphy
Michael A. Pope
Christopher M. Murphy
McDermott Will & Emery LLP
227 W. Monroe Street
Chicago, IL  60606-5096
312-372-2000
**Attorneys for Defendants Syngenta Crop Protection, LLC and Syngenta AG**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2012, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will electronically deliver notice of the filing to all counsel of record.

By:    s/ Christopher M. Murphy
                Christopher M. Murphy
                McDermott Will & Emery LLP
                227 W. Monroe Street
                Chicago, IL  60606-5096
                312-372-2000

DM_US 35084992-1.086764.0011

# EXHIBIT 3

<u>UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS</u>

# If You Are a Community Water System Whose Water Has Tested Positive for the Herbicide Atrazine by August 23, 2012, You Could Get a Payment From a Class Action Settlement.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- Community Water Systems that have detected the herbicide atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) in their raw or finished water may be eligible to receive a share of $105,000,000, after the payment of administrative expenses and legal fees and costs.

- To be eligible to receive a payment, a Community Water System need only have detected any measurable concentration of atrazine in its raw or finished water using any state or federal agency-approved analytical method by August 23, 2012 and submit a valid claim form.

- Community Water Systems' legal rights will be affected if a representative acts or doesn't act.  Read this Notice carefully.

| LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT: | |
|---|---|
| **SUBMIT A VALID CLAIM FORM BY AUGUST 27, 2012** | The only way to get a payment. |
| **EXCLUDE YOURSELF BY AUGUST 27, 2012** | Get no payment.  Maintain the ability to bring a separate lawsuit. |
| **OBJECT BY AUGUST 27, 2012** | Write to the Court about why you don't like the Settlement. |
| **GO TO A HEARING ON OCTOBER 22, 2012** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment.  Give up rights. |

- Community Water Systems' rights and options—**and the deadlines to exercise them—**are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if you submit a valid claim and the Court approves the Settlement and after any appeals are resolved. Please be patient.

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ...................................................................................................................... PAGE 3
    1.  Why was this notice issued?
    2.  What is this lawsuit about?
    3.  What is atrazine?
    4.  What is a class action and why is this case a class action?
    5.  Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ...................................................................................................... PAGE 3
    6.  How do I know if I am part of the Settlement?
    7.  Help me understand whether I am included.
    8.  I'm still not sure if I am included.
    9.  Are individuals Class Members?

**THE SETTLEMENT BENEFITS — WHAT YOU GET** ....................................................................... PAGE 4
    10.  What does the Settlement provide?

**HOW YOU GET A PAYMENT — SUBMITTING A CLAIM FORM** ................................................. PAGE 4
    11.  How can I get a payment?
    12.  When would I get my payment?
    13.  What am I giving up to stay in the Class and get a payment?

**YOUR RIGHTS AND OPTIONS** ....................................................................................................... PAGE 5
    14.  What happens if I do nothing at all?
    15.  What happens if I exclude myself?
    16.  How do I ask to be excluded?

**THE LAWYERS REPRESENTING YOU** ......................................................................................... PAGE 5
    17.  Do I have a lawyer in the case?
    18.  Should I get my own lawyer?
    19.  How will the lawyers be paid?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .................................................................. PAGE 6
    20.  How do I get out of the Settlement?
    21.  If I don't exclude myself, can I sue for the same thing later?
    22.  If I exclude myself, can I get money from this Settlement?

**OBJECTING TO OR SUPPORTING THE SETTLEMENT** ............................................................. PAGE 7
    23.  How do I tell the Court that I either like the Settlement or don't like the Settlement?
    24.  What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ........................................................................................... PAGE 8
    25.  When and where will the Court decide whether to approve the Settlement?
    26.  Do I have to come to the hearing?
    27.  May I speak at the hearing?

**IF YOU DO NOTHING** ................................................................................................................... PAGE 8
    28.  What happens if I do nothing at all?

**GETTING MORE INFORMATION** ................................................................................................. PAGE 8
    29. Are there more details available?

## BASIC INFORMATION

### 1.  Why was this notice issued?

This notice was issued because you have the right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.  If the Court approves the Settlement, and after objections and appeals are resolved, a Claims Administrator appointed by the Court will make the payments that the Settlement allows.  This document explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The Judge in charge of this case is Judge J. Phil Gilbert of the United States District Court for the Southern District of Illinois.  The case is known as *City of Greenville v. Syngenta Crop Protection, Inc., and Syngenta AG*, Case No. 3:10-cv-00188-JPG-PMF.  The definitions of various terms used in this notice can be found in the Settlement Agreement.  To view a copy of Settlement Agreement, please visit *www.atrazinesettlement.com*.

### 2.  What is this lawsuit about?

Atrazine is an herbicide marketed by companies including Syngenta Crop Protection, LLC that has been found in some Community Water Systems' raw and finished water. Under EPA requirements, finished water can contain a maximum concentration of 3 ppb atrazine as an annual average. 56 Fed. Reg. 3526-01 (Jan. 30, 1991); § 40 CFR 141.50(b).  The lawsuit claims that atrazine at any level injures Community Water Systems' water supplies.  The lawsuit requests that Defendants Syngenta Crop Protection, LLC and Syngenta AG (collectively, "Syngenta") bear the cost of removing the herbicide atrazine from Community Water Systems' water supplies.  Syngenta has denied the allegations in the lawsuit and asserts that atrazine has been repeatedly and safely used for over 50 years.

### 3.  What is atrazine?

Atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) is an herbicide that is used mainly to control weeds on corn, sorghum, sugar cane and some specialty crops.  Atrazine is one of the most widely-used herbicides in the United States, and, due to runoff from fields where it has been applied, has been found in some ground and surface waters.

### 4.  What is a class action and why was this case filed as a class action?

In a class action, one or more people or entities called class representatives sue on behalf of the others like them.  The class representatives in this case are the City of Greenville, Illinois; Village of Coulterville, Illinois; Village of Evansville, Illinois; Village of Farina, Illinois; City of Gillespie, Illinois; City of Cameron, Missouri; City of Concordia, Missouri; City of Carbondale, Kansas; City of Marion, Kansas; Miami County Rural Water District No. 2; City of Oswego, Kansas; City of Jasper, Indiana; Village of Monroeville, Ohio; City of Upper Sandusky Ohio; Creston Municipal Utilities; Illinois- American Water Company; Missouri- American Water Company; Indiana- American Water Company Inc.; Iowa-American Water Company; Ohio-American Water Company; Chariton Municipal Waterworks; and Village of Ottawa, Ohio.  These entities, and all Community Water Systems with a measurable concentration of atrazine in their raw or finished water, are Class Members for purposes of this Settlement.  In a class action lawsuit, one court resolves the case for all Class Members, except for those who exclude themselves from the Class.  The Court decided that this lawsuit could proceed as a class action for the purpose of settlement because it meets the requirements for a class action settlement under Federal Rule of Civil Procedure 23, which governs class actions in federal court.

### 5.  Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendants.  Instead, both sides agreed to this Settlement.  That way, they avoid the burden and expense of further litigation, and any Community Water Systems that are Class Members and that do not opt out will receive some compensation.  The Class representatives and their attorneys think the Settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

To see if you are eligible to get money from this Settlement, you first have to decide if you are a Class Member.

### 6.  How do I know if I am part of the Settlement?

To understand whether you are a part of the Settlement, you will need to understand the following terms:

*Class Member* means any Community Water System in the United States of America for which any Qualifying Test Result shows any Measurable Concentration of atrazine (2-chloro-4-ethylamino-6-isopropylamino-s-triazine).

*Class Period* means the period without limit as to the past and ending on August 23, 2012.

*Community Water System* is defined by 42 U.S.C. § 300f(15) (2006): "a public water system that – (A) serves at least 15 service connections used by year- round residents of the area served by the system; or (B) regularly serves at least 25 year-round residents."

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT *WWW.ATRAZINESETTLEMENT.COM***

A *Qualifying Test Result* is a result of analytical testing of the Class Member's Water performed during the Class Period using any state or federal agency-approved analytical method.

*Measurable Concentration* means a concentration equal to or greater than the limit of the quantitation of the analytical method used.

*Water* in this lawsuit means water in which a Class Member possesses a legal or equitable right, title or interest, and that is drawn from a lake, reservoir, river, stream, creek, well or other source of water used by the Class Member to provide drinking water, including such drinking water.

## 7. Help me understand whether I am included.

Class Membership is not complicated.  To see if you are a Class Member ask yourself this series of questions:

| Question | Yes | No |
|---|---|---|
| Are you a Community Water System as defined by the EPA in the United States? | Continue. | You are not a Class Member. |
| Do tests show any measurable concentration of atrazine in your raw or finished water on or before August 23, 2012? | Continue. | You are not a Class Member. |
| Was this result of an analytical test performed using any state or federal-agency approved analytical method? | You are a Class Member. | You are not a Class Member. |

## 8.  I'm still not sure if I am included.

If you are still not sure whether you are included, you can visit the website *www.atrazinesettlement.com*, call toll-free 1-866-329-7832, or write to Atrazine Settlement, Claims Administrator, P.O. Box 2002, Chanhassen, MN 55317-2002, for more information.

## 9.  Are individuals Class Members?

No.  The Class is limited to Community Water Systems, which is defined in federal law 42 U.S.C. § 300f(15) (2006) as a "public water system that (A) serves at least 15 service connections used by year-round residents of the area served by the system; or (B) regularly serves at least 25 year-round residents."

# THE SETTLEMENT BENEFITS — WHAT YOU GET

## 10. What does the Settlement provide?

The Settlement provides for a Settlement Fund in the total amount of $105 million. Class Members who submit an approved claim will receive a share of the Settlement Fund after payment of legal fees and costs, including the cost to notify you of the Settlement and to administer it.  Class Counsel estimate that the number of Class Members eligible to receive a payment is approximately 2,000.  The share of each claimant will be determined using a Court-approved formula that first provides a fixed payment designed to offset the cost of testing for atrazine, and then distributes the remainder on a pro-rata basis based on evidence of the significance of the Class Member's detects of atrazine, its size, and the age of its proof.  Generally, if you processed more water or frequently had high concentrations of atrazine, you are eligible for more money; if you processed less water or your atrazine experience was sporadic or limited, you will get less money. Until each claim is received and analyzed, you will not know the amount you will receive for your claim. All of the $105 million, less the fees and costs mentioned above, will be distributed to Class Members. If less than 100% of the Class submit a claim, you could get more money. If claims exceed the funds available, payments will be reduced on a pro-rata basis. More details concerning the allocation of the Settlement Fund can be found in the Settlement Agreement available at *www.atrazinesettlement.com*.

# HOW YOU GET A PAYMENT — SUBMITTING A CLAIM FORM

## 11. How can I get a payment?

To qualify for payment, you must submit a completed claim form to the Claims Administrator.   You may submit a claim form online at *www.atrazinesettlement.com*.  Additionally, you may download a paper claim form at *www.atrazinesettlement.com*.

When submitting a claim, please read the claim form instructions carefully, complete the claim form, sign it, and submit it no later than August 27, 2012.  A claim form is complete if all required information is provided, it is certified to be complete and accurate, and it is timely submitted or postmarked.  Class Counsel will verify the accuracy of the information and approve the claim for payment if appropriate. Increased scrutiny may be given to each sample result that does not appear in PLEX, VMP, ARP, AMP, SMP, SCMP, or SVMP  records, is generated from an analytical method other than immunoassay, gas chromatography–mass spectrometry (GC-MS); gas chromatography with nitrogen phosphorus detection (GC/NPD); high-performance liquid chromatography, (HPLC); or liquid chromatography-mass spectrometry (LC-MS or LC-MS-MS), or that is in the highest 0.1% of sample results for all claimants. You may be asked for additional documentation to support your claim. The Court may also review your claim.

### 12. When would I get my payment?

The Court will hold a hearing on October 22, 2012, to decide whether to finally approve the Settlement.  If the Court approves the Settlement, there could be appeals.  Resolving these appeals takes time, perhaps several months or years.  Everyone who sends in a claim form will be informed of the progress of the Settlement via updates on the *www.atrazinesettlement.com* website.  Please be patient.

### 13. What am I giving up to stay in the Class and get a payment?

You will be releasing all claims that were brought or could have been brought in this lawsuit against Syngenta and other entities as described in No. 21. The definitions of Released Parties and Released Claims and additional information on Released Claims can be found in the Settlement Agreement at www.atrazinesettlement.com. It also means that all of the Court's orders will apply to you and legally bind you. Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit regarding the presence of atrazine in your drinking water or your water sources for the next 10 years. However, you will still be able to bring any claim that arises from future point-source contamination (as defined in Section 502(14) of the Clean Water Act) resulting from the Released Parties' development, manufacture, formulation, distribution, transportation, storage, loading, mixing application, or use of  atrazine or products that contain atrazine as an active ingredient or any claim against any applicator or user of any product that contains atrazine as an active ingredient arising from the presence of Atrazine in the Releasing Parties' Water as a result of any use of such product not in accordance with the precautionary statements and instructions for use on the label of such product.

## YOUR RIGHTS AND OPTIONS

### 14. What happens if I do nothing at all?

You get no payment and you won't be able to start, continue, or be a part of any other lawsuit against Syngenta and the other Released Parties about the legal issues in this case.

### 15. What happens if I exclude myself?

You get no payment.  You maintain the ability to bring or continue a lawsuit against Syngenta and other entities regarding the claims made in this lawsuit.

### 16. How do I ask to be excluded?

To exclude yourself from the Settlement you must follow the steps listed at No. 20, below.  If you don't want a payment from this Settlement, but you want to keep the ability to sue Syngenta regarding the legal claims in this case, then you must take steps to get out.  This is called excluding yourself -- or is sometimes referred to as opting out of the class.

## THE LAWYERS REPRESENTING YOU

### 17. Do I have a lawyer in the case?

The Court appointed Stephen M. Tillery and the law firm of Korein Tillery LLC., of St. Louis, Missouri; and Scott Summy and the law firm of Baron & Budd P.C., of Dallas, Texas to represent you as "Class Counsel."

They may be contacted at:

| | |
|---|---|
| Stephen M. Tillery | Scott Summy |
| Korein Tillery, LLC | Baron & Budd, P.C. |
| 505 North 7th Street, Suite 3600 | 3102 Oak Lawn Ave., Suite 1100 |
| St. Louis, MO 63101-1625 | Dallas, TX 75219-4281 |
| Phone: (888) 837-8324 | Phone: (214) 384-1913 |
| Fax:  (314) 241-3525 | Fax: (214) 520-1181 |

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT *WWW.ATRAZINESETTLEMENT.COM***

**18. Should I get my own lawyer?**

You do not need to hire your own lawyer because Class Counsel is working on your behalf.  But you may enter an appearance through an attorney if you choose to do so at your own expense. For example, you can ask an attorney to appear in Court for you if you want someone other than Class Counsel to speak for you. You should contact your lawyer about this Notice if you still have any questions.

**19. How will the lawyers be paid?**

Class Counsel will ask the Court for legal fees not to exceed 33 ⅓% of the Settlement Fund, plus court approved costs and administrative expenses including the cost to notify you of this Settlement and to administer it. These amounts represent the legal fees and costs for the years Class Counsel has litigated this dispute. The amounts sought will pay Class Counsel for the time they spent litigating this dispute and assuming the risk of bringing the action on your behalf. The Court may award less than the amount requested.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to submit a claim and be eligible for a payment from this Settlement, but you want to keep the ability to sue about the legal claims in this case, then you must take steps to get out.  This is called excluding yourself -- or is sometimes referred to as opting out of the Settlement.

**20. How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a written and signed statement entitled "Request for Exclusion" saying that you want to be excluded from *City of Greenville, et al., v. Syngenta Crop Protection, Inc., and Syngenta AG*.  The Request for Exclusion must certify that you are legally authorized to exclude the Class Member from the Settlement and you must provide an affidavit or other proof of the Class Member's eligibility to take part in this Settlement.  Be sure to include your name, address, telephone number, and your signature.  Also, please include your facsimile number or email address, if available. Your Request for Exclusion must be postmarked no later than August 27, 2012, and mailed to:

<div align="center">

Atrazine Settlement –Exclusion Request

Claims Administrator

P.O. Box 2002

Chanhassen, MN 55317-2002

</div>

You can't exclude yourself by telephone or e-mail.  If you mail a Request for Exclusion, you will not get any Settlement payment, and you cannot object to the Settlement.  You will not be legally bound by anything that happens in this lawsuit. If you claim to have injuries from the presence of atrazine in your water and exclude yourself, you retain the ability to sue in the future.

**21. If I don't exclude myself, can I sue for the same thing later?**

No.  Unless you exclude yourself, you give up the ability to sue Syngenta and the other Released Parties for the claims that this Settlement resolves.

Specifically, you will be releasing Defendants (Syngenta Crop Protection LLC and Syngenta AG) and all other manufacturers, contract manufacturers, research collaborators with Defendants or with such other manufacturers, formulators, distributors, retailers, purchasers, applicators, and users of Atrazine, including the defendants (in addition to the Defendants) in the Litigation, which are Sipcam Agro USA, Inc., Growmark, Inc., Drexel Chemical Co., United Agri Products, Makhteshim-Agan of North America, Inc. and Dow Agrosciences LLC, and their present and former parents, subsidiaries, divisions, affiliates, stockholders, benefit plans, officers, directors, employees, attorneys, insurers, agents and any of their legal representatives, and the predecessors, heirs, executors, administrators, successors and assigns of each of them from all claims of the Releasing Parties arising out of, or relating to, the presence of Atrazine in the Releasing Parties' Water as a result of the development, manufacture, formulation, distribution, transportation, storage, loading,  mixing, application, or use of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) or products that contain atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient that any Releasing Party asserted or could have asserted in the Litigation. Released Claims shall not include any claim for indemnity, contribution among joint tortfeasors or apportionment of liability or fault, with respect to any claim against a Releasing Party, arising from the consumption of the Releasing Parties' Water, that is not a claim for property damage or economic loss

In addition, upon entry of the Final Judgment, you will be deemed to have granted the Released Parties an  irrevocable, non-exclusive, transferrable license for a period of ten (10) years commencing with the date that is the earlier of Final Judgment or July 1, 2014, holding them harmless for all Released Claims or claims which, had they accrued prior to Final Judgment, would have been Released Claims.  *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978 (7th Cir. 2002).  Provided however, that this license shall not apply to any claim arising from point-source contamination, as defined in Section 502(14) of the Clean

<div align="center">

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT** *WWW.ATRAZINESETTLEMENT.COM*

</div>

Water Act, resulting from the Released Parties' development, manufacture, formulation, distribution, transportation, storage, loading, mixing application, or use of  atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) or products that contain atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient or to any claim against any applicator or user of any product that contains atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient arising from the presence of Atrazine in the Releasing Parties' Water as a result of any use of such product not in accordance with the precautionary statements and instructions for use on the label of such product.

The definitions of Releasing Parties, Released Parties and Released Claims and additional information on Released Claims can be found in the Settlement Agreement at www.atrazinesettlement.com.

| 22. If I exclude myself, can I get money from the Settlement? |
|---|

No. If you exclude yourself, you cannot receive payment under the Settlement.

## OBJECTING TO OR SUPPORTING THE SETTLEMENT

You can tell the Court that you like the Settlement or that you don't agree with the Settlement or some part of it.

| 23. How do I tell the Court that I either like the Settlement or don't like the Settlement? |
|---|

If you're a Class Member, you can write the Court and state that you approve of the Settlement or some part of it.  You can also object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should approve the Settlement or not approve it.  The Court will consider your views.

To object, you must file a written, signed statement titled "Objection" with the Court saying that you object to the proposed Settlement in *City of Greenville, et al., v. Syngenta Crop Protection, Inc., and Syngenta AG*, Case No. 3:10-cv-00188-JPG-PMF. Your statement must include:

- An affidavit or other proof demonstrating the Class Member's eligibility to be part of this Settlement;
- A certification that the filer has been legally authorized to object on behalf of the Class Member;
- Your reasons for objecting to the Settlement;
- Any legal support or other evidence you wish the Court to consider;
- The name, address, telephone and facsimile number and email address (if available) of the filer and Class Member;
- A statement that you would like to address the Court at the Fairness Hearing, if you wish to do so; and
- If you choose to be represented by your own attorney at your own expense, your attorney's contact information, including name address, telephone and facsimile number and email address (if available).

Any party who is represented by an attorney must file the objection electronically with the Court through the Court's Electronic Case Filing ("ECF") system .  If you represent yourself, you may file your objection with the Court by mailing or personally delivering your letter to the Court address below, or you may electronically file it.  Corporations cannot represent themselves. *Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008).  You must also send a copy of your objection to the Class Counsel and Defense Counsel at the addresses listed below.

For assistance with using the Electronic Case Filing system, e-mail questions to ecfhelp@ilsd.uscourts.gov or contact the ECF help desk at (866) 867-3169 (East St. Louis) or (866) 222-2104 (Benton). Clerk's office personnel are available from 9 a.m. to 4:30 p.m. CST Monday thru Friday.

**Be sure to include your name, address, telephone number, your signature, the case name, the required certification and evidence of class membership and the reasons you object to the Settlement with your filing.**  Transmit the objection to these three different places postmarked no later than August 27, 2012:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| File electronically through ECF.<br><br>OR<br><br>Clerk of Court<br>750 Missouri Avenue<br>East St. Louis, Illinois 62201 | Stephen M. Tillery<br>Korein Tillery LLC<br>505 N. 7th Street, Suite 3600<br>St. Louis, Missouri 63101 | Michael A. Pope<br>McDermott Will & Emery<br>227 W. Monroe Street<br>Chicago, Illinois 60614 |

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT *WWW.ATRAZINESETTLEMENT.COM***

## 24. What is the difference between objecting and excluding?

Objecting is formally telling the Court that you don't like something about the Settlement and that you believe the Settlement should be rejected. You can object only if you stay in the class. If the Settlement is approved you will give up your ability to sue for the claims the Settlement resolves. Excluding yourself is telling the Court that you don't want to be part of the class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you don't have to.

## 25. When and where will the Court decide whether to approve the Settlement?

The Honorable J. Phil Gilbert will hold a Fairness Hearing at __:__ a.m. on October 22, 2012, at 301 W. Main Street, Benton, Illinois  62812.

At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate.  If there are objections, the Court will consider them.  Judge Gilbert will listen to Class Members who have asked to speak at the hearing.  The Court will also decide how much to pay Class Counsel.  After the hearing, the Court will decide whether to approve the Settlement Agreement.  We do not know how long these decisions will take.  If the Court approves the Settlement Agreement, then payments for approved claims will be mailed to you.  If the Court does not approve the Settlement Agreement, then the parties will continue to litigate the case in Court.

## 26. Do I have to come to the hearing?

No.  Class Counsel will answer questions Judge Gilbert may have.  But you are welcome to come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

## 27. May I speak at the hearing?

You may speak at the Fairness Hearing if you wish to support the Settlement or oppose the Settlement.  In order to object to the settlement you must follow the instructions in No. 23.  You cannot speak at the hearing if you exclude yourself.

## IF YOU DO NOTHING

## 28. What happens if I do nothing at all?

If you are a Class Member and you do nothing, you'll get no money from this Settlement and you won't be able to start a lawsuit, or be part of any other lawsuit about the legal issues in this case.  Please see No. 21 for more information about the claims you are releasing as a Class Member.

## GETTING MORE INFORMATION

## 29. Are there more details available?

This Notice summarizes the proposed Settlement.  More details are available in the Settlement Agreement.  You can get a copy of the Settlement Agreement by visiting the website at *www.atrazinesettlement.com* or call 1-866-329-7832 toll-free.  Or write to: Atrazine Settlement, Claims Administrator, P.O. Box 2002, Chanhassen, MN 55317-2002 to find more information.

**PLEASE GO TO *WWW.ATRAZINESETTLEMENT.COM* TO SUBMIT YOUR CLAIM FORM OR CONTACT THE CLAIMS ADMINISTRATOR AT 1-866-329-7832.**

**DO NOT CONTACT THE COURT FOR INFORMATION.**

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CITY OF GREENVILLE, et al., individually, and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **vs.** | ) ) ) | **Case No.: 3:10-cv-00188-JPG-PMF** |
| **SYNGENTA CROP PROTECTION, INC., and SYNGENTA AG,** | ) ) ) | |
| **Defendants.** | ) ) | |

---

**DECLARATION OF RICHARD W. SIMMONS REGARDING
DISSEMINATION OF CLASS NOTICE**

---

1.  I am the Managing Director of BMC Group Class Action Services ("BMC Group"), a firm with offices near Minneapolis, Minnesota that provides consulting services relating to the planning and administration of class action and mass tort litigation settlements.

2.  This Declaration is based upon my personal knowledge, on information provided to me by Class Counsel, my associates and staff, and information reasonably relied on in the fields of advertising, media and communications.

3.  This Declaration describes my experience, as well as the notice program (the "Notice Plan" or "Notice Program") and Notices (the "Notice" or "Notices") that I propose for this case, including how they were developed and why they will be effective.

## OVERVIEW

4.  The Proposed Notice Plan disseminates the Class Notice through a combination of both direct mail and paid advertisements in publications targeting potential class members in this

litigation. Although not directly measurable, coverage will be further enhanced by a national informational press release and the case website.

5.   The Notice Program is consistent with other effective, court-approved notice programs, and is designed to meet the requirements of due process.

6.   We have also developed various forms of notice for Court approval as described below. All forms of notice are conspicuous, clear and concise, and written in plain, easily understood language.

## QUALIFICATIONS

7.   Since 1974, BMC Group has consulted regarding the administration of class action settlements involving antitrust, consumer fraud, employment, insurance, product liability, discrimination, and securities litigation. For nearly four decades, BMC Group has pioneered developments in landmark consumer, mass tort/personal injury, and securities litigation settlements. BMC Group experts led the development of analysis in antitrust litigation (*In re Corrugated Container Antitrust Litigation*, MDL 310) and helped develop statistical models that are still used today to determine the existence and impact of discrimination (*Rajender v. University of Minnesota*, No. 4-73-435 (D. Minn)).

8.   I joined BMC Group in 1990, and have 21 years of experience in designing and implementing class action settlements and notice campaigns that blend direct mail, published notice, and online media. The settlements I have managed range in size from fewer than 100 class members to more than 40 million, including some of the largest and most complex notice and claims administration programs in history.  I have been accepted as an expert and testified in state and federal courts about the design and implementation of notice programs, claims processes, and the impact of attorney communications on claims rates.  As has always been my

practice, I personally performed or oversaw BMC Group's consulting services in each of the cases indicated on my CV, which is attached as Exhibit 1.

9.  I have also presented to panels of judges and lawyers on issues regarding notice, claims processing, and disbursement.  In 2011, I was a panelist at the Federal Judicial Center's workshop/meeting regarding class action notice and settlement administration.  I have co-authored and presented CLE programs and whitepapers regarding class notice and class action claims administration.

10. My clients include corporations, law firms (both plaintiff and defense), the Department of Justice, the Securities and Exchange Commission, and the Federal Trade Commission, which since 1998 has retained BMC Group (with me specifically as the designated "Contractor's Representative") to administer and provide expert advice regarding notice and claims processing in their settlements.  I am currently consulting with the Federal Trade Commission regarding the design of media campaigns to provide notice to individuals whose identities and mailing addresses are unknown regarding the existence of a claims fund.

11. In addition to my class action consulting work, I have taught a college course in antitrust economics, have been a guest lecturer at the University of Minnesota Law School on issues of statistical and economic analysis, was a charter member of the American Academy of Economic and Financial Experts, and am a former referee for the Journal of Legal Economics (reviewing and critiquing peer reviewed articles on the application of economic and statistical analysis to legal issues).

12. In forming my opinions, I draw from my in-depth class action case experience, as well as my educational and related work experiences. I graduated from St. Olaf College with a B.A. in Economics, have pursued extensive graduate level statistics and consumer economics

work at the University of Minnesota, and received formal media training from New York University.  I have applied my experience in the class action consulting field for more than 21 years.

13. Christian Clapp and Rachel Stoering drafted the notice documents proposed in this case.   Both are former class action litigators, and have extensive experience managing all aspects of notice dissemination in state and federal courts. Additionally, Christian is a former Assistant Attorney General for the State of Minnesota with extensive experience evaluating class notices in a CAFA context. They have designed the notice documents in this case to be conspicuous, concise, and easily understood.

## DISTRIBUTION OF CLASS NOTICE

14. In this case, the Notice Plan is designed to reach the greatest practicable number of potential Class Members, ensuring that they will receive sufficient opportunities to be exposed to the Notice, to see, review, understand, and be reminded about it, and to respond appropriately if they so choose. The Notice Plan uses direct mail as well as paid notice in leading publications targeting potentially-affected Community Water Systems.

### *The Class*

15. The "Class" (or "Class Members") consists of:

> Every Community Water System in the United States of America for which any Qualifying Test Result shows any Measurable Concentration of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine).

16. There are approximately 52,873 Community Water Systems in the United States (http://water.epa.gov/infrastructure/drinkingwater/pws/factoids.cfm, last visited 4/25/2012).

4

### *Direct Mail Notice*

17. A Summary Notice is proposed to be mailed to approximately 2,000 U.S. Community Water Systems that Class Counsel have identified as having experienced a measurable concentration of atrazine in their raw or finished water.  The database to be used for the mailing was provided to BMC Group by Class Counsel.  I have been informed that this data is derived from information provided by Community Water Systems to their respective State regulators pursuant to the federal Safe Drinking Water Act, 42 U.S.C. 300f et seq.,  and information derived from atrazine testing of certain Community Water Systems' raw and finished water conducted by or on behalf of Syngenta Crop Protection, LLC, and that it identifies U.S. Community Water Systems that are known to have experienced a measurable concentration of atrazine contamination.

### *Publication Notice*

18. Supplementing the mailed notice, a Summary Notice is proposed to be published once in each of three leading publications whose readership includes potentially-affected Community Water Systems:  the *Journal - American Water Works Association, American City and County,* and *Public Works Magazine*.

19. The *Journal - American Water Works Association* has a circulation of 41,052 copies and is the flagship publication of the American Water Works Association. The readership of this publication includes utility managers, utility operators, researchers, academicians, consultants, engineers, and scientists. The editorial content of this publication includes practical management information, case studies of interest to utilities, and information on the latest technologies, trend forecasts, and managers' views of current issues.

5

20. *American City and County* has a circulation of 66,726 copies and reports on a range of topics of interest to local and state government officials, both elected and appointed, included water infrastructure issues.

21. *Public Works Magazine* has a circulation of 65,000 copies and reports monthly on the equipment, materials, and services required for the design, construction, operation, maintenance, and rehabilitation of public works facilities and infrastructure, including potable water acquisition, treatment, and delivery.

22. Some of the publications proposed here exercise editorial control over advertisements and review advertisements at the time of placement.  While unlikely, it is possible that a publication may decline to publish a legal notice.  In the event that this occurs, a substantially similar publication will be substituted.  Possible substitute publications include, for example, *Government Engineering*.

### *Case Website*

23. Direct Mail and Published Notice will be further supplemented by a neutral website such as www.atrazinesettlement.com that will allow Class Members to obtain additional information and documents about the settlement, including the Detailed Notice, Settlement Agreement, a list of important dates, the contact information for the Claims Administrator and Class Counsel, and any other information that the parties may agree to provide or that the Court may require. The website address will be cited in all notice materials. The website established and maintained by BMC Group will be accessible 24 hours a day, 7 days a week.

### *Other*

24. A dedicated toll-free number will be established allowing Class Members to call and listen to answers to frequently asked questions or request that a Detailed Notice be mailed to

6

them. The toll-free number will be cited in all notice materials. The toll-free number established and maintained by BMC Group will be accessible 24 hours a day, 7 days a week.

25. A post office box will also be established allowing Class Members to request additional information or ask questions by mail.

### *Notice Design*

26. The Notices themselves are designed to be "noticed" and understood by Class Members. Many courts, as well as the FJC, have approved notices that have been written and designed in a similar fashion. The Notices contain easy-to-read summaries of all of the key information affecting Class Members' rights and options. Drafts of the notice documents are included as Exhibit 2.

### <u>CONCLUSION</u>

27. In my opinion, the Notice Program provides the best notice practicable under the circumstances of this case, conforms to all aspects of Federal Rule of Civil Procedure 23, and comports with the guidance for effective notice articulated in the *Manual for Complex Litigation 4th*.

28. The Notice Plan provides for direct mail and targeted publication notice to likely Class Members, and for the delivery of "noticeable" Notices to capture Class Members' attention and provide them with information necessary to understand their rights and options.

29. At the conclusion of the Notice Plan, we will provide a final report verifying its effective implementation.

30. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on Tuesday, May 22, 2012.

Richard W. Simmons
Managing Director, BMC Group

8

# EXHIBIT 1

## RICHARD W. SIMMONS

**EDUCATION**

St. Olaf College
Northfield, Minnesota, 1986-1990
Bachelor of Arts in Economics with Concentration in Quantitative Methods

University of Minnesota
St. Paul, Minnesota, 1994-2000
*A.B.D: Completion of all graduate study and preliminary exams.  Dissertation suspended due to management of class action and mass tort consulting practice*

Fields:    Microeconomics
Econometrics
Consumption and Household Economics
Industrial Organization: Prices and Markets
Natural Resource and Energy Economics

New York University
New York City, New York, 2012
Media Planning, Buying, and Analysis

*Other Training*

GfK MRI: *Media Planning - MRI Methodology 101*

**PROFESSIONAL EXPERIENCE**

Managing Director
BMC Group Class Action Services
18750 Lake Drive East
Chanhassen, MN  55331

Date:    May 2008 to Present
January 2002 to May 2008 (President)
May 1997 to December 2002 (Vice President)
May 1996 to May 1997 (Principal)
June 1990 to May 1996 (Associate)

Instructor, Department of Economics
Industrial Organization/Antitrust Economics
St. Olaf College, Northfield, MN
Date:    June 1998 to December 1998

**ARTICLES AND MONOGRAPHS**

Richard W. Simmons and Richard C. Hoyt, "Economic Damage Analysis in Rule 10b-5 Securities Litigation" *Journal of Legal Economics*, March 1993.

Richard W. Simmons and Richard C. Hoyt, "Calibration of Damage Models in Rule 10b-5 Securities Litigation" May 1995 Working Paper.

Richard W. Simmons, "Optimal Regulation of Polluting Oligopolists," February 1998 Working Paper.

Richard W. Simmons and Gina Intrepido, "Expert Testimony Regarding Class Action Notice", June 2010 Monograph.

Richard W. Simmons, "Is Your Claims Administrator Out of Control? What You Need to Know to About Protecting Class Member Data, Your Firm, And Your Reputation." August 2011 Monograph

**CONTINUING LEGAL EDUCATION PRESENTATIONS**

Legal Notice Ethics, 2010 – 2011
Developments in Class Action Notice and Claims Administration, 2010 – 2011
Data Privacy and Class Action/Mass Tort Settlements, 2011

**PROFESSIONAL AFFILIATIONS**

Panelist, Federal Judicial Center Workshop on Class Action Settlements, 2011
Charter Member, American Academy of Economic and Financial Experts
Former Referee, Journal of Legal Economics



### BMC Group Class Action Services
### Partial List of Legal Notification and Settlement Administration Experience

| | |
|---|---|
| ***Antitrust*** | *In Re: Aluminum Phosphide Antitrust Litigation*<br>93-2452 (D. KS.) |
| | *In Re: Beef Antitrust Litigation*<br>MDL No. 248 (N. Dist TX Dallas Div) |
| | *In Re: Bromine Antitrust Litigation*<br>MDL No. 1310 (S. Dist IN) |
| | *In Re: Industrial Silicon Antitrust Litigation*<br>95-2104 (W. Dist. PA) |
| | *In Re: Workers Compensation Insurance Antitrust Litigation*<br>Civ. 4-85-1166 (D. Minn, 4th Div) |
| | *Red Eagle Resources Corporation, Inc., et al. v. Baker Hughes Inc., et al.*<br>Civ. H-91-627 (S.D. Tx, Houston Div) |
| | *Rob'n I, Inc., et al. v. Uniform Code Counsel, Inc.*<br>Civil Action No. 03-203796-1 (Spokane County, WA) |
| | *Sarah F. Hall d/b/a Travel  Specialist, et al. v. United Airlines, Inc., et al.*<br>No. 7:00-CV-123-BR(1) (E. Dist SC) |
| ***Business*** | *American Golf Schools, LLC, et al. v. EFS National Bank, et al.*<br>CT-005208-00 Div. 3 (Tenn 13th Jud. Dist) |
| | *AVR, Inc. and Amidon Graphics v. Churchill Truck Lines*<br>Civ. 4-95-401 (Minn 4th Jud Dist) |
| | *F.T.C. v. Ameritel Payphone Distributors*<br>00-514 (S.D. FL) |
| | *F.T.C. v. Datacom Marketing, Inc.*<br>06-cv-2574 (N.D. IL) |
| | *F.T.C. v. Davison & Associates, Inc.*<br>97-cv-01278 (W.D. Pa.) |
| | *F.T.C. v. Fidelity ATM, Inc.*<br>06-cv-81101 (S.D. Fla.) |
| | *F.T.C. v. Financial Resources Unlimited, Inc.*<br>03-cv-8864 (N.D. IL) |
| | *F.T.C. v. First American Payment Processing Inc.*<br>04-0074 (D. AZ) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| ***Business*** | *F.T.C. v. Group C Marketing, Inc.*<br>06-cv-6019 (C.D. Cal.) |
| | *F.T.C. v. Jordan Ashley, Inc.*<br>09-cv-23507 (S.D. Fla.) |
| | *F.T.C. v. Medical Billers Network, Inc.*<br>05-cv-2014 (S.D. N.Y.) |
| | *F.T.C. v. Minuteman Press Int'l*<br>No. CV 93 2496 (E.D.N.Y.) |
| | *F.T.C. v. Netfran Development Corp*<br>05-cv-22223 (S.D. Fla.) |
| | *F.T.C. v. USA Beverages, Inc*<br>05-61682 (S.D. FL) |
| | *F.T.C. v. USA Beverages, Inc.*<br>05-cv-61682 (S.D. Fla.) |
| | *Physicians of Winter Haven LLC v. STERIS Corp.*<br>1:10-00264-CAB (N.D. OH) |
| | *Todd Tompkins, Doug Daug and Timothy Nelson v. BASF Corporation, e*<br>Civ 96-59 ( NEC D. N.D.) |
| | *United States of America v. $1,802,651.56 in Funds Seized from E-Bulli*<br>09-cv-01731 (C.D. Cal.) |
| | *Waxler Transportation Company, Inc. v. Trinity Marine Products, Inc., e*<br>49-741 (Plaquemines. LA) |
| ***Civil Rights*** | *Cazenave, et al. v. Sheriff Charles C. Foti, Jr., et al.*<br>00-1246 (E.D. LA) |
| | *Garcia, et al v. Metro Gang Strike Force, et al.*<br>09-CV-01996  (D. MN) |
| | *McCain, et al. v. Bloomberg, et al.*<br>No. 41023/83 (New York) |
| | *Nancy Zamarron, et al. v. City of Siloam Springs, et al.*<br>08-cv-5166 (W.D. AR) |
| | *Nilsen v. York County*<br>Civ No. 02-212-PH  (D. Maine) |



### BMC Group Class Action Services
### Partial List of Legal Notification and Settlement Administration Experience

| | |
|---|---|
| ***Civil Rights*** | *Travis Brecher, et al. v. St. Croix County, Wisconsin, et al.*<br>Case No. 02-C-0450-C (W.D. WI) |
| ***Consumer*** | *Andrew J. Hudak, et al. v. United Companies Lending Corporation*<br>Case No.  334659 (Cuyahoga County, Ohio) |
| | *Angela Doss, et al. v. Glenn Daniels Corporation*<br>No. 02 C 0787 (E. Dist. IL) |
| | *Anthony Talalai, et al. v. Cooper Tire & Rubber Company*<br>L-008830-00-MT (Middlesex County, NJ) |
| | *Ballard, et al. v. A A Check Cashiers, Inc., et al.*<br>Civ. 2001-351 (Washingotn County, AR) |
| | *Belinda Peterson, et al. v. H & R Block Tax Services, Inc.*<br>No. 95 CH 2389 (Cook County, IL) |
| | *Carideo et al. v. Dell, Inc.*<br>06-1772 (W.D. WA) |
| | *Cummins, et al. v. H&R Block, et al.*<br>No. 03-C-134 (Kanawha County, WV) |
| | *Don C. Lundell, et al. v. Dell, Inc.*<br>No. 05-03970 (N. D. CA) |
| | *Duffy v. Security Pacific Autmotive Financial Services Corp., et al.*<br>Civ. 53-729 IEG (BTM) (S.D.C.) |
| | *Edward Hawley, et al. v. American Pioneer Title Insurance Company*<br>No. CA CE 03-016234 (Broward County, FL) |
| | *F.T.C. and The People of the State of New York v. UrbanQ*<br>(E. D. New York) |
| | *F.T.C. v. 1st Beneficial Credit Services LLC*<br>No. 02-CV-1591 (N.D. Ohio) |
| | *F.T.C. v. 9094-5114 Quebec, Inc.*<br>03-cv-7486 (N.D. IL) |
| | *F.T.C. v. Ace Group, Inc.*<br>08-cv-61686 (S.D. Fla.) |
| | *F.T.C. v. Affordable Media LLC*<br>No. 98-16378 (9th Cir.); No. CV-S-98-669-LDG(RLH) (D. Nev.) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| ***Consumer*** | *F.T.C. v. AmeraPress, Inc.*<br>(N. Dist. TX, Fort Worth Div.) |
| | *F.T.C. v. American Bartending Institute, Inc., et al.*<br>05-cv-5261 (C.D. Cal.) |
| | *F.T.C. v. American International Travel Services Inc.*<br>No. 99-6943 (S.D. Fla.) |
| | *F.T.C. v. Bigsmart.com, L.L.C., et al.*<br>CIV 01-466-PHX-RCB (D. Az) |
| | *F.T.C. v. Call Center Express Corp.*<br>04-cv-22289 (S.D. Fla.) |
| | *F.T.C. v. Capital Acquistions and Management Corp.*<br>04-cv-50147 (N.D. IL ) |
| | *F.T.C. v. Capital City Mortgage Corp.*<br>98-cv-00237 (D.D.C. ) |
| | *F.T.C. v. Cella*<br>No. CV-03-3202 GAF (SHSx) |
| | *F.T.C. v. Certified Merchant Services, Ltd., et al.*<br>No. 4:02cv44 (E.D. Texas) |
| | *F.T.C. v. Check Inforcement*<br>03-cv-2115 (D. N.J.) |
| | *F.T.C. v. Chierico et al.*<br>No. 96-1754-CIV- (S.D. Fla.) |
| | *F.T.C. v. Clickformail.com, Inc.*<br>No. 03C-3033 (N.D. Ill.) |
| | *F.T.C. v. Consumer Credit Services*<br>No. 96 CIV 1990 (S.D.N.Y.) |
| | *F.T.C. v. Consumer Direct Enterprises, LLC.*<br>07-cv-479 (D. Nev.) |
| | *F.T.C. v. Debt Management Foundation Services, Inc.*<br>04-cv-1674 (M.D. Fla.) |
| | *F.T.C. v. Digital Enterprises, Inc.*<br>06-cv-4923 (C.D. Cal.) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| Consumer | *F.T.C. v. Dillon Sherif*<br>02-cv-00294 (W.D. Wash.) |
| --- | --- |
| | *F.T.C. v. Discovery Rental, Inc.*<br>Civ No: 1057-ORL-19B (M.D. of FL) |
| | *F.T.C. v. EdebitPay, LLC.*<br>07-cv-4880 (C.D. Cal.) |
| | *F.T.C. v. Electronic Financial Group, Inc.*<br>03-cv-211 (W.D. Texas) |
| | *F.T.C. v. Eureka Solutions*<br>Civ No. 97-1280 (W. Dist. PA) |
| | *F.T.C. v. Federal Data Services*<br>Case No. 00-6462-CIV-Ferguson |
| | *F.T.C. v. Financial Advisors & Associates, Inc.*<br>08-cv-00907 (M.D. Fla.) |
| | *F.T.C. v. First Alliance Mortgage Co.*<br>Civ No. 00-964 |
| | *F.T.C. v. First Capital Consumers Group, et al.*<br>02-cv-7456 (N.D. IL) |
| | *F.T.C. v. First Capitol Consumer Membership Services Inc., et al.*<br>Civ No. 1:00cv00905 (W.D.N.Y.) |
| | *F.T.C. v. Franklin Credit Services, Inc.*<br>Civ. No. 98-7375-CIV-GOLD (S.D. Fla.) |
| | *F.T.C. v. Global Web Solutions, Inc., d/b/a USA Immigration Services, et*<br>03-cv-023031 (D.D.C.) |
| | *F.T.C. v. Granite Mortgage, LLC*<br>No. 99-289 (E.D. Ky.) |
| | *F.T.C. v. ICR Services, Inc.*<br>No. 03C 5532 (N.D. Ill.) |
| | *F.T.C. v. iMall, Inc. et al.*<br>Civ No. 99-03650 (C.D. Cal.) |
| | *F.T.C. v. Ira Smolev, et al.*<br>Civ No. 01-8922 CIV-ZLOCH (S.D. FL.) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| *Consumer* | *F.T.C. v. Jeffrey L. Landers*<br>00-cv-1582 (N.D. GA) |
| | *F.T.C. v. Jewelway International, Inc.*<br>CV-97-383 TUC JMR (D. Arizona) |
| | *F.T.C. v. LAP Financial Services, Inc.*<br>No. 3:99 CV-496-H (W.D. Ky.) |
| | *F.T.C. v. Marketing & Vending, Inc. Concepts, L.L.C., et al.*<br>Civ No. 00-1131 (S.D.N.Y.) |
| | *F.T.C. v. Mercantile Mortgage*<br>Civ No. 02C-5078 (N. Dist of IL. E. Div.) |
| | *F.T.C. v. Meridian Capital Management*<br>Civ No. CV-S-96-63 PMP (D. Nev.) |
| | *F.T.C. v. NAGG Secured Investments*<br>00-cv-02080 (W.D. Wash. ) |
| | *F.T.C. v. National Consumer Counsil, Inc., et al.*<br>04-cv-0474 (C.D. Cal.) |
| | *F.T.C. v. National Credit Management Group*<br>No. 98-6043 (3d Cir.); Civ. No. 98-936 (D.N.J.) |
| | *F.T.C. v. National Supply & Data Distribution Services*<br>Civ No.  99-128-28 HLH (Central Dist. of CA.) |
| | *F.T.C. v. Nationwide Information Services, Inc.*<br>Civ No. CV-00-06505 TJH |
| | *F.T.C. v. Pace Corporation*<br>Civ No. 94C 3625 (N.D. IL.) |
| | *F.T.C. v. Paradise Palms Vacation Club*<br>Civ No. 81-1160D (W.D. Wash.) |
| | *F.T.C. v. Platinum Universal, LLC*<br>03-cv-61987 (S. D. Fla.) |
| | *F.T.C. v. Raymond Urso*<br>No. 97-2680-CIV-Ungaro-Benages (S.Dist FL) |
| | *F.T.C. v. Robert S. Dolgin*<br>No-CIV-97-0833 (MHP) (D. N. CA) |

# bmcgroup
## Class Action Services

**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| *Consumer* | *F.T.C. v. Southern Maintenance Supplies*<br>No. 99 Civ 0975 (N.D. Ill.) |
| | *F.T.C. v. Star Publishing Group, Inc.*<br>No. 00 CV 023D (D. Wy.) |
| | *F.T.C. v. Stuffingforcash.com Corp.*<br>No. 02 C 5022 (N.D. IL) |
| | *F.T.C. v. Success Masters International*<br>Civ No. 02-04566 LGB |
| | *F.T.C. v. Target Vending Systems, L.L.C., et al.*<br>Civ No. 00-0955 (S.D.N.Y.) |
| | *F.T.C. v. The College Advantage, Inc.*<br>03-cv-179 (E.D. Texas) |
| | *F.T.C. v. The Crescent Publishing Group, Inc., et al.*<br>Civ Action No. 00-6315 (LAK) (S D.N.Y.) |
| | *F.T.C. v. The Tungsten Group, Inc.*<br>01-cv-773 (E.D. VA ) |
| | *F.T.C. v. Think Achievement Corp.*<br>Civ. No. 2:98 CV12 JM (N.D. Ind.) |
| | *F.T.C. v. Think All Publishing*<br>07-cv-11 (E.D. Texas) |
| | *F.T.C. v. Unicyber Gilboard, Inc.*<br>04-cv-1569 (C.D. Cal.) |
| | *F.T.C. v. US Grant Resources, LLC.*<br>04-cv-0596 (E.D. LA) |
| | *F.T.C. v. Verity International, Ltd., et al.*<br>00-cv-7422-LAK (S.D. N.Y.) |
| | *F.T.C. v. Wellquest International, Inc.*<br>(W. D CA) |
| | *F.T.C. v. Wolf Group*<br>No. 94-8119 CIV-Ferguson (S. Dist FL, West Palm Beach Div.) |
| | *F.T.C. v.Trustsoft, Inc.*<br>05-cv-1905 (S.D. Texas) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| *Consumer* | *Fernando N. Lopez and Mallory Lopez, et al. v. City Of Weston*<br>Case No. 99-8958  CACE 07 (FL 17th Jud Dist) |
| | *Fiori, et al. v. Dell Inc., et al.*<br>C09 01518 (N.D. CA) |
| | *FMS, Inc. v. Dell, Inc. et al.,*<br>No. 03-2-23781-7SEA (King County, WA) |
| | *Galatis, et al. v. Psak, Graziano Piasecki & Whitelaw, et. al.*<br>No.  L-005900-04 (Middlesex County, NJ) |
| | *Greg Benney, et al. v. Sprint International Communications Corp. et al.*<br>No. 02CV-1422 (Wyandotte County, KS) |
| | *Griffin v. Dell Canada Inc*<br>07-CV-325223D2 (Ontario, Superio Court of Justice) |
| | *Harris, et al. v. Roto-Rooter Services Company*<br>No. 00-L-525 (Madison County, IL) |
| | *Harrison, et al. v. Pacific Bay Properties*<br>No. BC285320 (Los Angeles County, CA) |
| | *In Re: Bancomer Transfer Services Mexico Money Transfer Litigation*<br>BC238061, BC239611(Los Angeles County, CA) |
| | *IN RE: H&R Block Express IRA Marketing Litigation*<br>06-md-01786 (W.D. MO) |
| | *In Re: High Carbon Concrete Litigation*<br>No. 97-20657 (Minn 4th Jud Dist) |
| | *In Re: High Sulfur Content Gasoline Products Liability Litigation*<br>MDL 1632 |
| | *In Re: Ria Telecommunications and Afex Mexico Money Transfer Litiga*<br>CV 990759 (San Louis Obispo, CA) |
| | *In Re: Salmonella Litigation*<br>PI 94-016304 (Minn 4th Jud Dist) |
| | *Janet Figueroa, et al. v. Fidelity National Title   Insurance Company*<br>No. 04-08980-CA-01 (Miami Dade County, FL) |
| | *Jerome H. Schlink v. Edina Realty Title*<br>No. 02-18380 (Minn 4th Jud Dist) |



**Class Action Services**

BMC Group Class Action Services
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| *Consumer* | *Joel E. Zawikowski, et al. v. Beneficial National Bank, et al.*<br>No. 98 C 2178 (N. Dist. IL) |
| | *John Babb, et al. v. Wilsonart International, Inc.*<br>CT-001818-04 (Memphis, TN) |
| | *Kenneth Toner, et al. v. Cadet Manufacturing Company*<br>No. 98-2-10876-2SEA (King County, WA) |
| | *Kiefer, et al. v. Ceridian Corporation, et al.*<br>No. 3-95-818 (D. Minn) |
| | *Louis Thula, et al. v. Lawyers Title Insurance Corporation*<br>No. 0405324-11 (Broward County, FL) |
| | *Lynnette Lijewski, et al. v. Regional Transit Board, et al.*<br>4-93-Civ-1108 (D. Minn, 4th Div.) |
| | *Mark Laughman, et al. v. Wells Fargo Leasing Corp. et al.*<br>No. 96 C 0925 (N. Dist. IL) |
| | *Mark R. Lund v. Universal Title Company*<br>No. 05-00411 (Minn 4th Jud Dist) |
| | *Melissa Castille Dodge, et al. v. Phillips College of New Orleans, Inc., et*<br>No. 95-2302 (E. Dist. LA) |
| | *Michael Drogin, et al. v. General Electric Capital Auto Financial Service*<br>Index No. 95/112141 (S.C. NY, County of New York) |
| | *Michael Sutton v. DCH Auto Group, et al.*<br>(Essex County, NJ) |
| | *Michael T. Pierce et al. v. General Electric Capital Auto Lease*<br>CV 93-0529101 S |
| | *Mitchem, et al v. Illinois Collection Service, Inc.*<br>09-7274 (N.D. IL) |
| | *Northcoast Financial Services v. Marcia Webster*<br>2004 CVF 18651 (Cuyahoga County, OH) |
| | *Patricia Faircloth, et a. v. Certified Finance, Inc., et al.*<br>No: 99-3097 (E. D. La) |
| | *Pistilli v. Life Time Fitness, Inc.*<br>07-2300 (Minn 4th Jud Dist) |

**bmcgroup**
Class Action Services

### BMC Group Class Action Services
### Partial List of Legal Notification and Settlement Administration Experience

| | |
|---|---|
| **Consumer** | *Rawlis Leslie, et al. v. The St. Joe Paper Company*<br>No. 03-368CA (Gulf County, FL) |
| | *Regayla Loveless, et al. v. National Cash, Inc, et al.*<br>CIV 2001-892-2 (Benton County, AR) |
| | *Ricci, et al., v. Ameriquest Mortgage Co.*<br>27-CV-05-2546 (Minn 4th Jud. Dist) |
| | *Ronnie Haese, et al. v. H&R Block, et al.*<br>No. CV-96-423 (Kleberg County, TX) |
| | *Shepherd, et al. v. Volvo Finance North America, Inc., et al.*<br>Civ. 1-93-CV-971 MHS (D. GA, Atlanta Div) |
| | *Smith v. NRT Settlement Services of Missouri, LLC*<br>06CC-004039 (St. Louis County, MO) |
| | *Terrell Ervin v. Nokia Inc. et al.*<br>01-L-150 (St. Clair County, IL) |
| | *Theresa Boschee v. Burnet Title, Inc.*<br>No. 03-016986 (Minn 4th Jud Dist) |
| | *Thomas Losgar, et al. v. Freehold Chevrolet, Inc., et al.*<br>L-3145-02 (Monmouth County, NJ) |
| | *Tom Lundberg, et al. v. Sprint Corporation, et al.*<br>No. 02CV-4551 (Wyandotte County, KS) |
| | *Truc-way, Inc., et al. v. General Electric Credit Auto Leasing*<br>92 CH 08962 (Cook County IL) |
| | *Trudy Latman, et al. vs. Costa Cruise Lines, N.V., et al*<br>Case No. 18139 CA 03 |
| | *United States of America v. Elite Designs, Inc.*<br>05 058 (D. RI) |
| | *Vicente Arriaga, et al. v. Columbia Mortgage & Funding Corp, et al.*<br>No. 01 C 2509 (N. Dist. IL) |
| | *William R. Richardson, et al., v. Credit Depot Corporation of Ohio, et al.*<br>No. 315343 (Cuyahoga County, Ohio) |
| **Employment** | *Balandran, et al. v. Labor Ready, et al.*<br>BC 278551 (Losa Angeles County, CA) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| *Employment* | *Ballard, et al., v. Fogo de Chao, LLC*<br>09-7621 (D. Minn) |
| | *Beasley, et al. v. GC Services LP*<br>09-cv-01748 (E.D. MO) |
| | *Bishop et al. v. AT&T Corp.*<br>08-00468 (W.D. PA) |
| | *Chandler Glover and Dean Albrecht, et al., v. John E. Potter*<br>EEOC No. 320-A2-8011X; Agency No. CC-801-0015-99 |
| | *Claudine Wilfong, et al. v. Rent-A-Center, Inc.*<br>Case No. 00-680-DRH (S. Dist. IL) |
| | *Doe, et al. v. Cin-Lan, Inc, et al.*<br>4:08-12719 (E.D. MI) |
| | *Equal Employment Opportunity Commission (EEOC) v. Star Tribune Co*<br>08-5297ADM/AJB (D. Minn) |
| | *Equal Employment Opportunity Commission v Faribault Foods, Inc.*<br>07-3976 (RHK/AJB) (D. Minn) |
| | *Fisher, et al. v. Michigan Bell Telephone Company*<br>09-10802 (E.D. MI) |
| | *Frank, Peasley, Waters, and Wilhelm, v Gold'n Plump Poultry, Inc.*<br>04-1018 PJS/RLE (D. Minn) |
| | *Geelan, et al. v. The Mark Travel Coporation*<br>03-6322 (DSD/JSM) (D. Minn) |
| | *Gipson, et al. v. Southwestern Bell Telephone Company*<br>08-2017-EFM (D. KS) |
| | *Gregory Hernandez v. The Children's Place*<br>No. CGC 04-4300989 (San Francisco, CA) |
| | *Helen Bernstein, et al. v. M.G. Waldbaum*<br>08-0363 (D. Minn) |
| | *John Alba, et al. v. Papa John's USA, Inc.*<br>05-7487 (W.D. CA) |
| | *Kelly Marie Camp, et al. v. The Progressive Corporation, et al.*<br>No. 01-2680 (E. D. La) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| *Employment* | *Michelle Jackson, et al. v. Jamba Juice Company*<br>CV 01- SA02-381 DOC (MLGx) (C. D. CA) |
| | *Pamela Adams, et al., v. MedPlans Partners, Inc*<br>3:07-259-JHM-JDM (W.D. KY) |
| | *Phillip Busler, et al. v. Enersys Energy Products Inc., et al.*<br>09-CV-0159 (W.D. MO) |
| | *Rocher, et al. v. Sav-on Drugs, et al.*<br>Case No. BC 227551 (Los Angeles County, CA) |
| | *Russell, et al. v. Illinois Bell Telephone Company*<br>08-1871 (N.D. IL) |
| | *Smallwood, et al. v. Illinois Bell Telephone Company,*<br>09-4072 (N.D. IL) |
| | *Teeter v. NCR Corporation*<br>08-00297 (C.D. CA) |
| | *Thomas Dege, et al., v. Hutchinson Technology, Inc.*<br>06-3754 (DWF/RLE) (D. Minn) |
| | *Wilkinson, et al. v. NCR Corporation*<br>1:08-cv-5578  (N.D. IL) |
| | *Williams, et al. v. Dollar Financial Group, et al.*<br>Case No. RG03099375 (Alameda County, CA) |
| | *Wittemann, et al. v. Wisconsin Bell, Inc.*<br>09-440-wmc (W.D. WI) |
| | *Wlotkowski, et al. v. Michigan Bell*<br>09-11898 (E.D. MI) |
| *Environmental* | *Bernice Samples, et al. v. Conoco, Inc., et al.*<br>Case No.: 01-0631-CA-01 (Escambia Country, FL) |
| | *In Re: Duluth Superior Chemical Spill Litigation*<br>92-C-503-C (W. Dist. WI) |
| | *Mehl v. Canadian Pacific Railway, Limited*<br>No. A4-02-009 (D. ND) |
| | *Perrine, et al. v. E.I. Dupont De Nemours and Company, et al.*<br>01-0631-CA-01 (Harrison C., WV) |

**bmcgroup**
Class Action Services

**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| **ERISA** | *In Re: Broadwing Inc ERISA Litigation*<br>No. 02-00857 (S.D. OH) |
| | *In Re: Xcel Energy, Inc. ERISA Litigation*<br>Civ No. 03-2218 (D. Minn) |
| | *Quince Rankin v. Charles C. Conway (Kmart ERISA Litigation)*<br>No. 02-71045 (ED. MI) |
| **FACTA** | *Masters v. Lowe's Home Centers, Inc.*<br>3:09-CV-255 (S.D. IL) |
| | *Seppanen et al. v. Krist Oil Company*<br>2:09-195 (W.D. MI) |
| | *Waldman v. Hess Corporation*<br>07-2221 (D. NJ) |
| **Insurance** | *Ann Castello v. Allianz Life Insurance Company*<br>No. 03-20405  (Minn 4th Jud Dist) |
| | *Boyd Demmer, et al. v. Illinois Farmers Insurance Company*<br>No. MC 00-017872 (Hennepin County, MN) |
| | *Dorothea Pavlov v. Continental Casualty Company*<br>07-cv-2580 (N.D. Ohio) |
| | *Frank Rose, et al. v. United Equitable Insurance Company, et al.*<br>CV-00-02248 (Cass County, ND) |
| | *Froeber v. Liberty Mutual Fire Insurance Company*<br>Case No. 00C15234 (Marion County, OR) |
| | *Garrison, et al., v. Auto-Owners Insurance Company*<br>Case No. 02CV324076 (Cole County, MO) |
| | *Harold Hanson, et al. v. Acceleration Life Insurance Company, et al.*<br>3:97cv152 (D. ND S.E. Div) |
| | *In Re: Lutheran Brotherhood Variable Insurance Products Co. Sales Pra*<br>No. 99-MD-1309 (PAM/JGL)  (D. Minn) |
| | *Irene Milkman, et al. v. American Travellers Life Insurance Company, e*<br>No. 03775 (Philadelphia Court of Common Pleas) |
| | *Jacobs v. State Farm General Insurance Company*<br>No. CJ-96-406 (Sequoyah County, OK) |

**bmcgroup**
Class Action Services

### BMC Group Class Action Services
### Partial List of Legal Notification and Settlement Administration Experience

| | |
|---|---|
| *Insurance* | *James M.  Wallace, III, et al. v. American Agrisurance, Inc., et al.*<br>LR-C-99-669 (E. D. AR) |
| | *James Ralston, et al. v. Chrysler Credit Corporation, et al.*<br>No. 90-3433 (Lucas County, Ohio) |
| | *Michael T. McNellis, et al. v. Pioneer Life Insurance Company, et al.*<br>CV 990759 (County of San Luis Obispo, CA) |
| | *Morris v. Liberty Mutual Fire Insurance Company*<br>CJ-03-714 (Pottawatomie County, OK) |
| | *Paul Curtis, et al v. Northern Life Insurance Company*<br>01-2-18578 (King County, Wash.) |
| | *Ralph Shaffer v. Continental Casualty Company and CNA Financial Corp.*<br>06-2253 (C. D. CA) |
| | *Raymond Arent, et al. v. State Farm Mutual Insurance Company*<br>No. MC 00-16521 (Minn 4th Jud Dist) |
| | *Roy Whitworth, et al. v. Nationwide Mutual Insurance Company, et al.*<br>No. 00CVH-08-6980 (Franklin County, OH) |
| | *Sonia Gonzalez, et al. v. Rooms to Go, Inc., et al.*<br>97-3146-CIV-GRAHAM  (S.D. FL, Miami Div.) |
| | *Tow Distributing, Inc., et al. v. BCBSM, Inc., d/b/a Blue Cross and Blue S*<br>Case No.: 19-C4-02-9317 (MN 4th Jud Dist) |
| *Medical/Drug* | *F.T.C. v. CHK Trading Corp.*<br>04-cv-8686 (S.D. N.Y. ) |
| | *F.T.C. v. Christopher Enterprises, Inc.*<br>Civ No.  2:01 CV-0505ST (D. UT, C. Div.) |
| | *F.T.C. v. Conversion Marketing, Inc.*<br>04-cv-1264 (C.D. Cal.) |
| | *F.T.C. v. Enforma Natural Products, Inc.*<br>No. 00-04376 JSL (CWx) (C.D. Cal.) |
| | *F.T.C. v. Goen Technologies*<br>042 3127 (FTC) |
| | *F.T.C. v. Great American Products*<br>05-CV-00170-RV-MD  (N.D. FL) |

**bmcgroup**
Class Action Services

BMC Group Class Action Services
Partial List of Legal Notification and Settlement Administration Experience

| | | |
|---|---|---|
| **Medical/Drug** | *F.T.C. v. Great American Products, Inc.* | |
| | 05-170 (N.D. FL) | |
| | *F.T.C. v. Kevin Trudeau, et al.* | |
| | 03-3904 (N.D. IL) | |
| | *F.T.C. v. Latin Hut, Inc.* | |
| | 04-cv-0830 (S.D. Cal.) | |
| | *F.T.C. v. QT, Inc.* | |
| | 03-3578 (N. D. IL) | |
| | *F.T.C. v. Seasilver USA, Inc.* | |
| | 03-0676-RLH (D. Nev) | |
| | *F.T.C. v. Smart Inventions, Inc.* | |
| | 04-4431 (C.D. CA) | |
| | *F.T.C. v. Sunny Health Nutrition Technology & Products, Inc.* | |
| | 06-2193 (M. D. FL) | |
| | *F.T.C. v. United Fitness of America, LLC* | |
| | CV-S-02-0648-KJD-LRL (D. Nevada) | |
| | *In Re: Guidant Corp Implantable Defibrillators Products Liability Litigati* | |
| | 05-1708 (D. Minn) | |
| | *Karen Wright, et al. v. Milan Jeckle* | |
| | 98-2-07410-2 (Spokane County, WA) | |
| | *Mary Plubell, et al. v. Merck and Co., Inc.* | |
| | 04-cv-235817 (Jackson County, MO) | |
| **Privacy** | *Anderson, et al. v. United Retail Group, Inc., et al.* | |
| | 37-cv-89685 (San Diego County, CA) | |
| | *F.T.C. v. CEO Group, Inc.* | |
| | 06-cv-60602 (S.D. Fla ) | |
| | *F.T.C. v. Choicepoint* | |
| | (N.D. GA) | |
| | *In Re: U.S. Bank National Association Litigation* | |
| | Civ 99-891 | |
| | *Michael Stoner, et al. v. CBA Information Services* | |
| | Civ. 04-CV-519 (E. Dist. PA) | |

**bmcgroup**
Class Action Services

BMC Group Class Action Services
**Partial List of Legal Notification and Settlement Administration Experience**

*Securities*

*Alan Freberg, et al. v. Merrill Corporation, et al.*
No. 99-010063  (Minn 4th Jud Dist)

*Anderson v. Investors Diversified Services*
Civ.  4-79-266 (D. Minn)

*Charter Township Of Clinton v. OSI Restaurants*
06-CA-010348 (FL 13th Jud Circuit)

*Christopher Carmona, et al. v. Henry I. Bryant, et al. (Albertson's Securi*
No. CV OC 0601251 (Ada County, ID)

*Daryl L. Cooper, et al. v. Miller Johnson Steichen Kinnard, Inc.*
No.02-CV-1236 RHK/AJB (D. Minn)

*Edith Gottlieb v. Xcel Energy, Inc., et al.*
Civ No. 02-2931 (D. Minn)

*Family Medicine Specialsts, et al. v. Abatix Corp., et al.*
No. 3:04 CV 872B (N.D. TX)

*In Re: American Adjustable Rate Term Trust Securities Litigation*
CIVIL FILE NOS. 4-95-666 and 4-95-667 (D. Minn, 4th Div)

*In Re: Ancor Communications, Inc Securities Litigation*
97-CV-1696 ADM/JGL (D. Minn)

*In Re: Asia Pulp & Paper Securities Litigation*
No. 01-CV-7351 (S.D. NY)

*In Re: Bayer AG Secuirites*
03 CV 1546 (S.D. NY)

*In Re: Bio-One Securities Litigation*
Civ. 05-1859 (M. D. FL)

*In Re: Bioplasty Securities Litigation*
4-91-689 (D. Minn 4th Div)

*In Re: Citi-Equity Group, Inc. Securities Litigation*
MC 94-012194 (D. Minn, 3rd Div)

*In Re: Citi-Equity Group, Inc., Limited Partnerships Securities Litigation*
MDL Docket No. 1082 (Central D. Cal)

*In Re: Control Data Corporation Securities Litigation*
Civ. 3-85-1341 (D. Minn, 3rd Div)

**bmcgroup**
Class Action Services

**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| Securities | In Re: Cray Research Securities Litigation |
| | Civ. 3-89-508 (D. Minn, 3rd Div) |
| | In Re: E.W. Blanch Holdings, Inc. Securities Litigation |
| | Civ. No. 01-258 (JNE/JGL) (D. Minn) |
| | In Re: Encore Computer Corporation Shareholder Litigation |
| | No. 16044 (New Castle County, DE) |
| | In Re: EVCI Career Colleges Holding Corp Securities Litigation |
| | No. 05-10240 (S. D. NY) |
| | In Re: Flight Transportation |
| | MDL 517 (D. Minn) |
| | In Re: Hennepin County 1986 Recycling Bond Litigation |
| | CT-92-22272 (Minn 4th Jud Dist) |
| | In Re: McCleodUSA Incorporated Securities Litigation |
| | No. 02-0001 (N.D. IA) |
| | In Re: McKesson HBOC, Inc. Securities Litigation |
| | No. 99-CV-20743 (N. D. CA) |
| | In Re: Merrill Lynch Research Reports Securities Litigation |
| | 02 MDL 1484 (S. D. NY) |
| | In Re: Micro Component Technology, Inc. Securities Litigation |
| | 4-94-346 (D. Minn) |
| | In Re: Novastar Financial, Inc. Securities Litigation |
| | 04-0330 (W. D. MO) |
| | In Re: OCA, Inc. Securities and Derivative Litigation |
| | 05-2165 (E.D. LA) |
| | In Re: Raytheon Company Securities Litigation |
| | Civ No. 99-12142 (D. MA) |
| | In Re: Reliance Group Holdings, Inc. Securities Litigation |
| | 00-CV-4653 (TPG) (S.D. NY) |
| | In Re: Retek Inc Securities Litigation |
| | 02-4209 (D. MN) |
| | In Re: Salomon Analyst Metromedia Litigation |
| | 02-7966 (S.D. NY) |



**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| ***Securities*** | *In Re: Scimed Life Systems, Inc. Shareholders Litigation*<br>MC-94-17640 (D. Minn) |
| | *In Re: Sourcecorp Securities Litigation*<br>04-02351 (N. D. TX) |
| | *In Re: SS&C Technologies, Inc. Shareholders Litigation*<br>Case 1525-N (Deleware) |
| | *In Re: Tellium Inc Securities Litigation*<br>02-CV-5878  (D. NJ) |
| | *In Re: The Sportsman's Guide, Inc. Litigation*<br>19-C6-06-7903  (Minn 1st Jud Dist) |
| | *In Re: Tonka Corporation Securities Litigation*<br>Civ. 4-90-2  (D. Minn, 4th Div) |
| | *In Re: Tonka II Securities Litigation*<br>Civ. 3-90-318 (D. Minn, 3rd Div). |
| | *In Re: Tricord Systems, Inc. Securities Litigation*<br>3-94-746 (D. Minn 3rd Div.) |
| | *In Re: VistaCare, Inc. Securities Litigation*<br>04 1661 (A. AZ) |
| | *In Re: Williams Securities Litigation*<br>Case No. 02-CV-72-SPF-FHM (N. D. OK) |
| | *In Re: Xcel Energy, Inc. Securities Litigation*<br>Civ No. 02-2677 (D. Minn) |
| | *In Re: Xcelera.Com Securities Litigation*<br>00-11649 (D. MA) |
| | *In Re: Xybernaut Corp. Securities MDL Litigation*<br>05-MDL-1705 (E. D. VA) |
| | *Ivy Shipp, et al. v. Nationsbank Corp.*<br>19,002 (TX 12th Jud Dist) |
| | *Karl E. Brogen and Paul R. Havig, et al. v. Carl Pohlad, et al.*<br>Civ. 3-93-714 (D. Minn, 3rd Div.) |
| | *Lori Miller, et al. v. Titan Value Equities Group Inc., et al.*<br>MC94-106432 (D. Minn.) |

**bmcgroup**
Class Action Services

BMC Group Class Action Services
Partial List of Legal Notification and Settlement Administration Experience

| | |
|---|---|
| **Securities** | *Montoya, et al. v. Mamma.com, Inc., et al.*<br>1:05-cv-02313 (HB) (S.D. NY) |
| | *Resendes, et al.; Maher, et al.; Hawkins, et al.; Schooley, et al. v. Thorp*<br>84-03457, 84-11251, 85-6074, 86-1916L (Minn 4th Jud Dist) |
| | *Robert Trimble, et al. v. Holmes Harbor Sewer District, et al.*<br>No. 01-2-00751-8 (Island County, WA) |
| | *Superior Partners, et al. v. Rajesh K. Soin, et al.*<br>08-0872 (Montgomery County, OH) |
| | *Svenningsen, et al. v. Piper Jaffray & Hopwood, et al.*<br>Civ. 3-85-921 (D. Minn, 3rd Div) |
| | *Three Bridges Investment Group, et al. v. Honeywell, et al.*<br>Civ. 88-22302 (D. Minn, 4th Div.) |
| | *United States of America v. Zev Saltsman*<br>04-cr-641 (E.D. N.Y.) |
| | *William Steiner, et al. v. Honeywell, Inc. et al.*<br>Civ. 4-88-1102 (D. Minn) |
| **Securities - Bankruptcy** | *ACR Management, LLC., et al.*<br>04-27848 (MBM) (W.D. PA) |
| | *American Commercial Lines LLC, et al.*<br>03-90305 (BHL) (S.D. IN) |
| | *ATA Holdings Corp, et al.*<br>04-19866 (BHL) (S.D. IN) |
| | *Builders Transport, Incorporated, Builders Transport, Inc. CCG Corp., In*<br>98-68798 (N.D. GA) |
| | *Chi-Chi's, Inc., et al.*<br>03-13063 (RB) (D. DE) |
| | *Conseco Finance Corporation*<br>02 B49675 (N. D. IL) |
| | *Conseco, Inc., el al.*<br>02 B49672 (CAD) (N.D. IL) |
| | *Dan River Inc.*<br>04-10990 (N.D. GA) |

**bmcgroup**
Class Action Services

BMC Group Class Action Services
Partial List of Legal Notification and Settlement Administration Experience

| | |
|---|---|
| ***Securities - Bankruptcy*** | *Dana Corporation, et al.*<br>06-10354 (BRL) (S.D. NY) |
| | *DESA Holdings Corporation, et al.*<br>02-11672 (PJW) (D. DE) |
| | *Entergy New Orleans, Inc.*<br>05-17697 (E.D. LA) |
| | *Exide Technologies, et al.*<br>02-11125(KJC) (D. DE) |
| | *Fansteel, Inc. et al.*<br>02-10109 (JJF) (D. DE) |
| | *Farmland Foods, Inc.*<br>02-50561 (W.D. MO) |
| | *Farmland Industries, Inc.*<br>02-50557 (W.D. MO) |
| | *Farmland Pipe Line Company*<br>02-50565 (W.D. MO) |
| | *Farmland Transportation, Inc.*<br>02-50564 (W.D. MO) |
| | *Fleming Companies, Inc., et al.*<br>03-10954 (MFW) (D. DE) |
| | *Harnischfeger Industries, Inc., et al.*<br>99-2171 (PJW) (D. DE) |
| | *Home Products International, Inc. and Home Products International - N*<br>06-11457 (CSS) (D. DE) |
| | *J.L. French Automotive Castings, Inc.*<br>06-10119 (MFW) (D. DE) |
| | *Kitty Hawk, Inc., et al.*<br>07-44536-RFN-11 (N.D. TX) |
| | *Metaldyne Corporation* |
| | *Mississippi Chemical Corporation, et al.*<br>03-02984 (WEE) (S.D. MO) |

**bmcgroup**
Class Action Services

BMC Group Class Action Services
Partial List of Legal Notification and Settlement Administration Experience

| | |
|---|---|
| ***Securities - Bankruptcy*** | *Nobex Corporation*<br>05-10532 (KG) (D. DE) |
| | *Oxford Automotive, Inc., el al.*<br>04-74377 (E.D. MI) |
| | *Primex Health Systems, Inc.* |
| | *PT Holdings Company, Inc., et al.*<br>07-10340 (W.D. WA) |
| | *Sea Containers Ltd., et al.*<br>06-11156 (KJC) (D. DE) |
| | *SFA, Inc.*<br>02-50562 (W.D. MO) |
| | *SN Liquidation, Inc., et al.*<br>07-11666 (KG) (D. DE) |
| | *Steel Parts Corporation*<br>06-52972 (E.D. MI) |
| | *Touch America Holdings, Inc. et al.*<br>03-119151 (KJC) (D. DE) |
| | *Trans World Airlines, Inc., et al.*<br>01-00056 (PJW) (D. DE) |
| | *USA Capital Diversified Trust Deed Fund, LLC*<br>BK-S-06-10727 (LBR) |
| | *USA Capital First Trust Deed Fund, LLC*<br>BK-S-06-10728 (LBR) |
| | *USA Capital Realty Advisors, LLC*<br>BK-S-06-10726 (LBR) |
| | *USA Commercial Mortgage Company*<br>BK-S-06-10725 (LBR) |
| | *USA Securities, LLC*<br>BK-S-06-10729 (LBR) |
| | *Wickes Inc.*<br>04-B02221 (N.D. IL) |

**bmcgroup**
Class Action Services

**BMC Group Class Action Services**
**Partial List of Legal Notification and Settlement Administration Experience**

| | |
|---|---|
| ***Securities - Bankruptcy*** | *Women First Healthcare, Inc.* |
| | 04-11279 (MFW) (D. DE) |
| | *Ziff Davis Media, Inc., et al.* |
| | 08-10768 (S.D. NY) |
| ***Test Score*** | *David Andino, et al. v. The Psychological Corporation, et al.* |
| | No. A457725 (Clark County, NV) |
| | *Frankie Kurvers, et al. v. National Computer Systems* |
| | No. MC00-11010 (Hennepin County, Minn) |

# EXHIBIT 2(a)

<u>UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS</u>

# If You Are a Community Water System Whose Water Has Tested Positive for the Herbicide Atrazine by August 23, 2012, You Could Get a Payment From a Class Action Settlement.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- Community Water Systems that have detected the herbicide atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) in their raw or finished water may be eligible to receive a share of $105,000,000, after the payment of administrative expenses and legal fees and costs.

- To be eligible to receive a payment, a Community Water System need only have detected any measurable concentration of atrazine in its raw or finished water using any state or federal agency-approved analytical method by August 23, 2012 and submit a valid claim form.

- Community Water Systems' legal rights will be affected if a representative acts or doesn't act.  Read this Notice carefully.

| LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT: | |
| --- | --- |
| **SUBMIT A VALID CLAIM FORM BY AUGUST 27, 2012** | The only way to get a payment. |
| **EXCLUDE YOURSELF BY AUGUST 27, 2012** | Get no payment.  Maintain the ability to bring a separate lawsuit. |
| **OBJECT BY AUGUST 27, 2012** | Write to the Court about why you don't like the Settlement. |
| **GO TO A HEARING ON OCTOBER 22, 2012** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment.  Give up rights. |

- Community Water Systems' rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if you submit a valid claim and the Court approves the Settlement and after any appeals are resolved. Please be patient.

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT <u>*WWW.ATRAZINESETTLEMENT.COM*</u>**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................................................................................... **PAGE 3**
    1.  Why was this notice issued?
    2.  What is this lawsuit about?
    3.  What is atrazine?
    4.  What is a class action and why is this case a class action?
    5.  Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ..................................................................................................... **PAGE 3**
    6.  How do I know if I am part of the Settlement?
    7.  Help me understand whether I am included.
    8.  I'm still not sure if I am included.
    9.  Are individuals Class Members?

**THE SETTLEMENT BENEFITS — WHAT YOU GET** ................................................................... **PAGE 4**
    10.  What does the Settlement provide?

**HOW YOU GET A PAYMENT — SUBMITTING A CLAIM FORM** ............................................... **PAGE 4**
    11.  How can I get a payment?
    12.  When would I get my payment?
    13.  What am I giving up to stay in the Class and get a payment?

**YOUR RIGHTS AND OPTIONS** ...................................................................................................... **PAGE 5**
    14.  What happens if I do nothing at all?
    15.  What happens if I exclude myself?
    16.  How do I ask to be excluded?

**THE LAWYERS REPRESENTING YOU** ........................................................................................ **PAGE 5**
    17.  Do I have a lawyer in the case?
    18.  Should I get my own lawyer?
    19.  How will the lawyers be paid?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................................. **PAGE 6**
    20.  How do I get out of the Settlement?
    21.  If I don't exclude myself, can I sue for the same thing later?
    22.  If I exclude myself, can I get money from this Settlement?

**OBJECTING TO OR SUPPORTING THE SETTLEMENT** ............................................................. **PAGE 7**
    23.  How do I tell the Court that I either like the Settlement or don't like the Settlement?
    24.  What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** ............................................................................................ **PAGE 8**
    25.  When and where will the Court decide whether to approve the Settlement?
    26.  Do I have to come to the hearing?
    27.  May I speak at the hearing?

**IF YOU DO NOTHING** ...................................................................................................................... **PAGE 8**
    28.  What happens if I do nothing at all?

**GETTING MORE INFORMATION** .................................................................................................. **PAGE 8**
    29. Are there more details available?

## BASIC INFORMATION

### 1. Why was this notice issued?

This notice was issued because you have the right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after objections and appeals are resolved, a Claims Administrator appointed by the Court will make the payments that the Settlement allows. This document explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. The Judge in charge of this case is Judge J. Phil Gilbert of the United States District Court for the Southern District of Illinois. The case is known as *City of Greenville v. Syngenta Crop Protection, Inc., and Syngenta AG*, Case No. 3:10-cv-00188-JPG-PMF. The definitions of various terms used in this notice can be found in the Settlement Agreement. To view a copy of Settlement Agreement, please visit *www.atrazinesettlement.com*.

### 2. What is this lawsuit about?

Atrazine is an herbicide marketed by companies including Syngenta Crop Protection, LLC that has been found in some Community Water Systems' raw and finished water. Under EPA requirements, finished water can contain a maximum concentration of 3 ppb atrazine as an annual average. 56 Fed. Reg. 3526-01 (Jan. 30, 1991); § 40 CFR 141.50(b). The lawsuit claims that atrazine at any level injures Community Water Systems' water supplies. The lawsuit requests that Defendants Syngenta Crop Protection, LLC and Syngenta AG (collectively, "Syngenta") bear the cost of removing the herbicide atrazine from Community Water Systems' water supplies. Syngenta has denied the allegations in the lawsuit and asserts that atrazine has been repeatedly and safely used for over 50 years.

### 3. What is atrazine?

Atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) is an herbicide that is used mainly to control weeds on corn, sorghum, sugar cane and some specialty crops. Atrazine is one of the most widely-used herbicides in the United States, and, due to runoff from fields where it has been applied, has been found in some ground and surface waters.

### 4. What is a class action and why was this case filed as a class action?

In a class action, one or more people or entities called class representatives sue on behalf of the others like them. The class representatives in this case are the City of Greenville, Illinois; Village of Coulterville, Illinois; Village of Evansville, Illinois; Village of Farina, Illinois; City of Gillespie, Illinois; City of Cameron, Missouri; City of Concordia, Missouri; City of Carbondale, Kansas; City of Marion, Kansas; Miami County Rural Water District No. 2; City of Oswego, Kansas; City of Jasper, Indiana; Village of Monroeville, Ohio; City of Upper Sandusky Ohio; Creston Municipal Utilities; Illinois- American Water Company; Missouri- American Water Company; Indiana- American Water Company Inc.; Iowa-American Water Company; Ohio-American Water Company; Chariton Municipal Waterworks; and Village of Ottawa, Ohio. These entities, and all Community Water Systems with a measurable concentration of atrazine in their raw or finished water, are Class Members for purposes of this Settlement. In a class action lawsuit, one court resolves the case for all Class Members, except for those who exclude themselves from the Class. The Court decided that this lawsuit could proceed as a class action for the purpose of settlement because it meets the requirements for a class action settlement under Federal Rule of Civil Procedure 23, which governs class actions in federal court.

### 5. Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendants. Instead, both sides agreed to this Settlement. That way, they avoid the burden and expense of further litigation, and any Community Water Systems that are Class Members and that do not opt out will receive some compensation. The Class representatives and their attorneys think the Settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

To see if you are eligible to get money from this Settlement, you first have to decide if you are a Class Member.

### 6. How do I know if I am part of the Settlement?

To understand whether you are a part of the Settlement, you will need to understand the following terms:

*Class Member* means any Community Water System in the United States of America for which any Qualifying Test Result shows any Measurable Concentration of atrazine (2-chloro-4-ethylamino-6-isopropylamino-s-triazine).

*Class Period* means the period without limit as to the past and ending on August 23, 2012.

*Community Water System* is defined by 42 U.S.C. § 300f(15) (2006): "a public water system that – (A) serves at least 15 service connections used by year- round residents of the area served by the system; or (B) regularly serves at least 25 year-round residents."

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT *WWW.ATRAZINESETTLEMENT.COM***

A *Qualifying Test Result* is a result of analytical testing of the Class Member's Water performed during the Class Period using any state or federal agency-approved analytical method.

*Measurable Concentration* means a concentration equal to or greater than the limit of the quantitation of the analytical method used.

*Water* in this lawsuit means water in which a Class Member possesses a legal or equitable right, title or interest, and that is drawn from a lake, reservoir, river, stream, creek, well or other source of water used by the Class Member to provide drinking water, including such drinking water.

### 7.  Help me understand whether I am included.

Class Membership is not complicated.  To see if you are a Class Member ask yourself this series of questions:

| Question | Yes | No |
|---|---|---|
| Are you a Community Water System as defined by the EPA in the United States? | Continue. | You are not a Class Member. |
| Do tests show any measurable concentration of atrazine in your raw or finished water on or before August 23, 2012? | Continue. | You are not a Class Member. |
| Was this result of an analytical test performed using any state or federal-agency approved analytical method? | You are a Class Member. | You are not a Class Member. |

### 8.  I'm still not sure if I am included.

If you are still not sure whether you are included, you can visit the website *www.atrazinesettlement.com*, call toll-free 1-866-329-7832, or write to Atrazine Settlement, Claims Administrator, P.O. Box 2002, Chanhassen, MN 55317-2002, for more information.

### 9.  Are individuals Class Members?

No.  The Class is limited to Community Water Systems, which is defined in federal law 42 U.S.C. § 300f(15) (2006) as a "public water system that (A) serves at least 15 service connections used by year-round residents of the area served by the system; or (B) regularly serves at least 25 year-round residents."

## THE SETTLEMENT BENEFITS — WHAT YOU GET

### 10. What does the Settlement provide?

The Settlement provides for a Settlement Fund in the total amount of $105 million. Class Members who submit an approved claim will receive a share of the Settlement Fund after payment of legal fees and costs, including the cost to notify you of the Settlement and to administer it.  Class Counsel estimate that the number of Class Members eligible to receive a payment is approximately 2,000.  The share of each claimant will be determined using a Court-approved formula that first provides a fixed payment designed to offset the cost of testing for atrazine, and then distributes the remainder on a pro-rata basis based on evidence of the significance of the Class Member's detects of atrazine, its size, and the age of its proof.  Generally, if you processed more water or frequently had high concentrations of atrazine, you are eligible for more money; if you processed less water or your atrazine experience was sporadic or limited, you will get less money. Until each claim is received and analyzed, you will not know the amount you will receive for your claim. All of the $105 million, less the fees and costs mentioned above, will be distributed to Class Members. If less than 100% of the Class submit a claim, you could get more money. If claims exceed the funds available, payments will be reduced on a pro-rata basis. More details concerning the allocation of the Settlement Fund can be found in the Settlement Agreement available at *www.atrazinesettlement.com*.

## HOW YOU GET A PAYMENT — SUBMITTING A CLAIM FORM

### 11. How can I get a payment?

To qualify for payment, you must submit a completed claim form to the Claims Administrator.   You may submit a claim form online at *www.atrazinesettlement.com*.  Additionally, you may download a paper claim form at *www.atrazinesettlement.com*.

When submitting a claim, please read the claim form instructions carefully, complete the claim form, sign it, and submit it no later than August 27, 2012.  A claim form is complete if all required information is provided, it is certified to be complete and accurate, and it is timely submitted or postmarked.  Class Counsel will verify the accuracy of the information and approve the claim for payment if appropriate. Increased scrutiny may be given to each sample result that does not appear in PLEX, VMP, ARP, AMP, SMP, SCMP, or SVMP  records, is generated from an analytical method other than immunoassay, gas chromatography–mass spectrometry (GC-MS); gas chromatography with nitrogen phosphorus detection (GC/NPD); high-performance liquid chromatography, (HPLC); or liquid chromatography-mass spectrometry (LC-MS or LC-MS-MS), or that is in the highest 0.1% of sample results for all claimants. You may be asked for additional documentation to support your claim. The Court may also review your claim.

## 12. When would I get my payment?

The Court will hold a hearing on October 22, 2012, to decide whether to finally approve the Settlement.  If the Court approves the Settlement, there could be appeals.  Resolving these appeals takes time, perhaps several months or years.  Everyone who sends in a claim form will be informed of the progress of the Settlement via updates on the *www.atrazinesettlement.com* website.  Please be patient.

## 13. What am I giving up to stay in the Class and get a payment?

You will be releasing all claims that were brought or could have been brought in this lawsuit against Syngenta and other entities as described in No. 21. The definitions of Released Parties and Released Claims and additional information on Released Claims can be found in the Settlement Agreement at www.atrazinesettlement.com. It also means that all of the Court's orders will apply to you and legally bind you. Unless you exclude yourself, you are staying in the Class, and that means that you can't sue, continue to sue, or be part of any other lawsuit regarding the presence of atrazine in your drinking water or your water sources for the next 10 years. However, you will still be able to bring any claim that arises from future point-source contamination (as defined in Section 502(14) of the Clean Water Act) resulting from the Released Parties' development, manufacture, formulation, distribution, transportation, storage, loading, mixing application, or use of  atrazine or products that contain atrazine as an active ingredient or any claim against any applicator or user of any product that contains atrazine as an active ingredient arising from the presence of Atrazine in the Releasing Parties' Water as a result of any use of such product not in accordance with the precautionary statements and instructions for use on the label of such product.

# YOUR RIGHTS AND OPTIONS

## 14. What happens if I do nothing at all?

You get no payment and you won't be able to start, continue, or be a part of any other lawsuit against Syngenta and the other Released Parties about the legal issues in this case.

## 15. What happens if I exclude myself?

You get no payment.  You maintain the ability to bring or continue a lawsuit against Syngenta and other entities regarding the claims made in this lawsuit.

## 16. How do I ask to be excluded?

To exclude yourself from the Settlement you must follow the steps listed at No. 20, below.  If you don't want a payment from this Settlement, but you want to keep the ability to sue Syngenta regarding the legal claims in this case, then you must take steps to get out.  This is called excluding yourself -- or is sometimes referred to as opting out of the class.

# THE LAWYERS REPRESENTING YOU

## 17. Do I have a lawyer in the case?

The Court appointed Stephen M. Tillery and the law firm of Korein Tillery LLC., of St. Louis, Missouri; and Scott Summy and the law firm of Baron & Budd P.C., of Dallas, Texas to represent you as "Class Counsel."

They may be contacted at:

| | |
|---|---|
| Stephen M. Tillery | Scott Summy |
| Korein Tillery, LLC | Baron & Budd, P.C. |
| 505 North 7th Street, Suite 3600 | 3102 Oak Lawn Ave., Suite 1100 |
| St. Louis, MO 63101-1625 | Dallas, TX 75219-4281 |
| Phone: (888) 837-8324 | Phone: (214) 384-1913 |
| Fax:  (314) 241-3525 | Fax: (214) 520-1181 |

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT *WWW.ATRAZINESETTLEMENT.COM***

### 18. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But you may enter an appearance through an attorney if you choose to do so at your own expense. For example, you can ask an attorney to appear in Court for you if you want someone other than Class Counsel to speak for you. You should contact your lawyer about this Notice if you still have any questions.

### 19. How will the lawyers be paid?

Class Counsel will ask the Court for legal fees not to exceed 33 ⅓% of the Settlement Fund, plus court approved costs and administrative expenses including the cost to notify you of this Settlement and to administer it. These amounts represent the legal fees and costs for the years Class Counsel has litigated this dispute. The amounts sought will pay Class Counsel for the time they spent litigating this dispute and assuming the risk of bringing the action on your behalf. The Court may award less than the amount requested.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to submit a claim and be eligible for a payment from this Settlement, but you want to keep the ability to sue about the legal claims in this case, then you must take steps to get out. This is called excluding yourself -- or is sometimes referred to as opting out of the Settlement.

### 20. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a written and signed statement entitled "Request for Exclusion" saying that you want to be excluded from *City of Greenville, et al., v. Syngenta Crop Protection, Inc., and Syngenta AG*. The Request for Exclusion must certify that you are legally authorized to exclude the Class Member from the Settlement and you must provide an affidavit or other proof of the Class Member's eligibility to take part in this Settlement. Be sure to include your name, address, telephone number, and your signature. Also, please include your facsimile number or email address, if available. Your Request for Exclusion must be postmarked no later than August 27, 2012, and mailed to:

<div align="center">

Atrazine Settlement –Exclusion Request
Claims Administrator
P.O. Box 2002
Chanhassen, MN 55317-2002

</div>

You can't exclude yourself by telephone or e-mail. If you mail a Request for Exclusion, you will not get any Settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit. If you claim to have injuries from the presence of atrazine in your water and exclude yourself, you retain the ability to sue in the future.

### 21. If I don't exclude myself, can I sue for the same thing later?

No. Unless you exclude yourself, you give up the ability to sue Syngenta and the other Released Parties for the claims that this Settlement resolves.

Specifically, you will be releasing Defendants (Syngenta Crop Protection LLC and Syngenta AG) and all other manufacturers, contract manufacturers, research collaborators with Defendants or with such other manufacturers, formulators, distributors, retailers, purchasers, applicators, and users of Atrazine, including the defendants (in addition to the Defendants) in the Litigation, which are Sipcam Agro USA, Inc., Growmark, Inc., Drexel Chemical Co., United Agri Products, Makhteshim-Agan of North America, Inc. and Dow Agrosciences LLC, and their present and former parents, subsidiaries, divisions, affiliates, stockholders, benefit plans, officers, directors, employees, attorneys, insurers, agents and any of their legal representatives, and the predecessors, heirs, executors, administrators, successors and assigns of each of them from all claims of the Releasing Parties arising out of, or relating to, the presence of Atrazine in the Releasing Parties' Water as a result of the development, manufacture, formulation, distribution, transportation, storage, loading, mixing, application, or use of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) or products that contain atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient that any Releasing Party asserted or could have asserted in the Litigation. Released Claims shall not include any claim for indemnity, contribution among joint tortfeasors or apportionment of liability or fault, with respect to any claim against a Releasing Party, arising from the consumption of the Releasing Parties' Water, that is not a claim for property damage or economic loss

In addition, upon entry of the Final Judgment, you will be deemed to have granted the Released Parties an irrevocable, non-exclusive, transferrable license for a period of ten (10) years commencing with the date that is the earlier of Final Judgment or July 1, 2014, holding them harmless for all Released Claims or claims which, had they accrued prior to Final Judgment, would have been Released Claims. *See Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978 (7th Cir. 2002). Provided however, that this license shall not apply to any claim arising from point-source contamination, as defined in Section 502(14) of the Clean

<div align="center">

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT *WWW.ATRAZINESETTLEMENT.COM***

</div>

Water Act, resulting from the Released Parties' development, manufacture, formulation, distribution, transportation, storage, loading, mixing application, or use of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) or products that contain atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient or to any claim against any applicator or user of any product that contains atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) as an active ingredient arising from the presence of Atrazine in the Releasing Parties' Water as a result of any use of such product not in accordance with the precautionary statements and instructions for use on the label of such product.

The definitions of Releasing Parties, Released Parties and Released Claims and additional information on Released Claims can be found in the Settlement Agreement at www.atrazinesettlement.com.

## 22. If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself, you cannot receive payment under the Settlement.

## OBJECTING TO OR SUPPORTING THE SETTLEMENT

You can tell the Court that you like the Settlement or that you don't agree with the Settlement or some part of it.

## 23. How do I tell the Court that I either like the Settlement or don't like the Settlement?

If you're a Class Member, you can write the Court and state that you approve of the Settlement or some part of it.  You can also object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should approve the Settlement or not approve it.  The Court will consider your views.

To object, you must file a written, signed statement titled "Objection" with the Court saying that you object to the proposed Settlement in *City of Greenville, et al., v. Syngenta Crop Protection, Inc., and Syngenta AG*, Case No. 3:10-cv-00188-JPG-PMF. Your statement must include:

- An affidavit or other proof demonstrating the Class Member's eligibility to be part of this Settlement;
- A certification that the filer has been legally authorized to object on behalf of the Class Member;
- Your reasons for objecting to the Settlement;
- Any legal support or other evidence you wish the Court to consider;
- The name, address, telephone and facsimile number and email address (if available) of the filer and Class Member;
- A statement that you would like to address the Court at the Fairness Hearing, if you wish to do so; and
- If you choose to be represented by your own attorney at your own expense, your attorney's contact information, including name address, telephone and facsimile number and email address (if available).

Any party who is represented by an attorney must file the objection electronically with the Court through the Court's Electronic Case Filing ("ECF") system .  If you represent yourself, you may file your objection with the Court by mailing or personally delivering your letter to the Court address below, or you may electronically file it.  Corporations cannot represent themselves. *Nocula v. UGS Corp.*, 520 F.3d 719, 725 (7th Cir. 2008).  You must also send a copy of your objection to the Class Counsel and Defense Counsel at the addresses listed below.

For assistance with using the Electronic Case Filing system, e-mail questions to ecfhelp@ilsd.uscourts.gov or contact the ECF help desk at (866) 867-3169 (East St. Louis) or (866) 222-2104 (Benton). Clerk's office personnel are available from 9 a.m. to 4:30 p.m. CST Monday thru Friday.

**Be sure to include your name, address, telephone number, your signature, the case name, the required certification and evidence of class membership and the reasons you object to the Settlement with your filing.**  Transmit the objection to these three different places postmarked no later than August 27, 2012:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| File electronically through ECF.<br><br>OR<br><br>Clerk of Court<br>750 Missouri Avenue<br>East St. Louis, Illinois 62201 | Stephen M. Tillery<br>Korein Tillery LLC<br>505 N. 7th Street, Suite 3600<br>St. Louis, Missouri 63101 | Michael A. Pope<br>McDermott Will & Emery<br>227 W. Monroe Street<br>Chicago, Illinois 60614 |

**QUESTIONS? CALL TOLL-FREE 1-866-329-7832, OR VISIT *WWW.ATRAZINESETTLEMENT.COM***

**24. What is the difference between objecting and excluding?**

Objecting is formally telling the Court that you don't like something about the Settlement and that you believe the Settlement should be rejected. You can object only if you stay in the class. If the Settlement is approved you will give up your ability to sue for the claims the Settlement resolves. Excluding yourself is telling the Court that you don't want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you don't have to.

**25. When and where will the Court decide whether to approve the Settlement?**

The Honorable J. Phil Gilbert will hold a Fairness Hearing at __:__ a.m. on October 22, 2012, at 301 W. Main Street, Benton, Illinois 62812.

At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. Judge Gilbert will listen to Class Members who have asked to speak at the hearing. The Court will also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the Settlement Agreement. We do not know how long these decisions will take. If the Court approves the Settlement Agreement, then payments for approved claims will be mailed to you. If the Court does not approve the Settlement Agreement, then the parties will continue to litigate the case in Court.

**26. Do I have to come to the hearing?**

No. Class Counsel will answer questions Judge Gilbert may have. But you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you filed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**27. May I speak at the hearing?**

You may speak at the Fairness Hearing if you wish to support the Settlement or oppose the Settlement. In order to object to the settlement you must follow the instructions in No. 23. You cannot speak at the hearing if you exclude yourself.

## IF YOU DO NOTHING

**28. What happens if I do nothing at all?**

If you are a Class Member and you do nothing, you'll get no money from this Settlement and you won't be able to start a lawsuit, or be part of any other lawsuit about the legal issues in this case. Please see No. 21 for more information about the claims you are releasing as a Class Member.

## GETTING MORE INFORMATION

**29. Are there more details available?**

This Notice summarizes the proposed Settlement. More details are available in the Settlement Agreement. You can get a copy of the Settlement Agreement by visiting the website at *www.atrazinesettlement.com* or call 1-866-329-7832 toll-free. Or write to: Atrazine Settlement, Claims Administrator, P.O. Box 2002, Chanhassen, MN 55317-2002 to find more information.

**PLEASE GO TO *WWW.ATRAZINESETTLEMENT.COM* TO SUBMIT YOUR CLAIM FORM OR CONTACT THE CLAIMS ADMINISTRATOR AT 1-866-329-7832.**

**DO NOT CONTACT THE COURT FOR INFORMATION.**

# EXHIBIT 2(b)

**Atrazine Settlement**
Claims Administrator
P.O. Box 2002
Chanhassen, MN 55317-2002

Postal Service: Please Do Not Mark Barcode

ABC1234567890

JOHN Q CLASSMEMBER
123 MAIN ST
ANYTOWN, ST 12345

To file your claim online:

Claim Number: **1111111**

PIN #: **XXXXXXXX**

24 May 2012      10:30 am      Syngenta_Postcard_v2.pdf

**THIS NOTICE ADVISES YOU OF A PROPOSED CLASS ACTION SETTLEMENT.**

**THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS -- PLEASE READ IT CAREFULLY.**

This summary notice informs you about the settlement of *Greenville v. Syngenta Crop Protection*, No. 10-cv-188, United States District Court, Southern District of Illinois, a class action lawsuit concerning the presence of atrazine in drinking water that will pay claims of U.S. Community Water Systems ("CWS") that have detected atrazine in their water.

If you are a CWS and testing shows atrazine in your raw or finished water you may be entitled to a share of a $105 million fund. You have until August 23, 2012 to test your water.

You may submit a Proof of Claim Form online or request a Claim Form from the Claims Administrator at the address below.

To exclude yourself from this settlement, or to object to the settlement, you must follow the instructions in the detailed notice at www.atrazinesettlement.com. The deadline to exclude yourself from the settlement or submit any objection is August 27, 2012. The Court will hold a final fairness hearing to decide whether to approve the proposed settlement on October 22, 2012 at __:___ a.m. See details on the website.

This is only a summary of the settlement. You can obtain the detailed notice and the proposed Settlement Agreement at www.atrazinesettlement.com, by calling the Settlement Administrator at 1-866-329-7832, or by writing to Atrazine Settlement, Claims Administrator, P.O. Box 2002, Chanhassen, MN 55317-2002.

# EXHIBIT 2(c)

Legal Notice

0188-JPG-PMF If You Are a Community Water System, Case 09:41 Filed 05/24/12 Page 102 of #104 78 You Could Get a Payment from a Class Action Settlement.

# IF YOU ARE A COMMUNITY WATER SYSTEM, YOU COULD GET A PAYMENT FROM A CLASS ACTION SETTLEMENT.

A settlement has been proposed in a class action lawsuit concerning the presence of atrazine in drinking water supplies that will pay claims of U.S. Community Water Systems ("CWS") that have detected atrazine.

**ARE YOU INCLUDED?** You may qualify if you are a CWS and testing shows atrazine in your raw or finished water. You have until August 23, 2012 to test your water.

**WHAT IS THIS CASE ABOUT?** The lawsuit claims that Syngenta knew atrazine would enter drinking water supplies and requests that Syngenta pay the cost to remove it. Syngenta denies it did anything wrong. The Court did not decide which side was right. But both sides agreed to the settlement to resolve the case.

**WHAT DOES THE SETTLEMENT PROVIDE?** Syngenta agreed to create $105 million fund to be divided among all Class Members after paying court-approved attorneys' fees and costs and expenses. The Settlement Agreement, available at the website below, describes all of the details about the proposed settlement.

Your share of the fund will depend on: the concentration, frequency and how long ago atrazine was detected in your water; the size of the population you serve; and the number of valid claims submitted. Generally, if you processed more water or frequently had high concentrations of atrazine, you are eligible for more money; if you processed less water or your atrazine experience was sporadic or limited, you will get less money.

**HOW DO I ASK FOR A PAYMENT?** Call or visit the website below to submit a claim. You must submit a claim before **August 27, 2012.**

**WHAT ARE YOUR OTHER OPTIONS?** If you don't want to be legally bound by the settlement, you must exclude yourself by **August 27, 2012**, or you won't be able to sue or continue to sue over the legal claims in this case. If you exclude yourself, you won't get money from this settlement. If you stay in the settlement, you may object to it by **August 27, 2012**. The detailed notice on the website explains how to file a claim, object, ask to appear and speak, or request exclusion.

**THE FAIRNESS HEARING** The Court will hold a hearing in this case, *Greenville v. Syngenta Crop Protection*, No. 10-cv-188 on **October 22, 2012 at __:__ a.m.**, to consider approving the settlement; approving requests for attorneys' fees not to exceed 33 ⅓% of the Settlement Fund, and reimbursement of costs and expenses. If the settlement is approved, it will release Syngenta and others from all claims that were asserted or could have been asserted in the Litigation for the next ten years. You or your own lawyer may ask to appear and speak at the hearing at your own cost, but you don't have to.

**HOW CAN I GET MORE INFORMATION?** Go to www.atrazinesettlement.com, call the Settlement Administrator at 1-866-329-7832, or write to Syngenta Settlement Administrator, P.O. Box 2002, Chanhassen, MN 55317-2002.

**WWW.ATRAZINESETTLEMENT.COM          1-866-329-7832**

# EXHIBIT 5

**DISTRIBUTION AND CLAIMS PROCESSING PROCEDURE**
**FOR ALLOCATION AND PAYMENT OF SETTLEMENT PROCEEDS**

Each Class Member that submits an approved claim will receive a fixed payment plus a pro-rata share of the remaining balance of the Settlement Fund after the payment of legal fees and costs, including the cost to notify Class Members of this Settlement and to administer it.

The payment to each Class Member with an approved claim will be determined using a Court-approved formula that first provides a fixed payment to offset the cost of testing for atrazine, and then distributes the remainder on a pro-rata basis based upon each Class Member's Allocation Score as a percentage of the total Allocation Scores of all Class Members.

A Claimant's Allocation Score is determined by multiplying the Claimant's Age Weighted Atrazine Score, Atrazine Detection Frequency, and Economies of Scale Factor.

Payment Methodology:

1. Validate data:

   a. Confirm that all sample results are Qualified Test Results.

      Qualified Test Result = a result of analytical testing of the Class Member's Water performed during the Class Period using any state or federal agency-approved analytical method.

      Systems may submit testing results from untreated (raw) or treated (finished) water samples. However, all samples must be drawn from a source of water that was concurrently used by the Class Member to provide drinking water.

      Approved analytical methods include immunoassay, gas chromatography–mass spectrometry (GC-MS); gas chromatography with nitrogen phosphorus detection (GC/NPD); high-performance liquid chromatography, sometimes referred to as high-pressure liquid chromatography (HPLC); and liquid chromatography-mass spectrometry (LC-MS or LC-MS-MS).

      In the absence of raw water test results, a qualified engineer may use generally-accepted empirical methods to calculate the expected raw water atrazine concentration from observed finished water concentrations measured by an agency-approved method.

      Each sample result that does not appear in PLEX, VMP, ARP, AMP, SMP, SCMP, or SVMP  records, is generated from an analytical method other than immunoassay, gas chromatography–mass spectrometry (GC-MS), gas chromatography with nitrogen phosphorus detection (GC/NPD), high-performance liquid chromatography (HPLC), or liquid chromatography-mass spectrometry (LC-MS or LC-MS-MS), or that is in the highest 0.1% of all sample results for all claimants, will be flagged for additional verification by class counsel.

   b. Confirm each Approved Claimant's population served or service connections data with information from the EPA or state regulator. Any conflicts in population served or service connections data will be resolved in favor of the data most-recently reported to the EPA or state regulator.

   c. Notify claimants with incomplete claim forms of 14 days in which to cure.

2. Eliminate all non-class members from population (*i.e.*, all Systems serving less than 25; unverifiable testing data).

   a. Is the claimant a public water system [see 42 USC § 300f(4)]?

      i.  Is the claimant a system for the provision to the public of water for human consumption through pipes or other constructed conveyances?

      ii.  Does the claimant have at least fifteen service connections or regularly serve at least twenty-five individuals?

b.  Is the claimant a Community Water System [see 42 USC § 300f(15)] – does the claimant serve at least 15 service connections used by year-round residents of the area served by the system, or regularly serve at least 25 year-round residents?

c.  Is the claimant in the United States of America?

d.  Has the claimant submitted at least one result of analytical testing of the Class Member's Water performed no later than 90 days following preliminary approval using any state or federal agency-approved analytical method that shows a concentration of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine) equal to or greater than the limit of quantitation of the analytical method used?

3.  After the close of the claims deadline, calculate # of years in allocation period ($n$), by determining the oldest year for which any system has a qualified test result, and assign appropriate age weight to each calendar year.

$n = 1$ for the first year for which all claimants have at least one atrazine test result, 2 for second year for which the claimant has at least one atrazine test result, … n for last year for which the claimant has at least one atrazine test result. For example, if a claimant atrazine test results covering the period 1993 through 2012, then for 1993 n = 1, for 1994 n = 2, … for 2012 n = 20

4.  Assign a Year Weight to each year from Year #1 through Year #n:
Year Weight (Year #1) = 1, Year Weight (Year #2) = 2 … Year Weight (Year #n) = n

5.  For each claimant, calculate the Annual Atrazine Score for each year from Year 1 through Year n:

A claimant's Annual Atrazine Score for a particular year is the sum of the highest atrazine test result for each day during that year for which the claimant has at least one atrazine test result, divided by the number of days during that year for which the claimant has at least one atrazine test result.

**Annual Atrazine Score (Year #)** = $\sum_1^z \{(Result\ \#1 + Result\ \#2 + \ldots Result\ \#z) / z\}$, where:

*Result #1* = the highest atrazine test result for the first day in *Year #* for which the claimant has one or more atrazine test result(s), *Result #2* = the highest atrazine test result for the second day in *Year #* for which the claimant has one or more atrazine test result(s) … *Result #z* = the highest atrazine test result for the $z^{th}$ day in *Year #* for which the claimant has one or more atrazine test result(s).

$z$ = the total number of days in *Year #* for which the claimant has one or more atrazine test results.

Tests that result in non-detects (including numerical results that are less than the Limit of Quantitation of the analytical method used) are assigned a value of 0 ppb for the purpose of this calculation.

6.  For each claimant, calculate Age-Weighted Atrazine Score:

**Age Weighted Atrazine Score:** $\sum_{i=1}^{n} [(n \times) \textit{Annual Average of Highest Daily Atrazine Result}]$

i = 1 for the first year for which any claimant has at least one atrazine test result, 2 for the second year for which any claimant has at least one atrazine test result, … n for the last year for which any claimant has at least one atrazine test result. For example, if claimant atrazine test results cover the period 1993 through 2012, then for 1993 i = 1, for 1994 i = 2, … for 2012 i = 20

7.   For each claimant, calculate Atrazine Detection Frequency:

**Atrazine Detection Frequency**: $\dfrac{\textit{Number of Days with Atrazine Detects}}{\textit{Number of Days With Atrazine Tests}}$

8.   For each claimant, calculate Economies of Scale Factor:

**Economies of Scale Factor**: $\log_{100}(\textit{Population Served})^{2.8}$

9.   For each claimant, calculate Allocation Score:

**Allocation Score** = (Age-Weighted Atrazine Score) x (Atrazine Detection Frequency) x (Economies of Scale Factor)

10.   After the Allocation Score for each claimant has been calculated, for each claimant, calculate Percentage of Settlement Proceeds:

**Percentage of Settlement Proceeds** = (Allocation Score) / (Sum of All Allocation Scores)

11.   Reconcile all outstanding obligations of the settlement fund.

12.   Pay all court awarded expenses and costs.

13.   Within fourteen (14) calendar days after the Effective Date, calculate any attorneys' fee award as percentage of remaining fund or as fixed amount (as ordered by the Court).

14.   Calculate the aggregate Fixed Payment Amount and subtract it from the remaining settlement proceeds. If the aggregate Fixed Payment Amount exceeds the remaining settlement proceeds, reduce the Fixed Payment Amount pro-rata to equal the remaining settlement proceeds.

Fixed Payment Amount = $5,000.

15.   For each Claimant, calculate Total Payment:

Total Payment = Fixed Payment Amount + (Claimant Percentage of Settlement Proceeds x Remaining Settlement Proceeds).

16.   Within thirty (30) calendar days of the Effective Date, issue payment to each claimant that has submitted an approved claim in the amount of its Total Payment.

17.   180 days after issuing payments, close escrow account and pay any remaining funds into the Court.

# EXHIBIT 6



**Syngenta International AG**

Media Office
CH-4002 Basel
Switzerland
Telephone:    +41 61 323 2323
Fax:              +41 61 323 2424

www.syngenta.com

**Syngenta Media contact:**

Ann Bryan         +1 336 632 2486
Paul Minehart   +1 202 737 8913
USA

Daniel Braxton
Switzerland      +41 61 323 2323

media.relations@syngenta.com

**Syngenta Analyst/Investor contacts:**

Jennifer Gough
Switzerland      +41 61 323 5059
USA                 +1 202 737 6521



**Korein Tillery**
Attorneys at Law
One US Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, Missouri 63101
United States
www.koreintillery.com

**Korein Tillery Media contact:**

Charles Bosworth
USA                 +1 314 241 4844

cbosworth@koreintillery.com

<div style="background:#6b7a1e;color:white;padding:1em;text-align:right">

**joint media release**

</div>

Basel, Switzerland/ St. Louis, Missouri, May 25, 2012

**Atrazine Litigation Settled**

Syngenta and attorneys for several community water systems have agreed to settle litigation related to the herbicide atrazine in order to end the business uncertainty and expense of protracted legal proceedings.

Syngenta expressly denies any liability and Plaintiffs have acknowledged that they are not aware of any new scientific studies relating to atrazine not already in the public domain.

The proposed settlement agreement which requires court approval was filed with the United States District Court for the Southern District of Illinois on May 24, 2012. Water systems joining the class will be eligible for payments from a $105 million settlement funded by Syngenta. Details of the agreement can be found at www.atrazinesettlement.com.

*Cautionary Statement Regarding Forward-Looking Statements*

This document contains forward-looking statements, which can be identified by terminology such as 'expect', 'would', 'will', 'potential', 'plans', 'prospects', 'estimated', 'aiming', 'on track' and similar expressions. Such statements may be subject to risks and uncertainties that could cause the actual results to differ materially from these statements. We refer you to Syngenta's publicly available filings with the U.S. Securities and Exchange Commission for information about these and other risks and uncertainties. Syngenta assumes no obligation to update forward-looking statements to reflect actual results, changed assumptions or other factors. This document does not constitute, or form part of, any offer or invitation to sell or issue, or any solicitation of any offer, to purchase or subscribe for any ordinary shares in Syngenta AG, or Syngenta ADSs, nor shall it form the basis of, or be relied on in connection with, any contract therefor.