IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CITY OF GREENVILLE, et al., individually, and on behalf of all others similarly situated,** <br><br> Plaintiffs, <br><br> vs. <br><br> **SYNGENTA CROP PROTECTION, INC., and SYNGENTA AG,** <br><br> Defendants. | Case No.: 3:10-cv-188-JPG-PMF |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 294) filed by the parties. Having considered the matter, and being duly advised, the Court makes the following findings, **GRANTS** the Joint Motion, and Orders as follows.

1. Plaintiffs are Community Water Systems from six different states. As Community Water Systems ("CWS"), each of the Plaintiffs owns property and facilities designed to acquire, filter, and dispense water for public use. Compl. at ¶¶ 4-27. Community Water Systems are required under the Safe Drinking Water Act ("SDWA") to test their finished drinking water for contaminants, 40 C.F.R. 141.24(h)(2), to ensure they do not exceed any Maximum Contaminant Level ("MCL").

2. In their complaint, Plaintiffs allege that atrazine has continuously entered their water supplies allegedly injuring their property rights. Compl. at ¶¶ 35, 51, 54-56, 59, 62-63, 74. Plaintiffs allege that they have had to test and monitor their water supplies for atrazine, as well as

to install, operate, and maintain systems to filter atrazine from their water supplies. *Id*. at ¶¶ 4-27, 56(b), 56(d), 57, 65(b), 65(d), 75(b), 75(d). Plaintiffs also allege that in addition to these past expenses, the continued presence of atrazine in their water supplies will cause them to incur future expense. *Id*. at ¶¶ 4-27, 56(b), 56(d), 57, 65(b), 65(d), 75(b), 75(d). Plaintiffs ask for all future damages likely to be incurred in removing atrazine from their water supplies, including costs associated with the purchase and operation of appropriate filtration systems. *Id*., Prayer for Relief (d).

   3. Since 1991 the EPA has set an MCL of 3 parts per billion (ppb) for atrazine on an average annualized basis. 56 Fed. Reg. 3526-01 (Jan. 30, 1991); § 40 CFR 141.50(b). The EPA considers MCLs to be "safe levels that are protective of public health." 52 Fed. Reg. 25690, 25693-94 (July 8, 1987). Defendants have argued that Plaintiffs' only legally protected interest is the right to provide water that complies with the MCL for atrazine. Thus, for those Plaintiffs which have not experienced a violation of the EPA's Maximum Contaminant Level, Defendants maintain that they have not suffered a legally cognizable injury. In addition, the best available technology for removing atrazine from drinking water is commonly used to address drinking water issues other than herbicide removal. Thus, Defendants challenged Plaintiffs' ability to demonstrate legal causation.

   4. Plaintiffs seek to represent the approximately 2,000 Community Water Systems in the United States that have detected atrazine in their water and sought to resolve whether atrazine has an inherent design defect that causes it to run into drinking water sources when used as intended; whether that design renders it unreasonably dangerous to public water providers; whether Syngenta was aware that atrazine had this design defect; and whether Syngenta sold atrazine knowing it would run into drinking water sources.

2

5. In accordance with the parties' joint motion, the Court certifies the following class for settlement purposes only:

> All Community Water Systems in the United States of America for which any Qualifying Test Result shows any Measurable Concentration of atrazine (2-chloro-4 ethylamino-6-isopropylamino-s-triazine).

The definitions of the terms used in this class description and Order can be found in the parties' proposed Settlement Agreement, which is attached as Exhibit A to their Joint Motion for Preliminary Approval of Settlement.

6. The settlement class satisfies the requirements of Rule 23(a)(1) for purposes of settlement as it is comprised of approximately 2,000 members making joinder impracticable.

7. The Plaintiffs' products liability, negligence, nuisance and trespass claims for damages arising from the entry of atrazine into their water supplies satisfy the requirements of Rules 23(a)(2) and 23(a)(3) for purposes of settlement in that they present common questions that are typical of the class including:

   a. Whether atrazine enters surface and ground water sources of drinking water when it is used as intended;

   b. Whether Syngenta could have foreseen that its atrazine would enter surface water and consequently Class members' drinking water sources;

   c. Whether Syngenta knew or reasonably should have known that atrazine would physically enter the drinking water of Class members;

   d. Whether Syngenta owed Class members a duty to ensure that its atrazine did not enter Plaintiffs' and Class members' raw water supplies and properties, and

3

whether Syngenta breached that duty by designing, manufacturing and selling atrazine in its current form;

e.  Whether the breach of that duty directly and proximately caused Class members' damages;

f.  Whether the presence of atrazine in drinking water require Syngenta to compensate Class members for all costs and expenses for removing atrazine from drinking water;

8.  The answers to these questions, either in the affirmative or the negative would effectively resolve all Class Members' Trespass (Count I), Negligence (Count II), Products Liability (Count III) and Nuisance (Count IV) claims for purposes of settlement.

9.  In addition, for the purposes of this settlement only, these common questions predominate over any individual issue satisfying Rule 23(b)(3) as common evidence would answer these questions for the entire class, and would in turn resolve the trespass, negligence and products liability claims of all class members.

10.  City of Greenville, Illinois; Village of Coulterville, Illinois; Village of Evansville, Illinois; Village of Farina, Illinois; City of Gillespie, Illinois; City of Cameron, Missouri; City of Concordia, Missouri; City of Carbondale, Kansas; City of Marion, Kansas; Miami County Rural Water District No. 2; City of Oswego, Kansas; City of Jasper, Indiana; Village of Monroeville, Ohio; City of Upper Sandusky Ohio; Creston Municipal Utilities; Illinois- American Water Company; Missouri- American Water Company; Indiana- American Water Company Inc.; Iowa- American Water Company; Ohio-American Water Company; Chariton Municipal Waterworks; and Village of Ottawa, Ohio are designated as class representatives as the Court finds they pos-

sess the same interest and have suffered the same alleged injury as the class for purposes of this settlement.

11. Pursuant to Rule 23(g), The Court finds that Stephen M. Tillery of the law firm of Korein Tillery and Scott Summy of the law firm of Baron & Budd will fairly and adequately represent the interest of the class and are designated as class counsel.

12. This litigation and other related litigation pending in Illinois state court on behalf of Illinois Community Water Systems has been extremely hard-fought, burdensome and expensive. In the course of the litigation, the parties collected, reviewed, and produced more than 10,000,000 pages of discovery. The parties also were subject to significant disruption of their business as with the depositions of dozens of employees. In addition, the Parties incurred substantial costs through the retention of numerous expert consultants and the preparation of expert reports.

13. Accordingly, resolving through settlement these claims on behalf of the class is superior to individual suits, each of which would cost orders of magnitude more to litigate than the claim would be worth to the Plaintiffs.

14. The proposed settlement would put an end to the expense, inconvenience and distraction of further litigation while providing significant monetary relief to the proposed class in the form of $105,000,000.00, in exchange for a release that resolves the Plaintiffs' claims related to the presence of atrazine in their water, without interfering with the jurisdiction of any regulatory agency, and preserving any claims arising from a point-source contamination.

15. The procedure for review of a proposed class action settlement is a well-established three-step process. First, the district court must issue a "preliminary approval" order following a pre-notification hearing to determine whether the proposed settlement is "within the

5

range of possible approval." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1006, 1124 (7th Cir. 1979). Second, notice of the proposed settlement must be sent to all class members. Third, the district court must issue a "final approval" order after notice of the settlement is provided to the class and a hearing to consider the fairness of the hearing is held. Manual for Complex Litigation (Fourth), § 21.632 (2004).

16.     At this preliminary stage, the Court need only determine whether the settlement is "'within the range of possible approval.'" *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is "fair, reasonable, and adequate." *Armstrong v. Bd. of Sch. Dirs. Of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). Rather, that determination is made only at the final approval stage, after notice of the settlement has been provided to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *Id*.

17.     Here, the Settlement Agreement is "within the range of possible approval" and appears to be a good compromised result for the Parties following years of hard-fought litigation. The Settlement Agreement was reached after serious, arms-length negotiations between experienced and informed counsel and reflects a compromise that provides a substantial monetary benefit to the class, while taking into account the risk that further protracted and contested litigation may lead to no recovery or a smaller recovery for Plaintiffs.

18.     The Settlement Agreement also appears to allocate the settlement proceeds without favoring any individual member over the class. The parties' proposed allocation plan provides that the Settlement Fund, minus any attorneys' fees, expenses, and costs, will be allocated to Class Members on a pro rata basis based on evidence of the significance of the Class Mem-

ber's history of atrazine detection, its size and the age of its claim. This allocation of benefits is appropriately tailored to the facts and law at issue in this case, and is fair, reasonable, and adequate.

19. Accordingly, the Court preliminarily approves the Settlement Agreement as being fair, reasonable and adequate and in the best interest of the Class as a whole.

20. The next step in the process requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Accordingly, "notice should be mailed to the last known addresses of those who can be identified and publication used to notify others." *Mangone v. First USA Bank*, 206 F.R.D. 222, 231 (S.D. Ill. 2001).

21. Here, the proposed Notice Plan directs a summary notice to be mailed to each known Class Member and provides for publication notice that targets all Community Water Systems that may potentially meet the qualifications to become Class Members. These notices also direct potential Class Members to a website which displays a long-form Notice which sets forth the details of the Settlement Agreement. Additionally, the proposed notices provide potential class members with the information reasonably necessary for them to make a decision whether to object to the settlement.

22. "The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and

7

be heard at the hearing." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 351 (N.D. Ill. 2010). The proposed notices inform class members of all of these facts.

23.  As required by Fed. R. Civ. P. 23(c)(2)(B)(i), (ii) and (iii), the Notice describes the nature of the action, the class definition and the common issues. Notice at §§ 1, 2, 6 and 7. As required by Rule 23(c)(2)(B)(iv), the Notice informs class members that they may appear through an attorney. Notice at § 18. The Notice satisfies Rule 23(c)(2)(B)(v) and (vi) by stating that Class Members may exclude themselves from the class and providing a description of the manner and deadline in which to do so. Notice § 20-22.  As required by Rule 23(c)(2)(B)(vii), the Notice informs Class Members that any Class Member who fails to opt-out will be prohibited from bringing a lawsuit against defendants based on or related to any of the claims asserted by the Plaintiffs. Notice § 21.

24.  The Notice also conveys all information necessary for a class member to make an informed decision to participate, opt out or object. It identifies the lawsuit by docket number and case caption, describes the litigation, and gives a summary of the available benefit.  Notice at § 1-5. The Notice also discloses the maximum amount of attorneys' fees that will be sought by Class Counsel.  Notice at § 19. The Notice also describes the procedures for allocating and distributing the Settlement Fund, including a thorough description of how to obtain those benefits. Notice at §§ 10-11. Finally, the Notice displays the name and address of Class Counsel and informs Class Members of the procedure for making inquiries of Class Counsel. Notice at §§ 17, 24, 30.  Accordingly, the Notice goes far and above the requirements imposed by Fed. R. Civ. P. 23(c)(2) and 23(e), and constitutes the "best notice practicable under the circumstances" of this lawsuit.

25. Not later than Monday, June 11, 2012 (the "Notice Date"), the Settlement Administrator shall begin implementation of the proposed notice plan, including causing a copy of the Summary Notice to be mailed to all known Class Members.

26. Any Class Member who wishes to object to the Settlement or an award of fees or expenses to Class Counsel must file with the Clerk of the Court, with service on all Parties in accordance with Fed. R. Civ. P. 5 and S.D. Ill. L.R. 5.1, a written and signed statement, designated "Objection." Service on the Court and all Parties must be completed Tuesday, August 28, 2012.

27. All Objections must certify in accordance with 28 U.S.C. § 1746, under penalty of perjury, that the filer has been legally authorized to object on behalf of the Class Member and provide an affidavit or other proof of the Class Member's standing; must provide the name, address, telephone and facsimile number and email address (if available) of the filer and the Class Member; the name, address, telephone and facsimile number and email address (if available) of any counsel representing the Class Member; must state all objections asserted by the Class Member and the specific reason(s) for each objection, and include all legal support and evidence the Class Member wishes to bring to the Court's attention; must indicate if the Class Member wishes to appear at the Final Fairness Hearing; and, identify all witnesses the Class Member may call to testify.

28. Any Class Member who wishes to opt out of the Settlement must file with the Settlement Administrator, with service on all Parties in accordance with Fed. R. Civ. P. 5 and S.D. Ill. L.R. 5.1, a written and signed statement, entitled "Request for Exclusion." Service on the Settlement Administrator and all Parties must be completed Tuesday, August 28, 2012.

29. The Request for Exclusion must certify in accordance with 28 U.S.C. § 1746, under penalty of perjury, that the filer has been legally authorized to exclude the Class Member from the Settlement and provide an affidavit or other proof of the Class Member's standing; must provide the filer's name, address, telephone and facsimile number and email address (if available); include the Class Member's name, address, telephone number, and e-mail address (if available) and be received by the Court no later than Tuesday, August 28, 2012.

30. A hearing (the "Final Fairness Hearing") shall be held on Monday, October 22, 2012, at the United States District Court, Southern District of Illinois, 301 W. Main Street, Benton, Illinois 62812, to determine whether the proposed settlement of the Litigation on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate to the Class and should be approved by the court; whether the proposed Plan of Allocation should be approved and to consider counsel's application for an award of attorneys' fees and expenses.

31. All reasonable expenses in notifying Class Members, as well as administering the Settlement Fund, shall be paid as set forth in the Settlement Agreement.

32. Neither the settlement nor the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, constitutes or shall be construed as an admission or concession by any Party or by any of the Released Parties of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind, and Defendant vigorously disputes any such allegation.

33. In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation as of March 30, 2012, subject to reasonable accommodation to the Parties and their

counsel due to the passage of time. In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceedings for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

34. Pending final determination of whether the Settlement Agreement should be approved, none of the Plaintiffs or Class Members or anyone who acts or purports to act on their behalf shall institute, commence, or prosecute any action that asserts any Released Claims against any Released Party.

35. The Court reserves the right to adjourn the date of the Final Fairness Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications as necessary to implement the proposed settlement.

36. The parties are directed to update the Notice and website to reflect revised deadlines of ninety days following today's date and shall update the settlement website with the revised and corrected Distribution and Claims Processing Procedure that was offered to the Court at the Preliminary Approval hearing.

**IT IS SO ORDERED**.

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**


**Dated: May 30, 2012**