## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CITY OF GREENVILLE, et al., individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SYNGENTA CROP PROTECTION, INC., and SYNGENTA AG, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )  **Case No.: 3:10-cv-00188-JPG-PMF** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF STEPHEN M. TILLERY

I, Stephen M. Tillery, being first duly sworn upon my oath, depose and state as follows:

1.       I certify that the statements set forth in this instrument are true and correct. I make the following statements based on my personal knowledge and if called, I could competently testify to the matters stated herein.

### PERSONAL BACKGROUND

2.       I am an attorney and senior member of the law firm of Korein Tillery, LLC, one of Plaintiffs' counsel in this lawsuit.

3.       I completed my undergraduate studies at Illinois College (B.A. *magna cum laude*, Phi Beta Kappa) in 1972. Thereafter I attended Saint Louis University School of Law (J.D. *cum laude*, Order of the Woolsack, 1976). I was admitted to practice law in the State of Illinois in 1976 and the State of Missouri in 1990. I am admitted to practice before the United States District Courts for the Southern, Central, and Northern Districts of Illinois. I was admitted to prac-

tice before the United States Court of Appeals for the Seventh Circuit in 1982 and the United States Supreme Court in 1988.

4.      I am a member of the Illinois Trial Lawyers Association, where I have been one of the elected Board of Managers since 1987, and for which I have served on and chaired various committees. I am also a member of the Illinois Bar Association, the Missouri Association of Trial Attorneys, the St. Louis Metropolitan Bar Association, the St. Clair County Bar Association and the American Association for Justice. I serve as a board member of Public Justice.

5.      While obtaining my law degree, I was a law clerk for the Honorable James L. Foreman, United States District Court for the Southern District of Illinois. Following graduation from law school, I was a law clerk to the Honorable George J. Moran, Fifth District Court of Appeals of Illinois. Following that clerkship, I began the private practice of law at Kassly, Bone, Becker & Dix, P.C. in 1977, where I became an equity partner in 1979. In 1988, I joined the law firm now known as Korein Tillery as a partner. The firm maintains offices in Chicago, Illinois and St. Louis, Missouri.

6.      I have practiced in numerous areas of law, including personal injury, medical malpractice, patent infringement litigation, products liability, Federal Employers' Liability Act, business torts, toxic torts, libel, and class actions. In my career, I have handled individually or as lead counsel hundreds of complex civil cases and have been actively engaged in trial and appellate work for more than thirty-five years. I have handled numerous cases for individual plaintiffs that have resulted in multimillion dollar verdicts or settlements.

7.      I have written numerous articles for legal publications and authored "Protecting Litigation Rights" for the Illinois Institute of Continuing Legal Education and "Illinois Personal Injury Complaints" for West Publishing Company. In addition, I have served as lecturer, mod-

erator and panel member at dozens of legal seminars relating to litigation and trial practice.  I was an adjunct professor at Saint Louis University School of Law for eleven years, and was Co-Director of the Advanced Trial Advocacy Program there from 1983 to 1988.

8.      Korein Tillery has considerable experience prosecuting class actions. A substantial portion of the firm's practice is dedicated to the representation of plaintiffs in a variety of class actions, primarily in the areas of consumer protection,  securities, contract, ERISA, defective products and environmental contamination.

9.      Korein Tillery has been named by the National Law Journal in its 2003, 2004, 2007, 2008, and 2011 "Plaintiffs' Hot List" as one of the top plaintiffs' firms in the country in all specialties. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust,* 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, *Top 10 Securities Law Decisions of 2006* (Winter 2006). Members of Korein Tillery have substantial knowledge and expertise in the areas that are the subject matter of this action and the resources necessary to prosecute to actions of this magnitude. Korein Tillery has been involved in a number of environmental matters representing Plaintiffs who have experienced lead, gasoline and other toxic contamination. Korein Tillery has been appointed as class counsel in more than fifty class actions[1] and has successfully negotiated some

---

[1] *See, e.g., Asbury v. May Dep't Store Co. Ret. Plan*, No. 97-667-GPM (S.D. Ill. May 3, 1999); *Barbara's Sales Inc. v. Intel Corp.*, 2004 WL 5723558 (Ill. Cir. July 12, 2004); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, No. 00-584-DRH (S.D. Ill. Dec. 5, 2003); *Berkowitz v. Nat'l Westminster Bancorp Ret. Plan*, 2000 WL 852451 (D. Conn. Mar. 30, 2000); *Brentwood Travel Serv., Inc. v. DCT Enter.*, No. 03CC-2857 (Mo. Cir. Ct. June 13, 2007); *Call v. Ameritech Mgmt. Pension Plan*, No. 01-717-GPM (S.D. Ill. Aug. 26, 2003); *Chultem v. Ticor Title Ins. Co.*, 927 N.E.2d 289 (Ill. App. Ct. 2010); *City of Univ. City, Mo. v. AT&T Wireless Servs., Inc.*, No. 01-CC-004454 (Mo. Cir. Ct. Aug. 30, 2007); *Clevenger v. Dillards, Inc.*, No. 02-558 (S.D. Ohio Nov. 31, 2006); *Clutts v. Allstate Ins. Co.*, No. 02-L-226 (Ill. Cir. Dec. 6, 2005); *Collora v. R.J. Reynolds Tobacco Co.*, 2003 WL 23139377 (Mo. Cir. Ct. Dec. 31, 2003); *Cooper v. The IBM Pers. Pension Plan, No. 99-829 GPM* (S.D. Ill. May 19 2005); *Craft v. Philip Morris, Inc.*, 2003 WL 23355745 (Mo. Cir. Ct. Dec. 31, 2003); *Crockett v. U.S. Sales Corp.*, No. 98-L-1057 (Ill. Cir. Apr. 5, 2000); *Dunn v. BOC Group Pension Plan*, No. 01-CV-382-DRH (S.D. Ill. Dec. 11, 2003); *Esden v. Bk. of Boston*,

of the country's largest settlements. *See, e.g., Parker v. Sears Roebuck & Co.,* No. 04-L-716 (Ill. Cir. Ct. Jan. 16, 2008) (settlement valued at $544.5 million); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Benefits Cas. 2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.*, 96-LM-983 (Ill. Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc*, 04-2819 (D. N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir. Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement); *Williams v. Rohm & Hass Pen-*

---

182 F.R.D. 432 (D. Vt. Sept. 28, 1998); *Folkerts v. Ill. Bell Tel. Co.*, No. 95-L-912 (Ill. Cir. Jan. 7, 1998); *Fun Serv. of Kan. City, Inc. v. AMF Bowling, Inc.*, No. 03-DV-203690 (Mo. Cir. Ct. Apr. 22, 2005); *Gans v. Leiserv, Inc.*, No. 02CC-002115 (Mo. Cir. Ct. Oct. 6, 2004); *Gans v. Seventeen Motors, Inc.*, No. 01-L-478 (Ill. Cir. July 1, 2002); *Graf v. Automatic Data Processing*, No. 00-694-GPM (S.D. Ill. June 18, 2001); *Harris v. Roto-Rooter Servs. Co.*, No. 00-L-525 (Ill. Cir. Nov. 17, 2005); *Howard v. Brown & Williamson Tobacco Co.*, 2001 WL 1910779 (Ill. Cir. Dec. 18, 2001); *Hoormann v. SmithKline Beecham Corp.*, 2006 WL 3869484 (Ill. Cir. Oct. 6, 2006); *Hoyleton Youth & Family Servs. v. Surrey Vacation Resorts, Inc.*, No. 03-L-0507 (Ill. Cir. Mar. 18, 2011); *In Re: MCI Non-Subscriber Tel. Rates Litig., No. MDL* 1275 (S.D. Ill. Jan. 12 2001); *JC Hauling v. Capital Assoc.*, No. 02-L0425 (Ill. Cir. Feb. 9, 2005); *Joiner v. Ameritech Mobile Commc'ns*, No. 96-L-121 (Ill. Cir. Aug. 8, 2000); *Kaiser v. Cigna Corp*, 2001 WL 36180948 (Ill. Cir. Apr. 20, 2001); *Kohl v. Am. Trial Lawyers Ass'n*, No. AW-97-3264 (D. Md. Nov. 2, 1999); *Laurenzano v. Blue Cross/Blue Shield of Mass. Ret. Income Trust*, No. 99CV11751 (D. Mass. Apr. 30, 2002); *Lawrence v. Philip Morris USA, Inc.*, No. 09-CV-519 (N.H. Nov. 22, 2010); *Little L.L.C. v. Brinker Mo., Inc.*, 2005 WL 6191055 (Mo. Cir. Ct. Sept. 23, 2005); *Malloy v. Ameritech*, No. 98-488-GPM (S.D. Ill. May 3, 2000); *Mangone v. First USA Bk., N.A.*, 2000 WL 33529651 (S.D. Ill. Nov. 21, 2000); *Mansfield v. Air Line Pilots Ass'n*, No. 06-cv-06869 (N.D. Ill. July 9, 2007); *May v. SmithKline Beecham Corp.*, No. 98-108-WDS (S.D. Ill. May 31, 2001); *Meyer v. HomEq Servicing Corp.*, No. 05-L-208 (Ill. Cir. Nov. 16, 2011); *Medeika v. S. New Eng. Tel.*, No. 97CV01123 (D. Conn. Aug. 9, 1999); *Nichols v. B.P. Am. Pension Plan*, No. 01-C-6238 (N.D. Ill. July 15, 2002); *Nichols-Siedhoff v. Ameritech Corp.*, No. 01-L-456 (Ill. Cir. Feb. 6, 2004); *Null v. D.B. Inv., Inc.*, No. 05-L-209 (Ill. Cir. July 22, 2005); *Parker v. Sears, Roebuck & Co.*, No. 04-L-716 (Ill. Cir. Sept. 18, 2007); *Patterson v. Nations Bk.*, No. 99-481-PER (S.D. Ill. July 29, 1999); *Peterson v. State Farm Mut. Auto. Ins. Co.*, 2000 WL 35641572 (Ill. Cir. Dec. 21, 2000); *Pierce v. Gold Kist*, No. CV-97-L-0748-5 (N.D. Ala. Aug. 11, 1997); *Prather v. Pfizer Inc.*, No. 02-L-480 (Ill. Cir. Mar. 2, 2004); *Price v. Philip Morris Inc.*, 2001 WL 34366710 (Ill. Cir. Feb. 1, 2001); *Rice v. Nat'l Steel*, No. 98-L-98 (Ill. Cir. June 30, 1999); *Richardson v. Fairchild Space & Def.*, No. 99-1867 (M.D. Pa. Oct. 9, 2001); *Rogers v. Tyson Foods, Inc.*, 2007 WL 6712021 (Ill. Cir. Aug. 17, 2007); *Seifert v. May Co. Ret. Plan*, No. 96-1028-GPM (S.D. Ill. May 3, 1999); *Shuppert v. Blair Down*, No. 00-L-223 (Ill. Cir. Feb. 18, 2004); *Sims v. Allstate Ins. Co.*, 2000 WL 35751322 (Ill. Cir. Dec. 21, 2000); *Sparks v. Lucent Tech.*, 2001 WL 36208888 (Ill. Cir. July 27, 2001); *State of Mo. v. SBC Commc'ns, Inc.*, No. 22044-02645 (Mo. Cir. Ct. Nov. 9, 2009); *Sullivan v. DeBeers, A.G.*, No. 04-2819 (D.N.J. Nov. 30, 2005); *Synfuel Tech. v. Airborne Inc.*, No. 02-CV-324-DRH (S.D. Ill. Oct. 31, 2003); *Todt v. Ameritech Corp.*, No. 97-L-1020 (Ill. Cir. Nov. 12, 1997); *Tullock v. K-Mart Corp. Employee Pension Plan*, No. 99-289-DRH (S.D. Ill. Feb. 22, 2002); *Turner v. R.J. Reynolds Tobacco Co.*, No. 00-L-113 (Ill. Cir. Nov. 14, 2001); *Vollmer v. PCH*, No. 99-434-GPM (S.D. Ill. June 30, 1999); *Wagner v. Lowe's Home Ctrs., Inc.*, No. 02-L-690 (Ill. Cir. Jan. 14, 2008); *Wheeler v. Sears, Roebuck & Co.*, No. 99-L-529 (Ill. Cir. Apr. 17, 2003); *Wilgus v. Cybersource*, No. 02-L-995 (Ill. Cir. Aug. 30, 2004); *Williams v. Am. Equity Mortgage, Inc.*, No. 05-L-207 (Ill. Cir. July 21, 2011); *Williams v. Con Agra*, No. 97-L-373 (Ill. Cir. Oct. 31, 1997); *Williams v. Rohm & Haas Pension Plan*, No. 04-78 (S.D. Ind. Nov. 21, 2004).

4

*sion Plan*, 2010 WL 1490350 (S.D. Ind. Apr. 12, 2010) ($180 million settlement); *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million settlement); *In Re: MCI Non-Subscriber Tel. Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001) ($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar. 12, 2004) ($70 million settlement).

### The Atrazine Litigation

10.     This case presented a significant risk of no recovery for the Plaintiffs and significant financial risk to their attorneys. Proving that the manufacturer of a highly-regulated product was liable for the damage caused to community water systems is a difficult task.  To prevail, Plaintiffs had to establish that the actions of Syngenta and the other Defendants were the legal and actual cause of their damage, that Plaintiffs' claims were not preempted, and that Plaintiffs had standing to pursue those claims. Many environmental contamination cases have been pursued successfully in the United States based on a variety of different causes of the contamination. For example, leaking underground storage tanks, nuclear by-products, heavy metal groundwater contamination and a myriad of other types of contamination have been subject of successful lawsuits. This litigation presented a completely different challenge, however, because Plaintiffs' claims presumed that this highly-regulated pesticide was being used precisely according to manufacturers' directions and governmental regulations. In other words, Plaintiffs' claims were based not on some unforeseen release of atrazine into raw drinking water supplies but from the fully predictable fate and transport characteristics of the chemical. Plaintiffs' lawsuits challenged the basic nature and safety of atrazine itself when used as intended and as approved. Plaintiffs' counsel are aware of no other successful class action environmental contamination case which has overcome this challenge.

11.     When Scott Summy and I first began to investigate this lawsuit in 2004, we quickly discovered that the only community water system that had brought a lawsuit seeking to remove atrazine from their water had their case dismissed as they were unable to show an injury-in-fact. *See Iberville Parish Waterworks Dist. No. 3 v. Novartis Crop Prot., Inc.*, 45 F. Supp. 2d 934, 937 (S.D. Ala. 1999), *aff'd sub nom. Iberville Parish Waterworks v. Novartis Crop Corp.*, 204 F.3d 1122 (11th Cir. 2009) (unpublished table decision).  Without an injury-in-fact, the Plaintiffs lacked standing to sue.  *Id.*

12.     While the legal theories and facts were quite different, there were some similarities between the Plaintiffs in *Iberville* and Plaintiffs in this litigation. I knew that the issues decided in *Iberville* would be raised in this litigation, and that there was a risk that the Court would be influenced by that opinion.

13.     The U.S. Environmental Protection Agency (USEPA) has authority from Congress under the Safe Drinking Water Act (SDWA) to set the maximum contaminant level (MCL) for drinking water.  The MCL for atrazine is 3 ppb. 56 Fed. Reg. 3526-01 (Jan. 30, 1991); § 40 CFR 141.50(b).

14.     This litigation sought damages for the presence of atrazine at any measureable level.  The reality of treatment for atrazine removal is that Plaintiffs incur costs for treatment of water with atrazine levels below 3 ppb.   And there are numerous studies that indicate that atrazine in water at levels below 3 ppb may not be safe.  But there was substantial risk in making claims for damages when atrazine levels were below 3 ppb.  In making claims for damages below 3 ppb, Plaintiffs faced the risk of having the case dismissed on the basis of preemption. Plaintiffs also faced the MCL being raised as an affirmative defense.  These claims also in-

creased the financial risk to the attorneys because the health effects of atrazine consumption would be the subject of extensive expert testimony if this case proceeded to trial.

15.     Before any of the cases were filed, I knew that the Plaintiffs would not only have to show that atrazine entered their water supply and caused damage, but also that the atrazine or atrazine-containing products that caused the damage originated with the particular defendant in the case.  Illinois does not recognize market share liability. *See, e.g., Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 340-41 (Ill. 1990). And other theories of alternative liability are only available under Illinois law in very limited circumstances. *See, e.g.*, *Wysocki v. Reed*, 583 N.E.2d 1139, 1145 (Ill. App. Ct. 1991), and *Erickson v. Baxter Healthcare, Inc.*, 151 F. Supp. 2d 952 (N.D. Ill. 2001).

16.     I entered this case knowing that there was a real likelihood that the Plaintiffs would have to identify the source of  the atrazine in their water supply, using expert scientific testimony to determine the path taken by atrazine from fields through the watershed, and from the manufacturer through the supply chain to the fields in the watershed.  And I knew that causation of damages and the defendants' liability would be issues throughout the litigation. All of this meant that prosecuting these cases was going to be an extraordinarily expensive undertaking.

17.     Despite these risks, I believed that the benefits of litigation to the Plaintiffs, to the Class, and to the members of the public that they serve, were worth the potential risks. The community water systems had suffered extensive damages and had no other source of recovery and my firm was willing to commit the resources necessary to see the case through to the end. However, given the risks, we would have never agreed to pursue the action without an agreement from the plaintiffs to pay an attorneys' fee equal to one-third of any recovery plus re-imbursement of expenses. Each of the plaintiffs agreed to this amount. True and accurate copies

of the Legal Services Agreement are contained within the Sealed Exhibit in support of this Declaration. (ECF No. 309). An attorneys' fee equal to one-third of any recovery plus reimbursement of expenses is the prevailing rate for legal fees for complex legal matters presenting significant risk. As such, it is unlikely Plaintiffs would have been able to secure legal representation of comparable skill and experience on better terms.

**Background of the Lawsuit**

18.     The atrazine litigation sought to recompense community water systems for the money that they spent removing atrazine from their drinking water.  There were a total of seven cases filed.  This settlement ends all of them.

19.     The atrazine litigation officially began more than eight years ago.  On July 2, 2004, Holiday Shores Sanitary District ("Holiday Shores") filed six separate lawsuits against manufacturers and distributors of atrazine and atrazine-containing products in the Illinois Circuit Court in Madison County.

20.     In 2009, seven more public water systems joined the *Holiday Shores* case.  Like Holiday Shores, these Plaintiffs were community water systems in Illinois that had spent significant sums removing atrazine from their water before serving it to their customers.

21.     On March 8, 2010, seventeen public water systems from six states filed the *Greenville* case against Syngenta Crop Protection, Inc. and its Swiss parent Syngenta AG.  On March 23, 2010, the Plaintiffs amended the complaint to add seven additional Plaintiffs, including 5 subsidiaries of American Water, one of the largest suppliers of potable water in North America.

22.     Currently, there are 30 public or private water providers who are Plaintiffs in these cases.  These Plaintiffs owned and operated more than 50 community water systems that have

been impacted by atrazine, and they served water to more than 2.3 million customers.  These class representatives presented a cross section of water providers, large and small, throughout the areas most heavily impacted  by atrazine.  The attorneys from Korein Tillery, LLC and Baron & Budd, P.C. served as lead counsel for all of the Plaintiffs in the litigation.

23.     Neither *Holiday Shores* nor the later filed *Greenville* action was a usual or typical case.  This litigation has taken several unique twists and turns, and has involved numerous novel and complex legal issues.  And the Defendants vigorously defended their product and their conduct at every stage of the litigation.

24.     In *Greenville,* Plaintiffs were able to secure personal jurisdiction over Syngenta AG, a Swiss corporation with few publically-known ties to its American subsidiary.  Plaintiffs made a *prima facie* showing that Syngenta AG exercised such an high degree of control over its subsidiaries that it was proper to impute their contacts with Illinois to its ultimate parent.

25.     The *Holiday Shores* and *Greenville* cases survived multiple motions to dismiss on grounds ranging from preemption to violation of the U.S. Constitution and from lack of standing to pursue a claim, to technical failures in stating those claims under state law.  Additionally, the *Holiday Shores* case prevailed in a motion to dismiss for lack of jurisdiction filed by United Agri Products, Inc.  In *Greenville,* Plaintiffs successfully defeated motions to dismiss filed by Syngenta AG and Syngenta Crop Protection, Inc.

26.     There have been five interlocutory appeals filed during this litigation, including two petitions for leave to appeal in the Illinois Supreme Court.  There was also an evidentiary hearing on a complex discovery issue, complete with testimony of third parties and Syngenta employees.

27.     Syngenta is a multinational corporation and the litigation had a multinational complexity. In *Holiday Shores,* discovery accessible to Syngenta was ordered to be produced even if the document or electronically stored information was physically located outside the United States. Despite this specific ruling, Syngenta and its attorneys effectively refused to comply, creating a need for numerous additional discovery meetings and  hearings.  And in *Greenville,* where Syngenta AG (the Swiss parent entity) was also a defendant, Swiss law required the depositions of two members of Syngenta's executive committee to be taken in Belgium.

28.     Despite the timing of the settlement, Plaintiffs were prepared to take this case to trial.  Plaintiffs were scheduled to disclose experts for class certification on April 2, 2012, and their experts for trial on July 16, 2012.  These dates were continued twice to allow the parties to conduct and finalize settlement negotiations.  But Plaintiffs were prepared to proceed on schedule with the disclosures of experts and their opinions.  Plaintiffs' experts were prepared to testify concerning a variety of scientific and technical matters, including the health effects of atrazine in water supplies at very low levels, the economic cost to community water systems in removing atrazine from their finished water, and the movement of atrazine from each manufacturer to Plaintiffs' water supplies.

### *Holiday Shores – Motions to Dismiss and Attempts to Move the Case from Madison County*

29.     The six separate suits Holiday Shores filed in Madison County, Illinois, were brought against six manufacturers of atrazine and atrazine-containing products:  Syngenta Crop Protection, Inc. ("Syngenta"); Drexel Chemical Co. ("Drexel"); Makhteshim-Agan of North America, Inc. ("MANA"); Dow AgroSciences, LLC ("DAS"); United Agri Products, Inc. ("UAP"); and Sipcam Agro USA, Inc. ("Sipcam").  Each lawsuit also named Growmark, Inc. ("Growmark") as the distributor of each manufacturer's atrazine-containing products.

30.     After Holiday Shores filed the initial lawsuits, each of the Defendants removed its case to Federal District Court.  The Defendants removed the cases on the basis that Holiday Shores was seeking to challenge the EPA regulations relating to the Maximum Contaminant Level (MCL) for atrazine, that federal statutes preempted Plaintiffs' claims, that the Defendants were "federal officers" entitled to federal jurisdiction because their actions were in compliance with and at the direction of federal regulations, and that Growmark was fraudulently joined. These themes were to be repeated in various motions to dismiss filed in *Holiday Shores* and *Greenville*, and in the Defendants' affirmative defenses to the litigation. Holiday Shores filed motions in each case seeking remand to state court.

31.     After ordering additional briefing from the parties, the Federal District Court re-manded all six cases.  The court's order remanding the case provided critical legal analysis about the federal statutes and regulations implicated in this complex case.  The court's analysis of those issues, and ultimate rejection of the Defendants' arguments, was persuasive to other courts that heard these issues in subsequent motions.

32.     After remand to Madison County, each Defendant filed at least one motion to dismiss.  In fact, a total of twelve motions to dismiss were filed in the six cases on June 20, 2005.  UAP filed a motion to dismiss for lack of personal jurisdiction.  Growmark filed motions to dismiss in five of the six cases based on the prior pending action in the sixth case.  Growmark joined Syngenta, DAS, Drexel, Sipcam, and MANA in each of their combined motions to dismiss under 735 ILCS 5/2-619.1, and filed their own combined motion to dismiss in the UAP case.

33.     In the combined motions to dismiss, the Defendants pursued numerous bases for dismissal, including all of the theories anticipated before the lawsuit began.   The Defendants

claimed that the complaint violated two different provisions of the United States Constitution, that the U.S. EPA had primary jurisdiction over all claims raised in the lawsuits, that there was no injury-in-fact, that Plaintiff lacked standing, that Plaintiff could not demonstrate causation regarding a fungible contaminate like atrazine by asserting market-share liability, and that there were a variety of technical failures in each count.  In addition to the claims alleged by the other Defendants, DAS claimed that it owed no duty to Plaintiff, that it was not the legal cause of its injuries, and that the statute of limitations barred recovery of certain damages.  DAS also asked the Court to strike all declaratory relief and punitive damages from the Complaint. The Parties filed hundreds of pages of legal briefing on the issues raised in the motions to dismiss.

34.    The trial court denied almost every portion of the combined motions to dismiss. The court allowed Holiday Shores to amend its complaints to address Growmark's claim of a prior pending action.  The Court dismissed one Count that Plaintiff did not contest.  The court struck the declaratory and injunctive relief sought by Holiday Shores and struck without prejudice Plaintiffs' claim for punitive damages.  But the Court accepted Plaintiff's arguments on all other matters.

35.    Holiday Shores later sought to amend the complaints in each case to add five new Plaintiffs and change the proposed class definition.  The Defendants vigorously opposed the amendment of the complaint, but the court granted Plaintiff's motion to amend on November 20, 2009.

36.    On December 4, 2009, Plaintiffs filed motions in each case for joinder of two additional Plaintiffs.  Even though the court had allowed Plaintiffs to add additional Plaintiffs just two weeks before, these motions were anything but routine.  Syngenta and the other Defendants challenged the motion for joinder on the grounds that venue was improper.  Even though the

Plaintiffs' cases met the technical requirements of the venue statutes, the Defendants argued that the statutes should be interpreted using common law venue requirements from the 1800s and early twentieth century instead of reading the plain language of the statutes themselves. The Defendants argued that the claims of the new Plaintiffs were actually nuisance claims to real property located outside of Madison County, and as such, they were local controversies that could only be brought in the counties in which the real property was located.

37.     The Defendants also filed motions to transfer each of the new Plaintiffs' claims to their county of residence based upon the same theory of improper venue.

38.     Plaintiffs sought discovery limited to venue from each Defendant.  Instead of responding to the discovery, the Defendants filed motions for protective orders asking the Court to strike the requests. The parties were able to reach an agreement on this discovery dispute when Growmark, the atrazine distributor sued in each case, stipulated that it was doing business in Madison County as that term is used within the meaning of the venue statute at the time that each of the named Plaintiffs first brought its claims.

39.     To avoid the possibility of an interlocutory appeal that would further delay the case, Plaintiffs voluntary dismissed certain factual allegations to conform the pleading to the facts of the case.  The dismissal of these allegations made it clear that Plaintiffs were seeking money damages only, not the abatement of a nuisance to real property.

40.     After extensive briefing on the issue and oral arguments by all parties, the Court allowed the two new Plaintiffs to join the case.  Later, the Court denied the Defendants' motions to transfer in all six cases.

41.     In the meantime, instead of answering the amended complaint, each of the Defendants filed motions to dismiss in their respective cases on the same grounds as they had pre-

viously argued in 2005.  They also added new arguments.  Defendants' claimed that the Plaintiffs were seeking an impermissible challenge to the MCL, that Plaintiffs did not sufficiently allege that their claims arose from the same transaction or series of transactions, and that Plaintiff had not adequately pled fraudulent concealment for the basis of tolling their statute of limitations. Shortly after the court denied Defendants' motions to transfer, Syngenta filed another motion to dismiss or, in the alternative, to stay the *Holiday Shores* case in favor of the *Greenville* litigation.

42.     The parties briefed all of the pending motions to dismiss or to stay the litigation, and the court held two hearings on the issues raised, including UAP's motion to dismiss for lack of personal jurisdiction.   On August 31, 2010, the court entered orders denying each motion.

### Greenville – Motions to Dismiss

43.     In 2010, seventeen public water systems from six states filed the *Greenville* case against both Syngenta and its Swiss parent Syngenta AG ("SAG").  A few days later, seven additional Plaintiffs joined the action in the first amended complaint.

44.     SAG filed a motion to dismiss for lack of personal jurisdiction soon after it was served with the complaint.  Syngenta filed its own motion to dismiss, asserting numerous bases for dismissal.

### Syngenta's Motion to Dismiss

45.     Syngenta's motion to dismiss claimed that Plaintiffs lacked standing to bring a claim because there was no injury-in-fact and the claim was not ripe for adjudication, as Plaintiffs had not alleged that they had an MCL violation.  Syngenta heavily relied upon the analysis in *Iberville* to support its position.  Additionally, Syngenta argued that the individual claims should fail under each state's law, that several states did not allow recovery for purely economic

loss, and that other states did not permit damages for anticipated future contamination.  Alterna-

tively, Syngenta sought to narrow the damages that could be recovered based on the statute of

limitations.

46.     The court dismissed the one count that Plaintiffs did not contest, but denied all

other portions of the motions to dismiss.  The Court rejected the analysis from *Iberville* and fol-

lowed the case law and argument propounded by Plaintiffs.

### *Obtaining Jurisdiction over Syngenta AG*

47.     On May 5, 2010, SAG filed a motion to dismiss for lack of personal jurisdiction.

Plaintiffs asked the Court to allow limited jurisdictional discovery from SAG and Syngenta.  The

Court granted Plaintiffs' motion and allowed limited discovery on three narrow topics.  Subse-

quently, Plaintiffs served requests for production and interrogatories limited to personal jurisdic-

tion on both SAG and Syngenta and requests for admissions on Syngenta.  Plaintiffs served no-

tices of deposition for the two employees of Syngenta entities who filed affidavits in support of

SAG's motion to dismiss.  Plaintiffs also served notices of depositions on several of Syngenta's

employees and officers.  The Defendants responded by filing a motion for a protective order on

July 16, 2010.

48.     The court granted Syngenta's motion in part and denied it in part.  Plaintiffs' dis-

covery from Syngenta AG was limited to the depositions of John Atkin and Christoph Mäder.

The court did not restrict subpoenas directed to non-party subsidiaries of Syngenta operating in

the United States.  Plaintiffs were allowed broad discovery to obtain documents in the possession

of Syngenta Crop Protection.

49.     Plaintiffs served supplemental requests for production on Syngenta Crop Protec-

tion.  As the parties disagreed with whether Plaintiffs' discovery requests and deposition notices

violated the court's previous ruling, a second discovery conference was held in September 2010. The court clarified its previous order, ordering SAG to make Tobias Meili available for deposition. Mr. Meili was one of the affiants who filed a declaration in support of its motion to dismiss. Discovery with respect to Syngenta Crop Protection was allowed to continue unrestricted.

50.     After the clarification of the court's order, Plaintiffs deposed Syngenta's President; the member of its Board of Directors who filed an affidavit on behalf of SAG; three other members of its Board of Directors (two of whom were employed by Syngenta International AG and were also members of SAG's executive committee); four employees of Syngenta; and the employee of Syngenta International AG who filed an affidavit in support of SAG's motion. These depositions took place in Brussels, Belgium; Chicago, Illinois; and Greensboro, North Carolina.

51.     Plaintiffs also obtained discovery responses from Syngenta Crop Protection in response to their discovery requests related to personal jurisdiction, and reviewed thousands of documents that Syngenta Crop Protection produced in *Holiday Shores* related to the personal jurisdiction issue.

52.     On December 17, 2010, Plaintiffs filed their response memorandum in opposition to SAG's motion to dismiss for lack of personal jurisdiction. Attached to the motion were more than 300 exhibits that Plaintiffs had collected in their investigation of SAG during the limited discovery period. Syngenta filed its reply brief in January 2010.

53.     Ultimately, the court found that SAG exercised an unusually high degree of control over Syngenta through its subsidiaries that had no connection to Syngenta except through SAG. Because of the control asserted by SAG, Syngenta was essentially its alter ego, and the actions of Syngenta in Illinois could be imputed to SAG. Additionally, due process concerns did

not prohibit the court from asserting jurisdiction over SAG.  The court denied SAG's motion to dismiss in full.

***Discovery***

54.    Plaintiffs' counsel spent thousands of hours attempting to obtain discovery from Defendants, and thousands more reviewing the discovery that was finally produced during this litigation.  Ultimately, Defendants produced more than 865,000 documents totaling more than 8 million pages in *Holiday Shores.*  In *Greenville*, Syngenta and its parents produced more than 30,000 additional documents totaling more than 156,000 pages.  Syngenta stipulated that the documents produced in *Holiday Shores* were deemed produced in *Greenville*, and *vice versa*.

55.    Plaintiffs also sought third-party discovery, ultimately obtaining more than 500,000 documents totaling more than 1.39 million pages.  Following months of litigation over the scope of Plaintiffs' subpoena to a third party collector and vendor of pesticide sales data, Plaintiffs also obtained access to an online database containing information about atrazine sales and distribution.  After several hearings in state and federal court, Plaintiffs were granted access to Syngenta's omnibus atrazine water testing database that contained more than 20 years of atrazine testing data from community water systems throughout the United States.

56.    This discovery was obtained despite protracted discovery disputes that often required court intervention.  The Defendants offered several novel theories as to why they should not comply with Plaintiffs' discovery requests, and the delay in obtaining some discovery lasted years and required multiple hearings.

57.    I have outlined some of the more time-intensive discovery battles below.  A more complete picture of the discovery issues during this litigation can be found in the timeline attached hereto and incorporated herein as Exhibit A.

58.     Holiday Shores served its initial requests for production and interrogatories on the manufacturer defendants on May 20, 2009.  Instead of responding to Plaintiffs' discovery requests, each of the manufacturer defendants filed a motion for a protective order on June 18, 2009.  They served additional objections on Plaintiffs on June 22, 2009.  Holiday Shores filed its first motion to compel on August 3, 2009.

59.     The Defendants' objections were condensed to general topics that were extensively briefed and argued before the Court.  These subjects include:

- Bifurcation of discovery
- Discovery concerning health effects of atrazine at levels above the MCL
- Discovery concerning triazines and degradants of atrazine other than those specifically listed in the complaint
- Discovery concerning testing, sale, and distribution of atrazine outside of Illinois (including testing documents located in Switzerland and other foreign countries)
- Discovery concerning lobbying activities of the Defendants and their involvement in trade organizations (First Amendment rights of Defendants)
- Discovery concerning market share information research conducted by Defendant (Market Share)
- Discovery located at Defendants' affiliates but in Defendants possession or under their control (Documents in Switzerland and on computer systems to which the Defendants had access).

60.     The court entered orders addressing these issues on October 26, 2009, November 24, 2009, and January 26, 2010.  The court limited Plaintiffs' discovery related to sale, distribution, and market share of atrazine to the State of Illinois, and limited discovery of triazines to atrazine and 10 specifically named degrates.  Otherwise, the court denied the Defendant's motions for protective orders.  Additionally, in response to Plaintiffs' concerns about documents located in Switzerland and other foreign countries, the court advised the Defendants that they

were expected to disclose documents that they had the ability to obtain, regardless of whether they had physical possession.

61.     Unfortunately, this did not end the discovery disputes as to most of these issues. Instead, these issues continued to be raised by Defendants throughout the litigation, and were the subject of additional hearings, motions to compel, and motions for sanctions.   Several of the more unique issues are highlighted in this affidavit, but for a complete recitation of the discovery issues in this case, see the timeline attached hereto and incorporated herein as Exhibit A.

62.     These orders did little to relieve the problems caused by the slow pace of discovery.  The court held several hearings concerning the ongoing discovery disputes.  Syngenta filed an affidavit with the court outlining its attempts to collect and review documents for production, and presented its plan to produce documents in "rolling" productions.  Syngenta informed the court that it had gathered more than 7 million pages of documents from specific Syngenta employees described as custodians.  Syngenta claimed that these custodians had provided the documents that Syngenta believed were responsive to Plaintiffs' requests, and that Syngenta was producing these documents as quickly as it was able to do so.

63.     In the beginning, these "rolling" productions from Syngenta and the other Defendants coincided with upcoming discovery dispute hearings.  Later, Syngenta's "rolling" productions became more regular, with approximately 300,000 pages of documents being produced each month.

***Syngenta and Third Parties Constitutional Challenge to Discovery***

64.     In the summer of 2010, Plaintiffs served subpoenas *duces tecum* on third parties that had knowledge of facts relevant to the litigation.  These third parties included universities and college professors who had conducted studies on behalf of Syngenta, trade organizations that

had publically disseminated factual statements concerning atrazine, and a think tank that had published articles about the economic impact of the *Holiday Shores* lawsuit on Illinois.  Plaintiffs sought documents related to studies, published articles, and research conducted by these third parties, as well as documents related to payments to these third parties from Syngenta.

65.     Syngenta and several third parties filed motions to quash the subpoenas on the basis that the subpoenas violated Syngenta's and the organizations' First Amendment rights of freedom of association.

66.     The First Amendment claims of Syngenta and the other third parties were briefed extensively by the parties and argued at length during two hearings.  Syngenta and five of the third parties filed supplemental briefs with attached affidavits detailing what they claimed would be the consequence of Plaintiffs obtaining the requested documents.  Plaintiffs' attempts to depose the affiants were met with multiple motions to quash and further argument before the court.  Plaintiffs asked the court to require the third parties to produce privilege logs describing the documents that they were withholding on the basis of an associational privilege.  The court took the objections and motions under advisement.

67.     On September 22, 2010, the court entered an order quashing the original subpoenas to the extent that they sought documents unrelated to Syngenta or atrazine.  The court ordered the third parties to produce documents that answered the narrowed requests but did not require the third parties to produce privilege logs.

68.     Rather than abide by the court's order, Syngenta and The Heartland Institute ("Heartland") asked the court to certify certain questions for interlocutory appeal under Illinois Supreme Court Rule 308.  The court granted their motions and certified questions of law related to the First Amendment associational privilege.  The court also stayed discovery of the docu-

ments on which Syngenta and the third parties claimed a First Amendment privilege in their motions to quash. Plaintiffs asked the court to certify questions concerning the necessity of a privilege log for claims of privilege under the First Amendment.  The court certified these questions as well.

69.     Syngenta, Heartland, and the Plaintiffs filed their petitions for leave to appeal. After briefing by both sides, the petitions for leave to appeal were denied by the Appellate Court of Illinois in January 2011.

70.     Heartland and Syngenta were not deterred and continued to advance their petitions for leave to appeal in the Illinois Supreme Court.  Plaintiffs filed responsive briefs.  The Institute for Justice sought to file an *amicus curiae* brief in support of Heartland's petition for leave to appeal. After Plaintiffs filed an objection to the *amicus* brief, the Illinois Supreme Court denied the Institute for Justice's petition. The Illinois Supreme Court denied the petitions for leave to appeal on September 28, 2011.

71.     After the Illinois Supreme Court refused to hear the issue, Heartland continued to fight the production of documents.  In November 2011, it filed a motion to reconsider the court's ruling of September 22, 2010, citing to the authority that it had submitted to the Illinois Supreme Court.  The issue was briefed as recently as March 2012.

72.     Plaintiffs' attempts to subpoena records from third parties in other jurisdictions resulted in similar discovery challenges by Syngenta and several third parties, requiring Plaintiffs to fight First Amendment claims in multiple jurisdictions.  Some courts, like Cole County, Missouri, denied the First Amendment objections *in toto*, while others, like the Federal District Court in the Northern District of Illinois, quashed the subpoenas of third parties who asserted a First Amendment privilege.  Some of the motions to quash were withdrawn after the Illinois Su-

preme Court denied Syngenta's motion for leave to appeal. At the time the settlement was reached, there was a motion to quash based on First Amendment claims filed by three third parties pending in Kansas.

### Dr. Don Coursey

73.     Also in the summer of 2010, Plaintiffs served a subpoena on Dr. Don Coursey seeking information concerning articles he had authored and studies that he had conducted related to atrazine, as well as his connection to Syngenta. Syngenta filed a motion to quash the subpoena of Dr. Don Coursey on the basis that he was a consulting expert as defined by Illinois Supreme Court Rule 201 and thus the subpoena asked for information protected from disclosure. This exhaustive outline of this particular discovery dispute is included to illustrate the ongoing difficulty of obtaining third party discovery in this litigation from virtually all subjects.

74.     On July 19, 2010, the court held a hearing on Syngenta's motion to quash. During the hearing, counsel for Syngenta stated that Dr. Coursey was hired by Syngenta as a litigation consultant in June of 2006. Similar statements were made to the court by Dr. Coursey's attorney. No evidence was submitted to the court in support of these statements. But as these statements were made by litigation counsel for Syngenta, Plaintiffs did not challenge his status as litigation consultant in general. Instead, it asked the court to order Dr. Coursey to produce the documents responsive to the subpoena that were outside of that role, including documents related to the study concerning atrazine that he presented at the National Press Club days before the hearing.

75.     Based on the attorneys' unsworn statements, the court ruled that Don Coursey was a consulting expert under Illinois law and that his date of retention was June 2006. The court ordered Dr. Coursey to produce all documents responsive to the subpoena that predated his

date of retention, and all documents after his date of retention that were not solely related to work as a consultant for Syngenta. After the court issued its ruling concerning Dr. Coursey, Plaintiffs' counsel worked with Dr. Coursey and his employer, the University of Chicago, to obtain the documents that were ordered to be produced.  In a routine phone call as the agreed date for production neared, Plaintiffs learned that the University of Chicago, on behalf of Dr. Coursey, planned to withhold some documents that predated June 2006 on the basis of his consultant status.  Soon after Plaintiffs' conversation with the University of Chicago's attorneys, Dr. Coursey filed a motion seeking to change his date of retention as a consulting expert to February 14, 2006, stating that the review of documents for production showed that initial communications concerning his retention began on that date.  Later, Syngenta's counsel informed me Dr. Coursey was retained as a litigation consultant on January 9, 2009, more than two and a half years after the date given to the Court.

76.    The University of Chicago produced almost 800 documents on behalf of Dr. Coursey.  The documents unequivocally showed that Dr. Coursey was not retained as a litigation consultant in 2006, but instead was retained by Syngenta to write and publish articles concerning the economics of atrazine in general and the perceived effects of the atrazine litigation specifically.   Furthermore, the documents showed that Dr. Coursey was initially contacted through the public relations firm Jayne Thompson & Associates ("JTA"), which acted as a conduit through which Syngenta funneled data and instructions to Dr. Coursey.  JTA and Syngenta also significantly edited his work before it was published.

77.    Additionally, this production contained documents from GfK Kynetec/Doanes, an agricultural products marketing research company.  Syngenta provided these Doanes documents to Dr. Coursey for his published and unpublished research.  These documents contained market

share analysis for the state of Illinois – information that Syngenta previously denied having – along with extensive sales and distribution data that had not previously been disclosed to Plaintiffs.

78.     As a result of the information discovered in the documents, Plaintiffs filed a motion for sanctions concerning the misleading and false statements made by counsel for Syngenta and Dr. Coursey concerning the retention date.  Plaintiffs filed an additional motion for sanctions concerning the market share, sales, and distribution data that Syngenta failed to disclose after being ordered to do so.

79.     In its response to Plaintiffs' motions, Syngenta filed the original contract between Syngenta and JTA to support its contention that it had hired JTA to provide legal services for the litigation, thus making JTA's contact with Dr. Coursey part of his work as a consultant for the case.  The contract stated that JTA was hired to perform litigation support services as outlined in JTA's proposal to Syngenta dated October 3, 2005.  The term "litigation support" was not defined, and Syngenta did not attach the October 2005 proposal.

80.     When Plaintiffs requested a copy of the proposal, Syngenta claimed it was privileged and filed it with the court for *in camera* review. The court released the proposal soon thereafter, ruling it was not a privileged document.  Furthermore, the "litigation support" was not for legal services in the least.  Instead, the "litigation services" in the proposal consisted of learning about the case, building a list of targeted reporter and writers in Illinois and nationally, preparing press releases, and otherwise presenting Syngenta's side of the litigation in as many publications as possible, specifically those in Illinois.  The court referred to the proposal as the outline of an "aggressive public relations strategy to build upon or create a hostile attitude toward

the Madison County judicial system."[2]   Plaintiffs sought additional discovery and evidence concerning Dr. Coursey's retention date and his non-litigation related work on behalf of Syngenta.  Plaintiffs deposed Chris Robling of JTA and Dr. Coursey.  Plaintiffs obtained additional discovery from Syngenta through requests for production of documents and the deposition of Sherry Ford, Syngenta's head of public relations, who signed the only executed contract ever produced between Syngenta and Dr. Coursey.  Plaintiffs also subpoenaed records from JTA, the University of Chicago, and the attorneys for Dr. Coursey and the University of Chicago.  In all, third parties produced more than 1500 documents totaling 10,000 pages concerning Dr. Coursey's retention and work for Syngenta.  JTA, after numerous subpoenas, motions, and orders from two different courts, produced an additional 446,000 documents totaling more than 1.18 million pages in response to Plaintiffs' subpoena in the *Greenville* case.

81.     Plaintiffs were able to reach a resolution on the motion for sanctions related to the market share documents.  Syngenta, GfK Kynetec, and Plaintiffs entered into an agreement through which Plaintiffs obtained access to the GfK Kynetec database, which contained atrazine sales, distribution, and use information, through Syngenta.  Plaintiffs took the deposition of the GfK Kynetec employee who had knowledge of the information contained within the database, and worked with a Syngenta employee, who ran specifically-requested queries and obtained information from the database for production to Plaintiffs.

### Privilege Logs and Collection from Custodians

82.     Syngenta produced more than 3 million pages of documents before producing a privilege log in *Holiday Shores*.

83.     Syngenta's privilege log identified more than a hundred people that it claimed were members of its control group – employees whose advice and opinions were in fact the basis

---

[2] *Holiday Shores San. Dist., v. Syngenta Crop Protection, Inc.,* ., 04-L-710, at *5 (Ill. Cir. Ct  Apr. 20, 2011).

of final decisions of those with actual authority.  Yet more than 50 of these "employees" worked for corporations other than Syngenta Crop Protection, Inc. for all or part of the time during which Syngenta claimed that they were members of the control group.  Several had never worked for Syngenta Crop Protection, Inc.

84.     The control group list raised serious issues outside of the context of the privilege log.  Syngenta had previously informed Plaintiffs that it did not conduct company-wide searches for documents to respond to Plaintiffs' discovery requests.  Instead, it collected documents and ESI from custodians that it believed may have documents responsive to Plaintiffs' discovery requests.  Significantly more than half of the people listed in Syngenta's control group list were not custodians from whom documents and ESI were collected.

85.     Additionally, after months of reporting to Plaintiffs and the court that Syngenta was working to gather documents from Switzerland, Syngenta's counsel informed Plaintiffs that Syngenta could not access data from its foreign parents and affiliates because of Swiss law prohibitions.  But in the control group list, Syngenta identified dozens of employees of these foreign corporations as employees whose opinions and advice were the basis of final decisions made by Syngenta.  Syngenta had not collected documents from any of its foreign control group members, and it had not collected documents from any of its former employees who worked for a foreign Syngenta affiliate at the time the documents were collected.

86.     After months of trying to resolve this discovery dispute and hundreds of hours analyzing Syngenta's privilege logs, discovery affidavits, and documents produced, Plaintiffs filed a motion to compel and a motion for sanctions for Syngenta's failure to collect the documents within its control from foreign Syngenta corporations and on its global intranet system.

87.     Plaintiffs also deposed a Syngenta IT employee who was involved in collecting documents for production in the *Holiday Shores* and *Greenville* cases.

88.     Plaintiffs' counsels many hours of work brought results.  In March 2011, the court ordered Syngenta to amend its answers to several interrogatories and supplement all of its discovery responses.  In June 2011, Syngenta filed two new privilege logs and two affidavits of Syngenta's Head of Regulatory Affairs that redefined the control group and explained the FIFRA compensation process.  Syngenta also conducted an extensive supplemental document collection in August 2011, including as custodians several Syngenta Crop Protection employees from whom few, if any, documents had previously been collected.  While several discovery issues remained pending in *Holiday Shores* when the case settled, Plaintiffs obtained tens of thousands of documents that they would not have received but for the tenacious work of its attorneys resulting in favorable rulings from the court.

### Discovery in Greenville

89.     Plaintiffs served their discovery requests on Syngenta in on November 1, 2010. In April 2011, having still not produced answers to discovery, Syngenta's counsel informed Plaintiffs it would be relying exclusively on documents collected for *Holiday Shores* to respond to the *Greenville* discovery requests and it had not made a supplemental document collection since February 2010.[3]

90.     In May 2011, Syngenta served its responses to Plaintiffs' interrogatories and requests for production of documents.  It also served its initial disclosures.  These responses raised more issues about Syngenta's previous collection of documents.  In their interrogatories, Plaintiffs asked Syngenta to identify people with knowledge of relevant facts and identify the person or persons with the most knowledge of certain issues related to the litigation.  Syngenta identi-

---

[3] *See* Affidavit of Christie Deaton (ECF No. 174-1).

fied more than 45 people in response to these interrogatories, and acknowledged that these people had or may still have documents relevant to the litigation.  But it had not collected any documents from half of the people that it identified.  Additionally, it had not collected any documents or data from several of its databases, including a comprehensive water monitoring database containing atrazine testing results from community water systems throughout the United States.

91.     After hours of attempting to work out the discovery dispute and following Plaintiffs representations to the court during a hearing on Plaintiffs' motion to amend the scheduling order, Syngenta agreed to conduct a comprehensive document collection, which took place in August and September 2011.  It did not, however, amend its discovery responses, and it refused to grant Plaintiffs access to its monitoring database.  Plaintiffs asked the court for a hearing on discovery that took place in November 2011.

92.     The court ordered Syngenta to grant Plaintiffs' counsel access to its water monitoring database, which became an invaluable asset to Plaintiffs' case.   The court also ordered Syngenta to consult with a specific witness and amend its response to a request concerning certain health effect studies.  The parties were able to come to an agreement as to several additional long-outstanding issues.  These agreements required Syngenta to produce a number of additional documents, responses, and privilege logs in January 2012.   The court also amended the scheduling order to allow Plaintiffs additional time to obtain discovery from Syngenta.

### Depositions and Subpoenas

93.     Plaintiffs deposed twelve witnesses in *Greenville* and seven in *Holiday Shores*.  Three of the depositions in *Holiday Shores* lasted several days, and would have continued if the case had not settled.  All of the depositions concerned complex scientific and/or technical issues

that ultimately required thousands of hours of preparation time by the attorneys in this case.  For each Syngenta employee noticed for deposition, Plaintiffs served a deposition rider requesting relevant documents copied to, sent by, or in the possession of that employee.  Syngenta often designated thousands of documents as responsive these deposition riders.  For instance, Syngenta designated more than 44,000 documents totaling more than 860,000 pages as responsive to the deposition rider for Charles Breckenridge's deposition.  It designated more than 71,000 documents totaling more than 668,000 pages as responsive to the deposition rider for Janis McFarland.  Teams of attorneys and staff were assigned to different witnesses to coordinate scientific literature reviews, expert opinions and witness specific document reviews while creating comprehensive witness outlines. These outlines and supporting exhibits took months to create and contemplated virtually every conceivable witness response.

94.     In all, Syngenta designated more than 345,000 documents totaling more than 3.7 million pages as responsive to one or more of the deposition riders of the depositions that were taken or were scheduled to take place at the time of settlement. Additionally, Plaintiffs served subpoenas on universities, scientists, and researchers from the State of Washington to Washington, D.C., and several points in between.  In all, more than twenty-five subpoenas were served seeking information concerning studies, surveys, or other research conducted by third parties and Syngenta's involvement with that research.  Plaintiffs also served a subpoena on the Illinois Environmental Protection Agency seeking documents related to certain community water systems in Illinois. Plaintiffs were forced to seek documents from third party atrazine applicators as well. Atrazine is a restricted use herbicide and state laws require applicators of atrazine to keep records concerning its application.  These documents were an important element in determining the type of atrazine-related products used in a particular watershed and the specific farm land on

which those products were applied.  Unfortunately, these records are required to be individually maintained by the applicator, not reported to a state agency.  This required Plaintiffs to serve more than 100 subpoenas on atrazine dealers or commercial applicators seeking the information that they were required to maintain under state law. From this massive array of records, a comprehensive database was being created by coordinating these records with subpoenaed sales data and other Syngenta records to establish a sufficient causal link between manufacture, distribution and raw water contamination.

### Discovery from Plaintiffs

95.     There were thirty-two named Plaintiffs that were subject to discovery in this case. These Plaintiffs owned and operated more than fifty community water systems in six states and served populations from a few hundred people to more than a million, and the number of responsive documents that they possessed ranged from a few hundred to tens of thousands.  The Plaintiffs ranged from small villages in extremely rural areas to large corporations located in metropolitan areas.

96.     From these named Plaintiffs, Plaintiffs' counsel reviewed and produced more than 640,000 documents totaling more than 3.8 million pages.  Additional documents were being reviewed and prepared for production until the day the settlement was reached.

97.     Many of the Plaintiffs were public entities, and some had local laws or policies that prohibited the removal of their documents' from public buildings, even for scanning purposes.  Plaintiffs' counsel were required to coordinate onsite scanning for several of the Plaintiffs to comply with such policies.  For the other Plaintiffs that were public entities, Plaintiffs' counsel coordinated expedited scanning procedures to make sure that the public entities were able to comply with requests under their state's sunshine laws.

98.     In *Holiday Shores*, several of the Defendants initially coordinated the timing of discovery.  In June 2009, four of the Defendants served interrogatories, requests for production, and requests for admission on Holiday Shores on the same day.

99.     Syngenta made different discovery requests to the Plaintiffs in *Holiday Shores* than it did to the Plaintiffs in *Greenville*.  But it served discovery requests on five *Holiday Shores* Plaintiffs on the same day as it served discovery requests on all twenty-four *Greenville* Plaintiffs. Plaintiffs' counsel had to coordinate the response to interrogatories, requests for production, and requests for admission for all twenty-nine Plaintiffs, amounting to 447 different interrogatory responses, 193 different responses to requests for admission (2370 counting subparts), and 1876 separate requests for production of documents – all pending at the same time.

100.     In *Greenville,* Syngenta took the corporate designee depositions of sixteen of the Plaintiffs.  Each of these Plaintiffs designated one or two witnesses for each deposition.  Plaintiffs' counsel met with the twenty-two representatives chosen, preparing them for deposition and representing them during their depositions.

### Expert Witnesses

101.     Because of the numerous complex issues involved in establishing each element of proof in these cases, numerous experts were required.  Scientists, physicians, engineers, economists, professors and experts from yet other disciplines were retained from over twenty-five major universities in the United States and Europe.  Consulting experts were essential to assist Plaintiffs' counsel in fact investigation and in formulating effective discovery requests.  Teams of lawyers and staff were assigned particular expert subject matters to improve efficiency and enhance command of relevant facts and evidence.  This process commenced in 2008 and was ongoing until settlement terms were reached in 2012.

102.    While obtaining the correct expert is essential in virtually all complex litigation, it was far more important here.  Syngenta had virtually unlimited funds to defend the litigation and had spent many years hiring experts and cultivating expert opinions and disclosures in response to United States and other regulatory bodies throughout the world.  Thus, I decided that the litigation required world-class experts with impeccable credentials and largely irrefutable opinions and analyses.  Retaining such experts was a full time exercise for three lawyers for more than one year.  Coordinating with the experts regarding scientific studies and other evidence referenced in the reports took nearly nine months for a team of three full-time lawyers.  At the time of settlement, virtually all of the expert reports were completed.

***Korein Tillery's Staffing of this Litigation***

103.    I spearheaded this litigation from before its filing through its settlement.  All told, I dedicated more than 5,500 hours to this litigation over the eight plus years the litigation has been pending.

104.    I am familiar with the qualifications of each of the attorneys working at Korein Tillery and as part of my responsibility as counsel for the Plaintiffs in this matter I supervised each of the attorneys' work on this matter.

105.    At the very beginning of this litigation, I realized that the complexity of the issues required a division of labor among the attorneys and staff and constant sharing of information gained through formal discovery and informal investigation.  Accordingly, I assigned attorneys and staff to separate legal and factual areas to avoid duplicity of effort and to maximize our efficiency.  Attorneys and staff were assigned to the numerous substantive and procedural issues which constantly arose.  Staff meetings were conducted on an ongoing basis to promote the sharing of information and to economize efforts.

106.     The following paragraphs summarize each Korein Tillery attorney's background and role in this case.

107.     Steven A. Katz graduated from Washington University School of Law in 1989 and has practiced in the area of complex litigation and torts since that time.  He joined Korein Tillery's predecessor firm in 1995 and became a partner in the firm in 1999. He is familiar with class action issues and law in state and federal courts, and is particularly well-versed in multi-state class action litigation problems. Mr. Katz has served as Adjunct Professor of Legal Studies: Webster University, 1993-1997; National Institute for Paralegal Studies, 1992-1993.  Mr. Katz is the author of 12 Missouri Practice, Jurisdiction, Venue, Limitations (2d ed. West 1994) and 16 Missouri Practice, Civil Rules Practice (2d ed. West 1998). Mr. Katz is currently involved in numerous class action cases involving such issues as ERISA, consumer fraud, antitrust, and breach of contract.  In this litigation, Mr. Katz was involved in analyzing various legal questions which arose during the litigation, in developing a comprehensive strategy for the case and in ne-gotiating the proposed settlement. Mr. Katz dedicated more than 51 hours to this litigation.

108.     Douglas R. Sprong received his law degree from Wake Forest University in 1989. Mr. Sprong began his career as an attorney with Armstrong Teasdale, LLP where he practiced until joining Korein Tillery's predecessor firm in 1997 and rose to partner in 2001. Mr. Sprong concentrates his work in various class actions, primarily in ERISA claims filed in federal courts throughout the United States including *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710 (7th Cir. 2007); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Bene-fits Cas. 2488 (S.D. Ill. 2005); *Berger v. Xerox Retirement Income Guar. Plan*, 231 F.Supp.2d 804 (S.D.Ill. Sep. 30, 2002), aff'd 338 F.3d 755 (7th Cir. Aug. 1, 2003); and *Esden v. Bk. of Bos-ton*, 229 F.3d 154 (2nd Cir. 2000).  Mr. Sprong's work in these cases drew from his own experi-

ences in environmental litigation and involved developing a strategic plan for coordinating the state and federal actions. He reviewed and edited pleadings and consulted regarding important decisions throughout the litigation. Mr. Sprong dedicated more than 10 hours to this litigation.

109.    Christine Moody attended St. Louis University School of Law where she was an associate editor of the Law Journal.  Upon graduation from law school in 1992, she began her career with the law firm of Korein Tillery and became a member of the firm in 2003. She is licensed to practice law in Missouri and Illinois, and is a member of the American Association for Justice, the Illinois Trial Lawyers Association, the Missouri Association of Trial Attorneys, the Bar Association of Metropolitan St. Louis, and Public Justice.  She is involved in a litigation practice, specializing in various areas of complex litigation, including class actions brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act.  Throughout her legal career, Christine Moody has been involved in all aspects of a lawsuit. She has extensively researched legal issues in preparation of filing complex and novel lawsuits. She has worked with expert witnesses in various fields, including economics, finance, environmental hazards, telecommunications, behavioral science, ergonomics, industrial engineering, electrical engineering, hydraulics, neurology, psychology and orthopedic surgery.  She has deposed hundreds of witnesses, including parties to lawsuits, fact witnesses, medical witnesses and expert witnesses, and has presented and defended motions in many courts in Illinois and Missouri.  She has been involved in numerous trials ranging from claims pursuant to the Federal Employers' Liability Act to product liability claims, and has tried or co-tried several cases to verdict. Christine Moody's work in this case involved drafting and editing pleadings, document review and analysis, assisting in developing the strategy of the case, and assisting in third party discovery. She also coordinated with clients in the Holiday Shores Sanitary District action early in that litigation and at-

tended Holiday Shores Sanitary District board meetings. Ms. Moody dedicated more than 740 hours to this case.

110.    Steven Swedlow was formerly a partner with Korein Tillery. Mr. Swedlow has sixteen years of trial and appellate experience representing clients ranging from public corporations to plaintiff classes in complex, sophisticated, and multiparty litigation. His practice in recent years has focused on complex plaintiff contingency trials on behalf of both consumer classes and businesses in the areas of intellectual property, antitrust, pharmaceutical products, health care, and new technology/privacy issues.

111.    Mr. Swedlow has served as lead counsel in jury trials and arbitrations, spearheaded large, multiple firm litigation efforts, and argued important appeals, including several before state Supreme Courts.  He practices primarily in the areas of intellectual property, class action, and complex commercial litigation. In this matter, Mr. Swedlow dedicated more than 245 hours in the retention of expert witnesses and assisting in developing case strategy.

112.    George Zelcs is a partner at Korein Tillery where he focuses his practice in the areas of complex commercial litigation including consumer fraud, qui tam/whistleblower, securities, pharmaceutical and antitrust litigation in state and federal courts. Prior to joining Korein Tillery, Mr. Zelcs was a partner at Clausen Miller in Chicago, Illinois. Mr. Zelcs completed his undergraduate degree at Indiana University (B.A. Political Science, Urban Planning, and Sociology) in 1976.  He received his law degree at Chicago-Kent College of Law in 1979, and was admitted to practice law in Illinois in 1979 and the District of Columbia in 2010.  He is admitted to practice before the United States Courts of Appeals for the Second Circuit (2012), Fifth Circuit (1999), Seventh Circuit (1980), Eighth Circuit (1996), Tenth Circuit (1982), and Eleventh Circuit (1993), the United States Tax Court (1984), the Supreme Court of the United States (2005) and

the United States District Courts for the Northern and Southern District of Illinois. Mr. Zelcs is a member of the American Bar Association, the American Trial Lawyers Association, and the Illinois Trial Lawyers Association. Throughout his years of practice, he has concentrated on complex commercial litigation. Mr. Zelcs was first selected as a Leading Illinois Attorney in 1993 and also as an Illinois Super Lawyer. He was selected as a Finalist in 2003 for the Trial Lawyers for Public Justice Trial Lawyer of the Year Award for his work on the *Price v. Philip Morris USA* case. He serves on the Leadership Circle of the Prescription Access Litigation Project. PAL is a coalition of over 125 non-profit organizations in 35 states including labor, senior citizens, health advocacy and women's health groups that engages in litigation regarding fair pricing for prescription drugs. He also serves on the Chicago-Kent Board of Overseers and as a Trustee of the Chicago-Kent Institute on the Supreme Court of the United States.

113.     Mr. Zelcs has conducted numerous jury trials in state and federal courts throughout the United States and has participated in arbitration proceedings in foreign venues. He has obtained numerous settlements or judgments ranging from fifteen million to in excess of ten billion dollars for his clients in various state and federal jurisdictions throughout the United States.

114.     Mr. Zelcs has frequently served as lead counsel with responsibility for the coordination of the litigation activities of lawyers from multiple law firms representing common interests in numerous complex multi-party litigations including, most recently, *In re Motor Fuel Temperature Sales Litigation*.  In this case Mr. Zelcs focused his attention on regulatory issues, on the retention of testifying experts and in interviewing fact witnesses. He spent more than 580 hours on these cases.

115.     Aaron Zigler is a partner at Korein Tillery where he represents consumers in complex class action litigation and appeals. Mr. Zigler is an accomplished writer and a member

36

of the American Society of Legal Writers. He has also received the recognition of his peers through a Martindale-Hubbell AV® Preeminent™ peer rating and selection as a 2011 Super Lawyers® "Rising Star." Prior to his legal career, Mr. Zigler worked in computer security for a Fortune 500 company headquartered in St. Louis. While in law school, Mr. Zigler continued his interest in computer technology by concentrating his studies in that area. Mr. Zigler began his legal career as a law clerk with Korein Tillery in 2000 as he attended St. Louis University School of Law. He joined the firm as an attorney upon his graduation in 2001 and was elevated to partner on January 1, 2010.

116.    Mr. Zigler has extensive appellate experience and was responsible for writing Plaintiffs' appellate briefs in *Holiday Shores Sanitary Dist. v. Syngenta Crop Prot., Inc.*, No. 111881 (Ill. Sept. 28, 2011); and *Holiday Shores Sanitary Dist. v. Syngenta Crop Prot., Inc.*, No. 05-10-0549 (Ill. App. Jan 13, 2011). In addition, Mr. Zigler's work in this case included offering guidance on the effect of CAFA on the amendments to the pleadings in the state cases, taking the deposition of Syngenta's corporate designee on document collection and storage, assisting in preparing and presenting plaintiffs' corporate representatives for their depositions and drafting the settlement agreement and supporting documents. Mr. Zigler dedicated more than 900 hours to this case.

117.    Christie Deaton is licensed to practice in Missouri and Illinois, as well as the Southern District of Illinois. Ms. Deaton began her legal career as a law clerk with Korein Tillery in the summer of 2000, and joined the firm as an associate upon her graduation in 2001 from the University of Missouri-Columbia School of Law.

118.    Following her admission to practice law, Ms. Deaton was heavily involved in the investigation, filing, and prosecution of *Mercurio v. Alcoa Inc.*, No. 02-L-1647 (Ill. Cir. Ct.

2002), a toxic tort case concerning the lead contamination of a small Illinois town.  Ms. Deaton was significantly involved in all aspects of the lawsuit, from the initial investigation of this action through the mediations and negotiations that led to the settlement of this litigation against all three defendants. Ms. Deaton has also been involved in other environmental cases handled by Korein Tillery, including *Pioneer Southern,v. Dow AgroSciences, LLC* (Ill. Cir. Ct. 2002), *Village of East Alton v. Premcor Refining Group, Inc.,* (IlIll. Cir. Ct. 2001) and *Grahamv. Shell Oil Co.* (Ill. Cir. Ct. 2001)).

119.    Ms. Deaton had significant involvement in the discovery in *Holiday Shores* and *Greenville*, as well in the briefing and argument of motions in the cases. Ms. Deaton coordinated with defense counsel for the production of discovery in the litigation, and was primarily responsible for Plaintiffs' discovery in both *Holiday Shores* and *Greenville.* She was also was the main attorney contact with clients located in Illinois and Missouri. Ms. Deaton attended dozens of meetings with clients, providing status updates and coordinated Plaintiffs' responses to discovery.

120.    Ms. Deaton assisted in the drafting of discovery requests served on defendants. She was extensively involved in attempts to resolve discovery disputes, and spent hundreds of hours reviewing discovery and corresponding with defense counsel concerning discovery compliance.  Accordingly, Ms. Deaton conducted legal research, drafted motions and attended discovery hearings.  Ms. Deaton also assisted in the preparation of subpoenas to third parties and crafted Freedom of Information Act requests to numerous state and federal agencies to obtain publically available data.  Ms. Deaton spent hundreds of hours reviewing documents disclosed by defendants, third parties and governmental agencies.

121.    Ms. Deaton assisted in research, and drafting and editing pleadings in *Holiday Shores* and in drafting and editing the complaints in the *Greenville* case. Ms. Deaton also assisted in the preparation for and legal support during depositions.  In all, Ms. Deaton dedicated more than 6,000 hours to this litigation.

122.    Christopher A. Hoffman is an associate at Korein Tillery.  Mr. Hoffman received a B.A., *cum laude,* from Northern Illinois University in 1983, his M.A. (1987) and Ph.D. (1993) in philosophy from Washington University in St. Louis, and his J.D., *cum laude*, from St. Louis University School of Law in 2000.  He clerked for the Hon. James R. Dowd in the Missouri Court of Appeals from 2000-2002.  He was admitted to practice law in Missouri in 2000 and in Illinois in 2002, and has practiced before numerous state and federal courts across the country in several areas of law, including personal injury, products liability, complex insurance litigation, ERISA, consumer protection and various class actions.  He teaches ethics at the University of Missouri-St. Louis as an adjunct assistant professor.  Mr. Hoffman has been involved in this case since 2010. Mr. Hoffman dedicated more than 840 hours to this litigation principally addressing issues relating to personal jurisdiction over Syngenta AG.

123.    John A. Libra is an associate at Korein Tillery.  Mr. Libra received his J.D. in 2005 from Washington University in St. Louis, and is licensed to practice in the state courts of Illinois and Missouri, as well as the U.S. District Courts for the Northern and Southern Districts of Illinois.  He joined Korein Tillery as an attorney in 2005, after working for the firm as a law clerk in 2004.  Mr. Libra has experience at the trial and appellate level representing plaintiffs in individual and class actions.  He has represented clients in a wide range of state and federal cases, including cases brought under state consumer fraud acts, ERISA, RESPA, and the Railway Labor Act.  Mr. Libra has been involved in the atrazine cases since 2010, and was responsible for

conducting legal research, drafting briefs, and representing the Plaintiffs in their efforts to sub-poena documents from third parties in federal court. In all, Mr. Libra has spent more than 180 hours in the prosecution of these matters.

124.    Max Gibbons graduated from UCLA School of Law in 2003 and joined Korein Tillery shortly thereafter. He has extensive experience representing plaintiffs in a wide range of class actions, including consumer fraud, pharmaceuticals, labor, securities, and environmental contamination. He is currently involved in numerous tobacco class actions. In this litigation, Mr. Gibbons spent more than 35 hours in the briefing and arguing of discovery disputes and conduct-ing research related to deposition preparation.

125.    Matthew C. Davies is an associate at Korein Tillery. Mr. Davies received his J.D. from New York University Law School in 2009 and is licensed to practice in Illinois. He joined Korein Tillery as an attorney in 2009, after working at the firm as a paralegal from 2002 to 2006. Mr. Davies practices in the areas of complex litigation and torts with a special focus on tobacco litigation. In this case, he dedicated more than 81 hours to research various factual matters, re-view production materials, and prepare attorneys for depositions.

126.    Michael E. Klenov is an attorney in Korein Tillery's St. Louis office. He is li-censed to practice law in Illinois, Missouri, New York, California, and the District of Columbia, as well as numerous federal courts around the country. Mr. Klenov concentrates his practice on complex civil litigation in the areas of ERISA/Pension Funds, Securities, Antitrust, Qui Tam/Whistleblower claims, and Commercial Disputes. He has been appointed as lead counsel in several nationwide class actions and has negotiated a number of multi-million dollar class set-tlements. Mr. Klenov routinely and successfully briefs novel, complex legal issues in state and federal courts around the country. His written advocacy has yielded a number of significant vic-

tories, including several published federal decisions. Mr. Klenov received his B.A. in Economics, International Studies, and Business Institutions from Northwestern University. While completing his undergraduate degree, he spent a year studying economics and philosophy at the London School of Economics and Political Science. Subsequently, Mr. Klenov attended the Washington University School of Law where he received a Scholar-in-Law scholarship. He graduated Magna Cum Laude, Order of the Coif, and received a number of academic awards, including the Charles Wendell Carnahan Prize.

127.    Mr. Klenov has dedicated more than 1,900 hours to this litigation. He had the primary drafting responsibility for all pleadings in the *Greenville* litigation, including the complaint, amended complaints, opposition to Syngenta's motions to dismiss, opposition to Syngenta AG's motion to dismiss for lack of personal jurisdiction, opposition to Syngenta's motion to dismiss the declaratory judgment counts in the second amended complaint, and opposition to Syngenta's motions for summary judgment. He was intimately involved in the jurisdictional discovery against Syngenta and Syngenta AG, including the preparation and taking of jurisdictional depositions. He was also involved developing class certification strategy, the development of expert testimony, and preparing certain clients for depositions. In the *Holiday Shores* case, Mr. Klenov had drafting responsibility for a number of the briefs, helped prepare several of the oral arguments, and also prepared for and participated in several depositions.

128.    Joseph "Jay" Perez attended Seton Hall University, School of Law. During his tenure, he served as a member of the Interscholastic Moot Court Board and completed a semester long internship with the Internal Revenue Service, Chief Counsel's Office.  Mr. Perez also completed a study abroad in Italy co-sponsored by the University of Parma focusing on International Competition and European Union Law. Upon graduating, Mr. Perez served as Law Clerk for the

Hon. James S. Rothschild, J.S.C., Superior Court of New Jersey, Civil Division and subsequently joined a busy litigation practice in 2003 representing both national and multinational clients in New York and New Jersey.

129.    Mr. Perez joined Korein Tillery in 2009. Mr. Perez has been the primary attorney responsible for identifying and evaluating the importance of third parties with regard to their potential evidentiary contributions to the litigation.  He assisted in the effort to subpoena and depose these potential third parties which resulted in a significant disclosure of information vitally important to the development of the case. Mr. Perez was also responsible for coordinating with third parties for production of discovery, and addressing all associated motion practice.  In that role, he conducted legal research, drafted motions and briefs, and prepared for argument.  Mr. Perez was also part of the defendant and third party deposition preparation and strategy team. He reviewed and identified relevant discovery and assisted in the preparation of deposition outlines. In all, Mr. Perez dedicated more than 2,675 hours to this litigation.

130.    Rosemarie Fiorillo is an attorney at Korein Tillery. She graduated from Seton Hall University School of Law in 2002 and has practiced in the areas of environmental law and products liability law since that time. She has a B.S. in Environmental Sciences with a concentration in Chemistry from Rutgers University. While at Rutgers, Ms. Fiorillo was selected to perform laboratory research in the Environmental Sciences Department through a grant from the U.S. Department of Energy, on the effects of herbicides and estrogen on fresh water mussels. One of the herbicides Ms. Fiorillo studied was atrazine. Her research culminated in the publication of Herbicide and Estrogen Effects on the Metabolic Activity of Elliptio complanata Measured by Calorespirometry. Because of her background, she was recruited to Korein Tillery in February 2010 to spearhead and coordinate discovery in the litigation. Since that time, she has

spent more than 5,100 hours to review and analyze the defendants' health effect studies, defend-ants' document productions, and provide deposition strategy, select, correspond and coordinated with experts, draft, in whole or in part, every science-based deposition outline for Plaintiffs' case in chief, and participate in settlement negotiations.

131.    John Craig is an attorney with Korein Tillery. He attended the University of Illi-nois, where after a brief foray into engineering, he earned a B.S. in accounting. Before he joined Korein Tillery, Mr. Craig practiced law for 15 years, primarily in St. Clair, Madison and other Southwestern and Southern Illinois counties. He spent about of half of these years defending civ-il cases and litigating insurance coverage disputes, and the other half in general practice. In the process, he handled hundreds of lawsuits at all stages of litigation, from pre-suit investigation through initial pleadings, motion practice, discovery (including hundreds of depositions), settle-ment negotiations, trial and appeal. He handled cases involving bankruptcy, breach of contract, commercial and residential leases, construction site injuries, consumer fraud, construction and design defects, estate and probate disputes, F.E.L.A., mechanics lien and construction bond claims, mortgage foreclosure, motor vehicle, premises and products liability, railroad grade-crossing accidents, real-estate professional liability, real-estate transaction and title disputes, un-insured and underinsured motorist coverage, and motor vehicle, homeowners and commercial general liability insurance coverage. He served on and chaired arbitration panels as an arbitrator for St. Clair County's mandatory arbitration program.

132.    John Craig has been involved in, and has been the primary responsible attorney for, several key aspects of the *Greenville* litigation. In addition to legal research and drafting of key motions and discovery requests, he also has been responsible for every aspect of the fate and transport issues in the litigation. This involved an extensive review and analysis of thousands of

technical reports and databases, and the coordination of that information with our modeling experts.  He also participated in jurisdictional arguments before the court. As a result, John has dedicated more than 4,000 hours to this litigation.

133.    Nicole Graham graduated from Washington University School of Law in 2004 and has practiced in the areas of commercial and complex litigation since that time.  She joined Korein Tillery in 2011 as an attorney.  Ms. Graham is licensed to practice law in Missouri and Kansas and has represented plaintiffs and defendants in a wide range of cases in both state and federal courts.  Ms. Graham is experienced in all pre-trial aspects of the case, including legal research and analysis, drafting pleadings, fact development, taking and defending depositions, and drafting discovery and dispositive motions.  Her work in this case involved more than 1,000 hours of  document review, fact development, legal research and analysis, development of deposition strategy and drafting deposition outlines.

134.    Courtney Buxner was an attorney with Korein Tillery from 2003 to December 2004. She received her bachelor's degree from Mississippi State University, and attended law school at Mississippi College School of Law. Prior to working with Korein Tillery, Ms. Buxner was employed at the law firm of Frazer Davidson in Jackson, Mississippi where she prosecuted civil mass tort actions.  While at Korein Tillery, Ms. Buxner concentrated her practice on environmental and defective drug matters.

135.    Ms. Buxner dedicated more than 270 hours to this litigation. Ms. Buxner was the attorney primarily responsible for the day-to-day prosecution of *Holiday Shores* from its initial investigation though December 2004.  She assisted in researching Plaintiffs' legal theories, drafting the initial and first amended *Holiday Shores* complaint and the Motion and associated briefing seeking remand to state court.

136.    Jerry L. Brown has been an investigator at Korein Tillery for 23 years.  He received his M.S. in Criminological Research from Southern Illinois University – Carbondale in 1983.  He was an investigator and the Director of the Crime Victim's Assistance Program at the Madison County State's Attorney's Office between the years 1984 – 1989.  He has been involved in the investigation and research of a wide variety of personal injury, products liability, consumer protection and various class action and environmental cases. Mr. Brown has spent more than 3,400 hours in the present cases since 2003. He conducted research and investigated the circumstances that contributed to the filing of the initial complaints as well as each amended complaint.  In addition, he has been actively involved in every other aspect of the litigation, including document review, water data analysis and testing, deposition preparation, expert witness identification, electronic presentation development and client contact and coordination.

137.    Tina Bruce is a Certified Legal Nurse Consultant at Korein Tillery.  She received her B.S.N. from Maryville University and her certification from the American Association of Legal Nurse Consultants. She is Past President of the St. Louis Chapter of the American Association of Legal Nurse Consultants. She joined Korein Tillery's predecessor firm in 1995 and has experience in personal injury, consumer fraud, products liability, toxic tort, and Federal Employer's Liability Act litigation.  She has been involved in this litigation since February 2009 and spent more than 5,500 hours working with expert witnesses, performing document review and analysis, assisting in deposition preparation, and extensive medical and non-medical research.

138.    Sheila Sortor is a paralegal at Korein Tillery. Ms. Sortor has an Associate's degree in paralegal studies from Southwestern Illinois College (2000) and a Bachelor's degree in Business Administration from Fontbonne University (2009).  She began working as a Paralegal in toxic tort in 2001. Her work in this case was primarily working with discovery:  loading de-

fendants and plaintiffs' documents in a litigation support database; preparing plaintiffs' documents for production; and assisting clients in gathering documents responsive to discovery. She spent more than 2,100 hours working on this litigation.

139.    Juanita Brumitt is a paralegal at Korein Tillery.  Ms. Brumitt has an Associate's degree in paralegal studies from Southwestern Illinois College (1997) and a Bachelor's degree in Organization Leadership from Greenville College (2001). Ms. Brumitt began working as a paralegal in 1997. Ms. Brumitt dedicated more than 140 hours to these matters principally assisting the in the issuance and collection of documents of more than 100 subpoenas served on atrazine dealers and applicators to collect data necessary to identify the manufacturer of the atrazine containing products that were discovered in each plaintiffs' water supplies.

140.    Lindsay Shapray is a legal assistant at Korein Tillery. She received a B.A., *magna cum laude*, from Northwestern University in 2007 and an M.A. in social sciences from the University of Chicago in 2011. She joined Korein Tillery in 2007 and has worked to support attorneys in research and administrative tasks for several different lawsuits. Ms. Shapray's work in this case involved qualitative and quantitative research and analytical support and assistance with document management requiring her to dedicate more than 100 hours to this litigation.

141.    Sarah Bouchat joined Korein Tillery as a legal assistant in 2008 after receiving a B.A. from the University of Chicago, working to provide administrative and research support for attorneys for multiple cases. Ms. Bouchat's work in this litigation spanned more than 60 hours and involved organizational assistance with documents as well as conducting research projects as directed by attorneys.

142.    Elliot M. Brown graduated with a B.S. in Political Science from Illinois College in 2010.  Since that time he has been employed at Korein Tillery as a Legal Assistant. During his

time with the firm, Mr. Brown has assisted in the litigation of the atrazine cases in a number of capacities and spanning more than 3,600 hours, in legal research, discovery production, deposition preparation, client relations, trial preparation, sample collection, contacting third-parties, and document coding.

143.    While Korein Tillery almost exclusively represents plaintiffs in class action matters on a contingent basis, occasionally Korein Tillery is retained on a hybrid or hourly basis. Recently, Korein Tillery was engaged by a national institution on an hourly basis. In that engagement, the client has agreed to compensate Korein Tillery partners at rates between $425 and $750 per hour, Korein Tillery associates at a rate between $250 and $350 per hour, and Korein Tillery paralegals at a rate between $100 and $175 per hour. A true and accurate summary of each professional's time spent in furtherance of the litigation compiled from firm business records, their current billing rate and a calculation of the lodestar is attached as Exhibit B to this Declaration.

144.    Survey information reveals that these rates are consistent with the marketplace. For example, the Incisive Legal Intelligence, Billing Rates and Practices Survey Report ("Incisive Report") (2009) indicates that the *average* billing rate for firms with 9 to 20 lawyers performing plaintiffs' contingency litigation is $455 per hour. *See* Incisive Report at 23. Rates as high as $900 per hour were reported with an average high billing rate of $568 per hour. *See* Incisive Report at 14.

145.    The Incisive Report reveals that the ***average*** prevailing billing rate in plaintiffs contingency litigation by years in practice, at page 43, is as follows:

| | Average Billing Rates: Fee Earner by Practice Area and Years in Practice | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Under 2 Years | 2 or 3 Years | 4 or 5 Years | 6 or 7 Years | 8 to 10 Years | 11 to 15 Years | 16 to 20 Years | 21 to 30 Years | 31 or More Years |
| Plaintiffs' Contingency Litigation | $190 | $273 | -- | $352 | $392 | $389 | $406 | $544 | $524 |

146.    Using Korein Tillery's current billing rates, Korein Tillery's lodestar in this matter exceeds $$15,600,000.00.

**Counsel's Request For Attorneys' Fees  And Reimbursement Of Costs And Expenses**

147.    The Notice of Proposed Settlement of Class Action advised Class Members that Counsel intended to apply to the Court for an award of attorneys' fees in the amount of 33 1/3% of the Aggregate Settlement Fund, plus their costs and expenses. Counsel requests, and Defendants do not oppose, an award of 33 1/3% of the settlement fund, after a deduction for reimbursement of costs and expenses of $ 8,387,776.15.  A true and accurate summary of Korein Tillery's share of the expenses is attached as Exhibit C to this Declaration.  Korein Tillery made every reasonable effort to limit expenses, and in no event were more than customary rates charged. Each of the foregoing costs were necessarily incurred in this action and the services for which fees have been charged were actually and necessarily performed.

148.    Plaintiffs did not pay for attorneys' fees or any other expenses as they were incurred.  Instead, Korein Tillery's ability to recover their costs and attorneys' fees depended on Plaintiffs prevailing in litigation or successfully settling the case.

149.    The attorneys' fees requested are based on the market rate for Counsel's legal services and are consistent with other fee awards in this Circuit. As described in the background

section above, an award of 33 1/3% of the settlement fund is consistent with Korein Tillery's

standard contingency rate for a high stakes, risky case like this lawsuit, and is consistent with the

market rate for comparable legal services.

      I declare under penalty of perjury that the forgoing is true and correct.

Executed on Wednesday, July 25, 2012.

_____
Stephen M. Tillery

**July 2, 2004** – Holiday Shores Sanitary District filed **six** Class Action Complaints against the makers of atrazine in Illinois State Court, Third Judicial Circuit.  These cases were filed against Syngenta Crop Protection, Inc., 5 other manufacturers of atrazine, and a distributor of atrazine.  The Complaint sought damages on behalf of a putative class of Illinois Community Water Systems.

**August 5, 2004** – Plaintiffs filed First Amended Complaints against Dow, Drexel, Mana, Sipcam, and United Agri.

**September 24, 2004 –** Syngenta and each of the other manufacturers of atrazine removed the *Holiday Shores* cases to Federal Court.  Growmark, Inc., a distributor of atrazine, consented to and joined the removal in each case.

**September 30, 2004** – Mana filed its Demand for Trial by Jury.

**October 1, 2004** – Holiday Shores Sanitary District filed the First Amended Complaint.

**October 1, 2004** – Immediately after removal, Growmark filed a motion to dismiss the case under Federal Rules of Civil Procedure.  Because the Federal District Court lacked jurisdiction, the case was remanded to state court and the motion to dismiss was not decided.

**October 21, 2004** – An Order has been filed in Madison County in Sipcam denying Plaintiffs' motion for extension of time to respond to Growmark's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

**October 24, 2004** – Plaintiff filed its Motion to Remand and supporting Memorandum of Law in all 6 *Holiday Shores* cases.  The Memorandum of Law filed in each case consisted of 17 pages of legal analysis and more than 30 pages of exhibits.

**October 25, 2005** – Hearing before Judge Stack on motions to dismiss (11 total) filed by Syngenta and Growmark in all 6 *Holiday Shores* cases.

**October 27, 2004** – Plaintiffs filed a corrected Memorandum in Support of its motion to remand in Sipcam.

**November 23, 2004** – Each of the Defendants filed memorandums in opposition to Plaintiffs' motion to remand.  Syngenta's memo totaled 19 pages of legal analysis and more than 90 pages of exhibits.  Each of the other manufacturers filed memoranda totaling approximately 20 pages.  Growmark filed a memorandum in each case adopting the reasoning of the named manufacturer.

**EXHIBIT**

**A**

**December 2, 2004** – Syngenta filed a motion for oral argument on Plaintiff's motion to remand

**December 3, 2004** – Dow and Drexel filed Motions for Oral Argument on Plaintiff's Motion to Remand.

**December 6, 2004** – Mana and Sipcam filed Motions for Oral Argument on Plaintiffs' Motions to Remand.

**December 8, 2004** – Plaintiffs filed a 6 page reply memorandum in each of the six cases.

**December 10, 2004** – Growmark filed a supplemental memorandum in support of its motion to dismiss in all 6 cases.

**December 13, 2004** – Growmark filed a motion for leave to file a supplemental memorandum concerning recent Illinois Supreme Court authority.

**February 1, 2005** – The Court asked Holiday Shores and United Agri Products, Inc. for supplemental briefing on whether the Safe Drinking Water Act provided a federal remedy or private right of action.

**February 11, 2005** – Plaintiffs filed its 4 page supplemental brief requested by the Court.

**February 18, 2005** – Defendant United Agri Products filed its 9 page supplemental reply brief with the court, which Growmark joins.

**February 18, 2005** – Sipcam and United Agri filed its Response to Court Order of February 1, 2005 requesting Supplemental Briefing on Motion to Remand, and Growmark filed a Joinder in United Agri Products, Inc.'s Response to Court Order of February 1, 2005.

**March 29, 2005** – Judge Reagan remanded each of the six cases to Illinois Circuit Court for the Third Judicial Circuit.

**April 14, 2005** – Syngenta filed its jury demand

**April 15, 2005** – Drexel filed its Jury Demand.

**April 22, 2005** – Sipcam filed its Jury Demand.

**May 9, 2005** – Growmark filed its Motion to Dismiss Growmark, Inc. Based on Prior Pending Actions in Drexel.

**May 17, 2005** – Growmark filed its motions to dismiss based on prior pending actions in the remaining 5 cases.

**June 20, 2005** – One of the Defendants (United Agri Products) filed a motion to dismiss for lack of personal jurisdiction.  The other six Defendants filed combined motions to dismiss under Illinois statute 735 ILCS 5/2-619.1 in each case.  These motions contained seventeen distinct legal reasons why certain counts or the Complaint as a whole should be dismissed.  Dow AgroSciences alleged an additional 5 reasons why certain portions of the Complaint should be dismissed.  All of these Defendants claimed that the Complaint violated two different portions of the U.S. Constitution, that the U.S. EPA had primary jurisdiction, that there was no legal injury, that the Plaintiff lacked standing, and a variety of technical failures in each count.  In addition to the claims alleged by the other Defendants, Dow AgroSciences claimed that it owed no duty to Plaintiff, that it was not the legal cause of its injuries, and that the statute of limitations barred recovery of certain damages.  Dow AgroSciences also sought to strike all declaratory relief and punitive damages from the Complaint.  In addition to the claims brought by the other Defendants, Growmark filed motions to dismiss based on prior pending action in five of the six cases.

**June 20, 2005** – Each of the Defendants filed comprehensive memoranda of law in support of each of their motions to dismiss.  These briefs ranged from nine pages to more than thirty pages, with additional dozens of pages of exhibits.

**June 20, 2005** – United Agri filed a Motion to Dismiss for Lack of Personal Jurisdiction.

**June 20, 2005** – Mana filed its Demand for Trial by Jury.

**June 28, 2005** – Plaintiffs filed a Motion for Discovery (related to personal jurisdiction) and a Memorandum in Opposition to Defendants' Combined Motions to Dismiss Pursuant to 735 ILCS 5/2-619.1.

**July 8, 2005** – Plaintiffs filed their memoranda in opposition to each of the Defendants' combined motions to dismiss under 735 ILCS 5/2/219.1.  The briefs are between 49 and 80 pages in length, plus exhibits.

**July 11, 2005** – Plaintiffs filed their memoranda in opposition to Growmark's motions to dismiss based on prior pending action in the five cases in which Growmark filed the motion.

**July 20, 2005** – Each of the Defendants filed their reply briefs to Plaintiff's memoranda in opposition to the combined motions to dismiss under 735 ILCS 5/2/219.1.  Growmark filed its reply briefs to Plaintiffs memoranda in opposition to Growmark's motion to dismiss based on prior pending action.

**October 25, 2005** – Full day hearing on all pending motions to dismiss except United Agri Sciences motion to dismiss for lack of personal jurisdiction.

**November 16, 2005** – Plaintiffs submitted proposed orders for all motions heard on October 25, 2005.

**July 7, 2008** – Court ruled on all motions heard on October 25, 2005.  The Court denies the Defendants motions to dismiss with limited exception.

**September 5, 2008** – Plaintiffs filed amendments by interlineation of the First Amended Complaint

**October 22, 2008** – Sipcam filed its Answer and Affirmative Defenses and Matters to Plaintiff's First Amended Class Action Complaint.

**October 23, 2008** – Growmark filed its answer and defenses to the First Amended Complaint and Syngenta filed its answer, affirmative defenses and other affirmative matters to the First Amended (by interlineations) complaint.

**October 23, 2008** – United Agri filed a Notice of Adoption of Its Motion to Dismiss; Dow and Mana filed their Answers and Affirmative Defenses to Plaintiff's First Amended (Interlineated) Class Action Complaints; and Growmark filed its Answers and Defenses to First Amended Class Action Complaints in Dow, Drexel, Mana, Sipcam, and United Agri.

**October 29, 2008** – Drexel filed its Answer and Affirmative Defenses and Matters to Plaintiff's First Amended Class Action Complaint.

**November 17, 2008** – Growmark filed an affidavit of William Erlenbush, officer of Growmark, Inc., relating to the allegations of no knowledge

**November 17, 2008** – Dow filed an Affidavit of Barbara Kaminski relating to the allegations of lack of knowledge in Dow AgroSciences LLC's Answer to the First Amended (Interlineated) Complaint.

Plaintiffs sent requests for production of documents and interrogatories to the manufacturer defendants on **May 20, 2009**.  Each of the manufacturer defendants filed motions for a protective order on **June 18, 2009**, and served objections to

Plaintiffs on **June 22, 2009**.  None of the defendants produced any documents in response to the discovery requests.  None of the defendants provided verified answers to interrogatories.

**June 22, 2009** – Syngenta served requests for admissions, requests for production on class certification issues; and interrogatories on class certification issues directed to Holiday Shores Sanitary District.

**July 20, 2009** – Plaintiff served its objections and answers to Syngenta's 1st interrogatories on class certification issues, responses to Syngenta's 1st requests for admission, and objections and responses to Syngenta's 1st requests for production on class certification issues.

**August 3, 2009** – After weeks of conferring under Illinois Rule 201(k), Plaintiff filed its motions to compel and for sanctions in 5 of the cases.

**August 25, 2009** – Plaintiff filed motions to amend the Complaint to join 5 additional Plaintiffs.

**August 26, 2009** – Syngenta filed its memorandum in opposition to Plaintiff's motion to compel/for sanctions.

**August 27, 2009** – United Agri filed an updated Affidavit of Mark R. Trostle in support of its motion to dismiss.

The Defendants provided a small percentage of their documents immediately prior to the hearing on August 31, 2009.  Syngenta produced some documents on **August 21, 2009** (about 1 percent of the total number of pages ultimately produced by Syngenta).  Dow AgroSciences produced two categories of documents that were received on **August 28, 2009**.  Drexel produced 600 pages of documents that were received on **August 28, 2009.**  MANA produced 1600 pages of documents that were received the day of the hearing.  Sipcam produced 5600 pages of documents that were received on **August 28, 2009.**

1) Bifurcation of discovery
2) Discovery concerning health effects of atrazine above 3 ppb.
3) Discovery concerning triazines and degradants other than those specifically listed in the complaint
4) Discovery concerning testing, sale, and distribution of atrazine outside of Illinois (including **testing documents in Switzerland**)

5) Discovery concerning lobbying activities of the Defendants and their involvement in trade organizations (**First Amendment** rights of Defendants)

6) Discovery concerning market share information research conducted by Defendant (**Market Share**)

7) Discovery located at Defendants' affiliates but of which Defendants had possession or control (**Documents in Switzerland** and on intranet system)

8) The limitation of discovery to a specific time period.

**August 31, 2009** – Protective Orders filed in all 6 *Holiday Shores* cases.

**September 8, 2009** – Syngenta and Growmark each filed a memorandum in opposition to Plaintiff's motion to add additional plaintiffs.

**September 14, 2009** – Syngenta filed a supplemental brief in support of its motion for protective order.

**September 16, 2009** – Plaintiff filed a reply memorandum in opposition to Syngenta's motion for protective order.

**September 16, 2009** – Plaintiffs filed an amended motion to amend the Complaint, adding 5 new Plaintiffs and amending the proposed class definition to 66 specifically named Community Water Systems in the State of Illinois.

**September 18, 2009** – Syngenta and Growmark filed an emergency motion to set briefing schedule.

**October 2, 2009** – Syngenta filed a response to Plaintiff's reply memorandum in opposition to its motion for protective order.

**October 2, 2009** – Syngenta filed a memorandum in opposition to Plaintiff's amended motion to amend Plaintiff's 1st amended complaint.

**October 20, 2009** – Plaintiff filed a reply memorandum in support of its motion to amend its 1st amended complaint.

**October 26, 2009** – The Court issued its ruling on most of the issues argued during the August hearing.

**October 28, 2009** – Hearing before Judge Crowder on all pending motions in the 6 *Holiday Shores* cases.

**November 3, 2009** – Plaintiffs filed a Notice of Discovery Deposition for Mark Trostle.

**November 16, 2009** – Orders were entered in Madison County on Dow's, Drexel's, Mana's, Sipcam's, and United Agri's Motions for Protective Order denying the request to enter a protective order to limit discovery to class certification issues only; reserving ruling on the portion of the protective order requesting the limitation until such time as the Court rules on the motion for leave to file an amended complaint; denying the request for a blanket protective order to avoid producing documents or information any party possesses or could easily possess or which become known to that party; and denying this motion as to the names of the industry groups of which defendant is a member and to the identity of any lobbyists.

**November 20, 2009** –Orders were entered in Madison County in Dow, Drexel, Mana, Sipcam, and United Agri on Plaintiffs' Motions to Amend the Complaints granting the amended motion to file an amended complaint; noting that the Court has insufficient factual information to determine at this point whether the claims in the Second Amended Complaint relate back to the original filing date and reserves ruling on the relation back issue; and striking from the Prayer for Relief in each Count subparagraph d) which seeks an order requiring Defendants to prepare a remedial plan.

**November 24, 2009** – The Court clarified its order regarding Syngenta's documents located in Switzerland and stated that Syngenta must produce documents that it had in its possession or control.

**November 30, 2009** – Syngenta and the other Defendants filed a motion to designate *Holiday Shores Sanitary District v. Syngenta Crop Protection, Inc.* as the lead case and to stay the other five cases based on the Court's inherent authority to manage its own case docket.

**December 4, 2009** – Plaintiffs filed a motion for joinder of additional parties (Mount Olive, Illinois and Litchfield, Illinois).

**December 11, 2009** – Syngenta and Growmark filed a combined motion to dismiss pursuant to 735 ILCS 5/2-615 and 735 ILCS 5/2-619.

**December 11, 2009** – Plaintiffs filed their reply memorandum to the Defendants' joint motion for a lead case designation.

**December 11, 2009** – Five manufacturer Defendants, including Syngenta, filed motions to transfer the new claims on the basis of improper venue.  Each also filed

its memorandum in opposition to Plaintiffs' motion for joinder on the basis of improper venue.

**December 11, 2009** – Syngenta and the other Defendants filed motions to dismiss pursuant to 735 ILCS 5/2-615

**December 14, 2009** – Hearing was held on motion for joinder of Mount Olive, Illinois and Litchfield, Illinois.  The Court took the motion under advisement.  The court also heard argument on Defendants' joint motion for lead case designation and took the motion under advisement.

**December 16, 2009** – Syngenta and Growmark filed a memorandum in support of their combined motion to dismiss pursuant to 735 ILCS 5/2-619.1

**December 28, 2009** – Syngenta filed its 1st amended responses to Plaintiff's 1st interrogatories directed to Syngenta.

**December 28, 2009** – Dow, Mana and Sipcam served their First Amended Answers and Objections to Plaintiff's first Interrogatories.

**December 31, 2009** – Plaintiffs filed renewed motions to compel in the Syngenta, Dow, and Mana actions.

**January 4, 2010** – The Court denied the Defendants' motion for lead case designation, stating that the Defendants did not establish good cause for Syngenta being given preference in setting its case for trial or for the other cases to be stayed or continued pending Syngenta's trial.

**January 4, 2010** – Court entered an order allowing the joinder of Mount Olive and Litchfield, but reserving ruling on whether their claims relate back to the filing of the original complaint.

**January 4, 2010** – Plaintiffs filed a Renewed Motion to Compel in Sipcam.

**January 6, 2010** – Syngenta and Mana filed responses to Plaintiff's renewed motions to compel.

**January 7, 2010** – First hearing on the renewed motion to compel was held.  The Court ruled that Plaintiffs' original motion to compel filed on July 31, 2009, was moot and awarded no sanctions.  The Court reset the hearing on Plaintiffs' renewed motion to compel for January 26, 2010.

**January 7, 2010** – Sipcam filed its Response to Plaintiff's Renewed Motion to Compel.

**January 15, 2010** – Mana served its Second Supplemental Responses to Plaintiff's First Interrogatories.

**January 19, 2010** – Dow served its Amended Answers and Second Amended Objections to Plaintiffs' First Set of Interrogatories.

**January 20, 2010** – Dow served its Responses and Amended Objections to Plaintiffs' First Requests for Production.

**January 20, 2010** – Mana served the Verification of Ephi Gur, Manager of Regulatory and Scientific Affairs, to its Second Supplemental Responses to Plaintiff's First Interrogatories.

**January 22, 2010** – Plaintiffs filed an Amended Renewed Motion to Compel in Sipcam.

**January 25, 2010** – Plaintiffs serve interrogatories on each of the Defendants concerning venue.

**January 25, 2010** – Sipcam filed its Response to Plaintiffs' Amended Renewed Motion to Compel.

**January 26, 2010** – The second hearing on Plaintiffs' renewed motion to compel was held.  The Court ordered Syngenta to search for and produce any documents or data that refer to or contain the name of atrazine or any of the ten breakdown products delineated in the Complaint.  The Court further ordered Syngenta to provide information that it had concerning its or other manufacturers share of the atrazine market in the State of Illinois.

**January 26, 2010** – An Order was entered in Madison County ordering Sipcam to request the information and documents responsive to Plaintiff's discovery requests from Oxon Italia.  Sipcam is to let Plaintiff know by February 15, 2010, if Oxon Italia refuses to provide any of the documents and information requested, at which point the Court may schedule an evidentiary hearing.

**January 26, 2010** – An Order was entered in Madison County in United Agri noting that attorney Kurtis B. Reeg is designated as lead counsel for the said Defendant.  Service on lead counsel of notices and copies of pleadings directed to the defendant represented by that attorney is sufficient and need not be made on other attorneys for the same defendant.  Further, if directed by the Court, lead counsel

shall be responsible for sending notice to co-counsel and opposing counsel of
hearings to be held on motions filed by lead counsel or co-counsel.

**February 4, 2010** – The Defendants filed a motion for a protective order asking the
court to relieve them from any obligation to respond to Plaintiffs' 1st interrogatories
limited to venue before a hearing on Defendants' pending motion to transfer.

**February 8, 2010** – Hearing before Judge Crowder on Defendants' motions for
protective order under Rule 201(c)(1).

**February 8, 2010** – Plaintiff served its amended objections and answers to
Syngenta's 1st interrogatories on class certification issues and its amended
objections and responses to Syngenta's 1st requests for production on class
certification issues.

**February 9, 2010** – Growmark stipulates that it was doing business in Madison
County, Illinois as that term is used within the meaning of the venue statute at the
time that each of the named Plaintiffs first brought its claims.

**February 11, 2010** – Drexel served its First Amended Answers to Plaintiffs' First
Interrogatories.

**February 16, 2010** – Plaintiffs served a second Notice of Discovery Deposition for
Mark Trostle.

**February 18, 2010** – Plaintiffs served an Amended Notice of Discovery Deposition
for Mark Trostle in United Agri.

**February 22, 2010** – Plaintiffs filed a memorandum in opposition to Defendants'
motion to transfer new claims to proper venue.

**February 23, 2010** – Following a hearing before Judge Crowder, the Defendants'
motion to transfer the new claims was argued and taken under advisement.

**February 23, 2010** – Plaintiffs' filed their notice of voluntary dismissal of certain
allegations in the second amended complaint.  The Court allowed this voluntary
dismissal.

**February 23, 2010** – Plaintiffs filed 2nd amended complaints and filed motions for
leave to amend second amended complaint by interlineation.

**February 25, 2010** – Plaintiffs filed a Second Amended Notice of Discovery
Deposition for Mark Trostle in United Agri.

**March 2, 2010** – Defendants filed a supplemental memorandum in support of the motion to transfer claims to proper venue pursuant to 735 ILCS 5/2-104.

**March 8, 2010** – Complaint filed in *City of Greenville, et al. v. Syngenta, et al.*, No. 10-cv-00188-JPG-PMF.

**March 24, 2010** – First Amended Complaint filed in the *Greenville* litigation.

**April 4, 2010** – Plaintiffs filed and served a notice of hearing on Defendants' motions to dismiss.

**April 5, 2010** – Syngenta filed its first motion to compel with memorandum in support.

**April 8, 2010** – Syngenta and the other Defendants filed a motion to quash the notice of hearing for their motion to dismiss.  Syngenta and the other Defendants also filed a notice of hearing for their notice to quash the notice of hearing for the motions to dismiss.

**April 8, 2010** – Plaintiff filed its renewed motion to compel based upon Syngenta's refusal to abide by its statements to the Court concerning the review and production of documents.

**April 13, 2010** – Syngenta filed a response to the renewed motion to compel, with a supplemental affidavit of Kurt Reeg attached, as well as a motion to dismiss Plaintiffs' renewed motion to compel.

**April 13, 2010** – The Court canceled the hearing previously scheduled for April 14, 2010, in order to finalize its order on the motion for transfer of venue.

**April 14, 2010** – The Court denied Syngenta and the other Defendants' motion for transfer to a proper venue.

**May 4, 2010** – Syngenta filed a Motion to Dismiss or in the alternative stay the Holiday Shores case based on parallel federal court action and its memorandum of support of this motion.

**May 5, 2010** – Syngenta filed a Motion to Dismiss and Memo in Support in the *Greenville* litigation asking the Court to dismiss Plaintiffs' claims, in whole or in part, for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

**May 18, 2010** – Syngenta AG filed its motion to dismiss for lack of personal jurisdiction and memorandum in support in the *Greenville* litigation.

**May 19, 2010** – United Agri filed supplemental exhibits to its motion to dismiss for lack of personal jurisdiction.

**May 24, 2010** – Order Regarding Discovery entered in the *Greenville* litigation.

**May 25, 2010** – Plaintiffs filed second amended objections and answers to the first interrogatories on class certification issues and second amended objections and responses to the first requests for production on class certification issues.

**May 25, 2010** – Plaintiffs filed a memorandum regarding putative absent class member discovery in opposition to Syngenta's motion to compel.

**May 25, 2010** – Plaintiffs filed their memorandum in opposition to the motion to dismiss filed on December 11, 2009, and a memorandum in opposition to the motion to dismiss or stay filed on May 4, 2010.

**May 26, 2010** – The Court held a hearing on the pending motions to dismiss. Syngenta asked for additional time to respond to the memoranda filed on May 25, 2010.  The Court reset the hearings for June 10, 2010.

**June 2010** – The parties reached a resolution concerning the motions to compel. Plaintiffs served their amended responses on **June 29, 2010**.  Plaintiffs served notices of deposition with requests for production of documents for each deponent on **June 28, 2010**.  The Court cancelled the hearing set for July 1, 2010.

**June 8, 2010** – Syngenta filed reply briefs in support of their motions to dismiss.

**June 8, 2010** – Plaintiffs filed their motion for leave to conduct jurisdictional discovery and memorandum in support of their motion in the *Greenville* litigation. Plaintiff also filed a motion for extension of time to respond to the motion after conducting jurisdictional discovery.

**June 10, 2010** – The Court heard argument on Syngenta's motions to dismiss and took the motions under advisement.

**June 23, 2010** – Defendants filed their response opposing Plaintiffs' motion for leave to conduct jurisdictional discovery and their response opposing Plaintiffs' motion for extension of time in the *Greenville* litigation.

**June 28, 2010** – Plaintiffs served deposition notices and requests for production of documents on Jennifer Shaw, Tim Pastoor, Sherry Ford a/k/a Sherry Duvall Ford, Peter Hertl, Marian Stypa, Lloyd Day, Joseph Muldoon, Janis McFarland, Dirk Drost, Charles Breckenridge, Andrew Merritt, and Corporate Designees on water topics, market shares & sales, and supply topics.

**June 29, 2010** – The Court granted Plaintiffs' motion for leave to conduct jurisdictional discovery in the *Greenville* litigation.  The Court allowed Plaintiffs to conduct limited discovery for 45 days on three narrow topics.

**June 30, 2010** – Plaintiffs served subpoenas *duces tecum* on Illinois trade group and universities concerning Atrazine: Illinois Corn Growers Association (ICGA); University of Illinois; Southern Illinois University (SIU); Illinois Farm Bureau (IFB); Chemical Industry Council of Illinois (CICI); Don Coursey; Heartland Institute; Illinois Council on Best Management Practices; Illinois Fertilizer and Chemical Association (IFCA); and V-Fluence Interactive.  Plaintiffs' subpoena *duces tecum* on The Heartland Institute sought 18 categories of documents.

**July 2, 2010** – Scheduling and Discovery Conference held before Magistrate Judge Frazier.  Counsel to jointly submit a proposed scheduling and discovery order.

**July 2, 2010** – Plaintiffs served Notices of Deposition on the Issue of Personal Jurisdiction as to Defendant Syngenta AG on Tobias Meili, Elizabeth Quarles, Alan Hosmer, Janis McFarland, Christoph Mader, John Atkin, Vern Hawkins, Marian Stypa, and Jason Fogden

**July 2, 2010** – Plaintiffs served Requests for Production on Defendants Syngenta Crop Protection, Inc. and Syngenta AG separately on the Issue of Personal Jurisdiction as to Defendant Syngenta Ag.

**July 6, 2010** - Plaintiffs served Amended Notices of Deposition (as to the rider only) on the Issue of Personal Jurisdiction as to Defendant Syngenta AG on Tobias Meili, Elizabeth Quarles, Alan Hosmer, Janis McFarland, Christoph Mader, John Atkin, Vern Hawkins, Marian Stypa, and Jason Fogden.

**July 6, 2010** – Plaintiffs served Supplemental Requests for Production to Defendants Syngenta Crop Protection and Syngenta AG separately on the Issue of Personal Jurisdiction.

**July 7, 2010** – Plaintiffs filed their response memorandum in opposition to Syngenta Crop Protection's motion to dismiss filed May 5, 2010, in the *Greenville* litigation.

**July 8, 2010** – Plaintiffs served requests for admissions and interrogatories to Defendant Syngenta Crop Protection, Inc. on the Issue of Personal Jurisdiction as to Defendant Syngenta AG.

**July 9, 2010** – V-Fluence served its objections to the subpoena and notice of evidentiary deposition.

**July 12, 2010** – Syngenta's emergency motion to quash the subpoenas of Illinois trade groups on the basis of First Amendment right of association and motion to quash subpoena of Don Coursey on the basis that he was a consulting expert exempt from disclosure under Illinois law.

**July 12, 2010** – Dr. Don Coursey filed an emergency motion to quash and motion for a protective order and/or motion to stay discovery.

**July 12, 2010** – Counsel for The Heartland Institute sent a letter to Counsel for Plaintiff outlining Heartland's objections and responses to Plaintiff's subpoena *duces tecum*.

**July 13, 2010** – Motion to Quash or for a protective order filed by Illinois Fertilizer and Chemical Association.  Motion to quash or for a protective order filed by Chemical Industry Council of Illinois.

**July 14, 2010** – Motion to quash or for a protective order or stay of discovery filed by The Heartland Institute.

**July 15, 2010** – Plaintiffs filed a motion for rule to show cause directed to V-Fluence Interactive.

**July 15, 2010** – Plaintiffs filed a motion for rule to show cause, seeking complete responses to the Heartland subpoena.

**July 15, 2010** – Plaintiffs served subpoena *duces tecum* on the University of Chicago requesting documents containing information concerning Dr. Don Coursey's work related to atrazine.

**July 16, 2010** – Defendants filed a motion for entry of a protective order regarding jurisdictional discovery in the *Greenville* litigation.

**July 19, 2010** – A motion to quash notice of deposition and subpoena is filed by University of Chicago.

**July 19, 2010** – Illinois Farm Bureau filed a motion to quash or for a protective order.  Plaintiffs filed a motion for rule to show cause directed to the Illinois Farm Bureau.

**July 19, 2010 –** The Court held an emergency hearing on Heartland's motion, as well as the motions of Syngenta Crop Protection, Inc ("Syngenta") and other third parties to whom Plaintiffs had served subpoenas. Plaintiffs provided a paper copy of its PowerPoint presentation to Heartland.  The Court also heard Plaintiffs' motions for rule to show cause.  During the hearing, counsel for Syngenta stated that Dr. Don Coursey was hired as a litigation consultant under Illinois law in June 2006.

**July 20, 2010** – Joint Report of the Parties and Scheduling and Discovery Order filed and approved; Scheduling and Discovery Order entered.

**July 27, 2010** – Motion hearing held before Magistrate Judge Frazier.  Order entered granting in part and denying in part Defendants' Motion for Protective Order filed July 26, 2010.

**August 9, 2010** – Plaintiffs filed motion to compel concerning the discovery requests served with the notices of deposition on June 28, 2010.

**August 9, 2010** – Syngenta and third parties Illinois Farm Bureau, Dr. Don Coursey, The Heartland Institute, the Chemical Council of Illinois, and the Illinois Fertilizer and Chemical Association filed their supplemental briefs concerning the motions to quash and/or Plaintiffs' motion for rule to show cause.  These briefs include previously undisclosed affidavits attached as exhibits and relied upon for the proposition that the subpoenas would infringe upon Syngenta's and the third parties' First Amendment Rights.  Dr. Coursey's brief states that he was retained as a litigation consultant in June 2006.

**August 9, 2010** – Heartland filed its response to Plaintiff's motion for rule to show cause.

**August 11, 2010** – Plaintiffs served notices of evidentiary depositions and requests for production of documents for each affiant upon whom the third parties relied in their supplemental briefs filed August 9, 2010.  Plaintiffs sent a letter to Judge Crowder (and copying the parties and third parties) informing the Court of these upcoming depositions.

**August 11, 2010 –** Notice of video evidentiary deposition and request for production of documents served on The Heartland Institute (Deponent: Joseph L. Bast).

**August 11, 2010** - Plaintiffs served supplemental interrogatories  and second supplemental requests for production to Defendant Syngenta Crop Protection, Inc. on the Issue of Personal Jurisdiction as to Defendant Syngenta AG.

**August 12, 2010** – Plaintiff filed a reply memorandum in opposition to University of Chicago's motion to quash and motion for sanctions.

**August 13, 2010** – Plaintiffs filed a motion to compel a privilege log from Syngenta.

**August 13, 2010** - Plaintiffs served 2nd amended notices of deposition on the issue of personal jurisdiction as to Defendant Syngenta AG on Tobias Meili, Elizabeth Quarles, Alan Hosmer, Janis McFarland, Christoph Mader, John Atkin, Vern Hawkins, Marian Stypa, and Jason Fogden.

**August 16, 2010** – The Illinois Farm Bureau and the Illinois Fertilizer and Chemical Association objected to the letter sent by Plaintiffs' counsel on August 11, 2010, and filed a motion to quash or for a protective order concerning the evidentiary deposition noticed on August 11, 2010.

**August 18, 2010** – The Heartland Institute objected to the letter sent by Plaintiffs' counsel on August 11, 2010, and filed a motion to quash or for a protective order concerning the evidentiary deposition noticed on August 11, 2010.

**August 18, 2010** - University of Chicago filed a response to Plaintiffs' reply memorandum in opposition to its motion to quash and motion for sanctions.

**August 18, 2010** - Plaintiffs served a 3rd amended notice of deposition on the issue of personal jurisdiction as to Defendant Syngenta AG on Tobias Meili.

**August 19, 2010** – Plaintiffs served a notice of evidentiary deposition on Dennis Kelly and request of production of documents concerning the issues raised in his affidavit filed on August 9, 2010.

**August 19, 2010** – The Chemical Industry Council of Illinois filed its motion objecting to the August 11, 2010, letter from Plaintiffs and moving to quash the deposition notice or for a protective order.

**August 20, 2010** – Syngenta filed its motion objecting to the notice of deposition of Dennis Kelly and its supplemental motion to quash, for a protective order, or to stay the discovery.

**August 25, 2010** – The Court held a hearing on all of the pending motions to quash the depositions.  The Court took the objections and motions under advisement.

During the hearing, counsel for Dr. Coursey stated that Dr. Coursey was retained by Syngenta in June of 2006 or 2007.

**August 26, 2010** – Syngenta served its responses to Plaintiffs' Requests for Admissions on the Issue of Personal Jurisdiction as to Syngenta Ag.

**August 31, 2010** – The Court entered an order denying Syngenta's motion to dismiss or stay and its motion to dismiss pursuant to 735 ILCS 5/2-619.1.

**August 31, 2010** - Plaintiffs served a Cross Notice of Deposition of Dirk Drost on the Issue of Personal Jurisdiction as to Defendant Syngenta Ag.

**September 2, 2010** – Plaintiffs filed a motion for emergency hearing on its motion to compel.

**September 2, 2010** - Subpoenas to produce documents, information, or objects served on Syngenta Corporation, Syngenta U S Holdings, and Syngenta Seeds, Inc.

**September 2, 2010** – Syngenta served its response to Plaintiffs' Requests for Production and Interrogatories on the Issue of Personal Jurisdiction as to Defendant Syngenta Ag.

**September 8, 2010** – Syngenta produced the first of four planned installments of the privilege log.

**September 10, 2010** – Plaintiffs served subpoenas and notices of video evidentiary depositions on the following third parties: Ronald James Kendall, James A. Carr, Missouri Corn Growers Association (MCGA), Environmental Resources Coalition, and National Corn Growers Association.

**September 10, 2010** – James Kendall filed a motion to quash the notice of deposition in the District Court of Lubbock County, Texas.

**September 15, 2010** – Syngenta filed a supplemental combined motion to quash, a motion for a protective order, and a motion to stay discovery on third parties in Madison County Circuit Court.

**September 16, 2010** – Ronald J. Kendall and James A. Carr filed their objections and responses to the subpoenas in the District Court of Lubbock County, Texas.

**September 16, 2010** – A telephonic discovery dispute conference before Magistrate Judge Frazier took place. Judge Frazier's minute order discovery limited solely to

jurisdictional issues and ordering that Tobias Meili be made available for deposition was entered the same day.

**September 17, 2010** – Plaintiffs filed its renewed motion to compel a privilege log based on inadequacies in the privilege log produced on September 8, 2010.

**September 17, 2010** – Plaintiffs served a subpoena on the Illinois Department of Environmental Protection.

**September 17, 2010** – Missouri Corn Growers Association and Environmental Resources Coalition filed an emergency combined motion to quash, motion for entry of a protective order and/or motion for stay of discovery on third parties in Cole County, Missouri.

**September 17, 2010** – Plaintiffs served a subpoena on Alexander A. Avery.

**September 17, 2010** – Syngenta served interrogatories, requests for admissions, and requests for production on the named plaintiffs in the *Greenville* litigation.

**September 20, 2010** – Syngenta filed a renewed motion to compel regarding Interrogatory No. 26.

**September 20, 2010** – Plaintiffs served a subpoena on Waterborne Environmental, Inc.

**September 21, 2010** – Subpoenas duces tecum served on Jere L. White, Kansas Corn Growers Association, and Kansas Grain Sorghum Producers Association.

**September 21, 2010** – James A. Carr and Ronald J. Kendall each filed a motion to quash the amended notice of deposition in the District Court of Lubbock County, Texas.   Both men also filed their objections and responses in the District Court of Lubbock County, Texas.

**September 22, 2010** – The Court ordered the third parties to produce documents related to Syngenta or atrazine to Plaintiffs.  The Court quashed the subpoenas to the extent that they sought documents unrelated to Syngenta or atrazine.  The Court further ruled that Don Coursey was a consulting expert under Illinois law and that his date of retention was **June 2006**.  Documents prior to his date of retention were discoverable.  Documents after his date of retention that were not solely related to his work as a litigation consultant for Syngenta were discoverable.

**September 24, 2010** - Syngenta served its supplemental responses to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admissions on the Issue of Personal Jurisdiction as to Defendant Syngenta Ag.

**September 27, 2010** - Syngenta served its amended and supplemental responses to Plaintiffs' Interrogatories, Requests for Production, and Requests for Admissions on the Issue of Personal Jurisdiction as to Defendant Syngenta Ag.

**September 27, 2010** – United Agri filed its Answer, Affirmative Defenses and Other Affirmative Matters to Plaintiffs' Second Amended (by interlineation) Class Action Complaint.

**September 29, 2010** – Syngenta answers the second amended complaint and filed its affirmative defenses and other affirmative matters in response.

**September 29, 2010** – Plaintiffs serve demands for persons having knowledge of relevant facts under Rule 213(f)(1) separately to Growmark and Syngenta.

**September 29, 2010** – James A. Carr and Ronald J. Kendall each filed their amended objections and responses to the amended subpoena in the District Court of Lubbock County, Texas.

**September 30, 2010** – Plaintiffs serve Growmark with 1st interrogatories and 1st requests for production.

**September 30, 2010** – Syngenta served amended and supplemental responses to Plaintiffs' interrogatories on the issue of personal jurisdiction as to Syngenta AG.

**October 1, 2010** – Subpoena served on the Triazine Network and on Timothy S. Gross.

**October 4, 2010** – Syngenta Corporation, Syngenta Seeds, and Syngenta U S Holdings submitted documents in response to the subpoenas.

**October 5, 2010** – Plaintiffs served first amended riders to the deposition notices issued June 28, 2010.

**October 5, 2010** – Syngenta served its Response to Plaintiffs' Second Set of Requests for Production on the Issue of Personal Jurisdiction as to Defendant Syngenta AG and its Motion for Leave to Cite Supplemental Authority in Support of its motion to dismiss in the *Greenville* litigation.

**October 5, 2010** – Protective Order entered in the *Greenville* litigation.

**October 6, 2010** – Syngenta filed a motion to join third parties Missouri Corn Growers Association and Environmental Resources Coalition's emergency combined motion to quash, motion for entry of a protective order and/or motion for stay of discovery on third parties in Cole County, Missouri.

**October 6, 2010** – Plaintiffs filed their opposition to Syngenta's motion for leave to cite supplemental authority in the *Greenville* litigation.

**October 7, 2010** – CropLife America filed its objections to Plaintiffs' subpoena in the Superior Court of the District of Columbia.

**October 12, 2010** – Syngenta filed its motion to allow an interlocutory appeal of the September 22, 2010 order.  Syngenta also filed a motion to stay the litigation pending the resolution of the appeal, or in the alternative, to stay discovery.

**October 12, 2010** – Plaintiffs filed a Motion for Additional Time to Examine Deponents Christoph Mader and John Atkin in the *Greenville* litigation.

**October 13, 2010** – Order entered in the *Greenville* litigation granting Plaintiffs' Motion for Additional Time to Examine Deponents Christoph Mader and John Atkin filed October 12, 2010.

**October 14, 2010** – Deposition of Christoph Maeder

**October 14, 2010** – Dr. Coursey produced six documents in response to Plaintiffs' subpoena.

**October 15, 2010** – Deposition of John Atkin

**October 20, 2010** – The Heartland Institute filed a motion to allow a Rule 308 Interlocutory Appeal and to Certify Questions for Appeal.  Heartland also filed a motion for a protective order staying Plaintiffs' discovery.

**October 20, 2010** – The Chemical Industry Council of Illinois and the Illinois Fertilizer and Chemical Association filed motions for clarification of the order of September 22, 2010.

**October 20, 2010** – Plaintiffs served Amended Deposition Notices on the issue of personal jurisdiction as to SAG on Elizabeth Quarles and Jason Fogden.

**October 20, 2010** – Order entered in the *Greenville* litigation granting Syngenta's Motion for Leave to Cite Supplemental Authority in Support of its motion to dismiss filed October 5, 2010.

**October 21, 2010** – The Illinois Farm Bureau filed a motion to clarify the order of September 22, 2010.

**October 21, 2010** – Plaintiff Holiday Shores Sanitary District served its Fourth Amended Answer to Syngenta's Interrogatory No. 26.

**October 22, 2010** – Syngenta produced the electronic copy of its privilege log, control group list, and supporting documentation.

**October 25, 2010** – Plaintiffs filed their memoranda in opposition to the motions for interlocutory appeal filed by Syngenta and Heartland.  Plaintiffs also filed their memoranda in response to the motions to clarification filed by Illinois Fertilizer & Chemical Association, the Chemical Industry Council of Illinois, and the Illinois Farm Bureau.  Plaintiffs also filed an opposition to the emergency combined motion to quash, motion for entry of a protective order and/or motion for stay of discovery on third parties filed by Missouri Corn Growers Association and Environmental Resources Coalition in Cole County, Missouri

**October 25, 2010** – Syngenta filed a motion to join the Heartland Institute's Motion to Allow its Rule 308 Interlocutory Appeal and to Certify its Questions for Appeal.

**October 25, 2010** – The Court heard Syngenta's motions to allow an interlocutory appeal and to stay, as well as all pending motions by the Illinois third parties.  The Court took Syngenta and Heartland's motion under advisement.  The Court clarified its September 22, 2010, order on the record.

**October 26, 2010** – Growmark filed its answer to the second amended complaint amended by interlineation.

**October 26, 2010** – Deposition of Tobias Meili

**October 27, 2010** – Deposition of Elizabeth Quarles

**October 28, 2010** – Plaintiffs served Amended Depo Notices on the issue of personal jurisdiction as to SAG served on Marian Stypa, Peter Hertl and Dirk Drost.

**October 29, 2010** – The Court entered an Order allowing a Rule 308 Appeal and certifying three questions.  The Court stayed discovery concerning lobbying organizations, trade associations, and non-profit educational organizations pending the resolution of the appeal.

**October 29, 2010** – Syngenta filed a Statement of Supplemental Authority in Support of its motion to dismiss filed May 5, 2010, in the *Greenville* litigation.

**November 1, 2010** – Plaintiffs filed a renewed motion to compel regarding Syngenta's privilege log.

**November 1, 2010** – Plaintiffs filed a motion for Rule 308 certification and a motion for clarification of the stay order.

**November 1, 2010** – Hearing on the motions to quash filed in the Circuit Court of Cole County, Missouri.  The Court set arguments on the motions to quash for December 3, 2010.

**November 1, 2010** – Plaintiffs served first interrogatories and requests for production on Syngenta in the *Greenville* litigation.

**November 2, 2010** – Plaintiffs filed a response to Syngenta's supplemental authority filed October 29, 2010, in the *Greenville* litigation.

**November 4, 2010** – Discovery Dispute Conference and Status Conference held before Magistrate Judge Frazier.

**November 4, 2010** – Deposition of Peter Hertl

**November 9, 2010** – Deposition of Vern Hawkins

**November 9, 2010** – Plaintiffs served an Amended Depo Notices on the issue of personal jurisdiction as to SAG served on Janis McFarland.

**November 10, 2010** – Deposition of Dirk Drost

**November 11, 2010** – Depositions of Jason Fogden and Marian Stypa

**November 11, 2010** – Heartland filed its Application for Leave to Appeal in the Appellate Court of Illinois, Fifth District

**November 12, 2010** – Heartland and Syngenta filed their application for leave to appeal and docketing statement in the Appellate Court of Illinois, Fifth District.

**November 12, 2010** – The Chemical Industry Council of Illinois and the Illinois Fertilizer & Chemical Association served their initial response to the subpoenas served on June 30, 2010.

**November 15, 2010** – The Court held a hearing on Plaintiffs' motion for an interlocutory appeal and for clarification of the stay.  The Court entered an order

certifying two questions for interlocutory appeal.  The Court also clarified that the stay of discovery only concerned the documents being withheld on the specific claim of the First Amendment associational privilege.

**November 17, 2010** – Deposition of Janis McFarland

**November 18, 2010** – Memorandum and Order entered in the *Greenville* litigation granting in part and denying in part Syngenta's motion to dismiss filed May 5, 2010 to the extent that it seeks to dismiss the claims in Count III brought by the City of Jasper and Indiana-American Water Company, Inc.  Those claims are dismissed with prejudice.  The motion is denied in all other respects.

**November 19, 2010** – Hearing held on Syngenta's motions for rule to show cause to DuCon and Holishor.

**November 24, 2010** – The Illinois Farm Bureau served its response to the subpoena served on June 30, 2010.

**November 29, 2010** – Named plaintiffs in the *Greenville* litigation filed objections and answers to Syngenta's first interrogatories and responses to Syngenta's first requests for admissions served September 17, 2010.

**December 1, 2010** – Plaintiffs filed their consolidated answer to the petition for leave to appeal filed by Syngenta and Heartland and its own petition for leave to appeal on the questions certified by the Court on November 15, 2010.

**December 1, 2010** – Timothy Gross responded with an affidavit to the requests for production of documents contained in the subpoena.

**December 2, 2010** – Syngenta filed its answer and affirmative defenses to Plaintiffs' first amended complaint in the *Greenville* litigation.

**December 10, 2010** – Syngenta filed its answer to Plaintiffs' petition for leave to appeal.

**December 14, 2010** – Plaintiffs serve their responses to Syngenta's 1st requests for admission, its objections and responses to Syngenta's 1st requests for production on class certification issues, and its objections and answers to Syngenta's 1st interrogatories on class certification issues.

**December 14, 2010** – Plaintiffs Mattoon, Carlinville, Fairfield, Flora, and Hillsboro served their responses to Syngenta's 1st requests for admission, its objections and responses to Syngenta's 1st requests for production on class

certification issues, and its objections and answers to Syngenta's 1st interrogatories on class certification issues.

**December 17, 2010** – Plaintiffs filed its Opposition to Syngenta AG's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and its Motion to Strike Syngenta AG's Declarations in the *Greenville* litigation.

**December 17, 2010** – Named plaintiffs in the *Greenville* litigation filed their objections and responses to Syngenta's first requests for production served September 17, 2010 and their Rule 26(a)(1) initial disclosures.

**December 21, 2010** – Memorandum and Order entered in the *Greenville* litigation denying as moot Plaintiffs' Motion to Strike Syngenta AG's Declarations filed December 17, 2010, and ordering Plaintiffs to show cause why their motion and exhibits should not be unsealed.

**December 21, 2010** – Plaintiffs filed their Response to the Court's Order to Show Cause why certain exhibits should not be unsealed and a second motion to strike Syngenta AG's declarations in the *Greenville* litigation.

**December 28, 2010** – Syngenta filed its first verified responses to Plaintiff's interrogatories served on May 20, 2009.

**January 4, 2011** – Defendants filed their reply to Plaintiffs' response to Court's order to show cause in the *Greenville* litigation.

**January 4, 2011** – Plaintiffs served a Subpoena to Produce Documents, Information, or Objects on third party Philip L. Barnes.

**January 10, 2011** – Syngenta AG filed its response to Plaintiffs' motion to strike the declarations of Tobias Meili and Elizabeth Quarles in the *Greenville* litigation.

**January 13, 2011** – The Appellate Court of Illinois, Fifth District denied the petitions for leave to appeal filed by Heartland, Syngenta, and Plaintiffs.

**January 14, 2011** – Dr. Don Coursey filed a motion to modify the Court's order of September 22, 2010, and change Dr. Coursey's date of retention from June 2006 to February 14, 2006.

**January 17, 2011** – Syngenta served its Reply in Support of its Motion to Dismiss for Lack of Personal Jurisdiction in the *Greenville* litigation.

**January 18, 2011** – Plaintiffs filed a Motion for Oral Argument and Syngenta filed its Opposition to Plaintiffs' request for oral argument on Syngenta AG's motion to dismiss in the *Greenville* litigation.

**January 19, 2011** – The parties filed a Joint Motion for an Amended Scheduling Order in the *Greenville* litigation.

**January 20, 2011** – Status conference held before Magistrate Judge Frazier.

**January 21, 2011** – Heartland filed a motion for protective order staying Plaintiffs' discovery.

**January 24, 2011** – Order entered in the *Greenville* litigation granting the Joint Motion for an Amended Scheduling Order and modifying the Scheduling and Discovery Order filed July 20, 2010.

Stephen Tillery sent letters to counsel for Syngenta and Dr. Don Coursey on **January 24, 2011; January 27, 2011;** and **February 16, 2011**, requesting that Syngenta produce Dr. Coursey's retention agreement or other writing that documented the date on which Dr. Coursey was retained as a litigation consultant.

**January 31, 2011** – Instead of amending its privilege log to address the concerns raised in Plaintiffs' motion to compel, Syngenta produces a supplemental privilege log containing new documents.  The supplemental privilege log contains the same deficiencies as the log produced on October 22, 2010.

**February 4, 2011** – V-Fluence submits a notice of compliance in response to the subpoena requests.

**February 14, 2011** – Syngenta filed a petition for leave to appeal pursuant to Supreme Court Rule 315.

**February 16, 2011** – Plaintiffs filed their renewed motion to compel.

**February 16, 2011** – Plaintiffs filed a motion seeking an evidentiary hearing to determine the date on which Syngenta retained Dr. Coursey as a litigation consultant.

**February 17, 2011** – Heartland filed a petition for leave to appeal pursuant to Supreme Court Rule 315.

**February 18, 2011** – Syngenta's attorney Kurtis Reeg represented to Plaintiffs' counsel that Dr. Coursey was not retained as a litigation consultant for Syngenta

until January 9, 2009, two and a half years after the date that Syngenta and Dr. Coursey provided to the Court prior to her ruling in September 2010, and almost three years after the date that Dr. Coursey claimed was the date of retention in his January 2011 motion to modify.

**February 21, 2011** – Plaintiffs serve subpoenas to produce documents, information, or objects and to testify at a deposition in a civil action on the following third parties:  Chemical Industry Council of Illinois; Don Coursey; Doane Marketing Research; Environmental Resources Coalition; Heartland Institute; Illinois Corn Growers Association; Illinois Farm Bureau; Illinois Fertilizer & Chemical Association; Jayne Thompson & Associates, Ltd.; Jayne Thompson; Missouri Corn Growers Association; National Corn Growers Association; Southern Illinois University; and University of Illinois (captioned in the *Greenville* litigation)

**February 22, 2011** – Syngenta filed its response to Plaintiffs' renewed motion to compel filed February 16, 2011.

**February 22, 2011** – Institute for Justice moved to file an amicus curiae brief in support of Heartland's petition for leave to appeal in the Illinois Supreme Court.

**February 22, 2011** – The University of Chicago, on behalf of Dr. Don Coursey, produced approximately 900 documents.  These documents included previously undisclosed market share documents concerning sales of atrazine-products in Illinois.  Dr. Coursey submits a signed certificate of compliance.

**February 22, 2011** – Syngenta filed a response to Plaintiffs' motion for evidentiary hearing or for protective order.

**February 23, 2011** – Heartland filed its motion for a protective order staying Plaintiffs' discovery.

**February 23, 2011** – Plaintiffs filed a motion for sanctions concerning the changing of the Coursey retention date.

**February 23, 2011** – The court held a hearing on Plaintiffs' motion seeking an evidentiary hearing.  The Court made oral pronouncements that were incorporated in its Order of March 3, 2011.

**February 24, 2011** – Plaintiffs served notice pursuant to Illinois Supreme Court Rule 237(b) to Kurt Reeg, Christopher Murphy, Sherry Ford, Gene Hill, Michael Vanausdeln, C. Raymond Bell, and Don Coursey.

**February 28, 2011** – Plaintiffs filed an objection to the proposed amicus curiae brief filed by the Institute for Justice in support of the petition for leave to appeal.

**February 28, 2011** – Plaintiffs served a subpoena on Christopher Robling of Jayne Thompson and Associates for his appearance at the evidentiary hearing.

**March 1, 2011** – Dr. Coursey filed a motion to continue the hearing scheduled for March 10, 2011 and an emergency motion to quash the Rule 237(B) notice or, alternatively, for a protective order.  Plaintiffs served a subpoena on Madelyn Lamb and Jason Winslow, counsel for the University of Chicago, for their appearance at the evidentiary hearing.

**March 2, 2011** – Motion hearing on Dr. Coursey's motions to quash held before Magistrate Judge Frazier.

**March 2, 2011** – Plaintiffs filed their omnibus memorandum and authorities in support of their privilege challenge.

**March 2, 2011** – Syngenta filed a Motion to Quash Deposition Notices of Don Coursey, Joseph Bast with The Heartland Institute, Jayne Thompson, and Custodian of Records for Jayne Thompson and Associates and for Entry of a Protective Order and Memorandum in Support in the *Greenville* litigation.

**March 2, 2011** – Dr. Coursey filed an Emergency Combined Motion to Quash and/or Motion for Entry of a Protective Order and/or to Stay Deposition, and Plaintiffs serve a second amended deposition notice on Dr. Coursey in the *Greenville* litigation.

**March 3, 2011** – Syngenta agreed and the Court ordered it to amend its prior responses to fourteen interrogatories and to supplement its prior responses to its other interrogatories and requests for production of document.  The Court ordered the parties to meet and confer concerning the due date of the supplemental responses, Syngenta's privilege logs, and the documents that Syngenta had withheld on the basis of a FIFRA protection.  The Court reserved ruling on the issues raised in Plaintiffs' renewed motion to compel until a further hearing.

**March 3, 2011** – Plaintiffs filed their separate answers to Syngenta's and Heartland's petitions for leave to appeal.

**March 3, 2011** – Third Party University of Illinois filed an objection to the subpoena and deposition in the *Greenville* litigation in the Central District of Illinois.

**March 3, 2011** – The Court quashed the portions of the notice requiring the personal appearance of counsel at the evidentiary hearing, but ordered Raymond Bell to turn over all documents related to the issue of Dr. Coursey's retention.

**March 3, 2011** – Order entered in the *Greenville* litigation denying as moot Syngenta's Motion to Quash Deposition Notices of Don Coursey, Joseph Bast with The Heartland Institute, Jayne Thompson, and Custodian of Records for Jayne Thompson and Associates and for Entry of a Protective Order filed March 2, 2011 and withdrawing the deposition notices at issue for March 3, 2011.

**March 7, 2011** – Syngenta filed a motion to quash the Rule 237(b) notice.

**March 7, 2011** – Plaintiffs served notices on C. Raymond Bell and Don Coursey. Plaintiffs attempted to serve subpoenas on Christopher Murphy and Joseph Bast or the Heartland Institute.

**March 8, 2011** – The Illinois Supreme Court denied the motion by the Institute for Justice for leave to file an amicus curiae brief.

**March 9, 2011** – Chemical Industry Council of Illinois (CICI) filed a Motion to Quash or in the Alternative for a Protective Order and Objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and to Testify at a Deposition in a Civil Action in the Central District of Illinois and a Memorandum in Support (assigned No. 11-mc-00010). Illinois Farm Bureau (IFB) and Philip Nelson filed a Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order and a Memorandum in Support and a Motion to Quash Subpoena for Deposition and Deposition Notice or in the Alternative for a Protective Order and Memorandum in Support in the Central District of Illinois (assigned No. 11-mc-01031). Illinois Fertilizer & Chemical Association (IFCA) filed a Motion to Quash or in the Alternative for a Protective Order and Objections to the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and to Testify at a Deposition in a Civil Action in the Central District of Illinois and a Memorandum in Support (assigned No. 11-mc-01032).

**March 9, 2011** – After a hearing, the Circuit Court of Cole County, Missouri entered an order reflecting the parties' agreement concerning all but two of the requests of production of documents from the Missouri Corn Growers Association and the Environmental Resource Council.

**March 9, 2011** – The University of Chicago filed a motion to quash the subpoenas and for a protective order.

**March 10, 2011** – Plaintiffs served their first supplemental responses to requests for production in the *Holiday Shores* litigation.

**March 11, 2011** – Magistrate Judge Cudmore in the Central District of Illinois (assigned No. 11-mc-00010) entered a Text Order directing Plaintiffs to file written responses to CICI's motion to quash by March 18, 2011 and further directing that the deposition of Mark Biel be held in abeyance pending the ruling on CICI's motion to quash.

**March 11, 2011** – Syngenta filed Notices of Joinder to the motions to quash subpoenas filed by CICI (assigned No. 11-mc-00010), IFCA (assigned No. 11-mc-01032), and IFB (assigned No. 11-mc-01031) in the Central District of Illinois.

**March 11, 2011** – Third Party National Corn Growers Association responded with two letters to the requests for production of documents contained in the subpoena.

**March 11, 2011** – The Court quashed the portion of the Rule 237(b) notices to Syngenta that required the personal appearance of counsel.  The court ordered that Syngenta produce all of the requested documents that had previously been produced in discovery, and supplement the responses of any discovery requests that previously or hereafter requested information related to the issue of retention of Dr. Coursey.

**March 14, 2011** - Syngenta served Plaintiffs with Rule 213(f) interrogatories. Plaintiffs asked the Court to allow Plaintiffs additional time in responding to Syngenta's Rule 213(f) interrogatories.

**March 14, 2011** - Syngenta filed second Notices of Joinder to the motions to quash subpoenas filed by CICI (assigned No. 11-mc-00010), IFCA (assigned No. 11-mc-01032), and IFB (assigned No. 11-mc-01031) in the Central District of Illinois.

**March 15, 2011** – The University of Chicago filed a motion to file its documents under seal for *in camera* review.

**March 16, 2011** – Plaintiffs filed a reply memorandum in opposition to Madelyn Lamb and Jason Winslow's motion to quash the subpoenas for testimony and production of documents.

**March 16, 2011** – The Court ordered the attorneys for the University of Chicago to produce any document requested by the subpoena that the University of Chicago

believed to be privileged for *in camera* review.  The Court clarified that the date of retention of Dr. Coursey had been established as being January 9, 2009, and that any communications prior to that date were "clearly discoverable" per the Court's prior orders.

**March 18, 2011** – Plaintiffs filed an Opposition to CICI's Motion to Quash Subpoena filed March 10, 2011 in the Central District of Illinois (assigned No. 11-mc-00010).

**March 21, 2011** – Syngenta filed a motion to compel, its supplemental response to Plaintiffs' renewed motion to compel; and its response to Plaintiffs' motion for sanctions.

**March 21, 2011** – Syngenta filed its response to Plaintiffs' motion for sanctions.

**March 24, 2011** – Third Party Heartland Institute filed a Motion to Quash Subpoena and Notice of Deposition and Objections Thereto with a Supporting Memorandum of Law in the *Greenville* litigation.

**March 24, 2011** – Dr. Coursey filed a combined motion to quash subpoena or for protective order and a response to Plaintiffs' motion for sanctions.

**March 25, 2011** – Syngenta filed a Notice of Joinder to Third Party Subpoena Recipients Heartland Institute and Joseph Bast's Motion to Quash, and Heartland Institute filed an Emergency Motion to Stay Subpoena and Deposition in the *Greenville* litigation.

**March 25, 2011** –Plaintiffs filed an Opposition to IFCA's motion to quash subpoena filed March 9, 2011, in the Central District of Illinois Central District of Illinois and a Memorandum in Support (assigned No. 11-mc-01032).

**March 28, 2011** – Plaintiffs filed a Motion to Re-Designate Documents Under the Protective Order in the *Greenville* litigation.  Plaintiffs filed a Combined Opposition to the IFB's Motions to Quash Subpoena & Deposition Notice filed March 9, 2011, in the Central District of Illinois (assigned No. 11-mc-01031).

**March 29, 2011** – Plaintiffs filed their motion for sanctions concerning documents in the possession of Syngenta's foreign parent and affiliate companies.

**March 29, 2011** – Plaintiffs filed a motion to file exhibits to their motion for sanctions under seal.  Plaintiffs filed the motion to comply with their obligations under the protective order entered on August 31, 2009, but informed the Court that

they believed that the exhibits designated as confidential by Syngenta did not meet the criteria of a confidential document under the Protective Order.

**March 29, 2011** – Plaintiffs filed their motion for sanctions concerning discovery related to atrazine distribution, sale, application, and market share.

**March 29, 2011** – Plaintiffs filed a Response in Opposition to The Heartland Institute and Joseph Bast's Motion to Quash and to Stay in the *Greenville* litigation.

**March 30, 2011** – At a hearing in front of Judge Mudge, Syngenta filed a public relations document under seal for *in camera* review.  The Court granted Plaintiffs 10 days to file responsive pleadings to Syngenta's filing of the sealed document.

**March 30, 2011** – Winslow and Lamb tender certificates of compliance with documents in response to the subpoenas.

**March 31, 2011** – Telephonic hearing in the *Greenville* litigation on motions to quash and deposition notices took place via telephone before Magistrate Judge Frazier.  Minute entry and order denying Heartland's motion to quash and denying Heartland's motion to stay entered the same day following the hearing.  An order denying Plaintiffs' motion to re-designate documents under the protective order was also entered the same day following the hearing.

**March 31, 2011** – Environmental Law and Policy Center and Prairie Rivers Network filed a motion for leave to intervene and memorandum in support in the *Greenville* litigation.

**April 1, 2011** – The Heartland Institute and Joseph Bast filed a Non-Party Recipients' Motion to Quash Subpoena and Notice of Deposition and Objections Thereto in the Northern District of Illinois (assigned No. 11-cv-02240).

**April 4, 2011** – Heartland and Bast filed a Memorandum of Law in Support of Non-Party Recipients' Motion to Quash Subpoena and Notice of Deposition and Objections Thereto filed April 1, 2011, and an Emergency Motion to Stay Subpoena and Deposition in the Northern District of Illinois (assigned No. 11-cv-02240).

**April 4, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed a Motion to Vacate the Protective Order and Unseal Documents in the Judicial Record in the *Greenville* litigation.

**April 7, 2011** – Plaintiffs filed their memorandum concerning the *in camera* review of Syngenta's public relations document.  Syngenta filed its objections and responses to Plaintiffs' 1st supplemental requests for production.

**April 8, 2011** – Syngenta filed a Reply to Plaintiffs' Opposition to Third Party Subpoena Recipient CICI's Motion to Quash filed March 18, 2011, in the Central District of Illinois (assigned No. 11-mc-00010).  Syngenta also filed a Motion to Quash Subpoena and Notice of Deposition Directed to the Heartland Institute and Notice of Joinder in the Northern District of Illinois (assigned No. 11-cv-02240).

**April 11, 2011** – Settlement conference held before Magistrate Judge Frazier.

**April 11, 2011** – Plaintiffs filed a motion to compel an answer to the Illinois Supreme Court Rule 213(f)(1) Interrogatories and a motion for protective order.. Plaintiffs had served Rule 213(f)(1) Interrogatories on Syngenta on September 29, 2010.  Syngenta did not provide any answer to these interrogatories.

**April 11, 2011** – IFB and Philip Nelson filed a Reply in Support of Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order filed March 9, 2011, and Syngenta filed a Reply in Support of IFB & Philip Nelson's Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order filed March 9, 2011, all in the Central District of Illinois (assigned No. 11-mc-01031).

**April 11, 2011** – Plaintiffs filed a reply to Coursey's and Bell's combined motion to quash subpoenas

**April 12, 2011** – Plaintiffs filed its reply to Syngenta's response to Plaintiffs' motion for sanctions.

**April 14, 2011** – Syngenta filed its memorandum in response to Plaintiffs' motion to file exhibits under seal, and its own motion to file exhibits under seal.  Syngenta noted the protocol under the Protective Order for changing the confidential designations, which required a meet and confer with the designating party, followed by the filing of a motion with the Court.

**April 14, 2011** – Counsel for Environmental Law and Policy Center and Prairie Rivers Network responds to Syngenta's subpoenas with a letter containing their objections.  Prairie Rivers Network filed a Motion to Quash Subpoena for Documents and Deposition with a Memorandum in Support in the Northern District of Illinois (assigned No. 11-mc-02025).  Syngenta filed a Reply to Plaintiffs Opposition to Third Party Subpoena Recipient IFCA's Motion to Quash or in the Alternative for a Protective Order in the Central District of Illinois Central District of Illinois and a Memorandum in Support (assigned No. 11-mc-01032).

**April 15, 2011** – The Court granted Syngenta's motion to file exhibits under seal.

**April 15, 2011** – Syngenta filed its memoranda in opposition to the motion for sanctions related to market share documents and related to foreign documents.

**April 15, 2011** – Magistrate Judge Cudmore entered a Text Order in the Central District of Illinois (assigned No. 11-mc-00010) noting that "staying any ruling on [CICI's motion to quash filed March 9, 2011] pending a decision on the petition before the Illinois Supreme Court is the correct and logical course of action." and taking the motion to quash under advisement.  Magistrate Judge Cudmore further directs the parties to file a status report.

**April 19, 2011** – Order entered in the *Greenville* litigation directing Defendants to show cause why the Court should not unseal every document in the case that has been filed under seal.

**April 20, 2011** – Order on Coursey and JTA documents entered.

**April 20, 2011** – Plaintiffs filed its motion to compel related to Syngenta's failure to adequately respond to Plaintiffs' supplemental requests for production of documents served on March 10, 2011.

**April 21, 2011** – Environmental Law and Policy Center and Prairie Rivers Network filed a notice of supplemental authority in support of their motion to quash filed April 14, 2011, in the Northern District of Illinois (assigned No. 11-cv-02521). Syngenta filed its brief in opposition to the motion to intervene in the *Greenville* litigation.

**April 22, 2011** – Prairie Rivers Network filed a Notice of Supplemental Authority to its motion to quash filed April 14, 2011, in the Central District of Illinois (assigned No. 11-mc-02025), and Plaintiffs filed Motions to Reconsider the Court's Orders Allowing Syngenta Leave to File a Reply Brief, Motions to Strike Syngenta's Reply Brief and Motions for Leave to File A Sur-Reply in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031).

**April 25, 2011** – Plaintiffs filed a motion for an extension of time in responding to Syngenta's response to the Plaintiffs' motion for sanctions regarding foreign documents.  In its response, Syngenta provided the Plaintiffs with previously undisclosed factual allegations, but little supporting evidence.  Plaintiffs sought an extension of time in order to take the deposition of a Syngenta employee with knowledge of Syngenta's intranet system.

**April 25, 2011** – Plaintiffs filed their memorandum in support of their motion for sanctions regarding discovery as to atrazine distribution, sale, application, and

market share.  Plaintiffs filed their motion to file certain exhibits under seal in compliance with the Protective Order.

**April 25, 2011** – Plaintiffs filed an Opposition to Heartland and Bast's Motions to Quash and to Stay Subpoena and Deposition and Syngenta's Motion to Quash filed in the Northern District of Illinois (assigned No. 11-cv-02240).  Plaintiffs filed a Motoin to Deny for Failure to Comply with Local Rule 78.2 Heartland and Bast's Motions to Quash and to Stay Subpoena and Deposition and Syngenta's Motion to Quash in the Northern District of Illinois (assigned No. 11-cv-02240).

**April 26, 2011** – Magistrate Judge Cudmore entered Text Orders in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031) denying Plaintiffs' motions for reconsideration and Plaintiffs' motions to strike filed April 22, 2011, and granting Plaintiffs motions for leave to file a sur-reply filed April 22, 2011. Heartland and Bast filed a Response to Underlying Plaintiffs' Motion to Deny for Failure to Comply with Local Rule 78.2 filed in the Northern District of Illinois (assigned No. 11-cv-02240).

**April 27, 2011** – Deposition notice and request for production of documents served on Syngenta's corporate designee (IT person).

**April 28, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed a reply brief in support of their motion for leave to intervene, and Plaintiffs filed a Motion for an Amended Scheduling Order in the *Greenville* litigation.  Judge Der Yeghiayan entered a Minute Entry denying Plaintiffs' motion to deny for failure to comply filed April 25, 2011, in the Northern District of Illinois (assigned No. 11-cv-02240).

**May 2, 2011** – Deposition of Greg Malcom.

**May 2, 2011** – Syngenta filed a Brief in Opposition to the Motion to Quash Subpoena filed by Prairie Rivers Network in the Central District of Illinois (assigned No. 11-mc-02025).

**May 3, 2011** – Plaintiffs served Syngenta with notice of the video evidence deposition of Byron Bailiff, Syngenta's IT employee with knowledge of the manner in which electronic information is stored, and Plaintiffs' request for production of documents in Mr. Bailiff's possession or control related to the subject matter of the deposition.

**May 3, 2011** – Plaintiffs serve its second amended deposition notice and request for production of documents on Sherry Ford a/k/a Sherry Duvall Ford.

**May 3, 2011** – Syngenta filed a Response to Plaintiffs' Motion for an Amended Scheduling Order in the *Greenville* litigation.

**May 4, 2011** – Syngenta filed a Reply to Plaintiffs' Opposition to Syngenta's Motion to Quash the Subpoena and Notice of Deposition Directed to Heartland filed April 25, 2011, in the Northern District of Illinois (assigned No. 11-cv-02240).

**May 5, 2011** – Plaintiffs filed a Sur-Reply in Opposition to IFCA's Motion to Quash filed March 9, 2011, in the Central District of Illinois (assigned No. 11-mc-01032). Heartland filed a Reply Memorandum in Further Support of the Motion to Quash the Subpoena of Heartland and to Quash the Notice of Deposition of Bast, and to Grant Heartland's Motion to Stay Discovery Northern District of Illinois (assigned No. 11-cv-02240).

**May 6, 2011** – Plaintiffs filed a Sur-Reply in Opposition to the Motions to Quash filed by IFB and Philip Nelson on March 9, 2011, in the Central District of Illinois (assigned No. 11-mc-01031).

**May 9, 2011** – Syngenta served Notices of Rule 30(b)(6) Deposition on Illinois-American Water Company; City of Marion; City of Plains; Iowa-American Water Company; City of Greenville; and City of Dodge City.  Syngenta also served its Responses to Plaintiffs' 1st Interrogatories and its First Supplemental Responses to Plaintiffs' First Requests for Production (filed in the *Greenville* litigation).

**May 10, 2011** – Plaintiffs filed a Reply Memorandum on Plaintiffs' Motion to Amend Scheduling Order in the *Greenville* litigation.

**May 11, 2011** –Syngenta filed a Brief in Opposition to the motion to quash filed April 14, 2011, by the Environmental Law and Policy Center and Prairie Rivers Network in the Northern District of Illinois (assigned No. 11-cv-02521).

**May 11, 2011** – Syngenta served its Initial Disclosures (in the *Greenville* litigation).

**May 12, 2011** – Motion hearing on the motion to amend scheduling order held in the *Greenville* litigation before Magistrate Judge Frazier.  Order entered granting Plaintiffs' motion for an amended scheduling order filed April 28, 2011, and directing Defendants to identify and cross-reference the documents filed in the Illinois case that are responsive to discovery requests served by Plaintiffs in this case.

**May 13, 2011** – Syngenta answered Plaintiffs' Rule 213(f)(1) interrogatories served on September 29, 2010.

**May 13, 2011** – Syngenta served its objections and responses to Plaintiffs' document rider to the notice of evidentiary deposition of Sherry Ford.

**May 13, 2011** – Syngenta filed its Response to Court's Order to Show Cause why the court should not unseal every document in the case in the *Greenville* litigation. A Memorandum and Order by Judge Der-Yeghiayan is entered in the Northern District of Illinois (assigned No. 11-cv-02240) granting Heartland and Bast's motion to quash subpoena and notice of deposition; striking as moot Heartland and Bast's motion to stay and Syngenta's motion to quash and notice of joinder; and terminating the instant action, all matters being concluded.

**May 17, 2011** – Plaintiffs receive a letter from counsel for the National Corn Growers Association which contains responses to the subpoena production requests.

**May 17, 2011** – Heartland filed a motion for leave to submit additional authority to the Illinois Supreme Court.

**May 18, 2011** – Plaintiffs took the deposition of Byron Bailiff in Chicago, Illinois.

**May 18, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed a Reply Brief in Support of its Motion to Quash Subpoena filed April 14, 2011, in the Northern District of Illinois (assigned No. 11-mc-02521).

**May 19, 2011** – Syngenta served its amended answers and responses to Plaintiffs' interrogatories, requests for production of documents, and supplemental requests for production of documents.

**May 19, 2011** – Syngenta filed a petition for leave to submit additional authority to the Illinois Supreme Court.

**May 20, 2011** – Syngenta filed additional authority in support of its petition for leave to appeal to the Illinois Supreme Court.

**May 20, 2011** – Plaintiffs filed a Response to Syngenta AG's Response to the Court's Order to Show Cause in the *Greenville* litigation.

**May 24, 2011** – Plaintiffs filed responses to Syngenta's and Heartland's motion for leave to submit supplemental authority in support of their petitions for leave to appeal.  Plaintiffs also filed motions for leave to file under seal instanter materials containing confidential information.

**May 24, 2011** – Plaintiffs filed a Motion for Leave to Supplement Authority in the *Greenville* litigation.

**May 27, 2011** – Order entered granting Plaintiffs' Motion for Leave to Supplement Authority in opposition to Syngenta AG's motion to dismiss for lack of personal jurisdiction filed May 24, 2011, in the *Greenville* litigation.

**June 1, 2011** – Plaintiffs and Syngenta filed a Joint Status Report in the Central District of Illinois (assigned No. 11-mc-00010).

**June 2, 2011** – Plaintiffs filed their supplemental memorandum in support of the motion for sanctions regarding foreign documents in the *Greenville* litigation.

**June 2, 2011** – Syngenta filed a motion for entry of a protective order regarding the subpoena and notice of deposition directed to the National Corn Growers Association in the St. Louis County Circuit Court, Missouri.

**June 2, 2011** –In a Text Order entered by Magistrate Judge Cudmore in the Central District of Illinois (assigned No. 11-mc-00010) notes that he has reviewed the joint status report and that CICI's motion to quash filed March 9, 2011, remains under advisement, and the deposition of Mark Biel remains held in abeyance.

**June 3, 2011** – Plaintiffs filed Motions to Cite Additional Authority (*In re Motor Fuel Temperature Sales Practice Litigation*) in support of its oppositions to IFCA's and IFB's motions to quash subpoena filed March 9, 2011 in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031).  Magistrate Judge Cudmore granted Plaintiffs' motions to cite additional authority in Text Orders entered the same day.

**June 6, 2011 –** The Illinois Supreme Court granted Syngenta's and Heartland's motions for leave to submit additional authority.

**June 7, 2011** – Plaintiffs filed motions for leave to cite additional authority in opposition to Syngenta and Heartland's petitions for leave to appeal in the Illinois Supreme Court.

**June 8, 2011** – Syngenta AG served its Response to Plaintiffs' Supplemental Authority in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction and Syngenta served Notices of Rule 30(b)(6) Deposition on the City of Plains and the City of Marion in the *Greenville* litigation.

**June 9, 2011** – Plaintiffs filed their motion for a protective order, asking the Court to remove the Syngenta's confidential designations placed on documents related to Sherry Ford that did not fit the definition of a confidential document in the Protective Order entered on August 31, 2009.  Plaintiffs also filed a motion to file

the exhibits, which consisted of several Sherry Ford documents, under seal in compliance with the Protective Order.

**June 9, 2011** – Deposition of Sherry Ford a/k/a Sherry Duvall Ford

**June 9, 2011** – IFB and Philip Nelson filed a Response to Plaintiffs' Motion to Cite Additional Authority filed June 3, 2011, and a Motion to Cite Additional Authority in support of their reply filed April 11, 2011 in the Central District of Illinois (assigned No. 11-mc-01031).

**June 10, 2011** – Syngenta filed a Motion to Submit Additional Authority in Support of Third Party Subpoena Recipient IFCA's Motion to Quash Subpoena to Produce Documents or in the Alternative for a Protective Order and a Response to Plaintiffs' Motion to Cite Additional Authority in the Central District of Illinois (assigned No. 11-mc-01032). Syngenta also filed a Motion to Submit Additional Authority in Support of IFB and Philip Nelson's Motion to Quash Subpoena or Alternative for a Protective Order filed March 9, 2011, and a Response to Plaintiffs' Motion to Cite Additional Authority filed June 3, 2011, in the Central District of Illinois (assigned No. 11-mc-01031). IFCA filed a Motion to Cite Additional Authority and a Response to Plaintiffs' Motion to Cite Additional Authority in the Central District of Illinois (assigned No. 11-mc-01032). Plaintiffs filed a Motion to Reconsider the Court's Order on the Heartland and Bast's Motions to Quash and to Stay Subpoena and Deposition filed May 13, 2011, in the Northern District of Illinois (assigned No. 11-cv-02240).

**June 13, 2011** – The Court granted Plaintiffs' motions to file the following documents under seal: the Sherry Ford documents attached as exhibits to the motion for a protective order filed on June 9, 2011, the exhibits to the motion for sanctions related to market share, and the exhibits to the motion for sanctions related to foreign documents.

**June 13, 2011** – Syngenta filed its response to Plaintiffs' motion for leave to cite additional authority.

**June 15, 2011** – Syngenta filed its response to Plaintiffs' supplemental memorandum in support of its motion for sanctions related to foreign documents in Syngenta's possession or under its control.

**June 15, 2011** – The Illinois Supreme Court allowed Plaintiffs' motions for leave to cite additional authority (*In re Motor Fuel Temperature Sales Practice Litigation*).

**June 15, 2011** – Plaintiffs filed additional authority with the Illinois Supreme Court.

**June 16, 2011** – Judge Der-Yeghiayan in the Northern District of Illinois (assigned No. 11-cv-02240) entered an Opinion denying Plaintiffs' motion for reconsideration filed June 10, 2011.

**June 20, 2011** – Syngenta filed a new privilege log and five separate memorandum of law related to its privilege log. Syngenta filed a separate privilege log relating to "FIFRA" documents that it had produced but was seeking to claw back under the Protective Order. Syngenta filed, for the first time, affidavits of Janis McFarland, Syngenta's head of regulatory affairs, in support of the privilege log.

**June 20, 2011** – Syngenta filed a memorandum of law in response to Plaintiffs' brief regarding privilege log issues: FIFRA data compensation-related materials.

**June 20, 2011** – Plaintiffs filed a notice pursuant to Supreme Court Rule 237(b) directed to Janis McFarland for her appearance at the hearing on June 22, 2011, for testimony concerning the affidavits filed on the afternoon of June 20, 2011.

**June 22, 2011** – The Court held a hearing on Plaintiffs' motions to compel filed November 1, 2010, and February 16, 2011, including the *in camera* inspection of documents on Syngenta's new privilege logs. The Court also heard argument concerning Plaintiffs' motion for a protective order filed June 3, 2011, and the motion to quash filed by Ray Bell and Don Coursey on March 25, 2011. Syngenta served its response to Plaintiffs' motion for protective order. The Court took all of these motions under advisement.

**June 24, 2011** – Plaintiff issues subpoenas to 13 atrazine dealer/applicators in Illinois (captioned in both the HSSD and Greenville cases).

**June 24, 2011** – Syngenta served Amended Notices of Rule 30(b)(6) Deposition on the City of Greenville, the City of Dodge City, the City of Carbondale, Miami County Rural Water District No. 2, the Village of Ottawa, and the City of Concordia.

**June 27, 2011** – Magistrate Judge Cudmore entered Text Orders in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031) noting that "staying any ruling on [IFCA's motion to quash filed March 9, 2011] pending a decision on the petition before the Illinois Supreme Court is the correct and logical course of action." and taking the motions to quash under advisement. Magistrate Judge Cudmore further directs that the depositions of Jean Payne and Philip

Nelson be held in abeyance and directs the parties to file a status report.  Plaintiffs filed Responses to IFB's and IFCA's Motions to Cite Additional Authority in Support of their Motions to Quash and Motions for Leave to File Documents Under Seal relating to the documentary exhibits in support of their responses filed this date in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031).

**June 28, 2011** – Deposition of Marion, Kansas.

**June 28, 2011** – Magistrate Judge Cudmore entered Text Orders allowing Plaintiffs' motions to file documents under seal filed June 27, 2011, in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031).

**June 29, 2011** – Deposition of Marion, Kansas.

**June 30, 2011** –In the Central District of Illinois (assigned No. 11-mc-02025), Prairie Rivers Network is allowed to file its Reply Brief in Support of its Motion to Quash Subpoena filed April 14, 2011, pursuant to a Text Order entered by Magistrate Judge Cudmore.  Judge Cudmore also entered an Opinion allowing the motion to quash filed by Prairie Rivers Network and quashing Syngenta's subpoena issued to Prairie Rivers Network.

**June 30, 2011** – Plaintiff issues notices of deposition to 13 atrazine dealer/applicators in Illinois (captioned in both the HSSD and Greenville cases).

**July 1, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed a notice of supplemental authority and a corrected notice of supplemental authority in the Northern District of Illinois (assigned No. 11-cv-02521).

**July 1, 2011** – Plaintiff issues subpoenas to 79 atrazine dealer/applicators in Illinois (captioned in both the HSSD and Greenville cases).

**July 6, 2011** –Plaintiffs and Syngenta filed a Joint Status Reports in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031).

**July 6, 2011** – Syngenta AG filed a Motion for Leave to Cite Supplemental Authority in Support of its Motion to Dismiss in the *Greenville* litigation.

**July 7 and 8, 2011** – Depositions of Greenville, Illinois.

**July 8, 2011** – Syngenta filed two emergency combined motiona to quash the subpoenas or, in the alternative, motion for entry of a protective order (one filed in No. 11-cv-04638 and the other in No. 11-mc-00040, both in the Central District of

Illinois).  Syngenta states in the motions that Plaintiffs have issued and served approximately 100 subpoenas and "some indications are that almost 150 subpoenas intend to be served."  Objections to the subpoenas are received from certain atrazine dealer/applicators (St. Clair Service Company; M&M Service Company; Madison Service Company; Evergreen FS, Inc; Ag-Land FS Inc.; Heritage FS Inc.; Grainco FS, Inc.; Gateway FS, Inc.; Killam Flying Service; and Hamel Seed & Farm Supply, Inc.).

**July 8, 2011** – Syngenta filed an emergency combined motion to quash subpoenas duces tecum or alternate motion for entry of protective order and a motion to amend it in the *Greenville* litigation.

**July 11, 2011** – Syngenta filed a Motion to Amend its Emergency Combined Motion to Quash the Subpoenas Duces Tecum or, in the Alternative, Motion for Entry of a Protective Order filed July 8, 2011, in the Central District of Illinois (assigned No. 11-cv-04638).

**July 11, 2011** – Objections to the subpoenas are received from certain atrazine dealer/applicators (Akron Services, Inc. and South Central FS, Inc.) in the *Greenville* litigation.

**July 11, 2011** – Plaintiff issues notices of deposition to 79 atrazine dealer/applicators in Illinois (captioned in both the HSSD and Greenville cases).

**July 11, 2011** – All parties filed a Stipulation of Dismissal which pertains to the voluntary dismissal without prejudice of all claims against Defendants by Plaintiffs the City of Plains, Kansas, and the City of Dodge City, Kansas in the *Greenville* litigation.

**July 11, 2011** – Order entered in the *Greenville* litigation denying Syngenta's emergency combined motion to quash the subpoenas or, in the alternative, motion for entry of a protective order filed July 8, 2011, and granting Syngenta's motion to amend that emergency motion filed the same day.

**July 12, 2011** – Plaintiffs filed a motion for protective order seeking to have the deposition of Sherry Ford taken on June 9, 2011, be ruled not confidential under the protective order.  Syngenta's counsel did not state on the record that the deposition was confidential in accordance with the Protective Order.  Two weeks later, Syngenta's counsel sent a letter to the court reporter stating that certain lines of the testimony were confidential.  Plaintiffs also filed a motion to file the deposition under seal to comply with the Protective Order.

**July 12, 2011** – Plaintiffs filed a Notice of Appeal to the 7th Circuit Court of Appeal (assigned No. 11-2596) from the May 13, 2011, Order entered by Judge Der-Yeghiayan in the Northern District of Illinois (assigned No. 11-cv-02240).

**July 12, 2011** – Objections to the subpoenas are received from certain atrazine dealer/applicators (Golden Opportunity Farms, Inc.; Crop Production Services, Inc.; B&B Ag Products; Brandt Consolidated Inc.; Cullom Crop Service, Inc.; Herrin Limited; JR's Crop Service; Meriden Grain Co.; and St. Peter AG Service-Lotz Trucking).

**July 13, 2011** – A Memorandum and Order is entered by Judge Darrah in the Northern District of Illinois (assigned No. 11-cv-02521) granting Environmental Law and Policy Center and Prairie Rivers Network's motion to quash filed April 14, 2011.

**July 13, 2011** – Plaintiffs served a subpoena on Christopher Robling of Jayne Thompson and Associates for a video evidentiary deposition on July 22, 2011.

**July 13, 2011** – Named plaintiffs filed their First Amended Rule 26(a)(1) Initial Disclosures and First Amended Objections and Answers to First Interrogatories (filed in the *Greenville* litigation).

**July 14, 2011** – Syngenta filed a response to Plaintiffs' motion for a protective order related to the deposition of Sherry Ford filed on July 12, 2011.  Syngenta also filed a response to Plaintiffs' request for a protective order regarding Sherry Ford-related confidential documents.

**July 14, 2011** - Objections to the subpoenas are received from certain atrazine dealer/applicators (C&L Holzwarth, Inc; Dotterer Farms, Inc.; Effingham Equity; Elkhart Fertilizer Service; Flanagan Fertilizer Company; Mike Grelck (served on "Pioneer Seed Dealer"); Lake Fork Fertilizer Service; Leone Grain & Supply, Inc.; Stark Agriculture Services, Inc.; and Woolsey Brothers Farm Supply, Inc.).

**July 15, 2011** – The Court held a hearing on Plaintiffs' motions for protective orders filed on June 9, 2011, and July 12, 2011.  Syngenta agreed and the Court ordered that all but the documents specifically identified in the order from the exhibits attached to the June 9th motion were not confidential.  The Court stated that it would review Ms. Ford's deposition testimony and the other documents *in camera* and issue a ruling after its review.  The Court further ordered Syngenta to identify all of the documents in Plaintiffs' Exhibit 6 that it alleges meet the terms of

the Protective Order entered on August 31, 2009.  Any documents not so designated by September 16, 2011, were deemed not confidential.

**July 15, 2011** - Objections to the subpoenas are received from certain atrazine dealer/applicators (Croft Fertilizer Service, Inc.; Pontiac Flying LLC; and Trainor Grain & Supply Company).

**July 15, 2011** – Syngenta filed its Motion to Compel Plaintiffs to Provide Complete Interrogatory Responses and Initial Disclosures and to Produce Water Testing Results & Memorandum in Support in the *Greenville* litigation.

**July 18, 2011** – Order entered in the *Greenville* litigation denying Syngenta AG's Motion for Leave to Cite Supplemental Authority in Support of its Motion to Dismiss filed July 6, 2011.

**July 18, 2011** – Memorandum and Order entered in the *Greenville* litigation dismissing without prejudice the City of Dodge City and the City of Plains.

**July 20, 2011** – Deposition of Carbondale, Kansas.

**July 20, 2011** – Plaintiffs filed its reply brief in response to Syngenta's memorandums filed on July 14, 2011, and in response to factual allegations made during the hearing on July 15, 2011, related to the deposition of Sherry Ford. Plaintiffs' filed as an exhibit the affidavit of Rosemarie Fiorillo, one of Plaintiffs' attorneys of record, who was at the deposition.

**July 20, 2011** - Objections to the subpoenas are received from certain atrazine dealer/applicators (Bockhorn Ag Inc.; Earlville Farmers Cooperative; and Inness Farm Supply).

**July 21, 2011** – A Memorandum and Order in the *Greenville* litigation by Judge Gilbert releasing some documents filed under seal and granting Environmental Law and Policy Center and Prairie Rivers Network's motion for leave to intervene but limiting their access to sealed documents is entered.  Judge Gilbert also refers the intervenor's motion to vacate the protective order to Magistrate Judge Frazier.

**July 22, 2011** – Deposition of Christopher Robling and Miami County Rural Water District #2.

**July 22, 2011** – Syngenta filed a motion to strike the affidavit of Rosemarie Fiorillo.

**July 22, 2011** - Objections to the subpoenas are received from a certain atrazine dealer/applicator (Brimfield Agri Services, Inc.).

**July 25, 2011** – Order entered in the *Greenville* litigation striking Syngenta's Motion to Compel Plaintiffs to Provide Complete Interrogatory Responses and Initial Disclosures and to Produce Water Testing Results filed July 15, 2012.

**July 26, 2011** – Plaintiffs filed a Motion for Leave to Amend Complaint, and Syngenta served Notices of Rule 30(b)(6) Deposition on the City of Oswego, Creston Municipal Authorities, and the City of Upper Sandusky in the *Greenville* litigation.

**July 26 and 27, 2011** – Depositions of Ottawa, Ohio.

**July 27, 2011** – Hearing held on motion to dismiss for lack of jurisdiction before Judge Gilbert.

**July 27, 2011** - Objections to the subpoenas are received from certain atrazine dealer/applicators (Northern Partners Cooperative and Tri AG, Inc.).

**July 27, 2011** – Order entered denying Plaintiffs' Motion to Strike Syngenta AG's Declarations filed December 21, 2010.

**July 28 and 29, 2011** – Depositions of Concordia, Missouri.

**August 1, 2011** – Syngenta filed a motion for leave to file a sur-reply to Plaintiffs' memorandum of July 20, 2011.

**August 1, 2011** – The Court allows Syngenta's motion to file a sur-reply, and ordered the sur-reply attached as exhibit 1 to the motion to be deemed filed by the Clerk.

**August 1, 2011** – Plaintiffs serve Second Requests for Production of Documents to Syngenta (filed in the *Greenville* litigation).

**August 2, 2011** – Plaintiffs filed a memorandum in opposition to Syngenta's motion to strike the affidavit of Rosemarie Fiorillo.

**August 2, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed a Motion for Leave to File a Motion for Reconsideration and Memorandum in Support Instanter in the *Greenville* litigation.

**August 4, 2011** - Objections to the subpoenas are received from certain atrazine dealer/applicators (Belpark Limited and Walter Seed & Fertilizer Inc.).

**August 4, 2011** – Syngenta filed its Response to Intervenors' Motion to Vacate the Protective Order in the *Greenville* litigation.

**August 5, 2011** – Deposition of Oswego, Kansas.

**August 5, 2011** - Environmental Law and Policy Center and Prairie Rivers filed their Reply to Defendants' Response to Court's Order to Show Cause in the *Greenville* litigation.

**August 8, 2011** – Syngenta filed a Memorandum in Opposition to Plaintiffs' Motion to Amend Complaint in the *Greenville* litigation.

**August 11, 2011** – Order entered in the *Greenville* litigation by Magistrate Judge Frazier denying the Intervenors' motion to vacate the protective order.

**August 12, 2011** – Plaintiff filed its opposition to Syngenta's motion for entry of a protective order filed June 2, 2011, in St. Louis County Circuit Court.

**August 15, 2011** – Plaintiffs filed a Reply in Support of Motion for Leave to Amend in the *Greenville* litigation.

**August 17, 2011** – Syngenta and Syngenta AG filed a Response to Intervenors' Motion for Reconsideration in the *Greenville* litigation.

**August 23, 2011** – Plaintiffs file their opening brief and appendix in their appeal before the 7th Circuit Court of Appeals (assigned No. 11-2596).

**August 25, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed an appeal and Request for Reconsideration of the Magistrate Judge's Order Issued August 11, 2011, in the *Greenville* litigation.

**September 7, 2011** – The cause filed by the National Corn Growers Association in St. Louis County, Missouri, is dismissed without prejudice by the Court.

**September 8, 2011** – Syngenta filed a Memorandum in Opposition to Plaintiffs' Motion to Amend Complaint in the *Greenville* litigation.

**September 9, 2011** – Syngenta served Amended Notices of Rule 30(b)(6) Deposition on the Village of Monroeville, the City of Upper Sandusky, Chariton Municipal Waterworks, Iowa-American Water Company, the Village of Farina, and Creston Municipal Utilities.

**September 12, 2011** – Status conference held before Magistrate Judge Frazier.

**September 13, 2011** – Jere L. White, Kansas Corn Growers Association, and Kansas Grain Sorghum Producers Association filed a motion to quash or modify subpoenas and objection to the production of documents in Anderson County District Court, Kansas.

**September 14, 2011** – Plaintiffs filed a Second Amended Complaint after the granting of its Motion for Leave to Amend Complaint filed July 26, 2011, in a Memorandum and Order entered in the *Greenville* litigation on this date.

**September 14, 2011** – Plaintiffs filed a Joint Motion for an Amended Scheduling Order, and Syngenta served Second Amended Notices of Rule 30(b)(6) Deposition served on: Creston Municipal Utilities; the Village of Monroeville; Iowa-American Water Company; and the City of Jasper in the *Greenville* litigation.

**September 15, 2011** –Plaintiffs and Syngenta filed Joint Status Reports in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031).

**September 16, 2011** – Order entered in the *Greenville* litigation denying Environmental Law and Policy Center and Prairie Rivers Network's Motion for Leave to File a Motion for Reconsideration filed August 2, 2011, and overruling the appeal filed August 25, 2011.

**September 21, 2011** – Syngenta files its answer brief to Plaintiffs' appeal before the 7th Circuit Court of Appeals (assigned No. 11-2596).

**September 21, 2011** – Creston Municipal Utilities filed its Second Amended Objections and Answers to SCP's 1st Interrogatories (filed in the *Greenville* litigation).

**September 26, 2011** – Heartland files its answer brief to Plaintiffs appeal before the 7th Circuit Court of Appeals (assigned No. 11-2596).

**September 27, 2011** – The City of Jasper filed its Second Amended Objections and Answers to SCP's 1st Interrogatories (filed in the *Greenville* litigation).

**September 28, 2011 –** The Illinois Supreme Court denying Heartland's petition for leave to appeal

**September 29, 2011** – Plaintiffs filed a Motion to Voluntarily Dismiss its appeal before the 7th Circuit Court of Appeals (assigned No. 11-2596).

**September 30, 2011** – Plaintiff filed its motion regarding email correspondence copied to Alan Nadel, Syngenta's in-house counsel.

**September 30, 2011** – The 7th Circuit Court of Appeals entered an Order denying Plaintiffs' motion to voluntarily dismiss filed September 29, 2011, without prejudice to renewal in a motion which indicates how any costs will be paid.  Plaintiffs filed a second Motion to Voluntarily Dismiss its appeal before the 7th Circuit Court of Appeals (assigned No. 11-2596).  The 7th Circuit Court of Appeals enters a second Order dismissing Plaintiffs appeal based on Plaintiffs' second motion for voluntary dismissal filed the same day.  Plaintiffs and Syngenta filed a Supplemental Joint Status Report in the Central District of Illinois (assigned No. 11-mc-00010).

**October 11, 2011** – Syngenta filed a Motion to Dismiss and accompanying Memorandum in Support asking the Court to dismiss Count V and paragraph (e) of the prayer of Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) in the *Greenville* litigation.

**October 12, 2011** – Deposition of Jasper, Indiana.

**October 17, 2011** – Syngenta filed its response to Plaintiffs' motion to compel.

**October 17, 2011** – In Text Orders entered by Magistrate Judge Cudmore in the Central District of Illinois (assigned Nos. 11-mc-00010, 11-mc-01031, and 11-mc-01032), he notes that the Illinois Supreme Court has denied the petition for leave to appeal and will proceed with consideration of CICI's, IFB's, and IFCA's motions to quash filed March 9, 2011.

**October 17, 2011** – Syngenta served a Notice of Rule 30(b)(6) Deposition on the City of Gillespie.

**October 17, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed a Notice of Appeal of Collateral Order and Alternative Motion for Certification of partial Final Judgment Pursuant to Rule 54(B).

**October 18, 2011** - Plaintiff issues subpoenas and deposition notices to 15 atrazine dealer/applicators in Indiana and Missouri (captioned only in the *Greenville* case).

**October 19, 2011** – Chariton Municipal Waterworks filed its Second Amended Objections and Answers to SCP's 1st Interrogatories (filed in the *Greenville* litigation).

**October 20, 2011** – The parties reach an agreement concerning the motion for a protective order filed on July 12, 2011, concerning the deposition of Sherry Ford. The Court entered an order memorializing the agreement.  Plaintiffs no longer

contested the confidentiality of 24 lines of testimony and 1 line of 1 exhibit. Syngenta no longer asserted that any other portion of the testimony was confidential under the Protective Order.  Plaintiffs withdrew as moot its motion for a protective order filed on July 12, 2011, and the affidavit of Rosemarie Fiorillo filed on July 20, 2011.

**October 20, 2011** – The parties reached an agreement concerning Plaintiffs' motion to compel filed on April 20, 2011.  The parties agreed to continue to meet and confer regarding RFPs number 117, 119, 120, 121, 141, 151, 152, 154, 157, and 158. Syngenta agreed to produce full and complete answers to the other supplemental requests for production of documents by November 21, 2011.

**October 20, 2011** - Environmental Law and Policy Center and Prairie Rivers Network filed a Motion for Certification of Partial Final Judgment Pursuant to Rule 54(B) and a Notice of Appeal of Collateral Order in the *Greenville* litigation.

**October 21, 2011** – Subpoenas served on GLG Consulting LLC and Gregory Guenther.

**October 21, 2011** – Syngenta filed a memorandum with the St. Louis County Circuit Court withdrawing its motion for entry of a protective order relating to the subpoena and notice of deposition directed to National Corn Growers Association.

**October 21, 2011** – The Court of Appeals entered an order suspending briefing and ordering Environmental Law and Policy Center and Prairie Rivers Network to file a brief memorandum why the appeal should not be dismissed for lack of jurisdiction.

**October 25, 2011** – The City of Gillespie filed its Second Amended Objections and Answers to SCP's 1st Interrogatories.

**October 25, 2011** – Plaintiff served its second amended objections and answers to Syngenta's first interrogatories and the City of Gillespie filed its Second Amended Objections and Answers to SCP's 1st Interrogatories (filed in the *Greenville* litigation).

**October 26, 2011** – Magistrate Judge Cudmore entered Text Orders allowing IFCA's, IFB's, and Syngenta's motions to cite authority filed June 10, 2011, in the Central District of Illinois (assigned Nos. 11-mc-01032 and 11-mc-01031).

**October 26 and 27, 2011** – Depositions of Gillespie, Illinois.

**October 27, 2011** – Plaintiffs served amended deposition notices and requests for production of documents on certain Syngenta employees (dates & times to be

determined at a later time) Jennifer Shaw, Tim Pastoor, Peter Hertl, Marian Stypa, Janis McFarland, Dirk Drost, Charles Breckenridge, Andrew Merritt, and Paul Hendley. Plaintiffs also served new deposition notices and requests for production of documents on Syngenta employees (dates & times to be determined at a later time) Alan Hosmer, Beth Carroll, Jeff Fowler, John Ashby, Dennis Tierney, Dave Flakne, Gene Hill, and Dennis Kelly.

**October 27, 2011** - Environmental Law and Policy Center and Prairie Rivers filed a Motion for Extension of Time to File Notice of Appeal. Magistrate Judge Cudmore in the Central District of Illinois entered duplicative Opinions in Nos. 11-mc-00010, 11-mc-01031, and 11-mc-01032, allowing CICI's, IFB's, and IFCA's motions to quash filed March 9, 2011.

**October 27, 2011** – Plaintiffs serve amended deposition notices on GLG Consulting LLC and Gregory Guenther.

**October 27, 2011** – The Village of Monroeville filed its Second Amended Objections and Answers to SCP's 1st Interrogatories (filed in the *Greenville* litigation).

**October 31, 2011** – Syngenta filed a response and motion to strike or dismiss Plaintiffs' motion regarding email correspondence to Alan Nadel.

**November 2, 2011** – The Court held an evidentiary hearing on the motion for sanctions regarding Don Coursey and a hearing on Plaintiffs' motion for sanctions regarding foreign documents, Plaintiffs' motion concerning email correspondence copied to Alan Nadel, and Syngenta's motion to compel regarding Holiday Shores' response to Interrogatory No. 26. After a daylong hearing, the Court took these matters under advisement.

**November 2, 2011** – Heartland filed a motion for reconsideration of the Court's order of September 22, 2010. The Court heard arguments on Heartland's motion for reconsideration and Plaintiffs' oral motion to lift the discovery stay entered on October 29, 2010.

**November 2, 2011** – Deposition of Chariton Municipal Waterworks.

**November 3, 2011** – Syngenta filed its objections to Plaintiffs' subpoenas directed to Greg Guenther and GLG Consulting LLC.

**November 3, 2011** – University of Chicago filed a motion for reimbursement of costs.

**November 3, 2011** – Syngenta filed a Response to Intervenors' motion for certification of partial final judgment and served a Notice of Rule 30(b)(6) Deposition on the Village of Evansville in the *Greenville* litigation.

**November 4, 2011** – Memorandum and Order entered in the *Greenville* litigation by Judge Gilbert granting an extension to file Intervenors' notice of appeal and dismissing the Intervenors' motion for a Rule 54(B) judgment. Syngenta filed a motion to dismiss. Intervenors filed a Jurisdictional Memorandum per the Court's order of October 21, 2011.

**November 7, 2011** – The Court issued an order stating that Syngenta and Dr. Coursey were to produce to Plaintiffs all documents related to Dr. Coursey or responsive to the subpoenas served on Dr. Coursey by November 23, 2011, or advise the Court and counsel before then if that deadline cannot be met. The Court further ordered that any documents withheld pursuant to a claim of privilege had to be logged on a privilege log that was to be produced to Plaintiffs by November 23, 2011.

**November 7, 2011** – Plaintiffs submit an Outline of Discovery Disputes to the Court pursuant to the Court's Order of November 3, 2011.

**November 8, 2011** – The Village of Evansville filed Objections to Syngenta's Notice of Rule 30(b)(6) Deposition.

**November 10, 2011** – Deposition of Monroeville, Ohio.

**November 10, 2011** – Plaintiffs serve a Notice of Video Deposition on Syngenta at a date and time to be determined by the parties.

**November 10, 2011** – Plaintiffs serve amended deposition notices and requests for production of documents on Dirk Drost, Janis McFarland, Beth Carroll, Charles Breckenridge, Tim Pastoor, Jennifer Shaw, Alan Hosmer, Paul Hendley, Andrew Merritt, Dennis Tierney, Marian Stypa, and Peter Hertl.

**November 10, 2011** – Responses and objections to the subpoenas are received from certain atrazine dealers/applicators (Cameron Cooperative, Superior AG, and Double S Chemical Supply) (filed in the *Greenville* litigation).

**November 10, 2011** – Syngenta filed a motion for order maintaining confidentiality designations under the protective order and a memorandum in support in the *Greenville* litigation.

**November 11, 2011** - Objections to the subpoenas are received from a certain atrazine dealer/applicator (Crop Production Services).

**November 14, 2011** – Responses and objections to the subpoenas are received from certain atrazine dealers/applicators (McGrawsville Feed & Grain Co., Inc. and John Deere Landscapes, Inc.) (filed in the *Greenville* litigation).

**November 14, 2011** – Syngenta filed a motion to dismiss Intervenors' appeal in the 7th Circuit Court of Appeals (assigned No. 11-3377), and Plaintiffs filed an Opposition to Syngenta's Motion to Dismiss Declaratory Relief Count filed October 11, 2011, in the *Greenville* litigation.

**November 14, 2011** – Syngenta served a Notice of Rule 30(b)(6) Deposition on the Village of Coulterville and filed its Outline of Responses to Plaintiffs' Discovery Disputes pursuant to the Court's Order of November 3, 2011.

**November 15 and 16, 2011** – Depositions of Farina, Illinois.

**November 27, 1011** – Deposition of Creston Municipal Utilities.

**November 17, 2011** - Objections and responses to the subpoenas are received from certain atrazine dealers/applicators (Kokomo Rural King Supply, Inc. and Geoponic Enterprises) (filed in the *Greenville* litigation).

**November 18, 2011** – Growmark filed its answer to the second amended class action complaint amended by interlineation.

**November 21, 2011** – Syngenta filed its supplemental response to Plaintiffs' motion for sanctions concerning foreign documents.

**November 21, 2011** – Syngenta served its amended objections and responses to Plaintiffs' first supplemental requests for production of documents.

**November 21, 2011** – Syngenta served its second amended objections and responses to Plaintiffs' first supplemental requests for production of documents.

**November 23, 2011** – Jayne Thompson and Jayne Thompson & Association, Ltd. filed a Motion for Protective Order filed November 3, 2011, in the Northern District of Illinois (assigned No. 11-cv-08387).

**November 23, 2011** – Plaintiffs filed a Response in Opposition to Defendant Syngenta's Motion for an Order to Maintain Confidentiality Designations and the

City of Upper Sandusky served its Second Amended Objections and Answers to SCP's 1st Interrogatories in the *Greenville* litigation.

**November 23, 2011** – Memorandum and Order entered in the *Greenville* litigation denying Plaintiffs' Motion to Strike Syngenta AG's Declarations filed December 21, 2010, and denying Syngenta AG's Motion to Dismiss for Lack of Jurisdiction filed May 18, 2010.

**November 23, 2011** – Discovery dispute conference held in the *Greenville* litigation before Magistrate Judge Frazier.  Order entered granting in part Plaintiffs' oral motion to compel discovery and modifying the Scheduling and Discovery Order.

**November 28, 2011** – Order entered in the *Greenville* litigation striking Syngenta's sealed Memorandum in Support of its Motion for Order Maintaining Confidentiality Designations Under the Protective Order.

**November 30, 2011** – Syngenta filed Motions for Summary Judgment on the Claims of Plaintiffs City of Marion, Kansas, and City of Greenville, Illinois, with Memorandums in Support in the *Greenville* litigation.  Syngenta also filed Motions for Oral Arguments on these motions for summary judgment in the *Greenville* litigation.

**December 5, 2011** - Environmental Law and Policy Center and Prairie Rivers Network file an Opposition to Syngenta's motion to dismiss.

**December 5, 2011** – Supplemental Protective Order regarding the water monitoring center database entered in the *Greenville* litigation.

**December 7, 2011** – Plaintiffs served 3rd amended deposition notices served on Janis McFarland.

**December 8, 2011** – Deposition of Upper Sandusky, Ohio.

**December 8, 2011** – Plaintiffs filed a Response in Opposition to Jayne Thompson and Jayne Thompson & Association's Motion for Protective Order in the Northern District of Illinois (assigned No. 11-cv-08387).

**December 9, 2011** – Plaintiffs filed a Rule 56(d) Motion to Defer Consideration of Syngenta's Motions for Summary Judgment or, in the Alternative, for an Extension of Time to Respond in the *Greenville* litigation.

**December 12, 2011** – Syngenta filed a Reply in support of its motion to dismiss, and Plaintiffs serve a Cross-Notice of Deposition on Janis McFarland.

**December 14, 2011** – Plaintiffs served 4th amended deposition notices served on Janis McFarland.

**December 14, 2011** – Deposition of Iowa-American Water Company.

**December 15, 2011** – Syngenta AG filed a Motion for Reconsideration and Supporting Memorandum, and Plaintiffs serve First Requests for Production of Documents on Syngenta AG in the *Greenville* litigation.

**December 16, 2011** - Responses to the subpoenas are received from a certain atrazine dealer/applicator (MFA Incorporated) (filed in the *Greenville* litigation).

**December 23, 2011** – Syngenta filed a Response in Opposition to Plaintiffs' Rule 56(d) Motion to Defer Consideration of Syngenta's Motions for Summary Judgment in the *Greenville* litigation.

**December 29, 2011** – Judge Beteem of the Cole County Circuit Court in Missouri entered judgment denying the motion to quash as to both deponents.

**December 29, 2011** – Plaintiffs filed an Opposition to Sygnenta AG's Motion for Reconsideration in the *Greenville* litigation.

**December 29, 2011** – Syngenta served its Amended Responses to Plaintiffs' First Request for Production No. 31 (filed in the *Greenville* litigation).

**December 30, 2011** – Syngenta served its objections and responses to Plaintiffs' rider to the fourth amended notice of evidentiary deposition and request for production of documents directed to Janis McFarland.  Plaintiffs serve an amended cross-notice of deposition on Janis McFarland (captioned in the *Greenville* case).

**January 4, 2012** – Plaintiffs serve their third amended notices of evidentiary deposition and requests for production of documents directed to Tim Pastoor and Charles Breckenridge.

**January 4, 2012** – A minute entry is entered by Judge Pallmeyer in the Central District of Illinois (assigned No. 11-cv-04638) setting a status hearing for April 5, 2012, and advising that Syngenta's pending Emergency Combined Motion to Quash the Subpoenas Duces Tecum or, in the Alternative, Motion for Entry of a Protective Order filed July 8, 2011, and pending Motion to Amend filed July 11, 2011, are deemed withdrawn without prejudice to renewal on or before the next status.

**January 6, 2012** – Continuation of the deposition of Janis McFarland

**January 9, 2012** – Plaintiffs serve their fourth amended notices of evidentiary deposition and requests for production of documents directed to Tim Pastoor and Charles Breckenridge .

**January 11, 2012** – Plaintiffs served Cross-Notices of Deposition on Tim Pastoor and Charles Breckenridge.

**January 11, 2012** – Syngenta served its objections and responses to Plaintiffs' rider to the third amended notices of evidentiary deposition and requests for production of documents directed to Charles Breckenridge and Tim Pastoor.

**January 13, 2012** – Plaintiffs served Amended Cross-Notices of Deposition on Tim Pastoor and Charles Breckenridge.

**January 17, 2012** – Deposition of Charles Breckenridge

**January 17, 2012** - Jayne Thompson and Jayne Thompson & Association, Ltd. filed a Reply in Regard to Their Motion for Protective Order filed November 3, 2011, in the Northern District of Illinois (assigned No. 11-cv-08387).

**January 17, 2012** – Syngenta AG served its Responses to Plaintiffs' 1st Requests for Production (filed in the *Greenville* litigation).

**January 18, 2012** – Deposition of Timothy Pastoor

**January 20, 2012** – Sygenta filed a Motion to Join and Adopt Movants' (Jayne Thompson and Jayne Thompson & Association, Ltd.) Motion for Protective order filed November 3, 2011, in the Northern District of Illinois (assigned No. 11-cv-08387).

**January 24, 2012** – Plaintiffs filed a Sur-Reply in Regard to Jayne Thompson and Associate, Ltd.'s Motion for Protective Order filed November 3, 2011, in the Northern District of Illinois (assigned No. 11-cv-08387).

**January 30, 2012** – Syngenta produced a supplemental privilege log and a new affidavit of Janis McFarland.

**January 30, 2012** – Syngenta served its First Amended Responses to Plaintiffs' First Interrogatories and First Amended Responses to Plaintiffs' First Requests for Production (filed in the *Greenville* litigation).

**February 1, 2012** – Hearing and oral arguments held in the Northern District of Illinois (assigned No. 11-cv-08387) before Judge Keys on Jayne Thompson and

Jayne Thompson & Association, Ltd.'s Motion for Protective Order filed November 3, 2011, and the associated pleadings.  Judge Keys entered a minute order granting in part and denying in significant part JTA's motion for protective order.  The Court found that JTA, a non-party public relations firm retained by Syngenta, has not demonstrated good cause for the entry of a protective order.  However, Plaintiffs agreed to the entry of a much narrower protective order that addresses some of the concerns of JTA, which the Court entered on the same day.  JTA was ordered to turn over to Plaintiffs the requested documents by February 13, 2012.

**February 2 and 3, 2012** – Depositions of Cameron, Missouri.

**February 8, 2012** – Continuation of the deposition of Charles Breckenridge

**February 8, 2012** – Plaintiffs filed a response in opposition to the motion to quash or modify filed by Jere L. White, Kansas Corn Growers Association, and Kansas Grain Sorghum Producers Association in Anderson County District Court, Kansas.

**February 10, 2012** – Defendants filed a Motion for Entry of a Protective Order, and Syngenta AG filed a Motion for Letter of Request for the Production of Documents in the *Greenville* litigation.

**February 13, 2012** – Order entered in the *Greenville* litigation denying without prejudice Defendants' Motion for Entry of a Protective Order filed February 10, 2012, as the motion is premature.

**February 23, 2012** – Deposition of Evansville, Illinois.

**February 24, 2012** - Environmental Law and Policy Center and Prairie Rivers Network filed a motion for status conference, and Syngenta and Plaintiffs filed a Joint Motion for a 28-day Stay of All Proceedings and Deadlines in the *Greenville* litigation.

**February 24, 2012** – Named plaintiffs filed their Second Amended Answers to SCP's 1st Interrogatories, specifically Interrogatory No. 8 (filed in the *Greenville* litigation).

**February 24, 1012** – Deposition of Ottawa, Kansas.

**February 27, 2012** – Plaintiffs submitted a proposed order to Judge Mudge concerning Heartland's motion for reconsideration.

**February 28, 2012** – The parties reached a partial agreement concerning the documents previously withheld by Syngenta on the basis of FIFRA protection.

Syngenta agreed to make certain documents located at Latham & Watkins in Washington, D.C. available to Plaintiffs for review.  Plaintiffs agreed that they would not challenge the confidentiality of the data compensation proceedings themselves or the testimony submitted thereto, except to the extent that these documents have been made public.

**February 28, 2012** – order entered granting a stay of deadlines and proceedings in the *Greenville* litigation.

**March 1, 2012** – Plaintiffs' 2-day review of FIFRA documents at Latham & Watkins in Washington, D.C.

**March 5, 2012** – Heartland submitted a proposed order to Judge Mudge concerning Heartland's motion for reconsideration.

**March 6, 2012** – Plaintiffs provided an email response to Heartland's motion for reconsideration.

**March 7, 2012** – Heartland filed its Reply to Plaintiffs' email response regarding the proposed order submission.

**March 8, 2012** – The Court entered its order concerning Plaintiffs' motion regarding email correspondence copied to Alan Nadel.  The Court denied Plaintiffs' motion, but ordered Syngenta to issue a written directive to its employees within 14 days to cease copying all emails that simply mention atrazine to Alan Nadel or other in-house counsel in an effort to avoid the production of otherwise discoverable material.  The written directive was to counsel employees on the proper use of "Privileged and Confidential" as in-house counsel has done in the past.  Syngenta was to produce a copy of this written directive to the Court.

**March 8, 2012** – The Court entered its order concerning the motion for a protective order concerning Sherry Ford documents filed by Plaintiffs on June 9, 2011.  The court determined that all of the documents (except the Heartland documents which were to be addressed in a separate order) were not confidential trade secrets pursuant to the Protective Order entered on August 31, 2009.

**March 12, 2012** – Syngenta filed a Memorandum to Clerk pursuant to the Court's order of March 8, 2012, regarding Plaintiffs' motion regarding email correspondence copied to Nadel (which contains a Notice to Employees Regarding Use of "Privileged and Confidential" Designations).

**March 12, 2012** – Syngenta filed a Combined Motion to Join and to Strike, and Motion to Quash or Modify Subpoenas and Memorandum in Support relating to the subpoenas served on Jere L. White, Kansas Corn Growers Association, and Kansas Grain Sorghum Producers Association in Anderson County District Court, Kansas.

**March 14, 2012** – Plaintiffs filed a memorandum in opposition to Heartland's motion for reconsideration in response to Heartland's reply filed on March 7, 2012.

**March 21, 2012** – Syngenta filed its written directive concerning the copying of documents to its in-house counsel.

**March 21, 2012** – Plaintiffs filed a response in opposition to Syngenta's motion to join and strike and motion to quash or modify relating to the subpoenas served on Jere L. White, Kansas Corn Growers Association, and Kansas Grain Sorghum Producers Association in Anderson County District Court, Kansas

**March 29, 2012** – Sygnenta filed a Withdrawal of its Motion to Quash filed July 8, 2011, in the Central District of Illinois (assigned No. 11-cv-04638).

**March 29, 2012** – Telephonic status conference held in the *Greenville* litigation before Judge Gilbert.

**April 5, 2012** – A minute entry by Judge Pallmeyer in the Central District of Illinois (assigned No. 11-cv-04638) grants Syngenta's motion for withdrawal of its motion to quash filed March 29, 2012.

**May 24, 2012** – The parties filed a Joint Motion for Preliminary Approval of Settlement in the *Greenville* litigation.

**May 24, 2012** – Telephonic status conference held before Judge Gilbert.

**May 30, 2012** – After a hearing in the *Greenville* litigation before Judge Gilbert, order entered granting preliminary approval of the settlement.  A second order was entered in the *Greenville* litigation denying without prejudice the following motions: Syngenta's motion to dismiss filed October 11, 2011; Syngenta's motion for summary judgment on the claims of the City of Marion filed November 30, 2011, and the motion for oral argument on that motion; Syngenta's motion for summary judgment on the claims of the City of Greenville filed November 30, 2011, and the motion for oral argument on that motion; Plaintiffs' motion to continue consideration of  Syngenta's summary judgment motions filed December 9, 2011; Syngenta AG's motion for reconsideration filed December 15, 2011; and Syngenta AG's motion for issuance of letters rogatory filed February 10, 2012.

**May 30, 2012** - Environmental Law and Policy Center and Prairie Rivers Network filed a Request for a Ruling on the Unsealing of Judicial Record Documents in this Case in the *Greenville* litigation.

**June 6, 2012** – Syngenta and Syngenta AG filed a Response to Intervenors' Request for a Ruling on the Unsealing of Documents in the *Greenville* litigation.

**June 12, 2012** – Order entered in the *Greenville* litigation referring the Environmental Law and Policy Center and Prairie Rivers Network's Motion to Vacate the Protective Order and Unseal Documents in the Judicial Record filed April 4, 2011, and Syngenta's Motion for Order Maintaining Confidentiality Designations Under the Protective Order filed November 10, 2011, to Magistrate Judge Frazier for disposition and denying as moot the Environmental Law and Policy Center and Prairie Rivers Network's Motion for Status Conference filed February 24, 2012, and the Environmental Law and Policy Center and Prairie Rivers Network's Motion for Order to Rule on the Unsealing of Judicial Record Documents filed May 30, 2012.

**June 19, 2012** – Plaintiffs filed a Response to Intervenors' Request for a Ruling on the Unsealing of Documents in the *Greenville* litigation.

**June 20, 2012** – Syngenta filed a Withdrawal of its Motion to Quash filed in the Central District of Illinois (assigned No. 11-cv-00040) on July 11, 2011.  Syngenta's withdrawal was allowed in a Text Order entered the same day by Magistrate Judge Cudmore.

**June 21, 2012** – Plaintiffs filed a combined Motion for Reimbursement of Costs and Attorney Fees and a response to the University of Chicago's motion for reimbursement of costs filed November 3, 2011.

**June 26, 2012** – Missouri Corn Growers Association filed a motion to recover reasonable costs for production of documents in Cole County, Missouri.

**July 10, 2012** – Plaintiffs filed a response in opposition to Missouri Corn Growers Association filed a motion to recover reasonable costs for production of documents in Cole County, Missouri.

**July 17, 2012** – Order entered granting Syngenta's motion to dismiss Intervenors' appeal in the 7th Circuit Court of Appeals (assigned No. 11-3377).

| Year-Month | Partner | Attorney | Non-Attorney Professional | Grand Total |
|---|---|---|---|---|
| **2003** | | | | |
| Jul | | | 22 | 22 |
| **2004** | | | | |
| Jan | 11 | 26 | 8 | 45 |
| Feb | 22 | 38 | 8 | 68 |
| Mar | | 30 | | 30 |
| Apr | | 34 | 28 | 62 |
| May | 29 | 15 | | 44 |
| Jun | 35.5 | 46 | 52 | 133.5 |
| Jul | 47 | 32 | 4 | 83 |
| Aug | 23.5 | 12 | 14 | 49.5 |
| Sep | 26 | 4 | | 30 |
| Oct | 47 | 10 | | 57 |
| Nov | 53.5 | 8 | | 61.5 |
| Dec | 43 | 12 | | 55 |
| **2005** | | | | |
| Jan | 59 | | | 59 |
| Feb | 58 | | | 58 |
| Mar | 66.5 | 16 | | 82.5 |
| Apr | 46 | | | 46 |
| May | 58 | | | 58 |
| Jun | 67.5 | 50 | | 117.5 |
| Jul | 79 | 50 | | 129 |
| Aug | 66 | | 8 | 74 |
| Sep | 44 | | | 44 |
| Oct | 47.5 | 30 | 26 | 103.5 |
| Nov | 67.5 | 20 | | 87.5 |
| Dec | 53 | | | 53 |
| **2006** | | | | |
| Jan | 31.5 | | | 31.5 |
| Feb | 28 | | | 28 |
| Mar | 42 | | 6 | 48 |
| Apr | 4 | | | 4 |
| May | 7 | | | 7 |
| Jun | 4 | | | 4 |
| Jul | 27.5 | | 28 | 55.5 |
| Aug | 34.5 | | 37 | 71.5 |
| Sep | | | 35 | 35 |
| Oct | | | 35 | 35 |
| Nov | 3 | | 44 | 47 |
| Dec | | | 40 | 40 |
| **2007** | | | | |
| Jan | | | 29 | 29 |



| | | | | |
|---|---|---|---|---|
| Feb | | | 36 | 36 |
| Mar | | | 40 | 40 |
| Apr | 4 | | 27 | 31 |
| May | | | 31 | 31 |
| Jun | | | 36 | 36 |
| Jul | | | 33 | 33 |
| Aug | 20 | | 22 | 42 |
| Sep | | | 26 | 26 |
| Oct | | | 48 | 48 |
| Nov | | | 30 | 30 |
| Dec | | | 54 | 54 |
| **2008** | | | | |
| Jan | | | 41 | 41 |
| Feb | | | 38 | 38 |
| Mar | | | 25 | 25 |
| Apr | | | 24 | 24 |
| May | | | 31 | 31 |
| Jun | | | 25 | 25 |
| Jul | 61.5 | 2 | 59 | 122.5 |
| Aug | 63.5 | | 30 | 93.5 |
| Sep | 17.5 | | 55 | 72.5 |
| Oct | 31 | | | 31 |
| Nov | 78 | 32 | 53 | 163 |
| Dec | 47.5 | 17 | 38 | 102.5 |
| **2009** | | | | |
| Jan | 49.5 | | 4 | 53.5 |
| Feb | 112.5 | 8 | 87 | 207.5 |
| Mar | 92.25 | | 249 | 341.25 |
| Apr | 86.25 | 1 | 172 | 259.25 |
| May | 125.5 | 10 | 166.5 | 302 |
| Jun | 123.75 | 30 | 217.5 | 371.25 |
| Jul | 170.75 | 110 | 152.1 | 432.85 |
| Aug | 158.75 | 239.4 | 317.4 | 715.55 |
| Sep | 121.5 | 258.1 | 234.8 | 614.4 |
| Oct | 124.25 | 231.4 | 210.7 | 566.35 |
| Nov | 82.5 | 189.5 | 148.8 | 420.8 |
| Dec | 123 | 249.6 | 147.9 | 520.5 |
| **2010** | | | | |
| Jan | 118.75 | 230.8 | 180 | 529.55 |
| Feb | 121 | 292 | 179.9 | 592.9 |
| Mar | 133.6 | 469.5 | 208.85 | 811.95 |
| Apr | 110.45 | 442.45 | 200.2 | 753.1 |
| May | 122.25 | 682 | 175.3 | 979.55 |
| Jun | 126.36 | 869.5997222 | 365.08 | 1361.039722 |
| Jul | 128.01 | 759.1997222 | 421.83 | 1309.039722 |
| Aug | 131.62 | 808.14 | 534.8 | 1474.56 |
| Sep | 139.41 | 838.8 | 560.1 | 1538.31 |

| | | | | |
|---|---|---|---|---|
| Oct | 234.22 | 1171.33 | 570.6 | 1976.15 |
| Nov | 208.5 | 921.12 | 498.5 | 1628.12 |
| Dec | 119.69 | 745.6 | 457.1 | 1322.39 |
| **2011** | | | | |
| Jan | 145.16 | 547.59 | 453.1 | 1145.85 |
| Feb | 141.28 | 635.7 | 429.9 | 1206.88 |
| Mar | 180.98 | 688.86 | 518.2 | 1388.04 |
| Apr | 165.54 | 549.03 | 559.28 | 1273.85 |
| May | 178.82 | 625.14 | 531.9 | 1335.86 |
| Jun | 182.69 | 668.96 | 682.7797222 | 1534.429722 |
| Jul | 330.61 | 757.39 | 517.24 | 1605.24 |
| Aug | 174.13 | 798.22 | 642.92 | 1615.27 |
| Sep | 141.21 | 598.06 | 487.85 | 1227.12 |
| Oct | 253.05 | 857.63 | 588 | 1698.68 |
| Nov | 303.86 | 832.15 | 509.4 | 1645.41 |
| Dec | 193.04 | 955.02 | 468.9 | 1616.96 |
| **2012** | | | | |
| Jan | 151.86 | 1107.28 | 715.83 | 1974.97 |
| Feb | 234.53 | 903.36 | 541.6 | 1679.49 |
| Mar | 178.13 | 819.63 | 420.5 | 1418.26 |
| Apr | 229.91 | 391.49 | 166.8 | 788.2 |
| May | 247.37 | 359.47 | 82 | 688.84 |
| Jun | 148.58 | 200.03 | 30.5 | 379.11 |
| Jul | 5.75 | 72 | | 77.75 |
| **Grand Total** | **8,204.86** | **22,408.55** | **16,032.66** | **46,646.07** |

| Biller | Rate | Actual | $ lodestar |
|--------|------|--------|------------|
| S. Tillery | $750.00 | 5,639.40 | $4,229,550.00 |
| G. Zelcs | $700.00 | 585.75 | $410,025.00 |
| S. Katz | $650.00 | 51.00 | $33,150.00 |
| D. Sprong | $650.00 | 13.20 | $8,580.00 |
| C. Moody | $600.00 | 749.50 | $449,700.00 |
| S. Swedlow | $600.00 | 245.00 | $147,000.00 |
| A. Zigler | $475.00 | 921.01 | $437,479.75 |
| C. Deaton | $350.00 | 6,185.71 | $2,164,998.50 |
| R. Fiorillo | $350.00 | 5,104.00 | $1,786,400.00 |
| J. Craig | $350.00 | 4,055.55 | $1,419,442.50 |
| J. Perez | $350.00 | 2,675.89 | $936,561.50 |
| M. Klenov | $350.00 | 1,905.25 | $666,837.50 |
| N. Graham | $350.00 | 1,066.50 | $373,275.00 |
| C. Hoffman | $350.00 | 848.22 | $296,877.00 |
| C. Buxner | $350.00 | 271.00 | $94,850.00 |
| J. Libra | $350.00 | 180.14 | $63,049.00 |
| M. Gibbons | $350.00 | 35.25 | $12,337.50 |
| M. Davies | $250.00 | 81.04 | $20,260.00 |
| T. Bruce | $150.00 | 5,506.40 | $825,960.00 |
| J. Brown | $150.00 | 3,448.00 | $517,200.00 |
| E. Brown | $100.00 | 3,668.01 | $366,801.00 |
| S. Sortor | $100.00 | 2,136.55 | $213,655.00 |
| J. Brumitt | $100.00 | 149.70 | $14,970.00 |
| L. Shapray | $100.00 | 108.50 | $10,850.00 |
| S. Bouchat | $100.00 | 69.50 | $6,950.00 |
| J. Roe | $100.00 | 943.00 | $94,300.00 |
| **Total** | | **46,643.07** | **$15,601,059.25** |

| Year-Month | Accurint | Conf. Calls | Court Costs | Exhibits | Experts | Investigation fees | Meeting Costs | Misc. | PACER | Duplication | Shipping | Contract attys | Transcripts | Travel | Westlaw | Witness fees | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2004** | | | | | | | | | | | | | | | | | |
| Jun | | | | | | | | | | $30.75 | | | | | | | $30.75 |
| Jul | | $6.28 | | | | | | | | $237.99 | | | | | | | $244.27 |
| Aug | | | | | $357.00 | | | | | | | | | | | | $357.00 |
| Oct | | | | | | | | | | $653.44 | | | | | $249.69 | | $903.13 |
| Nov | | | | | $140.00 | | | | | | | | | | | | $140.00 |
| Dec | | | | | | | | | | | | | | | $210.21 | | $210.21 |
| **2005** | | | | | | | | | | | | | | | | | |
| Jan | | | | | | | | | | | | | | | $126.77 | | $126.77 |
| Feb | | | | | | | | | $7.63 | | | | | $3,486.46 | | | $3,494.09 |
| Apr | | | | | | | | | $1.04 | | | | | | | | $1.04 |
| May | | | | | | | $1,015.60 | | | | | | | | | | $1,015.60 |
| Jul | | | | | | | $420.26 | | | | | | | $733.80 | | | $1,154.06 |
| Aug | | | | | | | $60.89 | | | | $9.65 | | | | $2,545.36 | | $2,615.90 |
| Sep | | $76.55 | | | | | | | | | | | | $386.76 | | | $463.31 |
| Oct | | | | | | | | | | | | | | $1,012.58 | $67.73 | | $1,080.31 |
| Nov | | | | | | | | | | | | | | | $778.06 | | $778.06 |
| Dec | | $1,541.40 | | | | | $22.00 | | | $70.95 | | | | $675.28 | $268.31 | | $2,577.94 |
| **2006** | | | | | | | | | | | | | | | | | |
| Jan | | | | | | | $115.84 | | | | | | | | $1,469.94 | | $1,585.78 |
| Mar | | | | | | | | | | | $16.50 | | | | | | $16.50 |
| Jun | | | | | | | | | | | | | | $1,440.32 | | | $1,440.32 |
| **2008** | | | | | | | | | | | | | | | | | |
| Jul | | | | | | | $43.67 | | | | | | | | | | $43.67 |
| Aug | | | | | | | | | | | | | | | $90.71 | | $90.71 |
| Sep | | | | | | | | | | | $13.36 | | | $1,712.38 | | | $1,725.74 |
| Oct | | | | | | | | | | | | | | | $42.10 | | $42.10 |
| Nov | | | | | | | | | | | | | | $605.92 | | | $605.92 |
| Dec | | | | | | | | | | | $21.06 | | | $3,377.98 | | | $3,399.04 |
| **2009** | | | | | | | | | | | | | | | | | |
| Jan | | | | | | | | | | | | | | $40.00 | | | $40.00 |
| Feb | | | | | | | | | | | $5.38 | | | | | | $5.38 |
| Mar | $2.94 | | | | | | $76.49 | | | $311.66 | $80.32 | | | $5,162.10 | $148.82 | | $5,782.33 |
| Apr | | | | | $1,985.00 | | | | | | $251.36 | $960.50 | | $2,496.60 | | | $5,693.46 |
| May | | | | | $1,524.75 | $630.00 | $1,025.58 | | | | $325.36 | $2,499.00 | | $1,479.90 | $624.28 | | $8,108.87 |
| Jun | $31.68 | $6.90 | | | $38.00 | $4,411.10 | | $2,766.88 | | | $123.86 | $5,333.00 | | | | | $12,711.42 |
| Jul | | | | | $11,975.00 | $2,366.57 | $183.10 | $46.42 | $0.80 | $34.75 | $254.19 | | | $4,900.63 | $121.85 | | $19,883.31 |
| Aug | $84.90 | $4.20 | | | $26,420.00 | $2,560.92 | $311.04 | | | $4,810.36 | $283.13 | | | | $564.60 | | $35,039.15 |
| Sep | $0.00 | $254.95 | | | $10,500.00 | | $137.22 | | | $917.68 | $190.45 | $7,452.50 | $81.00 | $3,359.64 | $317.58 | | $23,211.02 |
| Oct | $130.11 | $13.70 | | $833.46 | | | $302.00 | $65.02 | | $82.00 | $65.99 | $8,313.00 | | $149.27 | $2,505.90 | | $12,460.45 |
| Nov | | $33.15 | | | $10,000.00 | | $718.71 | | | | $47.83 | $4,675.00 | $99.00 | $1,027.80 | $4,503.96 | | $21,105.45 |
| Dec | | $0.55 | | | | | | | | | $282.34 | $2,260.96 | $355.00 | | | | $2,898.85 |
| **2010** | | | | | | | | | | | | | | | | | |
| Jan | | $12.10 | | $6.50 | | | $92.69 | | $2.40 | $544.08 | $133.87 | $7,178.12 | $46.00 | | | | $8,015.76 |
| Feb | $42.24 | $30.80 | | | | | $790.78 | | | | $174.08 | $16,100.65 | $59.00 | $576.09 | $1,961.68 | | $19,735.32 |
| Mar | | $18.55 | $1,116.00 | | | $800.00 | $2,695.00 | $99.05 | | $3,644.12 | $179.77 | $42,040.40 | $65.00 | $179.72 | $2,533.68 | | $53,371.29 |
| Apr | $37.71 | $33.65 | | | | $420.00 | $1,206.05 | | $6.88 | $4,329.38 | $238.54 | $32,467.94 | $438.55 | $1,387.09 | | | $40,565.79 |
| May | | $4.43 | | | $10,542.00 | $27.50 | $482.98 | | | $4,869.16 | $125.10 | $38,357.52 | | $1,550.46 | $1,006.65 | | $56,965.80 |
| Jun | $211.20 | $11.21 | $48.00 | | $13,062.28 | $450.00 | $208.74 | | | $19,152.21 | $8.47 | $37,784.52 | $152.00 | $874.46 | $356.65 | $100.80 | $72,420.54 |
| Jul | $230.43 | $82.77 | | | | $605.00 | $248.20 | | | $1,781.14 | $167.77 | $36,940.00 | | $1,695.66 | $731.95 | $23.80 | $42,506.72 |
| Aug | $355.35 | $65.88 | $350.00 | | $22,370.00 | | | | | $7,950.20 | $44.73 | $57,060.00 | $450.60 | $738.55 | | | $89,385.31 |
| Sep | $1.11 | $10.72 | $372.00 | | | $140.00 | $208.49 | | $56.24 | $11,929.32 | $991.28 | $48,594.00 | $222.20 | $1,029.54 | $1,760.50 | $90.20 | $65,405.60 |
| Oct | $112.35 | $13.02 | $7.00 | | $33,031.50 | $817.56 | $949.95 | | | $10,388.47 | $345.76 | $57,724.04 | | $8,976.91 | $5,360.94 | | $117,727.50 |
| Nov | $44.22 | $17.94 | $34.00 | | $20,078.50 | $49.95 | $569.23 | | $49.28 | $984.67 | $537.42 | $51,257.55 | $16,149.74 | $10,223.62 | | | $99,996.12 |
| Dec | $25.05 | $18.69 | $15.00 | | $38,114.03 | $198.41 | $47.67 | | | $3,053.65 | $177.99 | $31,894.20 | $16,092.12 | $5,087.64 | $5,889.98 | | *(obscured by stamp)* |
| **2011** | | | | | | | | | | | | | | | | | |

EXHIBIT C

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | $23.70 | $19.27 | | | $16,791.63 | $175.00 | $1,122.88 | | | $1,601.77 | $171.56 | $48,457.60 | | $687.70 | $3,092.99 | | $72,144.10 |
| Feb | $47.85 | $6.58 | $39.00 | $410.86 | $35,268.92 | $1,256.16 | $535.62 | | $174.24 | $13,998.91 | $543.08 | $22,039.36 | | $672.62 | | $130.20 | $75,123.40 |
| Mar | $56.55 | | $30.00 | | $55,478.83 | $805.09 | $1,138.47 | | | $362.11 | $838.08 | $23,618.96 | $4,346.60 | $1,903.45 | $4,940.48 | $68.80 | $93,587.42 |
| Apr | $62.64 | $30.61 | $87.00 | | $63,727.18 | $49.95 | $1,185.32 | | | | $378.92 | $14,365.11 | | $5,533.64 | | | $85,420.37 |
| May | | $10.63 | $4.50 | | $231,844.31 | $979.21 | | | $61.52 | $6,126.72 | $129.54 | $22,105.38 | $877.60 | $9,350.71 | $10,300.59 | | $281,790.71 |
| Jun | | $71.15 | | $4,417.00 | $71,536.98 | $226.93 | $154.24 | | | $87.65 | $121.69 | $15,113.60 | $8,498.05 | $1,023.65 | $2,869.71 | $5,280.00 | $109,400.65 |
| Jul | $396.80 | $1.84 | $2,261.68 | | $114,235.70 | $6,834.16 | $226.98 | | | $1,546.53 | $838.37 | $15,604.57 | $8,045.38 | $7,007.90 | $9,720.34 | | $166,720.25 |
| Aug | $537.40 | $3.89 | | | $41,440.96 | $97.45 | $334.99 | $302.87 | $334.00 | $2,395.43 | $535.43 | $23,667.14 | $14,200.82 | $2,869.48 | $2,938.19 | | $89,658.05 |
| Sep | $875.22 | $8.07 | $7,425.00 | | $115,195.44 | $303.11 | $102.48 | | | $1,591.59 | $316.21 | $15,911.93 | | $3,820.63 | | | $145,549.68 |
| Oct | $75.42 | | $455.00 | | $45,034.51 | $290.36 | $82.80 | | | $593.83 | $86.49 | $12,337.00 | $1,813.11 | $3,802.80 | $1,587.57 | $642.92 | $66,801.81 |
| Nov | $158.43 | $12.51 | $21.00 | | $702,742.00 | $82,438.85 | $231.29 | | $185.92 | $75.00 | $242.64 | $8,748.28 | $6,927.34 | $1,074.42 | $1,280.30 | | $804,137.98 |
| Dec | $20.04 | $2.42 | $234.00 | | $127,459.03 | $149.95 | $72.42 | | | | $148.56 | $11,957.31 | $14,966.21 | $1,826.34 | $3,049.92 | | $159,886.20 |
| **2012** | | | | | | | | | | | | | | | | | |
| Jan | $10.53 | $12.05 | $124.20 | | $46,212.50 | $133.25 | $167.59 | | $94.96 | $237.59 | $129.68 | $12,024.10 | $10,702.62 | $4,969.51 | | | $74,818.58 |
| Feb | | | | | $99,270.35 | $81.94 | $1,627.44 | | | $972.30 | $106.63 | $10,821.70 | $13,392.32 | $20,691.42 | $7,480.08 | | $154,444.18 |
| Mar | | | $110.70 | | $105,051.21 | $49.95 | $738.05 | | | | $174.60 | $10,853.75 | $3,766.49 | $13,617.20 | | | $134,361.95 |
| Apr | $306.46 | | | | $168,992.78 | $49.95 | $611.87 | $292.50 | | | $170.17 | $3,047.00 | | $1,753.51 | $4,057.19 | | $179,281.43 |
| May | $12.36 | $21.95 | | | $21,406.25 | $49.95 | $1,035.79 | | $120.64 | | $107.06 | $125.00 | | $8,201.83 | | | $31,080.83 |
| Jun | | $26.77 | $355.50 | | $42,814.28 | $128.10 | $105.31 | | | | $121.70 | $125.00 | | $3,687.27 | $6,578.63 | $40.00 | $53,982.56 |
| Jul | | $24.54 | $147.50 | | $33,265.13 | | | | | | $50.65 | | | $1,940.80 | | | $35,428.62 |
| **Grand Total** | **$3,892.69** | **$2,509.72** | **$13,237.08** | **$5,667.82** | **$2,338,209.05** | **$110,402.76** | **$18,440.40** | **$3,408.67** | **$1,095.55** | **$105,365.41** | **$10,306.62** | **$759,815.69** | **$121,746.75** | **$158,802.04** | **$92,133.89** | **$6,376.72** | **$3,751,410.86** |