**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CITY OF GREENVILLE, et al., individually,** **and on behalf of all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) ) | **Case No. 3:10-cv-188-JPG-PMF** |
| **vs.** | ) ) | |
| **SYNGENTA CROP PROTECTION, INC., and** **SYNGENTA AG,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

**DECLARATION OF SCOTT SUMMY**
**IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES AND EXPENSES FROM THE COMMON FUND**

I, Scott Summy, an attorney licensed to practice in the States of Texas, New York, and

North Carolina, and admitted to practice in the United States District Court for the Northern

District of Illinois and numerous other federal courts, state that at all times relevant to the above-

captioned action, the following facts were within my personal knowledge and are true and

correct:

## INTRODUCTION

1.      I am an attorney and shareholder in the law firm of Baron & Budd, P.C.  My firm

has represented plaintiffs in atrazine litigation as co-counsel to Korein Tillery, LLC since 2004.

2.      I submit this Declaration in support of Class Counsel's Motion for an Award of

Attorneys' Fees and Expenses from the Common Fund.  I have personal knowledge of the facts

stated in this Declaration and if called upon to testify to those facts, I could and would do so

competently.

3.      The background and procedural history of this lawsuit is discussed in detail in the Affidavit of Stephen M. Tillery and is incorporated here by reference.

## **BACKGROUND & EXPERIENCE**

4.       I am the managing shareholder of Baron & Budd's Water Contamination Practice Group, whose practice is dedicated to representing plaintiffs in complex environmental cases all across the United States.   We generally represent public water providers whose water is contaminated by an intrusive chemical --- whether a constituent of gasoline, a pesticide, or an industrial solvent.  We generally seek to recover damages including the costs of removing the contaminant from the water supply.  From time to time, we also represent private well owners whose wells are contaminated.

5.      We have taken a leadership role in complex litigation several times.  In the litigation arising from the oil spill in the Gulf of Mexico in 2010, I am one of four lawyers appointed to the Plaintiffs' Executive Committee (EC) by the United States District Court for the Eastern District of Louisiana in:  *In Re:  Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL 2179*.  I also serve on the Plaintiffs' Steering Committee (PSC) for that litigation.  In addition, I was appointed as Interim Class Counsel for the Proposed Settlement Class.  The Deepwater Horizon/BP Spill is the largest environmental disaster in U.S. history.  The Water Contamination Practice Group represents the Office of Coastal Restoration and Protection, designated Trustees and the Governor's Office of the State of Louisiana in the Deepwater Horizon/BP litigation, as well as hundreds of commercial businesses and individuals impacted by the spill.

6.      The attorneys in the Water Contamination Practice Group currently represent or have represented over 200 public water providers across the country in cases arising from MTBE

contamination.  In 1997, I filed and litigated the first MTBE case in the United States to a successful resolution.  My team and I have faced the major oil companies, including, BP, ExxonMobil, Shell and Chevron in dozens of cases across the United States for the last 17 years. I am designated Co-Lead Counsel for all Plaintiffs in *In Re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, MDL No. 1358* and also serve on the Plaintiffs' Steering Committee (PSC).  In 2008, I was part of a negotiation team that achieved settlements with most of the oil companies in these cases totaling approximately $500,000,000.

7.      My team and I also represent public water providers in litigation arising from the presence of other chemicals including TCP (an agricultural product), TCE (an industrial solvent), and PCE (a solvent commonly used in dry cleaning).

8.      Baron & Budd has long been a leader in environmental litigation.   More than thirty years ago, the firm represented a plaintiff in one of the first cases to hold the asbestos industry liable for selling a dangerous product.  In the 1980's, Baron & Budd represented hundreds of plaintiffs in one of the first cases in the nation to allege harm caused by drinking water contamination.   The firm's environmental work has continued and grown.  It represents individuals who are exposed to dangerous chemicals or whose properties are fouled by toxic substances, and it represents cities, towns, school districts and other public drinking water providers in litigation to remove chemical contaminants from water supplies.  The attorneys in my section and at Baron & Budd generally are extremely knowledgeable about complex litigation involving mass and environmental torts.

9.      The following environmental cases are a sample of what my group and I have litigated:

*In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010, MDL 2179*

My team at Baron & Budd currently represents over 2,100 commercial businesses and individuals impacted by the spill.  As mentioned above, I have been given a leadership role in this litigation through my appointment as Class Counsel to the Settlement Class as well as my appointments to the Executive Committee and Plaintiffs' Steering Committee.  In addition, I am a Co-Chair of the Science Group of the PSC, which is responsible for developing evidence and hiring experts to determine the full impact of the spill, including Gulf seafood and the coastline.  I have been involved in discovery of the case and have taken depositions in the United States and London, England.  To date, PSC has secured an uncapped settlement fund to benefit many businesses and individuals impacted by the spill.  BP values this initial settlement at $7.8 billion.  Unresolved claims are currently set for a general liability trial against BP and the non-settling defendants in January 2013.

### *MTBE and TBA Multi-District Litigation ("MDL 1358") and Individual Actions (First MDL Settlement)*

Before I came to Baron & Budd in 2002, I represented a number of plaintiffs in litigation arising from MTBE contamination of water supplies.  I continued this work at Baron & Budd, and now we currently represent or have represented over 200 public water providers including municipalities, water districts and utilities, and school districts across the country in products liability litigation against the major oil companies who made the decision to add MTBE to gasoline.  We negotiated a settlement with oil companies totaling over $450,000,000 in cash and secured an agreement by 70% of the companies to pay for the treatment of new wells that become contaminated with MTBE and meet certain preconditions anytime in the next 30 years.  The well protection provided by the settlement protects over 3,600 wells serving drinking water to millions of Americans.

In this litigation, we represented the following water providers and entities:

*California*:  California-American Water Company, California Water Service Company, Citrus Heights Water District, City of Riverside, Del Paso Manor Water District, Fair Oaks Water District, Florin Resource Conservation District, M & P Silver Family Partners II, et al., Quincy Community Services District, Rio Linda Elverta Community Water District, Riverview Water District, Yosemite Spring Park Utility Co, Inc.

*Connecticut*:   Town of East Hampton, American Distilling and Mfg. Co. Inc., Our Lady of the Rosary Chapel, United Water Connecticut, Inc.

*Florida*:  Emerald Coast Utilities Authority f/k/a Escambia County Utilities Authority

*Indiana*:  Town of Campbellsburg, Town of Mishawaka, North Newton School, City of Rockport, City of South Bend

*Iowa*:  City of Galva, City of Ida Grove, City of Sioux City

*Illinois*:  City of Island Lake

*Kansas*:   City of Bel Aire, Chisholm Creek Utility Authority, Dodge City, City of Park City

*Louisiana*:   City of Marksville, Town of Rayville

*Massachusetts*:  Brimfield Housing Authority (Brimfield, MA), Centerville-Osterville-Marsons Mills Water Department, Chelmsford Water District (Chelmsford, MA), Dedham Westwood Water District, City of Brockton, City of Lowell, City of Methuen, City of Peabody, Cotuit Fire District Water Department (Cotuit, MA), East Chelmsford Water District (Chelsford, MA), Hillcrest Water District (Leicester, MA), Leicester Water Supply District (Leicester, MA), Massasoit Hills Trailer Park, Inc., North Chelmsford Water District (Chelsford, MA), North Raynham Water District, Sandwich Water District, Sudbury Water District, Town of Avon, Town of Bedford, Town of Bellingham, Town of Billerica, Anawan Associates Realty, LLC, Town of Barnstable, Dennis Water District, Lunenburg Water District, Raynham Center Water District, Town of Douglas, Town of Marshfield, Town of Orange, Town of Provincetown, Town of Scituate, Town of Sterling, Town of Charlton, Town of Danvers, Town of Dover, Town of Dudley, Town of Duxbury, Town of East Bridgewater, Town of East Brookfield, Town of Easton, Town of Edgartown, Town of Halifax, Town of Hanover, Town of Hanson, Town of Holliston, Town of Hudson, Town of Merrimac, Town of Millis, Town of Monson, Town of Norfolk, Town of North Attleborough, Town of North Reading, Town of Norwell, Town of Pembroke, Town of Reading, Town of Spencer, Town of Stoughton, Town of Tewksbury, Town of Tyngsboro, Town of Ware, Town of Wayland, Town of West Bridgewater, Town of West Brookfield, Town of Weymouth, Town of Wilmington, Town of Yarmouth, United Methodist Church (Wellfleet, MA), Water Supply District of Acton, Westport Federal Credit Union, Westview Farm, Inc. (Monson, MA), Town of Middleborough, City of Lawrence, Town of Burlington, Town of Townsend, Town of Uxbridge, Town of Webster, Town of Lakeville, Indian Hills Realty, Town of Holden.

*New Jersey*:  Borough of Penns Grove, City of Bridgeton, City of Camden, City of Gloucester City, Township of Winslow, City of Vineland, Elizabethtown Water Company, Little Egg Harbor Township, Mount Holly Water Company, Mount Laurel Municipal Utilities Authority, New Jersey American Water Company, Inc., Penns Grove Water Supply Company, Inc., Point Pleasant, Southeast Morris County Municipal Utilities Authority, Township of Montclair, United Water Arlington Hills, Inc., United Water Hampton, Inc., United Water New Jersey, Inc., United Water Toms River, Inc., United Water Vernon Hills, Inc.

*New Mexico*:  People of the State of New Mexico Through the Office of the Attorney General

*New York*:  Franklin Square Water District, Great Neck North, Hicksville Water District, Long Island Water Corporation, Nassau County, Port Washington Water District, Roslyn Water District, Suffolk County, Suffolk County Water Authority, Town of Wappinger, United Water New York, Inc., Village of Pawling, Village of Sands Point, Western Nassau Water Authority

*Pennsylvania*:   Northhampton/Bucks County Municipal Authority

*Vermont*:   Craftsbury Fire District #2, Town of Hartland

*Virginia*:  Buchanan County School Board, Greensville County Water & Sewer Authority, Patrick County School Board

*West Virginia*:   Town of Matoaka

*Wisconsin*:  Town of Freedom, Freedom Sanitary Water District, Capital Credit Union, Coffey Insurance Services, St. Nicholas Parish, Brenda Abrahamson, et al. (private well owners)

### MTBE and TBA Multi-District Litigation ("MDL 1358") and Individual Actions (Second MDL Settlement)

This was a similar settlement of MTBE claims for $19,471,486.86 with almost all defendants.  We represented the following clients:  City of Pomona, California; City of Santa Barbara, California; Village of Bethalto, Illinois; City of Nokomis, Illinois; Village of Roanoke, Illinois; Town of Kouts, Indiana; Bridgewater Water Department, Massachusetts; Russell Water Department, Massachusetts; Mayor and Council of Berlin, Maryland; City of Aberdeen, Maryland; Town of Chestertown, Maryland; City of Salisbury, Maryland; Commissioners of  Sharptown, Maryland; City of Taneytown, Maryland; County Commissioners of Worcester      County, Maryland; City of Kennett, Missouri; Mound City, Missouri; City of Pattonsburg, Missouri; Coraopolis Water & Sewer Authority, Pennsylvania; Harrisville Fire District, Rhode Island; Town of Kingston, Rhode Island.

### Hurshel L. Ashcraft, et al. v. Conoco, Inc., et al. (North Carolina 1997)

Plaintiffs were 178 residents of two mobile home parks whose drinking water supply wells were contaminated with MTBE and benzene.  I tried this case to a jury in 1997 but reached a $36,000,000 settlement while the jury was determining the amount of punitive damages.

### Alley, et al. v. Conoco, Inc., et al. (North Carolina 1998)

Plaintiffs were 82 residents of two mobile home parks whose drinking water supply wells were contaminated with MTBE and benzene.  I negotiated a settlement of $6,850,000.

***Barbara Fulcher, et al. v. Trinity American Corporation (North Carolina 1998)***

Plaintiffs were three families whose residential groundwater wells were contaminated with diesel fuel, chromium/chromate, chlorinated solvents, and toluene.  I negotiated a settlement of $900,000.

***Communities for a Better Environment v. Unocal, et al. (California 2001)***

The plaintiff was Communities for a Better Environment, on whose behalf I brought an injunctive relief action against major oil companies to protect groundwater wells, public and private, across the State of California from MTBE contamination.  After a partial bench trial, the companies agreed to change their business practices regarding MTBE.  The settlement involved over 1000 contaminated sites and was valued at approximately $200,000,000.

***City of Santa Monica v. Shell Oil Company, et al. (California 2003)***

I represented the City of Santa Monica and Southern California Water Company in an action to recover damages for the MTBE and TBA contamination of five public groundwater wells extracting from the Charnock Basin.  We reached a settlement valued by the Court at $315,000,000 that requires the defendants to pay for the design, construction, operation and maintenance of the filtration system until all wells are clean.  Additionally, the defendants paid the City approximately $120,000,000 in cash.

***Kimberly Kirkman, et al. v. ExxonMobil, et al. (Pennsylvania 2003)***

I represented seven plaintiffs for damages arising from MTBE contamination of one commercial groundwater well and three private residential groundwater wells.  Result:  We reached a settlement that paid plaintiffs $670,000;  provided two plaintiffs with connections to public water supply, and provided four plaintiffs a Value Assurance Program to assist them in selling their homes.

***Salah Bichmaf, et al. v. ExxonMobil Corporation (New Jersey 2003)***

I represented eight families in an action arising from the contamination of five groundwater wells with MTBE and benzene.  We reached a confidential settlement that included connecting the residents to public water supply.

***Theodore Holten, et al. v. Chevron, U.S.A., Inc., et al (New Jersey 2004)***

We represented approximately 45 private well owners whose residential groundwater wells were contaminated with MTBE, benzene, and TBA.  We settled the claims for $2,600,000.

***Communities for a Better Environment, et al. v. Tosco, et al. (California 2006)***

In this action, I represented Communities for a Better Environment and Nicole McAdam in a private attorney general action under California's Proposition 65 to protect groundwater, public and private groundwater wells throughout the State of California from benzene and toluene contamination.  We reached settlements valued at over $100,000,000 that include injunctive relief, penalties, attorneys' fees ,and costs.

***Village of East Alton v. Premcor Refining Group Inc. (Illinois)***

With co-counsel Korein Tillery, I represented the Village of East Alton in a case arising from MTBE and TBA contamination of two groundwater wells.  The oil companies settled for $8,000,000.

***Francis Misukonis, et al. v. Atlantic Richfield Company, et al. (Illinois)***

In another case brought with Korein Tillery, I secured injunctive relief and attorneys' fees for private well owners.

***Thomas G. Browning, et al. v. Explorer Pipeline Company, et al. (Texas)***

Plaintiffs were 19 private residents requesting recovery for property damage caused by releases from petroleum pipeline.  We settled for over $1,500,000.

***Fruitridge Vista Water Company v. ExxonMobil, et al. (California)***

We represented Fruitridge Vista Water Company, a public drinking water provider, who alleged MTBE contamination to four groundwater wells.  I negotiated a settlement with station owners and refiners for over $1,200,000.

10.     Baron & Budd also currently represents plaintiffs in litigation arising from unsafe drugs and medical devices, financial fraud, Chinese drywall, California Proposition 65 cases, and consumer scams.

11.     Baron & Budd has received a great deal of recognition for its work representing both individuals and entities.   Some of those accolades include:

***The National Law Journal's Plaintiffs' "Hot List"***

The National Law Journal's prestigious "Hot List", published by American Lawyer Media, has named Baron & Budd seven times as an exemplary plaintiffs' firm (2002-2006, 2008, 2011).  This recognition is given to "firms in the United States that have done exemplary, cutting-edge work on the plaintiffs' side."  Each year, the National Law Journal profiles approximately a dozen plaintiffs' firms that have had substantial victories and have litigated cases that helped shape the law in significant ways.

***The Legal 500***

Baron & Budd has been repeatedly selected by The Legal 500 as one of the country's premier law firms in mass tort claims and class action litigation for the firm's work on toxic tort claims.  The Legal 500 describes its United States legal directory as "the guide to the preeminent firms in the world's strongest and most competitive legal market." According to its editors, The Legal 500 uses independent researchers interviewing thousands of clients in 90 countries worldwide to select "the best of the best" and provides commentaries on its recommended law firms based on feedback from clients, judges and other attorneys.  Based on this extensive research, The Legal 500 selected Baron & Budd as one of the top two law firms in the nation for toxic tort claims in 2008. The directory specifically noted the company's "strong water contamination practice" and continuing success in litigating serious asbestos cases.  In 2011, Baron & Budd was again selected to The Legal 500, this time as one of only two top tier law firms in mass torts and class actions. The directory called Baron & Budd "an industry leader in the field of toxic tort litigation."  The firm was selected once again in 2012 as one of just two top tier plaintiffs' firms in mass torts and class actions. The Legal 500 specifically noted the firm's involved in Gulf oil spill litigation and work in the late 2011 settlement with one of the major manufacturers of toxic Chinese drywall.

## CONTINGENT FEE REPRESENTATION

12.     The market-rate for representation in these cases is a contingent fee of one-third of any recovery as reflected by Baron & Budd's standard Legal Services Agreement.

13.     Very few firms in the United States represent plaintiffs in the type of complex environmental litigation that we undertake.  Proving the claims is difficult and expensive.  We frequently designate dozens of experts to provide opinions regarding multiple scientific and technical topics.  The discovery in these cases, which usually involve several corporate defendants, can involve millions of documents.  All of this makes the litigation extremely expensive, prohibitively so to many firms.  And that expense must be incurred with no guarantee of recovery.

14.     In fact, because these cases are highly contested, there is a substantial risk of non-recovery in each.  Despite our best efforts, Baron & Budd has been occasionally unsuccessful in these cases.  In 2002, the federal court to which all MTBE cases are assigned denied our attempt to certify as a class a group of residential landowners whose private wells were contaminated with MTBE in *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209

F.R.D. 323 (S.D.N.Y. 2002).  In another case, a district court granted summary judgment against a public water provider who alleged contamination of drinking water supplies with an industrial chemical.  *See Emerald Coast Utils. Auth. v. 3M Co.*, 746 F. Supp.2d 1216 (N.D. Fla. 2010).  And a California state court granted summary judgment against a group of former students of Beverly Hills High School who were exposed to benzene from oil drilling activities on school property.  *See Moss v. Venoco, Inc.*, Case No. BC297083 (Cal.Sup.Ct. Los Angeles 2006).  These cases represent a combined loss of millions of dollars and considerable attorney and staff time.  Few law firms (and fewer public water providers) could bear the risk of non-recovery.

15.     In addition, many of our clients could not pursue their legal remedies for water contamination without the option of a contingency fee contract.  As explained above, our clients are often governmental subdivisions (*e.g.*, villages, towns, cities) that lacked the ability to pay counsel on an hourly basis, to pay on-going expenses or bear the risk of no recovery.

16.     Accordingly, these sophisticated clients customarily agree to Baron & Budd's standard Legal Services Agreement that requires the parties to compensate counsel through the payment of a contingent fee of one-third of any recovery in addition to reimbursement of costs and expenses.

17.     Many of the public water providers represented by Baron & Budd have city attorneys, general counsel, or outside counsel who advise them on their daily affairs.  These sophisticated purchasers of legal services have all agreed to retain counsel to pursue water contamination litigation under Baron & Budd's standard Legal Services Agreement providing for an attorneys' fee award of one-third of any recovery.

18.     True and correct copies of Baron & Budd's standard Legal Services Agreement executed by the following sophisticated clients in arms'-length transactions have been submitted under seal, (ECF No. 310) for the Court's review:

1.    California Water Service Company
2.    City of Sunnyvale
3.    Town of Holden
4.    Town of Lakeville
5.    City of Lowell
6.    Town of Russell
7.    Town of Burlington
8.    City of Lawrence
9.    Town of Middleborough
10.   Town of Townsend
11.   Town of Foxbridge
12.   Town of Webster
13.   Bridgewater Water Department
14.   City of Kennett
15.   City of Mound City
16.   City of Pattonsburg
17.   Village of Island Lake
18.   Village of Hunter
19.   Jericho Water District, New York
20.   Village of Pawling, New York
21.   United Water New York Inc.
22.   Coraopolis Water & Sewer Authority
23.   Northampton, Bucks County Municipal Authority
24.   Harrisville Fire District, Harrisville, RI
25.   Town of North Kingstown, RI
26.   Buchanan County School Board
27.   Greensville County Water & Sewer Authority
28.   Patrick County School Board
29.   Craftsbury Fire District #2
30.   Town of Hartland
31.   Capital Credit Union
32.   Coffey Insurance Services
33.   Town of Freedom, Wisconsin
34.   Freedom Sanitary Water District Wisconsin
35.   St. Nicholas Parish
36.   Town of Matoaka, WV, Matoaka Water System
37.   Anawan Associates, Realty, LLC
38.   Town of Marshfield, Massachusetts
39.   Lunenburg Water District
40.   Town of Douglas, Massachusetts

41.    Dennis Water District
42.    Town of Billerica, Massachusetts
43.    Town of Barnstable, Massachusetts
44.    Town of Orange, Massachusetts
45.    Town of Provincetown, Massachusetts
46.    Raynham Center Water District
47.    Town of Scituate, Massachusetts
48.    Town of Sterling, Massachusetts
49.    Town of Halifax
50.    Town of Hanover
51.    Town of Hanson
52.    Hillcrest Water District
53.    Town of Holliston, Massachusetts
54.    Town of Hudson, MA
55.    Leicester Water Supply District
56.    Massasoit Hills Trailer Park
57.    Town of Merrimac, Massachusetts
58.    City of Methuen
59.    Town of Millis, Massachusetts
60.    Town of Monson
61.    Town of Norfolk
62.    Town of North Attleborough
63.    North Chelmsford Water District
64.    North Raynham Water District
65.    Town of North Reading, Massachusetts
66.    Town of Norwell, Massachusetts
67.    City of Peabody
68.    Town of Pembroke
69.    Town of Reading, Massachusetts
70.    Sandwich Water District
71.    Town of Spencer, Massachusetts
72.    Town of Stoughton
73.    Sudbury Water District
74.    Town of Tewksbury
75.    Town of Tyngsborough
76.    Town of Ware
77.    Town of Wayland
78.    United Methodist Church Wellfleet, Massachusetts
79.    Town of West Bridgewater
80.    Town of West Brookfield, Massachusetts
81.    Westport Federal Credit Union
82.    Westview Farm, Inc.
83.    Town of Weymouth, Massachusetts
84.    Town of Wilmington
85.    Town of Yarmouth
86.    United Water Connecticut Inc.

87. City of Santa Barbara
88. City of South Bend
89. City of Aberdeen, Maryland
90. City of Pomona
91. Quincy Community Services District
92. Riverview Water District
93. Martin Silver and Pauline May Silver Trustees and on behalf of the Trust established by the SILVER REVOCABLE DECLARATION OF TRUST DATED MAY 4, 1989, itself acting as General Partner and on behalf of M&P SILVER FAMILY PARTNERS II, (a California Limited Partnership), owners of Alpine Mobile Home Estates
94. Yosemite Spring Park Utility Co.
95. American Distilling
96. East Hampton Town Hall, East Hampton Center Village Water System, East Hampton High School, East Hampton Memorial School, East Hampton Middle School, East Hampton Center School and East Hampton Library/Senior Citizens Center
97. Our Lady of the Rosary Chapel
98. City of Galva, Iowa
99. City of Ida Grove, Iowa
100. City of Sioux City, Iowa
101. Village of Bethalto, Illinois
102. City of Nokomis
103. Village of Roanoke
104. City of Campbellsburg
105. Town of Kouts, Indiana
106. City of Mishawaka
107. North Newton School Corporation
108. City of Rockport
109. City of Bel Aire
110. Chisholm Creek Utility Authority
111. City of Dodge City, Kansas
112. City of Park City
113. The City of Marksville
114. Town of Rayville
115. Town of Berlin, Maryland
116. Town of Chestertown, Maryland
117. City of Salisbury, Maryland
118. Commissioners of Sharptown, Maryland
119. City of Taneytown, Maryland
120. County Commissioners of Worcester County, Maryland
121. City of Bridgeton
122. City of Camden
123. Little Egg Harbor Municipal Utilities Authority
124. Township of Montclair
125. Mount Laurel Municipal Utilities Authority

13

126.    New Jersey American Water Company, The Mount Holly Water Company and The Elizabethtown Water Company
127.    Borough of Penns Grove
128.    Penns Grove Water Company
129.    Borough of Point Pleasant Borough
130.    The Southeast Morris County Municipal Utilities Authority, a body corporate and Politic of the State of New Jersey
131.    United Water Vernon Hills Inc., United Water Hampton Inc., United Water New Jersey Inc., United Water Toms River Inc. and United Water Arlington Hills Inc.
132.    City of Vineland
133.    Township of Winslow

## BARON & BUDD'S PARTICIPATION IN THE CURRENT ACTION

19.     I have known Steve Tillery of Korein Tillery for many years.  Together, we represented cities in Illinois in MTBE litigation.  When we first discussed participating in an atrazine case, there had been no successful litigation against Syngenta for damages caused by atrazine.  One water provider had sued and lost.  I was hesitant to involve my firm because of the uncertainty associated with the litigation.  But after researching the issues, I determined that we would participate in the case.

20.     The Water Contamination Practice Group at Baron & Budd started working on the first atrazine case in 2004.  We devoted significant resources and time to the development of this litigation.  Early on, we began to travel regularly to St. Louis to meet with Korein Tillery to discuss litigation strategy and to divide tasks among the two firms (and among attorneys and staff within each firm).  We implemented a document management software system to process and organize both discovery and research documents.

### *Scott Summy*

21.     I led the Baron & Budd team.  At that time, I was already experienced with complex environmental litigation and had been working for several years on similar water contamination cases.  A list of my representative cases and clients is included above.

14

22.     I received my law degree from Texas Tech University School of Law in 1990 and was licensed in Texas that year.  I have since been licensed in North Carolina and New York and am admitted to practice in all federal courts in Texas, the Fifth Circuit Court of Appeals, the Northern District of Indiana, and the Southern District of Illinois.

23.     I have been involved over the years in a number of legal and environmental organizations including:  American Water Works Association (AWWA);  Association of Metropolitan Water Agencies (AMWA);  National Association of Water Companies (NAWC);  Association of California Water Agencies (ACWA);  American Ground Water Trust;  Mealey's Environmental Section;  Western Environmental Law Center (WELC);  WELC - Advisory Council (2003 – 2005);  American Association for Justice (Co-Chair Gulf Coast Oil Spill Litigation Section; Environmental Law Section);  Public Justice (PJ);  PJ Board of Directors (2008 – 2011);  State Bar of Texas Environmental Law Section;  International Municipal Lawyers Association (IMLA);  Fellow of Dallas Bar Association;  Texas Trial Lawyers Association;  Mass Tort Trial Lawyers Association.

24.     I have given a number of presentations at both legal and environmental seminars. My presentations include the following:

*Mealey's Emerging Toxic Torts*, "UST and MTBE Litigation Conference" (Co-Chairman, November 15, 1999)

*Mealey's Toxic Tort Conference*: Plaintiff, Defense and Expert Perspectives (April 17-18, 2000)

*Mealey's MTBE Conference* (May 11-12, 2000).

*American Bar Association Section of Environment, Energy, and Resources 30th Annual Conference on Environmental Law* (March 8-11, 2001)

*Mealey's MTBE Litigation Conference* 2001 (May 10-11, 2001)

*Mealey's MTBE & USTs Litigation Conference* (Co-Chairman, November 4-5, 2002)

*United States Composting Council 11th Annual Conference* (January 28-30, 2003)

*Tribal Concerns - Perchlorate Contamination Conference*, "How Do We Pay The Costs of Restoration?"  (September 10, 2003)

*International Municipal Lawyers Association*, "Protecting Your Drinking Water: MTBE Detects?  The Solution to MTBE Pollution" (October 12 - 15, 2003)

*United States Composting Council 12th Annual Conference* (January 25-28, 2004)

*Investigation and Remediation of Dry Cleaner Release Sites - Groundwater Resources Assn.*, "PCE - The Groundwater Contamination Problem: Who Should Pay to Clean Their Waste From Our Water?", Sacramento, CA (April 7, 2004)

*American Ground Water Trust*, "Perchlorate in America's Ground Water"  (May 3, 2004)

*2004 NGWA Groundwater and Environmental Law Conference*, "The 2003 Federal Energy Bill and MTBE Liability Protection:  If You Fail in Court You Can Win in Congress" (May 5-6, 2004)

*Guest Lecturer,* "Expert Witnesses," Saint Louis University Law School (September 25, 2004)

*International Municipal Lawyers Association*, "Emerging Contaminants," (October 5, 2004). California Nevada Section - American Water Works Association, "Perchlorate - The Blast That Lasts," (October 13, 2004)

*2004 Page Keeton Civil Trial Conference*, "Representing Water Providers in Environmental Litigation," (October 28, 2004)

*2004 Mealey's MTBE and USTs Litigation Conference*, "Lessons Learned in the Settlement and/or Trial of MTBE Cases," (December 7, 2004)

*2005 National Ground Water Association Ground Water Summit*, "Emerging Contaminants, MTBE and Their Impact on America's Water Supply," (April 18, 2005)

*Ohio Section - AWWA Conference*, "Atrazine Litigation: Recovering the Costs of Treatment," (September 21, 2005)

*2005 International Municipal Lawyers Association Annual Conference*, "Representing Public Water Providers in Water Contamination Cases," (September 26, 2005)

*Ohio Section - AWWA - 9th Annual Safe Drinking Water Act Seminar*, "Atrazine Litigation: Recovering the Costs of Treatment," (November 17, 2005)

*360 Advocacy Institute - Gulf Coast Disaster*:  Representing the Plaintiffs - Individuals to Institutions, "Back to the Future - Limitations of Shipowners' Liability Act of 1851 (46 U.S.C. § 30505)," (May 20-21, 2010)

*HB Litigation Conferences - Oil in the Gulf:  Litigation & Insurance Litigation Coverage Conference*, "National Survey of Cases Filed to Date & Coordinating State and Federal Cases," (June 24-25, 2010)

*Mass Torts Seminar - Deepwater Horizon/BP Spill*, Status of MDL, April 20th Deadline and Status of Scientific Experts  (April 13-15, 2011)

*Energy Accounting and Technology Conference*, "BP Oil Spill Litigation Update," University of New Orleans, May 15, 2012.

25.      In addition, I have published articles regarding the legal aspects of handling cases involving chemicals that impact public water providers and individuals.  I wrote many of these in 2003, when the "MTBE Liability Waiver" provision was added to the proposed Energy Bill coming out of the Legislature's Conference Committee.  The MTBE Liability Waiver would have stripped many of my clients of their rights to pursue the major oil companies under a products liability cause of action.  I criticized the controversial provision in the following articles:

"MTBE Immunity Provision A Bad Idea," Texas Lawyer, October 13, 2003

"'Fuel Safe Harbor' Provision Grants Immunity to MTBE Manufacturers," New Jersey Law Journal, Vol. CLXXIV - No. 3 - Index 237, October 20, 2003

"Cities May Lose Rights to Pursue Oil Companies for MTBE Contamination," New Jersey Conference of Mayors, February, 2004

One article authored was picked up by legal journals and mainstream publications in 124 instances in 15 states with a readership total of 4,434,256.  This article was entitled, "Should the Public Pay for the Oil Industry's Mistake?"

I also co-authored an article entitled, "The Texas Residential Construction Liability Act: Framework for Change."  It appeared in the Texas Tech Law Review, 27 Texas Tech Law Review 1 - 31 (1996).  Other articles include:  "Managing Claims Arising From the

17

Gulf Coast Oil Spill: Multidistrict Litigation v. the $20 Billion Fund," in TXLR, Vol. 25, # 26, July 8, 2010;

"The Legal Challenges and Ramifications of Gulf Oil Spill," Aspatore Special Report - Understanding the BP Oil Spill and Resulting Litigation - An In-Depth Look at the History of Oil Pollution and the Impact of the Gulf Oil Coast Disaster, 2010; Also appeared in West's 2010 Gulf Coast Oil Disaster - Litigation and Liability, October 2010.

26.     I testified before the Texas House Civil Practice and Remedies Subcommittee in opposition to Texas HB 1927, which was designed to provide immunity to manufacturers of gasoline additives.

27.     I have received the following awards and acknowledgements:

California Lawyer Attorneys of the Year (CLAY) Award for Environmental Law (2001)

Selected by D Magazine as one of the "Best Lawyers in Dallas" (2003)

Selected by Texas Monthly as a "Texas Super Lawyer" (2003)

Selected by D Magazine as one of the "Best Lawyers Under 40 in Dallas" (2004)

Selected by Texas Monthly as a "Texas Super Lawyer" (2004)

Selected by D Magazine as one of the "Best Lawyers in Dallas" (2005)

Selected by Texas Monthly as a "Texas Super Lawyer" (2005)

Selected to be included in The Best Lawyers in America 2006 edition

Selected by D Magazine as one of the "Best Lawyers in Dallas" (2006)

Selected by Texas Monthly as a "Texas Super Lawyer" (2006)

Selected by Texas Monthly as a "Texas Super Lawyer" (2007)

Selected to be included in The Best Lawyers in America 2007 edition

Selected as one of "The American Trial Lawyers Association's Top 100 Trial Lawyers for Texas - 2008"

Selected by D Magazine as one of the "Best Lawyers in Dallas" (2008)

Selected by Texas Monthly as a "Texas Super Lawyer" (2008)

Selected to be included in The Best Lawyers in America 2008 edition

Selected to be included in The Best Lawyers in America 2009 edition

Selected to be included in Lawdragon, 500 Leading Attorneys in the US 2009 edition

Selected by Super Lawyers, to be included in Super Lawyers Corporate Counsel Edition (2009)

Selected as one of "The American Trial Lawyers Association's Top 100 Trial Lawyers for Texas - 2008-2009"

Finalist – Public Justice Trial Lawyer of the Year (2009)

Selected by Texas Monthly as a "Texas Super Lawyer" (2009)

Selected to be included in The Best Lawyers in America 2010 edition

Selected by Super Lawyers, to be included in Super Lawyers Corporate Counsel Edition (2010)

Selected by Texas Monthly as a "Texas Super Lawyer" (2010)

Selected by Texas Monthly to be included in "Super Lawyers Business Edition" (inaugural publication)

Selected to be included in The Best Lawyers in America 2011 edition

Selected by Texas Monthly as a "Texas Super Lawyer" (2011)

Selected to be included in The Best Lawyers in America 2012 edition

Selected by Texas Monthly to be included in "Super Lawyers Business Edition" (2012)

Selected by Texas Monthly as a "Texas Super Lawyer" (2012)

Recognized as a "highly recommended" attorney in Baron & Budd's selection to the Legal 500 List (2012)

Selected by Benchmark Litigation, the Guide to America's Leading Litigation Firms and Attorneys, as a Leading Plaintiffs Star in Texas (2012)

19

28.     I am also AV rated by Martindale-Hubble.

29.     Prosecution of the atrazine cases involved primarily the attorneys in the Water Contamination Practice Group at Baron & Budd.  I oversaw and coordinated the work of numerous individual attorneys at Baron & Budd, and I am familiar with the qualifications of each of the attorneys and the activities they performed for the atrazine cases.  Those who performed various tasks from 2004 to present include Russell Budd, Cary McDougal, Celeste Evangelisti, Carla Burke, Mitchell McCrea, Stephen Johnston, Stephen Blackburn, Chris Nidel, Ellen Presby, Chad West, David Green, Kevin McHargue, Steve Jensen, Staci Olsen, Renee Melancon, and Jory Lange.  The following paragraphs summarize each attorney's background and role in this case.

### Russell Budd

30.     Russell Budd is one of the founders of Baron & Budd.  He has been a driving force in the world of plaintiffs' attorneys for over thirty years.  Mr. Budd helped develop the firm's asbestos practice and then expanded its practice into other areas where it can demonstrate its commitment to protecting individuals and the environment from harm.

31.     Mr. Budd was licensed to practice law in Texas in 1979 after graduating from the University of Texas School of Law.  In addition to trial victories, he has played significant roles in asbestos litigation on a national level.  As chair and member of several asbestos creditors' bankruptcy committees, he has successfully resolved over 100,000 victims' claims with some of Wall Street's biggest companies.  Mr. Budd was a chief negotiator of a $4 billion national settlement with Halliburton that established a trust fund to protect present and future asbestos victims throughout the United States – the largest asbestos trust fund of its kind anywhere in the world.  He also served on the committee that negotiated a $3.9 billion settlement with United

States Gypsum to benefit future asbestos claimants and has participated in negotiations that led W.R. Grace to fund a bankruptcy trust on for asbestos claimants with nearly $3 billion in cash and stock equity.

32.     Mr. Budd has also been instrumental in conducting national negotiations for non-asbestos claims.  He was a chief negotiator for the 2012 settlement with JPMorgan Chase in In Re Checking Account Overdraft Litigation, which resulted in $110 million in cash and more than $100 million in business practice changes benefiting Chase customers.  He was also a leader in the bank overdraft fees litigation which led to the 2011 settlement of $410 million with Bank of America.  In addition, he negotiated the settlement of a California Proposition 65 case involving efforts by three environmental groups to reduce cancer-causing diesel engine exhaust emissions from school buses.  The settlement, valued at almost $35,000,000, resulted in investments to decrease the pollutant levels inside the buses.

33.     Russell Budd's significant contributions to the plaintiffs' bar and to environmental law have been recognized many times by the community.  In 2010, he was awarded the Harry M. Philo Award Trial Lawyer of the Year Award from the American Association for Justice in recognition of his dedicated and consistent leadership in protecting the rights of individuals through the civil justice system.  In 2007, he earned the Wiedemann Wysocki National Finance Council Award from AAJ, an award honoring attorneys for their commitment to the legal profession and their efforts to improve the civil justice system.

34.     He lent his perspective and experience to the Water Contamination Practice Group in discussing overall case strategy.  And he participated in settlement negotiations and discussions.

### *Cary McDougal*

35.     Cary McDougal is a shareholder at Baron & Budd and part of the Water Contamination Practice Group.  He was licensed in 1988 after completing his law degree at the University of Texas School of Law.  He is admitted to practice in the United States District Courts for the Northern, Eastern, and Western Districts of Texas.

36.     Mr. McDougal has extensive trial experience.  He has been the lead attorney in more than 75 jury trials in state and federal court in all types of cases.  He manages the Water Contamination Practice Group at Baron & Budd but is substantively involved in every case assigned to the group.

37.     Mr. McDougal has been involved in every aspect of atrazine case management since 2005.  He assists in all areas of client development, legal strategy, discovery process, and resource allocation.

### *Celeste Evangelisti*

38.     Celeste Evangelisti is a shareholder at Baron & Budd and part of the Water Contamination Practice Group.  Ms. Evangelisti earned her law degree from Cornell University School of Law in 1995.  She is licensed to practice law in Texas, California, and New York and is admitted to practice in the United States District Courts for the Northern, Southern, and Eastern Districts of Texas, the Northern, Southern, Eastern, and Central Districts of California, the Southern and Eastern Districts of New York, and the Southern District of Illinois.

39.     Ms. Evangelisti has won several awards recognizing her outstanding work: Finalist, Public Justice Trial Lawyer of the Year (2009);  Texas Super Lawyer (Thompson Reuters, 2003-2005);  Daily Journal Corp.'s California Lawyer Attorneys of the Year (CLAY) Award for Environmental Law, 2001 (member of legal team/awardee).

22

40.     She has spoken on many topics including "How to Work Up an MTBE Case –

Documents and Depositions," MTBE Multi-District Litigation PSC Group (March 15, 2005);

"Pursuit of Damages by Municipal Water Providers and Private Well Owners," Mealey's MTBE

& USTs Litigation Conference (December 6, 2004);  "MTBE: The Plaintiffs' Perspective,"

Federation of Defense and Corporate Counsel (July 29, 2004);  "Perchlorate in Ground Water:

Legal Implications," American Ground Water Trust (February 9, 2004);  "Perchlorate: The Blast

that Lasts," 11th Annual Region 9 Tribal EPA Conference (October 23, 2003);  "Discovery

Issues: What are your looking for? What are you going to find?" Mealey's MTBE and USTs

Litigation Conference (November 4-5, 2002);  "MTBE: What the Public's Representatives

Should Know," Twelfth Annual Texas Environmental Superconference (August 2, 2000);

"Update on Class Actions," Mealey's MTBE Conference (May 11-12, 2000).

41.     Ms. Evangelisti has a long history of working on complex environmental cases.

She started working with me on MTBE cases in 1999.  She been involved in the atrazine cases

from the beginning.  She has been involved in all phases of litigation including discovery, legal

research, liability research, and work with experts to develop scientific testimony.

### *Carla Burke*

42.     Carla Burke is a shareholder at Baron & Budd and part of the Water

Contamination Practice Group.  She earned her law degree from Southern Methodist University

in 1999 and was licensed in Texas that year.  She has since been licensed in the State of New

York and is admitted to practice in the United States Supreme Court, the United States Court of

Appeals for the Fifth Circuit, the United States District Court for the Southern District of Illinois.

43.     Her work has been recognized with a nomination as Finalist for the Public Justice Trial Lawyer of the Year Award in 2009 for her work on the MTBE cases.  And she was named to Law & Politics Media's List of "Texas Rising Stars" in 2006.

44.     Ms. Burke has published the following articles and given the following presentations: Publications include:  Co-Author, "Toxic Torts and Mass Torts," 57 SMU Law Review 1267 (2004);  Contributor, "Toxic Torts and Mass Torts," 56 SMU Law Review 2053 (2003);  Contributor, "Toxic Torts and Mass Torts," 55 SMU Law Review 1375 (2002);  Co-Author, "Applying Texas Premises Liability Law to Asbestos Cases," COLUMNS, September 2001.  Presentations include:  Panelist, "Setting the Bar for 'Injury' in Environmental Exposure Cases: How Low Can It Go?" Environmental Law Institute Seminar, 2012; Panelist, "Emerging Issues Regarding Toxins Affecting Water," American Association for Justice Annual Convention, 2010;  Speaker, "Water Contamination: What Lies Beneath," Harris Martin Oil Spill Litigation Conference, 2010;  Panelist, "Are There Synergistic Effects Between Toxic Tort Suits and Environmental Regulations?" Environmental Law Institute, 2006;  Speaker, "Update on MTBE Litigation," Energy Litigation Conference, 2005;  Co-Presenter, "Premises Liability Cases: What Does the Future Hold?" Andrews Asbestos Litigation Conference, 2003;  Co-Presenter, "Texas Supreme Court Update," Dallas Court of Appeals Seminar, 2000.

45.     Ms. Burke has worked on the atrazine cases since 2004.  She is responsible for developing case strategy, legal research, drafting briefs, depositions, and client relations.

### Stephen Johnston

46.     Stephen Johnston is a shareholder at Baron & Budd and part of the Water Contamination Practice Group.  He graduated from Texas Tech University School of Law in 1996 and is licensed in Texas.  He is a member of several professional associations including

American Association for Justice, Public Justice, Texas Trial Lawyers Association, and Dallas Trial Lawyers Association.

47.     Mr. Johnston has worked on the atrazine cases since 2005.  He has been involved in discovery, depositions, and case development.

### Mitchell McCrea

48.     Mitchell McCrea is an attorney in Baron & Budd's water contamination litigation group.  He earned his law degree *cum laude* from Texas Tech School of Law in 2003 and is licensed in Texas.  He is admitted to practice in all federal courts in Texas, the United States District Courts for the Eastern and Western Districts of Arkansas, and the Southern District of Illinois.

49.     Mr. McCrea has worked on the atrazine cases since 2010.  He has been responsible for various aspects of discovery including traveling to clients' offices to gather documents for production, reviewing the gathered materials, summarizing the documents in preparation for deposition, meeting with clients to prepare for their depositions, and attending those depositions.

50.     **Staci Olsen** is a staff attorney in Baron & Budd's water contamination litigation group.  She was licensed in Texas in 1996 and has extensive experience with complex case discovery and document management.  She has worked on the atrazine cases since 2010, reviewing documents for production, assisting with document management programs, and implementing efficient document review protocols.

51.     **Stephen Blackburn** was licensed to practice law in Texas in 2004.  As an associate in the Water Contamination Practice Group, he worked on the atrazine cases intermittently from 2004 to 2008.  His tasks included legal and scientific research.

52.     **Chad West** was licensed to practice in Texas in 2006.  As an associate in the Water Contamination Practice Group, he worked on the atrazine cases in 2009, and was assigned to assist with gathering client documents for production.

53.     **Chris Nidel** was licensed to practice in Texas in 2003.  As an associate in the Water Contamination Practice Group, he worked on the atrazine cases briefly in 2005.  His tasks included legal research and review of water contamination data.

54.     **David Green** was licensed to practice in Texas in 2002.  As an associate in the Water Contamination Practice Group, he worked briefly on the atrazine case, performing legal research in 2005.

55.     **Jory Lange** was licensed to practice in Texas in 2003.  He worked briefly on the atrazine case, performing legal research in 2006.

56.     **Ellen Presby** is a former shareholder of Baron & Budd, who was licensed to practice in Texas in 1984.  She has extensive trial experience and advised on the atrazine case in 2005.

57.     **Steve Jensen** is a former shareholder of Baron & Budd who was licensed to practice in Texas in 1992.  He helped with legal research for the atrazine cases in 2004.

58.     **Kevin McHargue** is a former shareholder of Baron & Budd who was first licensed to practice in Texas in 1995.  As an appellate lawyer, he provided advice regarding the atrazine case and performed legal research in 2004.

59.     **Renee Melancon** was licensed to practice in Texas in 2002.  As an associate in the Water Contamination Practice Group, and later in the appellate section of the firm, she worked briefly on the atrazine case, performing legal research in 2005.

60.     We hired several attorneys to review and code client documents for production. Those attorneys include Cindy Mirliss (licensed to practice in Texas in 1996), who worked on the atrazine cases from 2010-2012;  Clint Savage (licensed to practice in Texas in 2007), who worked on the atrazine cases from 2010-2011;  Sangeeta Kuruppillai (licensed to practice in Texas in 1990), who worked on the atrazine cases from 2010-2012;  Jonathan Gruver (licensed to practice in Texas in 1995), who worked on the atrazine cases in  2010;  Ryan Burton (licensed to practice in Texas in 2005), who worked on the atrazine cases from 2010-2012.  Pearl Landau (licensed to practice in Texas in 1998), who worked on the atrazine cases in 2010;  Kimberly Snyder (licensed to practice in California in 2001), who worked on the atrazine cases from 2010-2011;  Michael Lowery (licensed to practice in Illinois in 1985), who worked on the atrazine cases in 2010;  Stacie Stallings (licensed to practice in Texas in 2009), who worked on the atrazine cases from 2010-2011; and Rebecca Fellman (licensed to practice in Texas in 2009), who worked on the atrazine cases from 2010-2011.

61.     In addition to attorneys, Baron & Budd has dedicated numerous paralegals and other staff persons to these cases.  Approximately 15 individuals have been assigned tasks including primarily document gathering, review, and production, some of which required extensive out-of-state travel.

62.     **Erin McIntosh** is the senior paralegal in the Water Contamination Practice Group and has extensive experience managing staff and resources in complex environmental cases.  She started working with me in 1995 and has worked on all of my cases since that time.  She coordinated and oversaw the activities of staff assigned to this case.

27

## BARON & BUDD'S TASKS

63.     Since becoming involved in atrazine litigation in 2004, Baron & Budd has been involved in many aspects of this case.  The firm has gathered and reviewed documents to respond to discovery;  analyzed water sampling data produced by both plaintiffs and defendant Syngenta;  trained document reviewers, prepared document collections for depositions and motion practice; interviewed witnesses, consultants, and experts; prepared Plaintiffs for depositions; prepared for the depositions of witnesses; attending numerous depositions of Plaintiffs; assisted with the responses to numerous motions, including a motion for remand, multiple motions to dismiss, and various motions related to discovery; prepared for and attended numerous hearings before the Court; prepared the settlement conference statement;  prepared for and attended settlement-related conferences;  assisted with settlement documents;  researched and assisted in the preparation of the settlement allocation formula.

64.     Our firm spent considerable time gathering documents from clients for production in discovery.  This process required visiting each client's physical facilities to locate documents kept in offices, files, and other document storage areas as well as becoming familiar with the client's electronic document files and maintenance procedures.  During these visits, our attorneys and staff reviewed, collected, and copied physical documents and electronic media.  Because the clients are geographically located in the Midwest, our attorneys and staff traveled to locations where they stayed for days at a time to complete each collection.

65.     After the documents were collected from the clients, they were uploaded into the document management system at Baron & Budd.  Then they were reviewed and coded into categories for production.  Baron & Budd reviewed over 1,200,000 documents from clients alone.

66.     Baron & Budd attorneys were also responsible for preparing and defending many of the clients for their depositions.  This required reviewing the client's documents and traveling again to their places of business to meet with the deponents.  And Baron & Budd attorneys traveled to St. Louis to defend the client depositions as well.

## BARON & BUDD ATTORNEY AND STAFF TIME

67.     I am familiar with the attorney and staff time consumed by this case, and with the records of my law firm.  Submitted along with this Petition and Declaration are true and accurate time records showing the amount of time spent by attorneys and staff at Baron & Budd.

68.     Baron & Budd attorneys and staff have devoted substantial time to the prosecution of this case --- a total of over 36,000 hours.  I have dedicated 754 hours to these cases.  Cary McDougal has devoted 707 hours to these cases.  Carla Burke has devoted 1,010 hours to these cases.  Mitchell McCrea has devoted 1,273 hours to these cases.  Celeste Evangelisti has devoted 257 hours to these cases.  Stephen Johnston devoted 139 hours to these cases.

69.     In addition, Baron & Budd's legal assistants and paralegals have dedicated more than 11,000 hours to these cases. A true and accurate summary of each professional's time spent in furtherance of the litigation compiled from firm business records, the corresponding billing rate using actual Korein Tillery rates and a calculation of the lodestar is attached as Exhibit A to this Declaration.

70.     As discussed above, Baron & Budd generally represents plaintiffs on a contingent fee basis.  That is true of the clients in the atrazine cases as well.  Like the contracts executed by hundreds of individual clients who have retained Baron & Budd to pursue recovery for contamination of their water supplies, the named plaintiffs in this matter agreed to Baron &

Budd's standard retention agreement that provides for payment of attorneys' fees equal to one-third of any recovery and reimbursement of costs and expenses.

71.     The sixteen municipalities retained Korein Tillery and Baron & Budd to represent them in this matter for the firms' standard fee of one-third of any recovery before reimbursement of costs and expenses.  Many municipalities were represented in these negotiations through counsel, and the resulting contracts were approved and adopted by the municipalities' governing bodies.

72.     The six affected American Water divisions also retained Korein Tillery and Baron & Budd to represent them in this matter.  However, American Water's counsel negotiated a contingent fee of one-third of any recovery calculated *after* reimbursement of costs and expenses. The terms of these agreements and the representation were reviewed by American Water's counsel and approved by the Board of Directors of their corporate parent.

73.     As a result, the plaintiffs did not pay attorneys' fees or any other expenses as they were incurred.  Thus, the firms would recover their fees and expenses only if the plaintiffs prevailed in litigation or successfully settled the case.

74.     Our firms have incurred all the expenses of litigation (over $4,500,000 for my firm alone) over the last eight years without any guarantee of reimbursement.  Nor was there a guarantee that we would recover a fee.  Not many firms in the United States would or could take that kind of financial risk.

75.     Some of the cases that Baron & Budd has lost are described above.  In my opinion, the risk of non-recovery in the *Greenville* matter is at least as great as in those cases.  It is possible here, as in those cases, that Baron & Budd would not be reimbursed its expenses or collect any fee for the work described in this Declaration.

30

76.     Submitted along with this and Declaration is a true and accurate summary of expense records compiled by the accounting department at Baron & Budd showing the expenses incurred in the prosecution of this matter.  These records accurately reflect the expenses of litigation in these cases.

77.     These time and expense records demonstrate the difficulty of this action and the enormous uncertainty shouldered by Baron & Budd and Korein Tillery in representing the plaintiffs.  Because these cases are so expensive, time-consuming, and risky, very few firms will take on such representation.  No other firm competed to represent any of the plaintiffs in this action.  The potential loss is too high.

78.     The fees requested in this case are consistent with other contingent fees in similar high-risk cases.  I am not aware of any similar case in which fees were awarded according to an "auction" or other process.  As discussed above, the one-third contingent fee is the standard fee charged by Baron & Budd in similar cases.  We have contracted for this fee in over one hundred cases.

79.     In this matter, the recovery of fees, costs, and expenses that our firms anticipate, assuming Court approval of the full amount requested, is a reasonable return on our investments of work and money in a case that has been difficult and expensive, but ultimately successful for the Class.

80.     The attorneys' fees, costs, and expenses that Baron & Budd and Korein Tillery now seek are fair and reasonable for the work performed and reflect the typical fee for legal services in complex environmental cases.  The fees, costs, and expenses should be approved.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

___July 30, 2012___
Dated

Scott Summy
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605

| Year-Month | Partner | Attorney | Non-Attorney Professional | Grand Total |
|---|---|---|---|---|
| **2004** | | | | |
| Jan | 4.00 | | | 4.00 |
| Jul | 9.50 | | | 9.50 |
| Aug | 6.50 | | | 6.50 |
| Sep | 6.00 | | | 6.00 |
| Oct | 29.50 | | | 29.50 |
| Nov | 8.00 | 3.00 | | 11.00 |
| Dec | 55.00 | | | 55.00 |
| **2005** | | | | |
| Jan | 51.00 | 10.00 | 10.00 | 71.00 |
| Feb | 16.00 | | | 16.00 |
| Mar | 6.00 | | | 6.00 |
| Apr | 6.00 | | | 6.00 |
| May | 3.00 | | | 3.00 |
| Jun | 11.00 | | | 11.00 |
| Jul | 88.50 | 3.00 | | 91.50 |
| Aug | 13.00 | 5.00 | | 18.00 |
| Oct | 16.75 | | | 16.75 |
| Nov | 7.75 | 2.00 | | 9.75 |
| Dec | 7.00 | 1.00 | | 8.00 |
| **2006** | | | | |
| Jan | 0.75 | | | 0.75 |
| May | | | 1.00 | 1.00 |
| Jun | | 3.00 | | 3.00 |
| Jul | | 2.00 | | 2.00 |
| **2008** | | | | |
| Jul | 8.00 | | | 8.00 |
| Aug | 13.50 | | | 13.50 |
| Sep | 17.50 | 6.00 | | 23.50 |
| Oct | 35.00 | | | 35.00 |
| Nov | 9.50 | | | 9.50 |



EXHIBIT

A

| | | | | |
|---|---|---|---|---|
| Dec | 29.00 | | | 29.00 |
| **2009** | | | | |
| Jan | 5.00 | | | 5.00 |
| Feb | 77.50 | 10.00 | 14.00 | 101.50 |
| Mar | 133.00 | | | 133.00 |
| Apr | 110.25 | 1.00 | | 111.25 |
| May | 36.00 | 2.00 | | 38.00 |
| Jun | 58.00 | | | 58.00 |
| Jul | 43.00 | 19.00 | 16.00 | 78.00 |
| Aug | 104.25 | 2.00 | | 106.25 |
| Sep | 100.00 | 10.00 | | 110.00 |
| Oct | 96.50 | 58.00 | 46.00 | 200.50 |
| Nov | 42.50 | 9.00 | | 51.50 |
| Dec | 40.50 | | | 40.50 |
| **2010** | | | | |
| Jan | 55.00 | | 0.50 | 55.50 |
| Feb | 75.75 | | | 75.75 |
| Mar | 33.00 | 4.00 | 8.50 | 45.50 |
| Apr | 40.00 | | | 40.00 |
| May | 61.50 | | | 61.50 |
| Jun | 55.00 | 12.00 | | 67.00 |
| Jul | 25.75 | 30.00 | | 55.75 |
| Aug | 97.50 | 167.00 | 87.00 | 351.50 |
| Sep | 52.25 | 395.50 | 174.00 | 621.75 |
| Oct | 75.50 | 1,219.75 | 853.75 | 2,149.00 |
| Nov | 26.00 | 2,137.25 | 1,151.50 | 3,314.75 |
| Dec | 22.00 | 1,784.75 | 795.00 | 2,601.75 |
| **2011** | | | | |
| Jan | 57.00 | 1,317.75 | 645.00 | 2,019.75 |
| Feb | 18.00 | 818.50 | 527.00 | 1,363.50 |
| Mar | 48.50 | 743.50 | 905.25 | 1,697.25 |
| Apr | 39.00 | 693.00 | 773.25 | 1,505.25 |
| May | 43.50 | 803.00 | 739.50 | 1,586.00 |
| Jun | 141.50 | 1,059.25 | 587.50 | 1,788.25 |
| Jul | 155.75 | 1,055.50 | 737.00 | 1,948.25 |

| | | | | |
|---|---:|---:|---:|---:|
| Aug | 112.75 | 1,193.25 | 921.00 | 2,227.00 |
| Sep | 44.50 | 1,094.00 | 785.75 | 1,924.25 |
| Oct | 41.00 | 1,066.25 | 752.25 | 1,859.50 |
| Nov | 88.00 | 1,080.50 | 774.75 | 1,943.25 |
| Dec | 27.00 | 1,010.75 | 589.75 | 1,627.50 |
| **2012** | | | | |
| Jan | 24.00 | 1,036.50 | 746.25 | 1,806.75 |
| Feb | 57.50 | 463.50 | 491.25 | 1,012.25 |
| Mar | 16.25 | 311.00 | 239.50 | 566.75 |
| Apr | 55.50 | 152.00 | 2.50 | 210.00 |
| May | 4.00 | 258.00 | 32.00 | 294.00 |
| Jun | 3.00 | 165.00 | 41.00 | 209.00 |
| Jul | 6.50 | 64.75 | 63.50 | 134.75 |
| **Grand Total** | **2,906.75** | **20,282.25** | **13,511.25** | **36,700.25** |

| Biller | Rate | Actual | $ lodestar | |
|--------|------|--------|------------|---|
| Scott Summy | $750.00 | 754.25 | $565,687.50 | |
| Russell Budd | $750.00 | 19.00 | $14,250.00 | |
| Cary McDougal | $700.00 | 710.50 | $497,350.00 | |
| Carla Burke | $600.00 | 1,012.00 | $607,200.00 | |
| Celeste Evangelisti | $600.00 | 257.00 | $154,200.00 | |
| Stephen Johnston | $600.00 | 139.00 | $83,400.00 | |
| Ellen Presby | $500.00 | 10.00 | $5,000.00 | |
| Steve Jensen | $500.00 | 3.00 | $1,500.00 | |
| Kevin McHargue | $500.00 | 2.00 | $1,000.00 | |
| Mitchell McCrea | $350.00 | 1,273.50 | $445,725.00 | |
| Stephen Blackburn | $300.00 | 11.00 | $3,300.00 | |
| Staci Olsen | $250.00 | 5,217.75 | $1,304,437.50 | |
| Chad West | $250.00 | 115.00 | $28,750.00 | |
| Chris Nidel | $250.00 | 10.00 | $2,500.00 | |
| David Green | $250.00 | 6.00 | $1,500.00 | |
| Jory Lange | $250.00 | 3.00 | $750.00 | |
| Cindy Mirliss | $200.00 | 3,607.00 | $721,400.00 | |
| Ryan Burton | $200.00 | 3,465.50 | $693,100.00 | |
| Sangeeta Kuruppillai | $200.00 | 2,977.75 | $595,550.00 | |
| Kimberly Snyder | $200.00 | 851.25 | $170,250.00 | |
| Clint Savage | $200.00 | 718.50 | $143,700.00 | |
| Rebecca Fellman | $200.00 | 714.50 | $142,900.00 | |
| Stacie Stallings | $200.00 | 705.75 | $141,150.00 | |
| Jonathan Gruver | $200.00 | 421.75 | $84,350.00 | |
| Pearl Landau | $200.00 | 114.75 | $22,950.00 | |
| Michael Lowery | $200.00 | 64.25 | $12,850.00 | |
| Non-Attorney | $150.00 | 13,511.25 | $2,026,687.50 | |
| **Total** | | **36,695.25** | **$8,471,437.50** | |

| Year-Month | Copies | Court Costs | Experts | Shipping | Transcripts | Travel | Westlaw | Grand Total |
|---|---|---|---|---|---|---|---|---|
| **2004** | | | | | | | | |
| Jul | | | $ 2,860.00 | | | | $ 209.06 | $ 3,069.06 |
| Aug | | | | | | | $ 111.74 | $ 111.74 |
| Oct | | | $ 3,075.00 | | | | | $ 3,075.00 |
| Nov | | | | | | | $ 3,865.16 | $ 3,865.16 |
| Dec | | | | | | | $ 2,922.95 | $ 2,201.03 | $ 5,123.98 |
| **2005** | | | | | | | | |
| Jan | $ 28.91 | | $ 4,080.00 | | | $ 8,878.60 | | $ 12,987.51 |
| Feb | | | | | | $ 4,503.06 | $ 103.65 | $ 4,606.71 |
| Mar | | | | | | | $ 831.26 | $ 831.26 |
| Apr | | | $ 711.73 | | | | | $ 711.73 |
| May | $ 347.25 | | $ 2,500.00 | | | | | $ 2,847.25 |
| Jun | $ 4,646.55 | | $ 260.00 | | | | | $ 4,906.55 |
| Jul | $ 3,722.58 | | | | | $ 286.30 | $ 2,807.82 | $ 6,816.70 |
| Aug | $ 23.10 | | $ 8,015.66 | | | $ 5,527.61 | $ 4,266.45 | $ 17,832.82 |
| Sep | $ 1,427.01 | | $ 4,800.00 | | | | | $ 6,227.01 |
| Oct | $ 40.60 | | | | | | $ 45.72 | $ 86.32 |
| Nov | $ 724.95 | | | | | | $ 39.22 | $ 764.17 |
| Dec | $ 1.05 | | | $ 39.18 | | $ 1,550.89 | $ 2,822.78 | $ 4,413.90 |
| **2006** | | | | | | | | |
| Jan | | | | | | | $ 989.15 | $ 989.15 |
| Feb | $ 361.05 | | | $ 15.02 | | | | $ 376.07 |
| Apr | $ 780.90 | | $ 2,040.00 | | | | | $ 2,820.90 |
| May | $ 350.25 | | $ 825.00 | | | | $ 34.92 | $ 1,210.17 |
| Jun | $ 86.95 | | | | | | $ 27.00 | $ 113.95 |
| Jul | $ 1,792.47 | | | | | | $ 803.36 | $ 2,595.83 |
| Aug | | | | | | | $ 717.72 | $ 717.72 |
| Sep | | | $ 817.50 | | | | | $ 817.50 |
| Nov | | | $ 765.00 | | | | $ 23.00 | $ 788.00 |
| **2007** | | | | | | | | |
| Aug | | | | | | | $ 32.00 | $ 32.00 |

EXHIBIT B

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Dec | | | $ 262.50 | | | | | $ 262.50 |
| **2008** | | | | | | | | |
| Aug | | | | | | $ 875.00 | | $ 875.00 |
| Sep | | | | | | $ 151.25 | $ 32.28 | $ 183.53 |
| Oct | | | | | | $ 539.72 | $ 308.61 | $ 848.33 |
| Dec | | | $ 682.50 | $ 6.28 | | $ 1,521.32 | $ 32.00 | $ 2,242.10 |
| **2009** | | | | | | | | |
| Jan | $ 3.60 | | | | | | | $ 3.60 |
| Feb | | | | | | $ 7,055.88 | | $ 7,055.88 |
| Mar | $ 249.75 | | | $ 1.00 | | $ 28,122.84 | $ 941.69 | $ 29,315.28 |
| Apr | $ 1,221.36 | | $ 15,712.07 | $ 36.35 | | $ 15,381.33 | $ 1,555.83 | $ 33,906.94 |
| May | $ 497.25 | | $ 48,169.20 | $ 168.35 | | $ 8,431.95 | $ 2,232.71 | $ 59,499.46 |
| Jun | $ 668.10 | | $ 6,753.15 | $ 36.25 | | $ 13,691.30 | $ 1,642.07 | $ 22,790.87 |
| Jul | $ 3.30 | | $ 4,951.20 | $ 42.01 | | $ 1,506.96 | $ 2,000.57 | $ 8,504.04 |
| Aug | $ 452.13 | | $ 2,274.73 | $ 124.63 | | $ 10,637.48 | $ 604.69 | $ 14,093.66 |
| Sep | $ 952.80 | | $ 19,049.75 | $ 64.77 | | $ 8,830.71 | $ 8,856.99 | $ 37,755.02 |
| Oct | $ 49.80 | | $ 5,928.25 | | | $ 6,047.48 | $ 1,106.37 | $ 13,131.90 |
| Nov | $ 5.40 | | $ 29,812.85 | $ 31.37 | | $ 18,495.50 | $ 856.71 | $ 49,201.83 |
| Dec | $ 5,779.46 | | $ 6,986.25 | $ 529.56 | | $ 22,093.83 | $ 1,413.76 | $ 36,802.86 |
| **2010** | | | | | | | | |
| Jan | | | $ 1,924.56 | $ 2.27 | | $ 2,921.20 | | $ 4,848.03 |
| Feb | | | $ 15,219.42 | $ 11.67 | | $ 5,442.21 | | $ 20,673.30 |
| Mar | $ 0.15 | | $ 10,560.23 | $ 31.07 | | $ 7,352.98 | $ 1,298.59 | $ 19,243.02 |
| Apr | | | $ 18,752.38 | | | $ 2,431.32 | | $ 21,183.70 |
| May | $ 8.34 | | | $ 78.63 | | $ 7,049.52 | $ 227.09 | $ 7,363.58 |
| Jun | | | $ 6,889.59 | $ 9.12 | | $ 5,542.40 | $ 4,694.18 | $ 17,135.29 |
| Jul | $ 8.70 | | $ 28,106.64 | $ 151.04 | | $ 710.69 | $ 417.06 | $ 29,394.13 |
| Aug | | | $ 24,552.63 | $ 6.02 | | $ 1,331.21 | $ 906.06 | $ 26,795.92 |
| Sep | $ 42,879.78 | $ 11,361.50 | $ 640.00 | $ 643.17 | | $ 21,074.75 | $ 99.95 | $ 76,699.15 |
| Oct | $ 6,081.54 | | $ 26,131.17 | $ 2,631.84 | | $ 8,438.89 | $ 3,588.97 | $ 46,872.41 |
| Nov | $ 62,375.27 | $ 1,406.50 | $ 11,438.80 | $ 514.82 | | $ 51,872.46 | $ 64,748.93 | $ 192,356.78 |
| Dec | $ 535,205.19 | | $ 11,598.60 | $ 122,349.13 | | $ 60,184.50 | $ 542.47 | $ 729,879.89 |
| **2011** | | | | | | | | |
| Jan | $ 60.22 | | $ 79,483.40 | $ 4,587.37 | | $ 4,710.00 | $ 12,560.00 | $ 101,400.99 |
| Feb | $ 30,976.49 | | $ 30,183.49 | | | $ 15,882.81 | $ 5,000.00 | $ 82,042.79 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Mar | $ 66,064.26 | | $ 33,701.25 | $ 7,752.83 | | $ 1,784.82 | $ 5,001.52 | $ 114,304.68 |
| Apr | $ 230,692.41 | | $ 46,001.94 | $ 3,661.47 | | $ 10,495.22 | $ 5,017.87 | $ 295,868.91 |
| May | $ 33,773.27 | | | $ 59.51 | | $ 13,173.99 | $ 5,995.33 | $ 53,002.10 |
| Jun | $ 157,181.79 | | $ 71,857.55 | $ 153.29 | | $ 1,501.14 | $ 6,636.90 | $ 237,330.67 |
| Jul | $ 36,411.04 | | $ 43,574.20 | $ 218.90 | | $ 21,740.33 | $ 6,843.18 | $ 108,787.65 |
| Aug | $ 42,716.15 | | $ 5,740.11 | $ 5,323.12 | | $ 32,672.83 | $ 5,343.47 | $ 91,795.68 |
| Sep | $ 13,836.50 | $ 3.12 | $ 79,735.33 | $ 2,805.49 | | $ 38,972.23 | $ 5,030.00 | $ 140,382.67 |
| Oct | $ 15,115.26 | | | $ 3,053.75 | $ 7,079.45 | $ 10,873.56 | $ 5,000.00 | $ 41,122.02 |
| Nov | $ 36,667.80 | | $ 83,076.89 | $ 619.33 | | $ 12,543.45 | $ 5,000.24 | $ 137,907.71 |
| Dec | $ 79,146.90 | | $ 184,730.98 | $ 1,719.80 | $ 401.50 | $ 35,054.58 | $ 5,000.00 | $ 306,053.76 |
| **2012** | | | | | | | | |
| Jan | $ 4,144.80 | | $ 18,366.88 | $ 13.02 | | $ 195.50 | $ 5,000.00 | $ 27,720.20 |
| Feb | $ 15,069.08 | | $ 545,662.90 | $ 1,636.68 | | $ 5,722.48 | $ 5,170.00 | $ 573,261.14 |
| Mar | $ (3,097.55) | | $ 101,608.50 | $ 850.98 | $ 404.25 | $ 15,817.04 | $ 5,000.00 | $ 120,583.22 |
| Apr | $ 4,696.95 | $ 20.00 | $ 142,300.89 | $ 68.13 | | $ 9,086.25 | $ 13,425.97 | $ 169,598.19 |
| May | $ 2,477.25 | | $ 66,658.09 | $ 60.85 | $ 501.75 | $ 4,897.33 | $ 5,060.28 | $ 79,655.55 |
| Jun | $ 1,639.95 | | $ 39,620.53 | $ 38.36 | | $ 2,923.09 | $ 18.24 | $ 44,240.17 |
| Jul | | | $ 33,108.13 | $ 11.64 | | | | $ 33,119.77 |
| **Grand Total** | **$ 1,438,348.11** | **$ 12,791.12** | **$ 1,932,557.42** | **$ 160,158.07** | **$ 8,386.95** | **$ 579,450.74** | **$ 224,141.62** | **$ 4,355,834.03** |