# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CITY OF GREENVILLE, ILLINOIS, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) |
| | ) **Case No.: 10-cv-00188-JPG-PMF** |
| **SYNGENTA CROP PROTECTION, INC.,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**FRAZIER, Magistrate Judge:**

Before the Court is a motion to unseal documents and a motion to maintain confidentiality designations for documents filed under seal (Part of Doc. No. 165, Doc. No. 251).  These motions were referred to the undersigned on June 12, 2012 (Doc. No. 302).  This order resolves all remaining disputes about plaintiffs' response to the defense motion to dismiss for lack of jurisdiction (Doc. No. 112) and the exhibits supporting that response.

### I.      Procedure

The Court has evaluated information regarding the sealed documents submitted by the parties and interveners, as well as all arguments in support of and in opposition to these motions, along with Judge Gilbert's discussions, rulings, and Orders.  The Court will assume that all who read this Order are familiar with Seventh Circuit jurisprudence pertaining to the good cause standard for maintaining documents under seal, which has been discussed at length in prior orders and is not repeated here.  The Court reviewed each of the remaining transcript excerpts and sealed documents in light of authorities cited and justifications offered as good cause for keeping the material secret in order to avoid anticipated prejudice to the defendants.  Where supporting details

were sparse, reasonable efforts were made to ascertain a context in which the justifications offered could be fairly evaluated.   To the extent the justifications offered were well-supported, the Court balanced those interests with the general public's interest in open and transparent judicial proceedings and decision-making.   In performing these tasks, the Court considered and weighed a variety of factors, including: information about the individuals who created or authored the documents, information about the individuals who received the documents, circumstances surrounding the creation of documents, information revealing the steps taken to restrict distribution beyond the intended recipients or to protect the documents from outside access, information demonstrating that certain content could create a commercial advantage, information demonstrating that public disclosure might give other commercial entities a competitive edge, and information explaining how particular content has been used by the defendants or will be used in the future. Deposition transcripts are discussed as a group.   The remaining discussion has been organized according to the particular good cause justifications offered by the defendants.

## II.   Excerpts from Deposition Transcripts

(1).   Exhibit 2

Defendants suggest that there is good cause to seal portions of a transcript of deposition testimony taken from Mr. Christoph Maeder on October 14, 2010.   Specific justifications for sealing the listed portions of Mr. Maeder's deposition testimony were not offered.   Rather, the Court was informed that someone had redacted "confidential information" from this transcript (Doc. No. 182-1 p. 2).   In the absence of specific justifications, the Court reviewed all listed portions of the transcript in search of glaring or obvious reasons to maintain questions and/or responses under seal.   None were found.

2

(2).    Exhibit 3

Defendants suggest that there is good cause to seal portions of a transcript of deposition testimony taken from Dr. John Atkin on October 15, 2010.    Specific justifications for sealing the listed portions of Mr. Atkin's deposition testimony were not offered.    In the absence of specific justifications, the Court reviewed all listed portions of the transcript in search of glaring and obvious reasons to maintain questions or responses under seal.    None were found

(3).    Exhibit 6

Defendants suggest that there is good cause to seal portions of a transcript of deposition testimony taken from Mr. Peter Hertl on November 4, 2010.    Specific justifications for redacting portions of Mr. Hertl's deposition testimony were not been offered.    In the absence of specific justifications, the Court reviewed the listed portions of the transcript for glaring and obvious justifications supporting a finding of good cause.    Two were found on page 77, lines 6 and 23.    A question and a response on that page disclose Mr. Hertl's salary.    Because Mr. Hertl is a witness and not a litigant in this proceeding, his salary remains his own private information.    If disclosed to the public, the amount of Mr. Hertl's salary would not shed light on the rationale supporting any issue, argument, or judicial decision made in this case.    Accordingly, statements disclosing the amount (and only the amount) of Mr. Hertl's salary will be maintained under seal.

(4).    Exhibit 7

Defendants suggest that there is good cause to seal portions of a transcript of deposition testimony taken from Vernon Richard Hawkins on November 9, 2010.    Specific justifications for redacting portions of Mr. Hawkins's deposition testimony were not offered.    In the absence of specific justifications, the Court reviewed the listed portions of the transcript for glaring and obvious justifications supporting a finding of good cause.    One was found, on page 7, line 21.    A

3

response discloses Mr. Hawkins's home address.   Because Mr. Hawkins is a witness and not a litigant in this proceeding, his home address remains his private information.   If disclosed the public, the address would not shed light on the rationale supporting any judicial decision in this case.   Accordingly, testimony regarding Mr. Hawkins' street address(and not the city or state where he resides) will be maintained under seal.

(5).   Exhibit 8

Defendants suggest that there is good cause to seal portions of a transcript of deposition testimony taken from Dirk Cooper Drost, PhD, on November 10, 2010.   Specific justifications for redacting portions of Dr. Drost's deposition testimony were not offered.   The Court reviewed the listed portions of the transcript for glaring and obvious justifications supporting a finding of good cause.   None were found.

(6).   Exhibit 9

Defendants suggest that there is good cause to seal portions of a transcript of deposition testimony given by Jason Fogden on November 11, 2010.   Specific justifications for redacting portions of Mr. Fogden's testimony were not been offered.   The Court reviewed the listed portion of the transcript for glaring and obvious justifications supporting a finding of good cause.   None were found.

(7).   Exhibit 11

Defendants suggest that there is good cause to seal portions of a transcript of deposition testimony taken from Janis McFarland on November 17, 2010.   Specific justifications for redacting portions of Ms. McFarland's testimony were not offered (Doc. No. 182-1, p. 3).   The Court reviewed the listed portions of the transcript for glaring and obvious justifications supporting a finding of good cause.   None were found.

(8).   Exhibit 365

This is an excerpt from a deposition transcript, taken in litigation filed in Texas state court in 2001.   The testimony pertains to a shared services agreement, a line of credit agreement, and a cash sweep agreement.   Specific financial information is not revealed, and the document does not reasonably permit the inference that the testimony was confidential and remains confidential or that public disclosure would likely create a commercial advantage or disadvantage.

### III.   Documents Disclosing a Trade Secret

Disclosure of a trade secret was briefly mentioned as a possible justification for maintaining information under seal (Doc. No. 182, p. 7).   That specific justification was not offered with respect to any of the items remaining under seal (Doc. No. 182-1).   To the extent disclosure of a trade secret is offered as a justification for a finding of good cause, this rationale has not been substantiated.

### IV.   Documents Disclosing Confidential Product Development

Defendants' justification for maintaining information regarding product development under seal is based on the decision in *Bayer Healthcare, LLC v. Norbrook Laboratories, LTD.*, No. 08-953, 2009 WL 3444938 (E.D. Wisc. Oct. 23, 2009), where the Honorable Judge Randa sealed eight exhibits, including three exhibits found to disclose "confidential development and commercial information," including a list of distributors used by Norbrook for some products not at issue in that litigation.   Because Judge Randa's decision is unreported, his decision is helpful but is not binding on this Court.   *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995).

(1).   Exhibit 1.

This is a 39-page summary of each of the 365 exhibits presented with plaintiffs' response to the motion to dismiss.   The defendants have not directed the Court's attention to particular remarks

revealing confidential information regarding products in development.   The document itself does not permit a finding that the information revealed in the summary could be harmful to the defendants or could reasonably be expected to create an competitive advantage for other companies in the industry.

(2).   Exhibit 19.

This appears to be a 57- page copy of presentation excerpts from 2001, when Syngenta AG was a relatively new company.   More than ten years have passed since the document was created. The document itself does not indicate confidentiality, either at the time of creation or at present. The defendants have not pointed to information other than the document itself to show that the presentation excerpts reveal secret information about research and development or product development proposals.   The Court declines to comb through the materials in an effort to find that information, if it exists.   *See Northwestern Nat. Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994)(judges are not archaeologists excavating masses of papers in search of tidbits).

(3).   Exhibit 23.

This is a 42-page document from March, 2001, pertaining to a corn crop  herbicide. Confidentiality cannot be ascertained from the exhibit itself and there is no supporting information demonstrating that the document as a whole or specific parts have been maintained in confidence for more than a decade.   If particular statements within this document reveal secret information regarding products in development, the Court was not directed to that information.

(4).   Exhibit 25.

This is a 1-page application pertaining to initial introduction of an active ingredient in 2001. Confidentiality cannot be ascertained from the exhibit itself and there is no supporting information demonstrating that the document as a whole or specific parts have been maintained in confidence

for more than a decade.   If particular statements reveal secret information about products still in development, the Court was not directed to that information.

(5).     Exhibit 28.

This is a 40-page document of presentation excerpts regarding a corn crop herbicide.   It appears that the presentation was made in 2001.   Confidentiality cannot be ascertained from the exhibit itself and there is no supporting information demonstrating that the presentation excerpts have been maintained in confidence for more than a decade.   If particular statements reveal secret information about products still in development, the Court was not directed to that information.

(6).     Exhibit 59.

This is a 26-page document reflecting discussions and conclusions reached by a development committee at a meeting in August, 2002.   On pages 21-22, there is a paragraph discussing circulation of information presented to and evaluated by the committee.   The remarks reveal a goal of protecting *some* information from wider distribution in order to avoid a risk of harm to commercial interests.   To the untrained, uneducated eye, this might be something of interest to business competitors, yet there is substantiation indicating why or how that might be so.   No attempt was made to identify particular content for which harm via wider distribution was a legitimate concern.   The committee may have been referring to reading material in a shared folder, which is not part of this exhibit.   In short, the Court is not able to identify particular material that warrants protection from public view.   Moreover, the Court cannot ascertain which information deemed highly confidential in 2002 would still hold such status in 2012.   Furthermore, it appears that information was shared with a "number of colleagues," and the Court has no information indicating that the decision to widen distribution was accompanied by safeguards to protect against redistribution or whether those efforts (if any) remained in force over many years.   If particular

content reveals secret information about products in development, the Court was not directed to that information.   While there are references to long-term strategy, the longest period mentioned ended in 2007.   In sum, the Court is not persuaded that these minutes divulge current confidential details that could harm valid commercial interests.

(7).   Exhibit 60.

This 8-page document pertains to a regional presentation from 2002.   Confidentiality – at the time of presentation or at the current time – cannot be ascertained from the exhibit itself, and the defendants have not tendered an affidavit or pointed to other information demonstrating that the exhibit in whole in part reveals secret information about products in development.   Many years have passed since the document was created.   If particular statements within this document reveal secret information regarding product development, the Court was not directed to that information through a specific reference to particular pages or paragraphs.

(8).   Exhibit 69.

This is a 30-page document reflecting discussions and conclusions reached by a development committee at a meeting in September, 2002.   The document itself does not demonstrate that the minutes as a whole or specific parts were maintained in confidence over many years.   If particular statements reveal secret information about products still in development, the Court was not directed to that information.   There is no indication that discussions in 2002 about future development reveal confidential details regarding products that are currently in development. Planning for the future appears to be relatively short term, as indicated by a list of development investment ending in 2004 and a list of proposed "milestones" ending in 2007.   Absent is any persuasive information demonstrating that public access to these minutes could harm important commercial interests.

(9).   Exhibit 107.

This is a 25-page document which appears to be a partial presentation from 2003.   The document itself does not reveal what information, if any, pertains to products currently in development.   Also, the document does not demonstrate that information was confidential in 2003 and has remained secret over many years.   The Court has not been directed to any particular content that could harm defendants' business interests if released to the public.

(10).   Exhibit 116.

This appears to be a 22-page document pertaining to a presentation from 2004.   The document itself does not reveal what information, if any, pertains to products currently in development.   Also, the document does not demonstrate that information was held secret in 2004 and has remained secret over many years.   The Court has not been directed to any particular content that could harm defendants' business interests if released to the public.

(11).   Exhibit 152.

This is a 23-page document reflecting discussions and conclusions reached by a development committee at a meeting in December, 2005.   The document itself does not demonstrate that the minutes as a whole or specific sections were maintained in confidence over many years.   If particular statements reveal secret information about products still in development, the Court was not directed to that information.   The committee's primary focus was on the near future and while some very general future product development objectives and milestones were mentioned, no information extends beyond the first part of 2010.   Absent is any persuasive information demonstrating that public access to these minutes could harm valued commercial interests.

(12).   Exhibit 182.

This is a one-page email exchange between a research and development scientist and a global technical manager for herbicides, in 2006.   There are references to a product which may still be in development.   No details are provided about the product, which is referenced by code number.   The document, without more, does not demonstrate that the information exchanged remains secret or that public access could harm valued commercial interests.

(13).   Exhibit 218.

This is an 11-page document reflecting discussions and conclusions reached by a development committee in connection with a meeting in May, 2007.   The minutes suggest wide distribution.   There are references to products, identified by code.   The committee's primary focus was on the near future, without any mention of products in development beyond 2009. Absent is any persuasive information demonstrating that public access to these minutes could harm valued commercial interests.

(14).   Exhibit 222.

This is a 17-page spreadsheet compilation of reports prepared in June and July, 2007.   The spreadsheet lists ideas, giving brief descriptions.   Details are not provided regarding the creators, use, distribution, effort to maintain secrecy, or any commercial advantage or harm that may be anticipated with disclosure in 2012.   To the extent that the spreadsheet reveals a strategy, there is no basis to conclude that this particular strategy is unique, secret, and useful enough to have current commercial value or create an unfair advantage for competitors who may gain access.

(15).   Exhibit 225.

This is an 18-page document reflecting discussions and conclusions reached by a development committee in connection with a meeting in August, 2007.   The minutes suggest wide

10

distribution.   There are references to products and plans – only one of which appears to be relatively current (page 3) and does not have particular pertinence to these proceedings.   The Court is not persuaded that the remaining products are in secret stages of development.   The defendants will be directed to refile this exhibit with page 3 redacted.

(16).   Exhibit 226.

This is a 2-page email chain from 2007.   It is not apparent from the document that it reveals commercially valuable information about products in secret stages of development.

(17).   Exhibit 238.

This is a 23-page document reflecting discussions and conclusions reached by a development committee in connection with a meeting held in January, 2008.   These minutes focus on finished product sales rather than products in secret stages of development.   An attachment makes brief reference to products in development in 2007.   The document itself does not permit a finding that it contains commercially valuable information that must be protected from public access in 2012.

(18).   Exhibit 241.   This is an email chain pertaining to an event tagged as the Midwest Corn Tour in June, 2008.   The document itself does not permit a finding that it reveals secret product development information that could harm the defendants if public access is allowed.

(19).   Exhibit 255.

This is a 14-page document reflecting discussions and conclusions reached by a development committee in connection with a meeting in August, 2008.   These minutes refer to some products by code .   It is not revealed whether these products are currently in development, whether the information was generated secret in 2008 and has been maintained in secret over the years, or whether the information could be useful to a competitor if revealed in 2012.   The

document itself is not persuasive evidence of good cause to maintain the notes under seal.

(20).   Exhibit 272.

This is a 28-page draft spreadsheet created in February, 2009, which appears to list crop protection project proposals.   The column entries are not self-explanatory and the scope of distribution is not known.   Project titles are brief and do not appear to reveal important details regarding products being developed in secret stages.   The document itself does not permit a confident inference that release to the general public would harm valued commercial interests.

(21).   Exhibit 273.

This is an email chain describing preliminary efforts to finalize a product development budget for 2009.   Ongoing efforts to develop products in secret are not revealed.

(22).   Exhibit 274.

This is an email chain describing preliminary efforts to finalize a product development budget for 2009.   Ongoing efforts to develop products in secret are not revealed.

(23).   Exhibit 275.

This is another draft spreadsheet created in February, 2009, similar to Exhibit 272.   The same analysis applies.

(24).   Exhibit 278.

This memorandum describes the process used to allocate resources for a development portfolio in 2009.   Ongoing efforts to develop products in secret are not revealed.

(25).   Exhibits 294, 295, and 296.

These notes summarize a field visit to evaluate and compare new chemistry compounds being developed in June, 2009.   To the extent products in a secret testing/evaluation phase are identified, any risk of commercial harm could be avoided by redacting the names/code names of the compounds from the summary.   The entire document need not be maintained under seal.

### V.        Documents Describing Regulatory Compliance and Strategies

Defendants' justification for maintaining information regarding regulatory compliance and strategies under seal is based on the decision in *Bayer Healthcare, LLC v. Norbrook Laboratories, LTD*., supra, where the Honorable Judge Randa sealed information related to the filing of a new animal drug application with the U.S. Food and Drug Administration.

(1).   Exhibit 58.

This is an email authored in September, 2002, on the topic of groundwater debate.   The email includes one comparison of "former use conditions" to "new use recommendations" which were at that time pending in an EU submission.   There is no indication that the referenced EU submission remains pending a decade later.   Comments describing the then-current registration climate are too vague and remote to warrant protection.

(2).   Exhibit 60.

This document pertains to a presentation from September, 2002.   Included is the "latest initiative," which outlines proposals for submission to the EPA.   There is no indication that the proposals were developed and submitted to the EPA or that the outline reveals important aspects of a regulatory compliance strategy.   The Court is not persuaded that this item must be sealed in order to avoid anticipated commercial harm.

(3).   Exhibit 107.

This is a 25-page document which appears to describe a partial presentation from 2003.   Many years have passed since this document was created.   The document itself does not indicate confidentiality, either at the time of creation or through the years to the present.   Some of the information is general and clearly not worthy of protection, such as a suggestion that excellence in science and politics is a winning formula for success in the field of regulatory affairs.   The

13

defendants have not pointed to specific information revealing a secret regulatory strategy.   The Court declines to comb through the material in an effort to find that information, if it exists.

(4).   Exhibit 218.

This is an 11-page document reflecting discussions and conclusions reached by a development committee following a meeting in May, 2007.   The minutes suggest wide distribution.   Included are comments about regulatory challenges, options, a recommendation, decision, and rationale; yet there is no indication that these notes reflect current regulatory strategy, such that public disclosure would produce harm or create a competitive advantage for another company in the industry.   Other comments describe dossier evaluation by a rapporteur member state.   These notes suggests compliance with the EU regulatory framework but do not reveal a confidential strategy for obtaining regulatory approval.

(5).   Exhibit 225.

This is an 18-page document reflecting discussions and conclusions reached by a development committee in connection with a meeting in August, 2007.   The minutes suggest wide distribution.   There are vague references to regulatory submissions and registrations for 2007-2009, nothing that would reveal secret strategy that could cause harm or create a competitive advantage if revealed in 2012.

(6).   Exhibit 306

This appears to be a 38-page presentation for a meeting held in the later part of 2009.   The document itself does not indicate confidentiality, either at the time of creation or at present.   The defendants have not directed the Court to specific information to show that the presentation as a whole or in part reveals a strategy for regulatory compliance or submissions.   Some information, such as photographs of three unknown gentlemen sporting medieval weaponry, an artistic group of

angels, and a collection of rescue vehicles (page 5), is clearly not protected.   The Court declines to comb through the remaining presentation materials in an effort to locate information warranting protection, if it exists.

## VI.   Organizational Structure, Employee Assessments & Compensation

Defendants' justifications for maintaining information regarding organizational structure, employee performance assessments, and employee compensation under seal is based on the decision in *Swartz v. Wabash Nat'l Corp.,* No. 07-70-AS, 2009 WL 1606923 (N.D. Ind. June 8, 2009), where the Honorable Judge Sharp sealed eleven exhibit portions, including one email "on organizational structure," which revealed information about nonparty employees, including salary and evaluative assessments.   *Swartz* is accepted for the proposition that the good cause standard is generally satisfied when exhibits reveal certain information about nonparty employees, including salary information and evaluative assessments.   *Swartz* is not good authority for any other legal proposition.

(1).   Exhibit 1

This is a 39-page summary of each of the 365 exhibits presented with plaintiffs' response to the motion to dismiss.   The defendants have not directed the Court's attention to particular remarks revealing information about nonparty employees, such as salaries or performance evaluations. The Court declines to comb through 365 summaries in an effort to find that information, if it exists.

(2).   Exhibit 13

This is correspondence addressed to "Dear Associates," dated December, 1999.   It describes in general terms plans for Syngenta, then a prospective new company.   The document does not reveal private or personal information about nonparty employees.   The suggestion that good cause supports a decision to maintain this correspondence under seal to protect confidential information regarding "organizational structure" is unsupported.

(3).   Exhibit 102

This is an email chain written between August and October, 2003.   The salary of a nonparty employee is included, which is not pertinent to decisions made in this proceeding. Rather than maintain this document under seal, the private salary information may be protected through redaction.

(4).   Exhibit 138

This is a performance management review for 2004.   It includes objectives and self-appraisal by a nonparty employee, neither of which has particular pertinence to this proceeding. Rather than maintain this document under seal, the private information may be adequately protected by re-filing the exhibit with the name and position/title of the employee redacted from page 1 and page 2.

(5).   Exhibit 192

This is a performance management review for 2005.   It includes objectives, self-appraisal, and manager appraisal for a nonparty employee, none of which are particularly pertinent to this proceeding.   Rather than maintain this document under seal, the private information may be adequately protected by re-filing the exhibit with the name and position/title of the employee redacted from page 1 and page 3.

(6).   Exhibit 198

This is a performance management review for 2006.   Page 1 includes objectives and self-appraisal by a nonparty employee, neither of which are particularly pertinent to this proceeding. Rather than maintain this document under seal, the private information may be adequately protected by re-filing the exhibit with the name and position/title of the employee redacted from page 1.

16

(7).    Exhibit 202

This is an email exchange regarding a performance management review for 2005.   It includes objectives, self-appraisal, and manager appraisal for a nonparty employee, none of which are particularly pertinent to this proceeding.   Rather than maintain this document under seal, the private information may be adequately protected by re-filing the exhibit with the name and position/title of the employee redacted from each page.

(8).    Exhibit 249

This is an email chain from June, 2008.   The exhibit does not reveal private or personal information about nonparty employees.

(9).    Exhibit 322

This is an email exchange from January, 2010.   There are vague references to compensation packages for nonparty employees.   Rather than maintain this document under seal, the private information may be adequately protected by re-filing the exhibit with redaction of the names of nonparty employees whose compensation packages were being discussed.

(10).    Exhibit 328

This is an email chain from February, 2010.   The salary of a nonparty employee is included, which is not pertinent to decisions made in this proceeding.   Rather than maintain this document under seal, the private compensation rate may be protected through redaction.

(11).    Exhibit 339

This is an email chain from August, 2010.    The performance level of a nonparty employee is the topic, which is not pertinent to decisions made in this proceeding.    Rather than maintain this document under seal, the identity of the individual employee may be protected through redaction.

(12).   Exhibit 361

This is a 37-page employee handbook describing policy for work assignments abroad.   The defendants have not pointed to specific information revealing private information about employee compensation or assessments.   The Court declines to comb through the material in an effort to find that information, if it exists.

## VII.   Nonpublic Financial Information

Defendants' justification for maintaining nonpublic financial information under seal is based on the decision in *Metavante Corporation v. Emigrant Savings Bank,* No. 05-cv-1221, 2008 WL 4722336 (E.D. Wis. Oct. 24, 2008), where the Honorable Judge Stadtmueller sealed documents to protect nonpublic financial information related to account balances and nonpublic, confidential pricing, plans, and strategies.

(1).   Exhibit 19

This appears to be a 57- page copy of a presentation made in 2001, when Syngenta AG was a relatively new company.   More than ten years have passed since the document was created. The document itself does not indicate confidentiality, either at the time of creation, over the years, or at present.   The defendants have not pointed to specific information to show that the presentation as a whole or in part reveals nonpublic and confidential financial information relating to budgets or budget policies.   The Court declines to comb through the materials in an effort to find that information, if it exists.

(2).   Exhibits 79 and 95

These are 3-page summaries of key points made during meetings held in 2003, including financial estimates for inventory, savings, cost reduction initiatives, raw materials, and sales.   The target audience are "stakeholders" which suggests that the information was not intended to be held

in confidence for any substantial period of time.   Further, it does not appear that these exhibits reveal confidential financial information.

    (3).   Exhibit 146

This appears to be a 44-page presentation from March, 2005, including price information for what may be competing companies.   The defendants have not pointed to specific information revealing nonpublic, confidential financial information.   The Court declines to comb through the material in an effort to find that information, if it exists.

    (4).   Exhibit 167

This email from 2005 discusses upcoming budget matters and includes a few references to projected project costs and budget options.   The confidentiality of this financial information through the years to the present is not apparent.

    (5).   Exhibit 175

This email from 2005 relays information and evaluates profit margins for contracts with agrichemical partners.   The financial information seems to have been reported in a spreadsheet, which is reference by the author but not included as part of this exhibit.   The Court is not persuaded that confidential, nonpublic financial information is revealed or that a commercially significant level of confidentiality persists through 2012.

    (6).   Exhibit 176

This email chain from 2005 discusses a potential supply agreement.   No confidential, nonpublic financial information is revealed.

    (7).   Exhibit 181

This email exchange in March, 2006, pertains to a 2007 supply arrangement and includes recommendations for price strategy.   The document does not reasonably permit an inference that

the   strategy discussed was confidential at the time and remains confidential at present.   Also, the document does not show that the strategy proposed was implemented or that public disclosure at this time would likely to create a significant commercial advantage for a competitor or a disadvantage for the defendants.

(8).   Exhibit 194

This email exchange in July, 2006, pertains to a task review for 2006.   The discussion pertains to a project prioritization effort and does not appear to reveal confidential financial information.   It is not apparent that public disclosure is likely to create a significant commercial advantage or disadvantage.

(9).   Exhibit 195

This email exchange corrects some of the information relayed in Exhibit 194 and includes some additional background information.   Again, it is not apparent that currently confidential financial information is revealed or that public disclosure in 2012 would likely create a significant commercial advantage or disadvantage.

(10).   Exhibit 209

This is an email exchange that accompanied an agreed portfolio for 2007, and includes some general financial information about planned funding for projects.   It is not apparent that the information remains confidential or that public disclosure of these budget proposals for 2007 would likely create a significant commercial advantage or disadvantage in 2012.

(11).   Exhibit 272

This is a 28-page draft spreadsheet created in February, 2009.   The column entries are not self-explanatory and the scope of distribution is not known.   There is no showing that information prepared in 2009 needs to be protected from public disclosure in 2012.   The document itself does

not permit a confident inference that the information remains confidential or that release to the general public would harm valued commercial interests or that competing businesses would be able to use this information to their advantage.

(12).   Exhibit 273

This is an email chain describing preliminary efforts to finalize a product development budget for 2009.   It is not apparent that the information remains confidential or that public disclosure of some general financial information would likely create a significant commercial advantage or disadvantage.

(13).   Exhibit 274

This is another email chain describing preliminary efforts to finalize a product development budget for 2009.   It is not apparent that the information remains confidential or that public disclosure of some general financial information would likely create a significant commercial advantage or disadvantage.

(14).   Exhibit 275

This is another draft spreadsheet created in February, 2009, similar to Exhibit 272.   The same analysis applies.

(15).   Exhibit 278

This memorandum describes the process used to allocate resources for a development portfolio in 2009, including a budget/sales comparison for prior years.   It is not apparent that this information remains confidential or that public disclosure of this budget and sales information would likely create a significant commercial advantage or disadvantage.

(16).   Exhibit 298

This is a 17-page treasury policy, effective in January, 2010.   It contains general statements of objectives, and principles, as well as tasks and responsibilities.   One appendix reveals

delegation of authority.   A second appendix is blank and appears to have been redacted prior to filing.   The Court is not persuaded that this exhibit reveals confidential, nonpublic financial information or that public disclosure would likely create a significant commercial advantage or disadvantage.

(17).   Exhibit 329

This is a 144-page set of guidelines for projects involving capital expenditures as of March, 2010.   The defendants have not directed the Court to a specific page or section containing confidential non-public financial information.   The Court declines to comb through the exhibit in an effort to locate information warranting protection from public disclosure, if it exists.

(18).   Exhibit 333

This is an organizational chart, with notes, marked "strictly confidential" and dated June 30, 2010.   No financial information can be gleaned from this exhibit.   Once again, the defendants have not met their burden by demonstrating the need to maintain confidentiality.

(19).   Exhibit 348

This is a 383-page collection of director meeting minutes, director resolutions, shareholder approvals, and stockholder approvals covering a period of approximately ten years.   The defendants have not pointed to specific pages revealing nonpublic, confidential financial information.   The Court declines to comb through the material in an effort to find that information, if it exists.

**VIII.   Nonpublic Business Materials – Product Performance, Pricing, or Strategies**

Defendants' justification for maintaining nonpublic financial information under seal is based on the decision in *Metavante Corporation v. Emigrant Savings Bank,* No. 05-cv-1221, 2008 WL 4722336 (E.D. Wis. Oct. 24, 2008), where the Honorable Judge Stadtmueller sealed 27 exhibits containing nonpublic business information, including pricing, business plans and strategies.

22

(1).   Exhibit 1

This is a 39-page summary of each of the 365 exhibits presented with plaintiffs' response to the motion to dismiss.   The defendants have not directed the Court's attention to particular remarks revealing confidential information regarding sales, pricing, marketing, structuring, policies, or processes.   The document itself does not permit a finding that public disclosure of the summary could be harmful to the defendants or could reasonably be expected to create an competitive advantage for other companies in the industry.

(2).   Exhibit 13

This is correspondence addressed to "Dear Associates," dated December, 1999.   It describes in general terms plans for Syngenta, then a prospective new company.   Some of the information is certainly not confidential.   One example is an announcement that Syngenta will be headquartered in Basel, Switzerland.   The suggestion that good cause supports a decision to maintain this correspondence under seal to protect confidential information regarding "sales" is unsupported.

(3).   Exhibit 19

This appears to be a 57- page copy of a presentation made in 2001, when Syngenta AG was a relatively new company.   More than ten years have passed since the document was created. The document itself does not indicate confidentiality, either at the time of creation/presentation or at present.   The defendants have not pointed to information other than the document itself to show that the presentation as a whole or in part reveals secret information about market share.    The Court declines to comb through the materials in an effort to find that information, if it exists.

(4).   Exhibit 31

This appears to be a 9-page set of minutes and follow-up notes from a January 9, 2001, organizational meeting.   The notes are generalized and cryptic and are not particularly revealing.

23

More than ten years have passed since this document was created. The document itself does not indicate confidentiality, either at the time of creation or at present. Defendants' suggestion that the document reveals confidential information about "strategic plans and business operations" is not well-supported.

(5). Exhibit 32

This is an email with an 11-page presentation attached, from 2001. The email indicates that the message "may" contain confidential information. The attached document does not indicate confidentiality, either at the time of creation or at present. The defendants have not pointed to specific information to support the claim that the exhibit as a whole or in part reveals secret information about internal governance policies or strategies. The fact that someone marked the email with a label of possible confidentiality does not suffice to satisfy defendants' burden in this review process.

(6). Exhibit 36

This is a 7-page proposed agenda with minutes for a meeting/workshop held in November, 2001. The document describes assumptions for events in 2013 and includes priority lists. While a portion of the minutes (listing agreed actions) may have been confidential at the time the document was created and may have disclosed some strategic planning, there is no indication that any strategy mentioned has been implemented, that the strategy is commercially relevant in 2012, or that the strategy remains confidential.

(7). Exhibit 40

This is an 18-page outline of a presentation. The date, author, recipients are not revealed. The document is not sufficiently detailed to reveal a strategy that exists and is held in confidence in 2012, or to permit the inference that public access would likely cause commercial harm.

24

(8).   Exhibit 49

This is a 16-page memo with attachments regarding group companies.   While the materials discuss plans for future company structure and management, it is not clear that all or part of the material was confidential when it was created in 2002, or whether the material remains confidential and relevant, such that commercial harm is likely to result if the information is available to the general public.

(9).   Exhibit 57

This is a 51-page plan pertaining to global product supply.   The document bears a "company secret" label, suggesting that confidentiality was intended at the time the document was created, in 2002.   Some information appears to be public knowledge, such as generic product descriptions, initial registration dates, and common uses.   To the extent future work and plans are mentioned, specific details are not provided beyond 2005.   Defendants have not directed the Court to specific pages or sections to show that the document as a whole or in part reveals secret supply chain strategies that are both long-term and commercially sensitive through 2012.   Court declines to comb through the plan in an effort to locate such information, if it exists.

(10).   Exhibit 59

This is a 26-page document reflecting discussions and conclusions reached by a development committee at a meeting in August, 2002.   On pages 21-22, there is a paragraph discussing circulation of information presented to and evaluated by the committee.   The remarks reveal a goal of protecting *some* information from wider distribution in order to avoid a risk of harm to commercial interests.    No attempt has been made to identify the particular content for which harm via wider distribution was a legitimate concern.   The committee may have been referring to reading material in a shared folder, which is not part of this exhibit.   In short, the Court is not able

to identify particular material that might warrant protection from public view.   Moreover, the Court cannot ascertain which information deemed highly confidential in 2002 would still hold such status in 2012.   Furthermore, it appears that information was shared with a "number of colleagues," and the Court has no information indicating that the decision to widen distribution was accompanied by safeguards to protect against redistribution or whether those efforts (if any) remained in force over many years.   If particular content reveals secret information about products in development, the Court was not directed to that information.    While there are references to long-term strategy, the longest period mentioned ended in 2007.   The Court is not persuaded that these minutes divulge current confidential details that could harm valid commercial interests.

(11).   Exhibit 69

This is a 30-page document reflecting discussions and conclusions reached by a development committee at a meeting in September, 2002.   The document itself does not demonstrate that the minutes as a whole or specific parts were maintained in confidence over many years.    If particular statements reveal secret information about marketing strategies or analysis, the Court was not directed to that information.    There is no indication that discussions in 2002 reveal confidential details regarding current strategy, and planning for the future appears to be relatively short term, as indicated by a list of development investment ending in 2004 and a list of proposed "milestones" ending in 2007.    There is no persuasive information demonstrating that public access to these minutes could harm important commercial interests in 2012.

(12).   Exhibit 116

This appears to be a 22-page presentation from March, 2004, pertaining to crop injury relating to an active ingredient in a particular herbicide.   This appears to be analysis of research data that is available to the general public and commonly discussed in the agricultural community.

The presentation does not appear to reveal any secret analysis that remains confidential and commercially relevant in 2012.

(13).   Exhibit 123

This appears to be a 51-page presentation with supporting slides from July, 2004, pertaining to global supply chain management.   While this presentation may reveal some historical analysis and past strategy, the Court is not persuaded that the document reveals confidential information that remains commercially relevant in 2012.

(14).   Exhibit 134

This is an email exchange from December, 2004, pertaining to contract negotiation.   The document may reveal some pricing and negotiation strategy.   There is no showing that the information was confidential at the time or that any confidential pricing or negotiation strategy has been held in secret over the years and remains commercially relevant in 2012.

(15).   Exhibit 144

This is an email exchange from 2005, pertaining to an herbicidal formulation project. There is no indication that any of the information disclosed was confidential and remains confidential and commercially relevant in 2012.

(16).   Exhibit 146

This appears to be a 44-page presentation from March, 2005, including sales forecasts for 2004.   The defendants have not pointed to specific information revealing confidential strategy and sales.   The Court declines to comb through the material in an effort to find that information, if it exists.

(17).   Exhibit 159

This appears to be an 18-page presentation and discussion document from May/June, 2005, pertaining to proposals for product management.   The defendants have not pointed to specific

information revealing strategy and processes that were confidential when the document was created, have been held in confidence over the years, and are commercially relevant in 2012.

(18).   Exhibit 170

This is a spreadsheet reflecting an effort to rank projects according to priority.   Projects are identified by title, with cost estimates for 2005, 2006, and "all year."   The spreadsheet entries do not demonstrate confidentiality in forecasting, analysis, and/or studies at the time the document was created, through the years, or commercial relevance in 2012.

(19).   Exhibit 181

This email exchange in March, 2006, pertains to a 2007 supply arrangement and includes proposals for contract negotiation strategy.   The document does not reasonably permit an inference that the strategy discussed was maintained in confidence at the time and remained confidential through to the present.   Also, the document does not show that the strategy was implemented or that public disclosure in 2012 would likely create a significant commercial advantage for a competitor or a disadvantage for the defendants.

(20).   Exhibit 185

This 2-page document describes sourcing and manufacturing decisions in a manner designed to reassure customers and farmers about product quality and availability.   The date, author, and recipients are not revealed; the content does not disclose confidential production or manufacturing strategies; and no commercial harm would result if the document is disclosed to the general public.

(21).   Exhibit 187

This is an email exchange from April, 2006, pertaining to anticipated 2007 purchase & supply contracts.   The document does reveal a price quote, yet there is no indication that the quote

was given in confidence or that the recipient/prospective customer agreed to maintain the quote in confidence.   Also, there is no basis to find a hardship to the defendants if the information is disclosed in 2012.

(22).   Exhibit 195

This email exchange pertains to an effort to tweak a portfolio assigning project and task priorities for 2006.   While the document does reflect planning, a particular strategy is not revealed and there is no reason to conclude that the information was and is confidential, remains relevant, or that public disclosure in 2012 would likely create a significant commercial advantage or disadvantage.

(23).   Exhibit 197

This is an email exchange regarding feedback obtained from a small number of sales representatives and farmers.   The comments about products do not reveal any marketing strategy that is shown to be confidential when the communication was sent in 2006, and remaining confidential through 2012, or relevant such that public disclosure would create a risk of commercial harm.

(24).   Exhibit 199

This is an 18-page document summarizing responsibilities assigned to various management employees in 2006.   The document encourages copy & distribution and does not reflect a goal of confidentiality.   The defendants have not pointed to specific remarks that constitute strategic planning and could lead to commercial harm if the document is disclosed to the general public.

(25).   Exhibit 207

This is a 3-page summary of key points made during a meeting held in 2006, including a few references to marketing and product formulations.   The target audience is "stakeholders"

29

which does not suggest that the content was intended to be held in confidence for a substantial period of time.   Further, it does not appear that the exhibit reveals confidential product or marketing strategies or that public disclosure could result in commercial harm.

(26).   Exhibit 209

This is an email exchange that accompanied an agreed portfolio for 2007.   The correspondence does not reveal product marketing details that were confidential in 2007, remained confidential over the years, and could generate commercial harm if disclosed to the general public in 2012.

(27).   Exhibit 217

This is a 3-page summary of key points made during a meeting held in 2007, including packaging change opportunities and cost analysis for 2007.   The target audience is "stakeholders" which suggests that the messages were not intended to be held in confidence for any substantial period of time.   The Court is not persuaded that confidential details regarding product marketing and pricing are revealed, or that public disclosure in 2012 would present a significant risk of commercial harm.

(28).   Exhibit 223

This is an email exchange on the subject of marketing ideas. The main topic is a group of lists, which is not part of the exhibit.   The correspondence does identify in general terms some projects that were proposed for delay or elimination in 2007.   The exchange does not reveal information about product marketing strategy which was confidential at creation and remained confidential or that public disclosure in 2012 would create a significant risk of commercial harm.

(29).   Exhibit 229

This 16-page document appears to summarize topics discussed at a product safety presentation in October, 2007.   The author and recipients are not identified and the defendants

have not directed the Court's attention to particular details about product safety concerns that were confidential at the time, have remained confidential over the years, and would likely result in commercial harm if disclosed to the general public in 2012.

(30).   Exhibit 231

This is an email exchange about a product allocation proposal in 2007.   The suggestion that this reveals confidential information regarding sales is not well-supported, as the document contains only vague reference to sales.

(31).   Exhibit 238

This is a 23-page document reflecting discussions and conclusions reached by a development committee in connection with a meeting held in January, 2008. The document itself does not permit a finding that it contains information describing product sales that was confidential in 2008, has been held in confidence over the years, and remains confidential and commercially valuable in 2012.

(32).   Exhibit 306

This appears to be a 38-page presentation for a meeting held in the later part of 2009.   The document itself does not indicate confidentiality from the time of creation to the present.   The defendants have not directed the Court to specific information to show that the presentation as a whole or in part reveals business management strategy.   Some information (page 5) certainly does not need protection from public viewing.   The Court declines to comb through the remaining presentation materials in an effort to locate management strategies that might warrant protection in 2012.

(33).   Exhibit 329

This is a 144-page set of guidelines for projects involving capital expenditures created in March, 2010.   The defendants have not directed the Court to a specific page or section revealing

confidential strategies.   The Court declines to comb through the exhibit in an effort to locate that information, if it exists.

(34).   Exhibit 346

This is a 16-page collection of in-house attorney recommendations for director approval of various settlements, sales, dividend payments, bylaw revisions, and conversion of corporate status in 2008, 2009, and 2010.   While these recommendations include brief descriptions of decision-making rationale, they do not reveal confidential strategies that are commercially relevant in 2012, such that disclosure would likely subject the defendants to a risk of harm.

(35).   Exhibit 348

This is a 383-page collection of director meeting minutes, director resolutions, shareholder approvals, and stockholder approvals covering a period of approximately ten years, ending in October, 2010.   The defendants have not pointed to specific pages or sections revealing confidential strategic planning decisions that merit protection in 2012.   The Court declines to comb through the material in an effort to find that information, if it exists.   Also, the defendants have not pointed to controlling precedent holding that these or similar corporate decisions are confidential and subject to sealing.

(36).   Exhibits 357 – 360

These documents provide synopses of other materials (codes, guidelines, protocols, policies) regarding assorted delegations of responsibilities for general categories of tasks and decisions. The author/recipients are not disclosed, the materials are not dated, and the documents themselves do not permit an inference that these designations are in use and held in confidence.   Some information is far too common to warrant protection from public view (such as the delegation to a media relations department the responsibility for handling press releases) and guidance to sift out

particular delegations of responsibility that are held in confidence and also commercially relevant is absent.

(37).   Exhibit 361

This is a 37-page employee handbook describing policy for work assignments abroad.   .
The document is not dated and the author/recipients are not disclosed.   Some of the information pertains to family members and other information is far too common to warrant protection, such as remarks tying success to willingness to adapt to a new culture.   The defendants have not guided the Court to specific information revealing confidential policies having commercial relevance.
The Court declines to comb through the material in an effort to find that information, if it exists.

**IX.   Conclusion**

The motions (Part of Doc. No. 165, Doc. No. 251) are GRANTED in part and DENIED in part.   Within 21 days, the defendants shall refile the following exhibits in redacted form:

6, 7, 102, 138, 192, 198, 202, 225, 294, 295, 296, 322, 328, 339.

Any party and any interested member of the public may challenge those redactions.   The specific material to be redacted is not repeated in plaintiffs' brief.

Absent further order, the Clerk is DIRECTED to unseal Document No. 112 and the following supporting exhibits on December 27, 2012: 1, 2, 3, 8, 9, 11, 13, 19, 23, 25, 28, 31, 32, 36, 40, 49, 57, 58, 59, 60, 69, 79, 95, 107, 116, 123, 134, 144, 146, 152, 159, 167, 170, 175, 176, 181, 182, 185, 187, 194, 195, 197, 199, 207, 209, 217, 218, 222, 223, 226, 229, 231, 238, 241, 249, 255, 272, 273, 274, 275, 278, 298, 306, 329, 333, 346, 348, 357, 358, 359, 360, and 365.

**IT IS SO ORDERED.**

**DATED:   December 4, 2012   .**

　　　　　　　　　　　　　　　　　__ s/Philip M. Frazier   __
　　　　　　　　　　　　　　　　　**PHILIP M. FRAZIER**
　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**